UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN G. PEDICINI,                       :
                                        :
        Plaintiff,                      :
                                        :
    v.                                  :
                                        :   Case No. 04-12395 JLT
UNITED STATES OF AMERICA, and           :
ANN M. VENEMAN, SECRETARY,              :
UNITED STATES DEPARTMENT OF             :
AGRICULTURE,                            :
                                        :
        Defendants.                     :

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Fed. R. Civ. P. 12(c), Defendants, the United States of America and Ann M. Veneman, Secretary of the United States Department of Agriculture, hereby submit this Memorandum in Support of their Partial Motion for Judgement on the Pleadings.  The Court should dismiss Count Two of the Complaint because the Plaintiff has no standing to sue the Government under the Administrative Procedure Act, as he has not suffered any harm as a result of the Government's alleged inactions.  The Court should dismiss the due process claim contained in Count Three of the Complaint because the Government is immune from monetary claims based on the Constitution and, furthermore, the Complaint is insufficient to proceed on a procedural due process claim.

**INTRODUCTION**

Plaintiff, a current employee of the United States Department of Agriculture ("USDA"), claims that the USDA has

retaliated against him for filing an action against the agency in 2001 and for asserting his "right" to represent co-workers in Equal Employment Opportunity matters.  He alleges that the USDA, in violation of Title VII, retaliated against him by reducing his job duties, denying him recognition at an awards ceremony, obstructing his career path, issuing him unjustified performance warnings, and referring him to a counselor.  Complaint ¶¶39, 69, 93, 97, 99.

In Count Two of the Complaint, Plaintiff also claims that the USDA violated the Administrative Procedure Act ("APA") by (i) failing to issue a written report to, among others, Congress, as is required by the Notification and Federal Employee Anti-discrimination and Retaliation Act of 2002, and (ii) failing to provide a report of compliance to the USDA's Office of Civil Rights as purportedly required by the Office's June 2002 order.  The Plaintiff, however, has no standing to sue the Government under the APA because he has not suffered any harm as a result of the USDA's alleged inactions.

In Count Three of the Complaint, the Plaintiff also claims monetary damages and injunctive relief on the grounds that the USDA deprived him of his due process rights by reducing his job duties and denying him recognition at an awards ceremony.  The Government, however, is immune from monetary claims on these grounds and the Complaint is insufficient to proceed on a

procedural due process claim.  For these reason and others, which are set forth below, the Court should dismiss Count Two and the due process claim contained in Count Three for lack of jurisdiction and failure to state a claim.

## ARGUMENT

"The standard for evaluating for a Rule 12(c) motion is essentially the same as the standard for evaluating a Rule 12(b)(6) motion."  <u>Furtick v. Medford Hous. Auth.</u>, 963 F. Supp. 64, 67 (D. Mass. 1997) (citing <u>Nedder v. Rivier Coll.</u>, 944 F. Supp. 111, 120 (D.N.H. 1996)).  "A motion for judgment on the pleadings may be granted only if it appears, beyond doubt, that the plaintiff can prove no facts in support of his claim that entitles him to relief."  <u>Petricca v. City of Gardner</u>, 194 F. Supp. 2d 1, 4 (D. Mass. 2002) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The court should consider the information and materials contained in the pleadings, accept the allegations of the complaint as true, and view the alleged facts in the light most favorable to the plaintiff.  See <u>Gulf Coast Bank & Trust Co. v. Reder</u>, 355 F.3d 35, 38 (1st Cir. 2004); <u>Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992).

"The federal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before

them."  Mich. Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1137 (6th Cir. 1991); see also State Oil Co. v. Khan, 839 F. Supp. 543, 545 (N.D. Ill. 1993) (noting federal courts' "general duty to jealously guard [their] limited jurisdiction").  Thus, courts must "assure that in every case jurisdiction in the federal court is proper, and this is so regardless of whether jurisdiction is challenged by the parties."  Kardules v. City of Columbus, 95 F.3d 1335, 1356 (6th Cir. 1996) (Batchelder, J., concurring); see also Children's Healthcare Is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1419 (6th Cir. 1996) (stating that "even when the parties concede jurisdiction, we must satisfy ourselves of our own jurisdiction and that of the lower court").

