UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN G. PEDICINI,** )<br>      Plaintiff )<br>)<br>-vs- )<br>)<br>**UNITED STATES OF AMERICA, and** )<br>**ANN M. VENEMAN, SECRETARY,** )<br>**UNITED STATES DEPARTMENT** )<br>**OF AGRICULTURE,** )<br>      Defendants ) | Case No. 04-12395 JLT |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS**

**I. Introduction**

Defendants filed a partial Motion For Judgement On The Pleadings under Fed. R. Civ. P. 12(c) asking for dismissal of Count Two and Count Three of Plaintiff's Complaint. Plaintiff responds to Defendants' Motion with this Opposition.

Plaintiff's Complaint states a cognizable claim in Count Two under the Administrative Procedure Act ("APA") for the United States Department of Agriculture's ("USDA") and Office of Personnel Management's ("OPM") failure to comply with the Notification and Federal Employee Anti-Discrimination and Retaliation Act of 2002 ("No Fear Act"), for the USDA's failure to comply with a final decision and direct order from their own Compliance Committee ordering Roberto Salazar to implement the dispute resolution process in Plaintiff's Settlement Agreement with the USDA dated June 17, 2002 and failure to give a report

indicating that Plaintiff's Settlement Agreement has been complied with within 30 days of that May 19, 2004 order.

While Defendants seek to dismiss the entirety of Count Two, in their Motion papers Defendants address only Part A of that Count-relating to the No Fear Act-and not Part B of that Count-relating to the USDA's failure to comply with the Decision of the USDA Office of Civil Right's Compliance Division. Since Defendants do not address Part B of Count Two, their request that Part B be dismissed is unsupported and should be denied.

Regarding Part A of Count II, Plaintiff agrees with Defendants that full relief requires the participation of OPM. Therefore, Plaintiff is filing at the same time to be considered with this Opposition a motion for an Amended Complaint, which seeks to add OPM as a an additional party defendant.

Plaintiff's Complaint states a cognizable claim in Count Three under the Fifth Amendment and under contract law. Defendants address only the Fifth Amendment claim and not the breach of contract claim over which this court clearly has pendant jurisdiction. Plaintiff's Amended Complaint clarifies that these are two separate claims. Since the parties agree that only injunctive relief is available under the Fifth Amendment claim, the proposed Amended Complaint clarifies that Plaintiff seeks only injunctive relief under his Fifth Amendment claim.

Defendants minimize Plaintiff's claims and injuries.

Plaintiff's superiors have engaged in repeated and concerted retaliation against Plaintiff in an effort to prevent Plaintiff from engaging in EEO activity which reflects poorly on his superiors by revealing their illegal discriminatory practices at the USDA.  In their efforts to deter Plaintiff's EEO activity, Defendants reduced his duties and his title, blocked his career advancement and violated their 2002 contract with Plaintiff which was intended to prevent such retaliation.  Defendants' allegations that Plaintiff suffered no harm are preposterous.

**II. Standard of Review for Review for 12(c) Motion**

The parties agree that the standard for review for this Motion is the same as for a Rule 12(b)(6) Motion.  Plaintiff's complaint should not be dismissed unless, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Roeder v. Alpha Indus., Inc., 814 F. 2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The parties agree that the court should consider the pleadings, accept the allegations of the Complaint as true, and view the alleged facts in a light most favorable to Plaintiff in rendering its decision.

**III. Count Two: Plaintiff Has Standing Under the APA**

While Defendants argue a lack of standing only under Part A, Defendants seek dismissal of the entirety of Count Two. Therefore, Plaintiff outlines the basis for his standing under

both Part A and Part B, but asks that the court consider the 12(c) motion only for Part A, since Defendants have neglected to articulate any reason for dismissal of Part B.

Plaintiff's standing stems from the "zone of interest" test. "Under *Clark*, a plaintiff satisfies the prudential standing requirement if she was herself the subject of the contested administrative act, or if she shows that her rights are not so marginally related to the purpose of the statute that a court will assume Congress did not intend the suit...." Amgen v. Scully, 234 F. Supp 2d 9, 25 (D.D.C. 2002) (citing to Clark v. Securities Indus. Ass'n, 479 U.S. 388, 399 (1987)).