**A.   PLAINTIFF LACKS STANDING TO BRING AN ACTION UNDER THE APA**

This Court lacks jurisdiction over Plaintiff's APA claims because he lacks standing.  Moreover, his APA claims simply lack merit.  Plaintiff claims that the USDA violated the APA by failing to meet its obligations under Section 204(b) of the Notification and Federal Employee Anti-discrimination and Retaliation Act of 2002 ("No FEAR Act"), Public Law 107-174.  Section 204 of the No FEAR ACT states:

> (a) Issuance of Rules and Guidelines.--The President (or the designee of the President) shall issue--
>
> > (1) rules to carry out this title;
> > (2) rules to require that a comprehensive study be conducted in the executive branch to determine the best

      practices relating to the appropriate disciplinary
      actions against Federal employees who commit the
      actions described under clauses (i) and (ii) of section
      203(a)(6)(A); and
          (3) based on the results of such study, advisory
      guidelines incorporating best practices that Federal
      agencies may follow to take such actions against such
      employees.

      (b) Agency Notification Regarding Implementation of
  Guidelines.--Not later than 30 days after the issuance of
  guidelines under subsection (a), each Federal agency shall
  submit to the Speaker of the House of Representatives, the
  President pro tempore of the Senate, the Equal Employment
  Opportunity Commission, and the Attorney General a written
  statement specifying in detail--

      (1) whether such agency has adopted and will fully
  follow such guidelines;
      (2) if such agency has not adopted such
  guidelines; the reasons for the failure to adopt such
  guidelines; and
      (3) if such agency will not fully follow such
  guidelines, the reasons for the decision not to fully
  follow such guidelines and an explanation of the extent
  to which such agency will not follow such guidelines.

Pub. L. No. 107-174, 116 Stat. 570-571.

Plaintiff alleges that the Office of Personnel Management ("OPM") issued guidelines for repayment of judgments by agencies under Section 204(a) of the No FEAR Act on January 22, 2004. <u>See also</u> Pub. L. No. 107-174, 116 Stat. 568-569 (regarding repayment of judgments by agencies).[1]  Plaintiff claims that the USDA

---

[1] Section 201 of the No FEAR ACT states in relevant part: "Applicability.--This section applies with respect to any payment made in accordance with section 2414, 2517, 2672, or 2677 of title 28, United States Code, and under section 1304 of title 31, United States Code (relating to judgments, awards, and compromise settlements) to any Federal employee, former Federal employee, or applicant for Federal employment, in connection with any proceeding brought by or on behalf of such employee, former

violated the APA because it failed to submit its "written statement" to the Speaker of the House of Representatives, the President pro tempore of the Senate, the Equal Employment Opportunity Commission, and the Attorney General within 30 days as required by Section 204(b) of the No FEAR Act. He also alleges that both OPM and USDA are in violation of the APA because OPM has not yet issued guidelines that provide for disciplinary action against federal employees who discriminate against other federal employees as required by Section 203 of the No FEAR Act.[2]

---

employee, or applicant under--
    (1) any provision of law cited in subsection (c); or
    (2) any other provision of law which prohibits any form of discrimination, as identified under rules issued under section 204."
Pub. L. No. 107-174, 116 Stat. 568.

[2] Section 203 of the No FEAR Act states: "(a) Annual Report.--Subject to subsection (b), not later than 180 days after the end of each fiscal year, each Federal agency shall submit to the Speaker of the House of Representatives, the President pro tempore of the Senate, the Committee on Governmental Affairs of the Senate, the Committee on Government Reform of the House of Representatives, each committee of Congress with jurisdiction relating to the agency, the Equal Employment Opportunity Commission, and the Attorney General an annual report which shall include, with respect to the fiscal year-- (1) the number of cases arising under each of the respective provisions of law covered by paragraphs (1) and (2) of section 201(a) in which discrimination on the part of such agency was alleged; (2) the status or disposition of cases described in paragraph (1); (3) the amount of money required to be reimbursed by such agency under section 201 in connection with each of such cases, separately identifying the aggregate amount of such reimbursements attributable to the payment of attorneys' fees, if any; (4) the number of employees disciplined for discrimination,