Plaintiff must show that his interests were those that Congress intended to protect under the statute, regulation, or order in question. "[I]n applying the "zone of interests" test, we do not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff. Instead we first discern the interests "arguably... to be protected" by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action are among them." Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co., 522 U.S. 479, 492 (1988).  Plaintiff need not have been the specific beneficiary of the Act, but Plaintiff's interests must be affected by the agency inaction.

Plaintiff's injury in fact need not be as direct as the

Defendants suggest. For example, even the observation of wildlife animals for purely esthetic reasons gives standing to challenge the treatment of those animals, since a Plaintiff is injured by viewing the animals' inhumane treatment. <u>Animal Legal Def. Fund, Inc. v. Glickman</u>, 154 F.3d 426 (D.C. Cir. 1998). Under <u>Animal Legal Def. Fund</u>, viewing the inhuman treatment of animals gives standing under a statute meant to prevent inhumane treatment of animals which asked for the promulgation of sufficient standards to protect the animals' well-being; the retaliatory treatment of Plaintiff should give Plaintiff standing under a statute intending to curtail retaliation and asking for the promulgation of guidelines to protect against retaliation.

The issue of standing under the zone of interest test focuses, "'not on those who Congress intended to benefit, but on those who in practice can be expected to police the interests that the statute protects.'" <u>Id.</u> At 444 (quoting <u>Mova Pharmaceutical Corp. v. Shalala</u>, 140 F. 3d 1060, 1075 (D.C. Cir. 1998)). Plaintiff is an employee of a Federal Agency, who has been illegally retaliated against, and, as such, can be expected to police the interests the No Fear Act protects.

**<u>Part A</u>**

Part A of Plaintiff's Count Two is an APA claim for the OPM's and the USDA's failure to issue guidelines under the No Fear Act providing for monitoring and discipline of those who

5

have retaliated against employees such as Plaintiff. Plaintiff's amended complaint includes OPM as a named Defendant. Because of OPM's failure to issue these guidelines, Plaintiff has suffered and continues to suffer exactly the type of continued retaliation which the No Fear Act intended to prevent.

Plaintiff's standing stems from the "zone of interest" test. The No Fear Act was enacted precisely in part to protect individuals in Plaintiff's situation. Plaintiff's superiors have retaliated not only against Plaintiff, but against many other employees who have been involved in discrimination complaints against these superiors. Their illegal discriminatory and retaliatory acts have been the subject of several investigations and civil suits on behalf of Plaintiff and on behalf of other employees in Plaintiff's office at the USDA.

Section 102 of the No Fear Act relates the "Sense of Congress." That section provides: "(1) Federal agencies should not retaliate for court judgments or settlements relating to discrimination and whistleblower laws by targeting the claimant or other employees with reductions in compensation, benefits, or workforce to pay for such judgments or settlements; (2) the mission of the Federal agency and the employment security of employees who are blameless in a whistleblower incident should not be compromised..." Plaintiff is exactly the type of individual Congress intended to protect through The No Fear Act.

6

He has a settlement agreement with the USDA relating USDA retaliation against Plaintiff for his testimony as a witness against his superiors' violation of discrimination laws and has participated in EEO activities relating to claims of discrimination against the USDA.  In reaction to Plaintiff's protected Settlement Agreement and protected EEO activities, Plaintiff's supervisors have retaliated against him, unfettered by the protections which the No Fear Act was meant to afford individuals in Plaintiff's situation.

    OPM and the USDA have taken the wind out of the No Fear Act by refusing to enact regulations which would deal with individuals such as Plaintiff's supervisors against whom multiple complaints of retaliation and discrimination have been made by Plaintiff and others.  Due to Plaintiff's supervisors' continued illegal discriminatory activity, the USDA and U.S. have been forced to defend and settle multiple complaints brought by Plaintiff and other employees since the No Fear Act was enacted. Plaintiff has complained to the EEOC, the USDA Office of Civil Rights, and his USDA supervisors about the retaliation he has experienced after his 2002 Settlement with the USDA and all three have allowed the retaliation to continue by postponing any finding on his claims and refusing to discipline Plaintiff's supervisors, despite having conducted investigations. Plaintiff's USDA supervisors have refrained from any action to

prevent the continued retaliation against Plaintiff.