Plaintiff clearly lacks standing to assert a violation of the APA based on these allegations. The APA is clear that in order to bring a suit under the Act that the plaintiff must have suffered a sufficient injury in fact.[3]  See 5 U.S.C. § 702. The

---

retaliation, harassment, or any other infraction of any provision of law referred to in paragraph (1); (5) the final year-end data posted under section 301(c)(1)(B) for such fiscal year (without regard to section 301(c)(2)); (6) a detailed description of-- (A) the policy implemented by that agency relating to appropriate disciplinary actions against a Federal employee who-- (i) discriminated against any individual in violation of any of the laws cited under section 201(a) (1) or (2); or (ii) committed another prohibited personnel practice that was revealed in the investigation of a complaint alleging a violation of any of the laws cited under section 201(a) (1) or (2); and (B) with respect to each of such laws, the number of employees who are disciplined in accordance with such policy and the specific nature of the disciplinary action taken; (7) an analysis of the information described under paragraphs (1) through (6) (in conjunction with data provided to the Equal Employment Opportunity Commission in compliance with part 1614 of title 29 of the Code of Federal Regulations) including-- (A) an examination of trends; (B) causal analysis; (C) practical knowledge gained through experience; and (D) any actions planned or taken to improve complaint or civil rights programs of the agency; and (8) any adjustment (to the extent the adjustment can be ascertained in the budget of the agency) to comply with the requirements under section 201. (b) First Report.--The 1st report submitted under subsection (a) shall include for each item under subsection (a) data for each of the 5 immediately preceding fiscal years (or, if data are not available for all 5 fiscal years, for each of those 5 fiscal years for which data are available." Pub. L. No. 107-174, 116 Stat. 569-570.

[3]Furthermore, the APA imposes a prudential standing requirement in addition to the requirement, imposed by Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact. Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1998). For plaintiff to have prudential standing under the judicial review provision of the APA, the plaintiff "must establish that the injury [he] assert[s] is 'within the meaning of a relevant statute,' i.e., satisfies the zone-of-interests test. . . . Specifically, 'the

-7-

Complaint does not meet this prerequisite showing. Accepting the allegations of the Complaint as true, the Complaint does not demonstrate how, in any way, Plaintiff is harmed by the USDA's purported failure to submit a written statement to, among others, Congress, concerning whether or not it will follow OPM's guidelines for repayment of judgments. The Complaint does not allege that the USDA is not following OPM's guidelines, and, moreover, the Plaintiff has not received (or is due) any type of judgment that Section 201 of the No FEAR Act would govern. Similarly, the Complaint fails to allege how the USDA's alleged failure to provide a report of compliance to the USDA's Office of Civil Rights has caused him harm.

    Plaintiff also lacks standing to bring a claim based upon OPM's purported unreasonable delay in issuing guidelines that provide for disciplinary action against federal employees who discriminate against other federal employees. Plaintiff alleges he has suffered harm by this failure because the USDA did not discipline his supervisors for discriminating against him. There are several problems with this claim. As an initial matter, nowhere in Section 203 of the No FEAR Act does it state that OPM or the USDA must establish guidelines that provide for

---

plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him), falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." <u>Id.</u> (citations omitted).

disciplinary action against federal employees who discriminate against other federal employees.  Also, OPM is not a party to this action.  Further, based on Section 204 of the No FEAR Act, quoted in full above, the USDA's obligations under that section are not triggered until OPM performs its obligations, which, according to the Complaint, OPM has not done.  Therefore, the USDA logically and legally could not be in violation of the APA.  Finally, even if Section 203 required the guidelines Plaintiff describes, he has suffered no harm because <u>no</u> adjudicator has ever found that his supervisors discriminated or retaliated against him.  Clearly, Plaintiff lacks standing to sue the Government under the APA because he has not suffered any harm as a result of the USDA's alleged inactions.  Accordingly, this Court lacks jurisdiction over Count Two of the Complaint.