OPM and the USDA have been given the task under Section 204 of the No Fear Act to issue, "rules to carry out this title....[and] guidelines incorporating best practices that Federal agencies may follow to take actions against such employees." The No Fear Act has no power if, under its terms, someone like Plaintiff can be subjected to reduction of duties, reduction in job title, reduction of responsibilities, and attempts to block his career advancement based on his participation in protected activities relating to discrimination law. Plaintiff has suffered these very injuries. Plaintiff's supervisors have experienced no discipline or guidance away from their retaliatory actions because there are no No Fear Act regulations in place to curtail their retaliation. There are no No Fear Act Regulations in place because OPM has impermissibly delayed issuing its rules and guidelines for disciplining individuals who have allegedly acted as Plaintiff's supervisors have. Such rules and guidelines, as well as issuance of regulations by the USDA to deal with such individuals, are contemplated by the No Fear Act. It has been nearly three years since the No Fear Act came into being and still neither OPM nor the USDA have chosen to issue regulations to curtail retaliation against employees who participate in protected activities. Without these regulations, the No Fear Act is a sheet of paper,

hanging in the wind. Such a delay is impermissible, unreasonable and contrary to the purpose of the Act.

Under the No Fear Act, the guidelines to be enacted and regulations to be adopted by the USDA would have had to serve the primary purpose of creating, "appropriate disciplinary actions against a Federal employee who- (i) discriminated against any individual in violation of any of the laws cited under section 201(a)(1) or (2); or (ii) committed another prohibited personnel practice that was revealed in the investigation of a complaint alleging a violation of any of the laws cited under section 201(a) (1) or (2)...." Plaintiff alleged facts showing that he was discriminated against and retaliated against in violation of Federal law cited under Section 201(a)(1) or (2) and such discrimination in part took the form of prohibited personnel actions and practices under the Civil Service Reform Act 5 U.S.C. Section 2302 (a)(2)(A)(ix), (x), and (xi) and 5 U.S.C. Section 2302 (b). Plaintiff has also alleged that the USDA performed an investigation which clearly reveals that he has been retaliated against, but delayed issuing any finding, and the USDA Office of Civil Rights Compliance Division has found that the USDA violated the dispute resolution clause of Plaintiff's Settlement Agreement which Plaintiff attempted to invoke to curtail the retaliation against him. Plaintiff has alleged that the USDA's refusal to enact his Settlement Agreement dispute resolution process is

9

rooted in retaliation against him for his protected activities.

OPM's and the USDA's unreasonable delay in promulgating rules, guidelines and regulations to discipline those who have acted against Plaintiff is the direct cause of the continuance of the retaliation against Plaintiff to this very day.  Under the No Fear Act, OPM's refusal to issue guidelines indicating how to discipline Plaintiff's supervisors makes it complicit in the continuing retaliation against Plaintiff.

Because Plaintiff is in the zone of interest Congress intended to protect with the No Fear Act and Plaintiff has suffered injury due to OPM's and the USDA's failure to act under the Act, Plaintiff has standing to challenge their inaction.

**Part B**

Defendants present no argument against Plaintiff's standing under the APA to seek adherence to the USDA's Office of Civil Rights' Compliance Unit's May 19, 2004 determination and order.

As alleged, USDA's Office of Civil Rights' Compliance Unit found that the USDA had not complied with the dispute resolution process outlined in Plaintiff's 2002 Settlement Agreement with the USDA attached to Defendants' 12(c) Motion.  The Compliance Unit ordered both compliance with the dispute resolution process and, within 30 days from the order, a report outlining the USDA's compliance.  As alleged, the USDA has to this date neither implemented the dispute resolution process nor issued a report

detailing compliance with the dispute resolution process.