**B.   THE COURT SHOULD DISMISS PLAINTIFF'S DUE PROCESS CLAIM FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

  **1.   <u>The Doctrine Of Sovereign Immunity Bars Plaintiff's Constitutional Claims Against The United States For Money Damages</u>**

In Count Three of the Complaint, Plaintiff seeks monetary damages on the grounds that the USDA deprived him of his due process rights under the Fifth Amendment.  It is axiomatic, however, that the United States is immune from suit unless it has expressly consented to be sued. <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (citing <u>United States v. Sherwood</u>, 312 U.S.

584, 585 (1941)). The United States has not consented to be sued for monetary damages under the Constitution, and, therefore, the doctrine of sovereign immunity bars such actions. See FDIC v. Meyer, 510 U.S. 471, 485-486 (1994); Tapia-Tapia v. Potter, 322 F.3d 742, 745-746 (1st Cir. 2003); Am. Assoc. of Commodity Traders v. Dep't of Treasury, 598 F.2d 1233, 1235 (1st Cir. 1979); Gonsalves v. United States, 782 F. Supp. 164, 167-168 (D. Me. 1992). Accordingly, to the extent Plaintiff is seeking monetary damages under the Constitution, the Court should dismiss the due process claim contained in Count Three for lack of jurisdiction.

### 2. The Complaint Fails Allege Facts Sufficient To Show A Violation Of Due Process Rights

Plaintiff's demand for injunctive relief under the Fifth Amendment also fails because the Complaint does not allege facts sufficient to demonstrate a deprivation of a property interest, and a lack of due process of law -- a requisite for any successful due process claim. See Brown v. Hot, Sexy & Safer Productions, Inc., 68 F.3d 525, 534 (1st Cir. 1995); Garrison v. Johnson, 286 F. Supp. 2d 41, 42 (D. Me. 2003); Brayton v. Monson Pub. Sch., 950 F. Supp. 33, 37 (D. Mass. 1997). As stated above, Plaintiff seeks injunctive relief on the grounds that the USDA violated his due process rights by reducing his job duties and title, and denying him recognition at an awards ceremony. The Complaint, however, does not allege that the reduction of duties

resulted in any diminution of Plaintiff's salary or rank.

Courts generally have held that reduction of an employee's job duties or title does not constitute a deprivation of a property interest.  See, e.g., Stiesberg v. State of California, 80 F.3d 353, 357 (9th Cir. 1996) (employee does not possess a property right to be free from assignment of duties); Ferraro v. City of Long Beach, 23 F.3d 803, 806-807 (3d Cir. 1994) (reduction of duties, without decrease in salary, did not implicate protected property interest); Maples v. Martin, 858 F.2d 1546, 1550 (11th Cir. 1988) (no property interest at issue when employee is transferred and suffers no reduction in pay or rank); Garvie v. Jackson, 845 F.2d 647, 651 (6th Cir. 1988) (no property interest at issue when employee's duties are reduced); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (reappointment of non-tenured teacher with concurrent reduction of teaching duties does not deprive plaintiff of property interest); Cordova v. Vaughn Mun. Sch. Dist., 3 F.Supp.2d 1216, 1222-1223 (D.N.M. 1998) ("personnel actions that do not result in a reduction of pay or loss of other tangible benefits do not implicate protected property interests").

The Government has found no case stating that denial of a merit award or recognition at an awards ceremony implicates protected property interests.  However, because the Complaint does not allege that the denial of an award somehow resulted in

the diminution of Plaintiff's salary or rank, it similarly cannot constitute a deprivation of a property interest.  Accordingly, Plaintiff has failed to establish that the United States has deprived him of any property right.

Assuming *arguendo* that the Complaint sufficiently demonstrates a deprivation of a property interest, Plaintiff fails to establish that he was denied due process.  Indeed, Plaintiff fails to point to any provision of any USDA handbook or any provision of law that prohibits the USDA from reducing his job duties or title, or deciding not to give the Plaintiff an award.  He also fails to cite any provision of any USDA handbook or any provision of law that required the USDA to conduct a hearing before reducing his job duties or title, or deciding not to give the Plaintiff an award.  Instead, he relies on the "dispute procedure" outlined in a June 17, 2002, Settlement Agreement ("Settlement Agreement") between he and the USDA.  Complaint ¶156.  Specifically, Plaintiff argues that the Settlement Agreement guarantees him "a hearing before a 3rd party neutral should a dispute arise between Plaintiff and [his supervisor, Douglas] MacAllister, such as the dispute that led to reduction of Plaintiff's duties, demotion, and refusal of training opportunities."  Complaint ¶161.