The USDA's inaction after a final agency decision is an unreasonable delay under the APA. Because of this delay, Plaintiff has continued to suffer retaliation without the benefit of the dispute resolution process outlined in his settlement agreement. Plaintiff has suffered injury in fact and is the direct subject of the decision and order.

The 2002 Settlement Agreement was a contract intended to resolve Plaintiff's earlier complaints of Retaliation against him by the USDA for protected activities-testifying as an EEO witness for another employee and acting as an EEO representative for employees alleging discrimination. The dispute resolution process in the Settlement Agreement was intended to address Plaintiff's concerns of retaliation and to ensure that further action against Plaintiff did not occur without resort to the dispute resolution process in the Settlement Agreement. Because the USDA has failed to comply with the dispute resolution process, despite an order to do so and Plaintiff's requests, Plaintiff's supervisors have continued to retaliate in an unfettered fashion against Plaintiff for his participation in EEO activities allowed by the Settlement Agreement. Under the facts presented in the Complaint, Plaintiff is clearly within the zone of interest protected by the APA with respect to the USDA's non-compliance with the dispute resolution process in the settlement

agreement. Plaintiff has standing under the APA to challenge the USDA's inaction as action unreasonably delayed or withheld.

**IV. <u>Count III: Defendants Have Violated Plaintiff's Due Process Rights and Have Breached Their Contract With Plaintiff</u>**

In Defendants' argument against Plaintiff's Count III, Defendants again fail to address both parts of the Count. Defendants address only Plaintiff's Fifth Amendment claim, under which he seeks only injunctive relief, and not Plaintiff's breach of contract claim. Plaintiff has submitted an amended complaint separating the 5th Amendment Claim from the breach of Contract claim and clarifying this court's pendant jurisdiction over the breach of Contract claim. Since Defendants have failed to address the breach of Contract claim, Plaintiff will touch on the breach of Contract Claim but will focus mainly on Defendants' argument against his Fifth Amendment Claim.

Defendants' main contention against Plaintiff's claim for denial of due process is that Plaintiff lacks a property interest. However, in support of their argument, Defendants cite cases in which the Plaintiffs did not have a contract such as the 2002 Settlement Agreement and covenants surrounding that agreement. For example, Defendant cites <u>Brayton v. Monson Public Schools</u>, 950 F. Supp. 33 (D. Mass 1997), which clearly states that the soccer coach did not have a constitutionally protected right in his position only because, "his right to continued employment in the soccer program is not alleged to have been the

12

subject of any statute or contract." Id at 37.  Here, Plaintiff alleges that he has a property interest guaranteed by contract.

The Supreme Court has held in Perry v. Sindermann, 408 U.S. 593, 601-602 (1972):

> We have made clear in *Roth, supra*, at 571-572, that "property" interests subject to procedural due process protection are not limited to a few rigid, technical forms. Rather, "property denotes a broad range of interests that are secured by "existing rules or understandings." *Id.,* at 577. A person's interest in a benefit is a "property" interest for explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Ibid.*
> A written contract with an explicit...provision clearly is evidence of a formal understanding that supports a [Plaintiff's] claim of entitlement to continued employment unless sufficient "cause" is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a [Plaintiff] has a "property" interest....For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be "implied." 3A. Corbin on Contracts Sections 561-572A (1960). Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in light of the surrounding circumstances." *Id.* at Section 562.

Plaintiff possesses a written contract with Defendants. In September, 2001, Plaintiff brought a pro se civil action in this court alleging retaliation against him by Defendants for his participation as an EEO witness against Defendants and as an EEO representative against Defendants.  Plaintiff continued his 2001

13

civil action pro se and Plaintiff and Defendants tried to reconcile the 2001 complaint through Mediation. The product of that Mediation was a contract-the June 17, 2002 Settlement Agreement. That contract gives Plaintiff an explicit property right and covenants that, given the circumstances surrounding the creation of the contract, Plaintiff will be afforded a dispute resolution process whenever a dispute arises that might lead to continued retaliation against Plaintiff in terms of his training opportunities, career advancement, or other equal treatment, such as monetary awards given to all employees.