His reliance on the Settlement Agreement for due process rights is misplaced.  Indeed, accepting the allegations of the

Complaint as true, because he disputed the reduction of his duties and title, the Settlement Agreement only calls for a meeting between Plaintiff, his supervisor, and a third-party neutral to attempt to resolve <u>the dispute</u> between he and his supervisor.  The Complaint does not establish that the Settlement Agreement promised Plaintiff a due process proceeding <u>before</u> the USDA decides to make employment decisions with regard to Plaintiff.

Nor could the Complaint make such an assertion in good faith.  With regard to dispute resolution, the Settlement Agreement states only:

> The [Plaintiff] and his supervisor agree to communicate on a regular basis to minimize any misunderstandings concerning work assignments, performance, training, etc., with the aim of building trust and understanding.  Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties.  If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party.  If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official.  During the discussions at the various levels identified above, the [Plaintiff] has the right to utilize the EEO complaints process.

<u>See</u> Settlement Agreement ¶7, attached hereto as Exhibit A.[4]

---

[4] The Complaint incorporates the Settlement Agreement by reference.  <u>See, e.g.</u>, Complaint ¶¶152-153, 156, 160-162, 164, 167-168.  Therefore, reference of the agreement herein, and attachment of the agreement hereto, does not convert this motion into one under Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.</u>, 267 F.3d 30, 33-34 (1st Cir. 2001); <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  Furthermore, "[w]hen a complaint

Nowhere in this paragraph concerning dispute resolution, or elsewhere in the Settlement Agreement, does the USDA promise Plaintiff a due process proceeding before (or even after) it decides to make employment decisions with regard to Plaintiff. Accordingly, the Plaintiff's due process claim is without merit.

## CONCLUSION

Accordingly, for the reasons articulated above, Counts Two and Three of the Complaint should be dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Damian W. Wilmot
      DAMIAN W. WILMOT
      Assistant U.S. Attorney
      Moakley Federal Courthouse
      One Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3100

Dated: March 24, 2005

## CERTIFICATION UNDER L.R. 7.1

I certify that in accordance with Local Rule 7.1, on March 4, 10, 21, 22, and 23, 2005, I have conferred with Plaintiff's counsel and have attempted in good faith to resolve the issues addressed in this Motion.

 /s/ Damian W. Wilmot
DAMIAN W. WILMOT
Assistant U.S. Attorney

---

annexes and incorporates by reference a written instrument, any inconsistencies between the complaint and the instrument must be resolved in favor of the latter." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002).

**EXHIBIT A**

## SETTLEMENT AGREEMENT
### (INFORMAL RESOLUTION THROUGH MEDIATION)

This Agreement made by and between John Pedicini (hereafter referred to as Complainant) and the Food and Nutrition Service, U. S. Department of Agriculture (hereafter referred to as Agency) constitutes a full, complete, and final settlement of all the equal employment opportunity concerns raised in the Complainant's filing in U. S. District Court for the District of Massachusetts, case number 01-11564DPW, filed on 11/27/2001, and any other pending Equal Employment Opportunity (EEO) complaints.

The parties wish to set forth the terms of the Agreement in writing. This neither determines nor implies a finding of or admission that discrimination occurred nor that the allegations are true or factual.

This Agreement does not prevent the Agency from pursuing any issues of alleged misconduct raised in the complaint, nor from initiating any preventive, corrective or disciplinary action against Agency officials, if warranted.

This Agreement is authorized under 29 CFR 1614, regulations on processing EEO complaints in the Federal Government, and the EEOC's Management Directive (MD-110).

### The Agency Agrees to:

1. In terms of training and career advancement opportunities, the Agency agrees to treat the Complainant equally. The Complainant's immediate supervisor will work with him to implement his Individual Development Plan (IDP). This plan presently exists with specific identified training courses. He will receive at a minimum, one (1) relevant training course as identified in his IDP. Selection of one course does not prevent him from substituting or attending another more relevant training course that may not have been scheduled, posted, or brought to his awareness during the development or implementation of the IDP. Nomination and substitution is subject to supervisory approval; such approval shall not be unreasonably withheld. If he is denied training, his immediate supervisor will inform him of the reason(s) using objective criteria.