The contract gives Plaintiff an explicit property interest in equal training, equal career advancement opportunities, and equal treatment. It states: "In terms of training and career advancement opportunities, the Agency agrees to treat the Complainant equally." This the USDA has not done. Not only have Plaintiff's superiors blocked his career advancement, they have unreasonably denied training opportunities, and have treated the Plaintiff unequally-denying him monetary awards given to everyone in the office except Plaintiff despite Plaintiff's superior performance, stripping Plaintiff of his title as back up funds officer, and significantly reducing Plaintiff's responsibilities.

The contract guarantees that, "approval [for training courses] shall not be unreasonably withheld." Plaintiff has alleged that such approval has been unreasonably withheld. Plaintiff has a property interest in this training, covenanted by

the contract, and the unreasonable withholding of approval for such training is a violation of Plaintiff's due process rights.

In Perry, supra, the Supreme Court found that a teacher had successfully carved out a property interest in continued employment through the existence of understandings promulgated by the officials of the school. In this case, Plaintiff alleges actions that are prohibited by both the contract the USDA signed with Plaintiff in 2002 and the understandings promulgated by USDA officials in the drafting of the 2002 Settlement Agreement.

In seeking resolution of Plaintiff's 2001 Complaint of retaliation against him, USDA officials promulgated the understanding that Plaintiff would be entitled to equal treatment and adverse actions would not be taken against him absent the dispute resolution process outlined in Number 7 of the 2002 Settlement Agreement. USDA officials sought to foster in Plaintiff a reliance in his job security as free from retaliatory acts, such as those alleged, by affording him a dispute resolution process as a way of preventing, contesting, and remedying any such acts by Plaintiff's supervisors.

As the Supreme Court indicated in Perry, supra, the Federal Courts are to engage in an evaluation of understandings fostered and implied in the circumstances surrounding the formation of a contract. Massachusetts courts have also engaged in interpretation of contractual guarantees based on surrounding circumstances. See Chelsea Indus., Inc. v. Florence, 358 Mass. 50

15

(Supreme Jud. Ct. Of Mass. 1970) (interpreting one contract based upon the circumstances surrounding its drafting); <u>Zero Stage Capital Co. v. Deutsche Bank Alex. Brown</u>, 15 Mass. L. Rep. 153 (Middlesex Superior Ct. 2002) (stating that the court may determine whether a duty exists in contract when not clearly indicated in contract language by evaluating, "Parol evidence as to the 'purpose of the entire agreement and the surrounding facts and circumstances'...."). To the extent that the 2002 Settlement Agreement is unclear or its application is unclear "where the external circumstances do...create any doubt or difficulty as to the proper application to the claimants under the instrument ...[a]ll the facts and circumstances may be taken into consideration, if the language be doubtful, to enable the court to arrive at the real intention of the parties, and to make a correct application of the words of the contract to the subject-matter and the objects professed to be described, for the law concedes to the court the same light and information that the parties enjoyed, so far as the same can be collected from the language employed, the subject-matter, and the surrounding facts and circumstances." <u>Moran v. Prather</u>, 90 U.S. 492, 501 (1875). Surrounding circumstances which induced a party to enter into a contract may be considered. <u>Id.</u> at 502.

   The circumstances surrounding the 2002 Settlement Agreement quite clearly indicate an intent by both parties to ensure Plaintiff an interest in his position as free from retaliatory

16

acts and unequal treatment.  It would be against public policy to construe the Settlement Agreement without looking at the problem which it intended to remedy and prevent-retaliation.

The dispute resolution process of the 2002 Settlement Agreement clearly provides, "If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party.  If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as a final reviewing official."  The USDA denied Plaintiff this opportunity to be heard.  In construing the details of this process in light of the purpose and circumstances of the Settlement Agreement, it should be read to give Plaintiff a property interest in his position as free from unequal treatment and to give Plaintiff an opportunity to be heard should he feel he is treated unequally.  Not only does Plaintiff have a property interest in the dispute resolution process itself, but also in, "equal training, equal career advancement opportunities, and equal treatment."