2. The Complainant will also receive Alternative Dispute Resolution (ADR) training as defined by the Food and Nutrition ADR program coordinator in order to eventually become a qualified Shared Neutral. Appropriate training will begin within six to nine months of the signing of this agreement, or as soon as possible thereafter. Certification is contingent on established objective criteria and objective evaluations by professionals in the field. The practices of the Boston Federal Executive Board (BFEB) will apply regarding his inclusion on the roster of Shared Neutrals under the BFEB program. Training as a Shared Neutral will be identified on his IDP.

3. Training opportunities that become available or known to Financial Management supervisors (1st and 2nd level) will be shared with ALL employees at the same time through e-mails so as to avoid any misperceptions.

**The Complainant Agrees to:**

4. As a Shared Neutral the Complainant agrees to practice the knowledge, skills, and abilities learned through the program in helping to diffuse conflict/disagreements informally within the Food and Nutrition Northeast Regional Office. To avoid any misperceptions of his neutrality as Shared Neutral, employees with concerns who seek his counsel will be directed to their supervisor or union representative. Cases in which the Complainant has been designated as an EEO representative, prior to the execution of the Agreement, are excepted. The Complainant agrees not to represent any new EEO cases, except his own.

5. The Complainant agrees to withdraw, without prejudice, his judicial claims now pending in U.S. District Court against the Food and Nutrition Service, U.S. Department of Agriculture.

6. The Complainant releases, waives and withdraws, without prejudice, any and all complaints, grievances, appeals or civil actions against the Agency, its employees and officers in their individual and official capacities for any employment situations prior to the signing of this Agreement. This agreement does not prevent him from exercising his rights in accordance with 29 CFR 1614, in any other matter.

**Both Parties Agree:**

7. The Complainant and his supervisor agree to communicate on a regular basis to minimize any misunderstandings concerning work assignments, performance, training, etc., with the aim of building trust and understanding. Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties. If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party. If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official. During the discussions at the various levels identified above, the Complainant has the right to utilize the EEO complaints process.

8. The Complainant and his 2nd level supervisor Douglas MacAllister will meet with a 3rd party neutral to have a discussion about their interpersonal working relationships and ways to bridge those differences and to build trust and understanding within six weeks of the signing of this Agreement.

9. The Deputy Regional Administrator, Northeast Region, Food and Nutrition Service (FNS-NERO) will assume responsibility for ensuring that the actions in this agreement take place within the time frames identified above.

10. The Food and Nutrition Service shall not take reprisal against the Complainant as a result of his having filed the complaint of discrimination which is the subject of this informal resolution agreement. However, any future complaint on an issue not addressed in this agreement which he may file against Food and Nutrition Service or the Department Agriculture will be considered and processed as a separate action and will in no way undermine or render this informal resolution agreement as null and void.

11. All parties agree to keep the terms of this informal resolution agreement confidential, and in doing so, agree not to discuss its terms with third parties or persons except those who need to know in order to implement the terms contained herein, without the expressed permission of all parties.

12. The fact that the complaint was voluntarily resolved in a manner acceptable to both sides may be communicated to others.

13. Both parties agree to cooperate in good faith to complete implementation of this Agreement and to abide by the terms of this Agreement.

14. Both parties agree to declare this complaint resolved through this Settlement Agreement. There are no other Agreements between the parties, either expressed or implied, oral or written.

15. After the Agreement is fully implemented, the Agency will, within thirty (30) days, provide the Complainant with a written notice explaining the specific actions taken to implement the Agreement. A copy of the notice will be provided to the Complaints Compliance Division, USDA Office of Civil Rights, Reporter Building, Room #607, 300 7th Street SW, Washington, DC 20050.

16. They are entering into this Agreement voluntarily, without coercion or duress, and they fully understand the terms of this Agreement.

_____     _6/17/03_____
Complainant                          Date

_____     _6/17/03_____
Agency Official                      Date

3