In light of the circumstances in which the 2002 agreement was created-as a way of redressing retaliation against Plaintiff--in light of the understanding that the USDA fostered with Plaintiff that Plaintiff would be entitled to a dispute resolution process prior to the actions alleged by Plaintiff in the current complaint coming to fruition, in light of the understanding that the USDA fostered with Plaintiff that if

Plaintiff felt himself retaliated against the dispute resolution process would be enacted to prevent the continuance of retaliation, Defendants' failure to abide by the dispute resolution process and failure to abide by the equality guarantees of the contract itself have deprived Plaintiff of his property interest in his position free from continued retaliation, reduction of duties, withholding of training opportunities, reduction of title, and withholding equal monetary awards without a hearing regarding these actions.

If, as the Defendants' contend, upon interpretation of the language of the 2002 Settlement Agreement in light of the surrounding circumstances the dispute resolution clause of Plaintiff's Settlement Agreement does not provide a hearing prior to his supervisors' retaliatory acts, it most certainly does provide a hearing for appeal and review of his supervisors' acts. The Supreme Court has held that a post-deprivation hearing can be required for satisfaction of due process rights, especially when it is impractical to provide pre-deprivation hearings. See Parratt v. Taylor, 451 U.S. 527, 537 (1981) (discussing situations in which post-deprivation hearings are appropriate). Since Defendants have denied Plaintiff the dispute resolution process' opportunity to be heard both prior to his supervisors' retaliatory acts and have denied Plaintiff the dispute resolution process opportunity to be heard as a review and appeal of his supervisors' retaliatory acts, Plaintiff has been deprived of due

18

process whether the Settlement Agreement affords him an opportunity to be heard prior to the acts alleged in Plaintiff's Complaint or an opportunity to be heard as an appeal and review of the acts alleged by Plaintiff's Complaint.

Plaintiff and the USDA entered into the Settlement Agreement in a good faith attempt to address Plaintiff's 2001 claims of retaliation.  As such, the contract cannot be construed to provide Plaintiff no property interest in his position free from retaliatory acts.  The contract explicitly provides Plaintiff with a property interest in his position, citing equal treatment, freedom from retaliation, and a mechanism to prevent and review future retaliatory acts.  The USDA's covenants with Plaintiff in resolution of Plaintiff's 2001 Complaint alleging retaliation ensured him that he had a property interest in his employment and equal treatment in that employment and, should Plaintiff feel himself retaliated against, the USDA ensured him a dispute resolution mechanism to review the retaliatory acts.  Plaintiff's allegations, read in his favor, quite clearly carve out a property interest arising under this agreement.

In addition to claiming deprivation of his Fifth Amendment right to due process, Plaintiff also claimed breach of contract in Count Three of the Complaint for Defendants' breach of the 2002 Settlement Agreement.  As outlined in Plaintiff's Complaint, Defendants have refused to enact the dispute resolution clause under that contract at any time and have refused to comply with

19

its terms to treat Plaintiff equally.  Therefore, Defendants have breached the contract.  In his amended Complaint, Plaintiff sufficiently alleges the pendant jurisdiction of this court over his contract claim because it is intertwined with his claims of retaliation under Title VII, his APA claims, and his Fifth Amendment claims.  To ask Plaintiff to adjudicate the contract in state court would be a waste of judicial time and money.

## Conclusion

Accordingly, for the reasons articulated above Counts Two and Three of the Complaint should not be dismissed.

## Request For Oral Argument

Plaintiff requests oral argument because Plaintiff believes that the issues involved are complex enough to require it.

>     Respectfully Submitted,
>     /s/Robert S. Catapano-Friedman
>     Robert S. Catapano-Friedman
>     Counsel for John G. Pedicini
>     The Catapano-Friedman Law Firm
>     50 Franklin Street, 4th Floor
>     Boston, MA 02110
>     (617) 542-7711
>     BBO# 078980

Dated: April 5, 2005

## Certification under L.R. 7.1

I certify that in accordance with Local Rule 7.1, on March 4, 10, 21, 22, and 23, 2005, I have conferred with Defendants' counsel and have attempted in good faith to resolve the issues addressed in this Motion and Opposition.

>     /s/ Robert S. Catapano-Friedman