UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
————————————————————

| | |
|---|---|
| JOHN G. PEDICINI, | |
| | |
| **Plaintiff** | |
| | CIVIL ACTION NO. 04-12395-JLT |
| -vs- | |
| | |
| UNITED STATES OF AMERICA | |
| UNITED STATES | |
| DEPARTMENT OF AGRICULTURE, | |
| ANN M. VENEMAN, SECRETARY, | |
| UNITED STATES OFFICE OF | |
| PERSONNEL MANAGEMENT, | **AMENDED** |
| DAN G. BLAIR, ACTING | |
| DIRECTOR, | **COMPLAINT** |
| | **AND** |
| **Defendants** | **JURY DEMAND** |

————————————————————

Plaintiff, **JOHN G. PEDICINI** (hereinafter referred to as "Pedicini" or "Plaintiff"), by his attorney, Robert S. Catapano-Friedman, Esq. of The Catapano-Friedman Law Firm brings this complaint against Defendants, the **UNITED STATES OF AMERICA** (hereinafter referred to as the "USA"), **UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, DAN G. BLAIR, ACTING DIRECTOR** (hereinafter "OPM") and **ANN M. VENEMAN, Secretary, UNITED STATES DEPARTMENT OF AGRICULTURE** (hereinafter "USDA") on the grounds of retaliation and creation of a hostile work environment in violation of federal Title VII law, 42 U.S.C. Sections 2000e et seq., violations of various rights in connection with administrative agency procedures afforded Plaintiff under various federal statutes, breach of contract and denial of Plaintiff's federal right of Due Process under the 5th Amendment to the United States Constitution.

## **PARTIES**

1.  Plaintiff resides at 10 Milano Drive, Saugus, Massachusetts, 01906.

2. Plaintiff is employed at Grade 11 Step 6 as a Financial Management Specialist in the Financial Management Unit of the United States Department of Agriculture agency of Defendant and its subagency, the Food and Nutrition Service, Northeast Regional Office in the Internal Finance/Food Stamp Program section ("IF/FSP"). Plaintiff began work on August 1, 1997 and has had three different first line supervisors over the years-Arthur LeBlanc, Section Chief IF/FSP (from 8/1/97 to 9/1/2000); Joseph Stanco, Section Chief IF/FSP (from 9/10/2001 to 9/1/2003); and Michael Malone, Section Chief IT (from 3/1/2004 through present); in the periods in which these three were not employed as Plaintiff's first line supervisor, Douglas MacAllister acted as Plaintiff's first and second line supervisor.

3.  One Defendant is the United States of America; on information and belief, the second Defendant, the USDA, has a subagency that employs Plaintiff, the Food and Nutrition Service (hereinafter "FNS"), which is headquartered at 3101 Park Center Drive, Alexandria, Virginia 22302 (hereinafter "FNS-HQ").  Its Northeast Regional Office (hereinafter "FNS-

2

NERO"), where Plaintiff is currently employed, is located at 10 Causeway St, Room 501, Boston, Massachusetts, 02222.  On information and belief the third Defendant, OPM, is an agency of the United States of America, Dan G. Blair Acting Director, and it is headquartered at 1900 E Street NW, Washington, DC 20415-1000.

4.  On information and belief at all relevant times covered by this Complaint the Defendants have maintained the above offices.

<u>**JURISDICTIONAL PREREQUISITES**</u>

5.  This action is brought against Defendants on the grounds of a pattern of unlawful retaliation and creation of a hostile work environment against the Plaintiff in connection with Plaintiff's exercise of protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq. (hereinafter "Title VII"), which under 42 U.S.C. Section 2000e-16(c) and (d) allows for the bringing of this action after the expiration of one hundred eighty days after agency charges have been filed, on the grounds of denial of Plaintiff's right to the statutorily prescribed administrative process and the allowance for judicial review set forth in the federal Administrative Procedure Act (hereinafter the "APA"), 5 USC Sections 701-706 for agency failure to follow Public Law 107-174 Sec. 204

3

(hereinafter the "No Fear Act"), on the grounds of agency
failure under the APA to follow a ruling of the United
States Department of Agriculture Office of Civil Rights as
agency action in abuse of discretion, not in accordance with
the law, without observance of procedure required by law,
and agency action unlawfully withheld or unreasonably
delayed, on the grounds of denial of due process guaranteed
by the Fifth Amendment to the United States Constitution,
and on the grounds of breach of contract, over which the
Court has pendant jurisdiction or supplemental jurisdiction
under 28 U.S.C. 1367 since the contract claim arises from
the same case or controversy and nucleus of operative facts.

6. This Court has jurisdiction and venue over this
action under 29 CFR 1614.407(b), 42 USC Section 2000e-16(c),
28 USC 1331, 28 USC 1334, 28 U.S.C. 1367, and 5 USC 702-706.
The 180 day period has expired without notice of final
action and the wrongs alleged in this complaint occurred,
for the most part, within the District of Massachusetts.

7. On or about March 6, 2003 and within 180 days of
the occurrence of the acts on which this Complaint is based,
Plaintiff filed charges of retaliation and reduction in
duties with the Equal Employment Opportunity Commission (the
"EEOC") and on or around March 25, 2003 filed a complaint
with the USDA Office of Civil Rights (accepted for
investigation by letter dated July 11, 2003), alleging

4

hostile work environment and unlawful retaliation via reduction of duties and improper reprimand by USDA for Plaintiff having previously testified as a witness to discrimination charges under Title VII, Plaintiff's prior participation as an EEO representative in a Title VII case involving the USDA, a lawsuit alleging discrimination and retaliation brought by Plaintiff against USDA and EEOC complaints and testimonies by Plaintiff against the USDA. No notice of final action has been issued by the EEOC or the USDA Office of Civil Rights.

8.  The requisite 180 day period since the filing of agency charges has now expired.

9.  On or around June 17, 2004 Plaintiff amended his filing to include an incident of reduction of duties.

## FIRST COUNT

### RETALIATION CLAIM FOR EXERCISING FEDERALLY PROTECTED RIGHTS

10.  42 U.S.C. Section 2000e-16 and 29 CFR Section 1614.103(a) provide federal agency employees, such as Plaintiff, Title VII rights, including rights to be free from retaliation for providing testimony or participating in a Title VII federal employment discrimination proceeding and for asserting one's own rights to Title VII protections, and it provides to Plaintiff all Title VII remedies other than punitive damages for violation of these protections.

11.  5 U.S.C. Section 2302(b) also protects federal agency employees, such as Plaintiff, from retaliation for participating in the aforesaid activities.

12.  On information and belief Douglas MacAllister (FNS Financial Management Director, hereinafter "MacAllister"), Roberto Salazar (FNS Administrator, hereinafter "Salazar"), Robert Canavan (FNS Deputy Regional Administrator, hereinafter "Canavan"), Frances Zorn (FNS Regional Director, hereinafter "Zorn"), and John Ghiorzi (FNS Deputy Regional Administrator, hereinafter "Ghiorzi") are employees of and agents of the USDA.

13. MacAllister, Zorn, Salazar, Canavan and Ghiorzi are individuals and each incited, compelled or aided in the alleged unlawful discriminatory acts by USDA alleged herein.

14. On information and belief, MacAllister is Plaintiff's second line supervisor and Ghiorzi was Plaintiff's third line supervisor until his retirement on January 2, 2004.

15.  On June 13, 2004, Canavan replaced Ghiorzi as Deputy Regional Administrator-Plaintiff's third line supervisor--and remains in that position through present.

16. Plaintiff is a male individual.

17. Section 2000e-3(a) of Title VII provides that "[I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has

6

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. Sections 2000e through 2000e-17]."

18.  Plaintiff has been employed by Defendant at his current position from August 1, 1997 through present.

19.  On December 29, 1999, a female employee at the Financial Management Unit at FNS-NERO, Antoinette Bellezza, filed a formal complaint of age and gender discrimination against the USDA, and listed Plaintiff as a witness.

20.  In May 2000, Charles Purter, an EEO investigator notified FNS-NERO of his intention to investigate Ms. Bellezza's complaint and provided FNS-NERO with a list of witnesses to be interviewed; only two persons on this list were non-management employees for the Financial Management Unit and Plaintiff was one of those two employees.

21. Plaintiff's extensive testimony to the EEO investigator bolstered Ms. Bellezza's case.

22. As a result of his testimony, Plaintiff was removed as the Alternative Dispute Resolution Neutral (Mediator) for FNS-NERO without explanation.

23. Subsequent to Plaintiff's testimony, MacAllister also retaliated against Plaintiff by denying him a higher position for which he was the best qualified, and denying Plaintiff a training session that would have advanced his career.

7

24. As a result of the aforementioned acts, and after duly pursuing his administrative remedies, Plaintiff filed a Civil Complaint on September 11, 2001 in the United States District Court for the District of Massachusetts alleging retaliation through reduction of duties and assignments, denial of promotional opportunity, and obstruction from competitive training.

25. Plaintiff's September 11, 2001 complaint resolved in a Settlement Agreement between the FNS and Plaintiff, dated June 17, 2002 (hereinafter also referred to as the "Settlement Agreement").

26. The court did not retain jurisdiction over the Settlement Agreement.

27. The June 17, 2002 Settlement Agreement outlined the USDA's and Plaintiff's responsibilities thereunder.

28. The USDA agreed to treat Plaintiff equally, to give Plaintiff Alternative Dispute Resolution training to become a shared Neutral (Mediator), to share available training opportunities with all employees at the same time, and to have the 2nd level manager, Ghiorzi, act as a neutral 3rd party if Plaintiff and his supervisor, MacAllister, could not resolve differences.

29. Under the Settlement Agreement, Plaintiff agreed to not represent any new EEO cases except his own (although he could continue to represent cases with which he was already

8

involved) to retain a neutral appearance as a Shared Neutral (Mediator) and to withdraw without prejudice his judicial claims for actions prior to the signing of the Settlement Agreement.

30. However, the USDA's retaliation against Plaintiff did not cease after the signing of the June 17, 2002 Settlement Agreement.

31. On information and belief, in October 2002, Zorn wrote a letter to the Head of the Boston Federal Executive Board regarding the Settlement Agreement of June 17, 2002. In that letter Zorn advocated the Settlement Agreement restriction against Plaintiff representing any new EEO cases, despite the fact that there exists no policy allowing or encouraging Plaintiff's restriction from participating in EEO activities and such restriction violates Plaintiff's basic rights and duties to participate in EEO activities and complaints.

32. On information and belief, in 2001, Luiz Perez selected Plaintiff as his representative in his EEO action (and eventual civil complaint filed January 30, 2003 in the United States District Court For The District Of Massachusetts, No. 03 10189GAO, alleging Title VII discrimination and retaliation).

33. On information and belief on or around February 4, 2003 Plaintiff deposed Zorn, Luiz Perez, MacAllister, and

9

Robert Canavan in relation to Perez' allegations of discrimination under Title VII.

34. On February 27, 2003 Plaintiff learned he had been excluded from a list of employees for an important training course for his position, Integrated Acquisition System (IAS).

35. Plaintiff asked his then first line supervisor, Joseph Stanco, about this omission and Mr. Stanco replied that the Plaintiff would be included.

36. In the revised list created by Mr. Stanco, Stanco included Plaintiff as "Funds Approver."

37. The only other person in this list identified as "Funds Approver" was Martin Hines, the Funds Officer, to whom Plaintiff is and was Backup Funds Officer or Alternate Funds Officer.

38. On March 3, 2003, and through emails dated March 4, 2003, Mr. Stanco informed Plaintiff that MacAllister did not want Plaintiff to have the right to certify funds under IAS–a right given to MacAllister, Stanco, Mr. Hines as the Funds Officer, and Plaintiff, as the Alternate/Backup Funds Officer by virtue of their position.

39. MacAllister's refusal to permit Plaintiff to certify funds represented a reduction in the duties that Plaintiff had held for over 4 years to that point.

40.   Since the other Alternate/Backup Funds Officers in the USDA's other regions continue to certify funds, MacAllister's refusal treats Plaintiff differently because of, and in retaliation for, his protected EEO activity.

41. On March 4, 2003 Plaintiff contacted FNS-HQ and was affirmed by Jonathon Lash, the FNS Funds Officer, that FNS considered Plaintiff Alternate/Backup Funds Officer and he was to have certifying rights.

42.   Plaintiff then forwarded this information to Mr. Stanco.

43.   Neither Mr. Stanco nor MacAllister recanted their position that Plaintiff would not be allowed to certify funds.

44. MacAllister's reduction of Plaintiff's certifying rights was orchestrated in retaliation for Complainant's EEO participation.

45.   Plaintiff had consistently received Superior performance evaluations, including for the 2002 year.

46.   On March 4, 2003 Plaintiff contacted the Deputy Regional Administrator, John Ghiorzi, as the 3rd party neutral who must provide guidance under the July 17, 2002 Settlement Agreement for unresolved differences between Plaintiff and MacAllister.

11

47.  Ghiorzi did not respond on that day to Plaintiff's request for Ghiorzi's participation in resolving the problem between MacAllister and Plaintiff.

48. On March 6, 2003 Plaintiff filed a complaint with EEO Counselor, Gregory Ferby.

49. On March 6, 2003, Mr. Stanco arranged a meeting between Plaintiff, MacAllister, and himself to be held March 10, 2003.

50.  Plaintiff decided to take a EEO representative to this meeting--Lou Spychalski-and this choice was approved by Mr. Stanco and Mr. MacAllister by cc-ing Mr. Spychalski on the meeting informational email.

51. Mr. Spychalski became unavailable for the meeting so Plaintiff substituted Mr. Hines as EEO representative for the meeting.

52. MacAllister reacted angrily to the substitution and refused to permit Plaintiff Mr. Hines' representation at the meeting.

53. Plaintiff notified Mr. Ghiorzi of MacAllister's reaction to Mr. Hines as a substitute and inquired if MacAllister was acting under direction from Zorn or him.

54. Ghiorzi did not respond to Plaintiff's inquiry before Plaintiff left work on March 6, 2003.

55. On March 7, 2003 Plaintiff met with Gregory Ferby via telephone, designated Mr. Hines as his EEO

representative, and stated the reason for the complaint of retaliation was the reduction of duties.

56. On March 10, 2003 Plaintiff returned to work to find an email from Ghiorzi outlining the dispute resolution process, including permissible representation, but refusing to acknowledge any role as a 3rd party neutral in Plaintiff's dispute with MacAllister.

57. In addition, Plaintiff also returned on March 10, 2003, to an email from MacAllister denying Plaintiff representation at the meeting to occur that morning and classifying the meeting as an "informal discussion of current work assignments and how they relate to the implementation of IAS."

58. Via email on March 10, 2004 Plaintiff informed MacAllister, prior to the meeting that would occur later that morning, that Plaintiff had filed an EEO complaint and EEO regulations applied; Plaintiff reiterated his right to representation.

59. To this email MacAllister responded that the meeting dealt with current work assignments and Mr. Hines was not invited.

60. Plaintiff attended the meeting on March 10, 2004 with Stanco and MacAllister.

61. Plaintiff brought Mr. Hines with him to the door of the Office in which the meeting was to take place, asked

13

Stanco and MacAllister if Mr. Hines could attend, and upon rejection of Mr. Hines' attendance by same and threatening of disciplinary action by MacAllister, Plaintiff sent Mr. Hines away and entered the meeting.

62. The March 10, 2004 meeting was not an informal discussion, but a discussion of Plaintiff's assignment of duties and why Plaintiff thought he should be allowed to certify funds–the direct subject of Plaintiff's EEO complaint.

63. Plaintiff answered the first two questions and then, upon realizing that the sole subject of the meeting related to his EEO complaint, informed MacAllister of Plaintiff's dilemma of meeting without representation while his EEO complaint was discussed.

64. In response, MacAllister told Plaintiff not to answer any questions relating to his EEO complaint.

65. Plaintiff followed MacAllister's instructions and did not answer the remaining three questions from MacAllister.

66. MacAllister adjourned the meeting and Plaintiff submitted a summary of the meeting to MacAllister, identifying MacAllister's interrogation about the subject of Plaintiff's EEO Complaint.

67. Later on March 10, 2003, Plaintiff notified Ghiorzi of his dispute with MacAllister over the events of and

14

surrounding the meeting and inquired whether Ghiorzi would assume his duties under the Settlement Agreement to act as a neutral third party in an attempt to resolve the dispute. Ghiorzi did not respond.

68. On March 13, 2003 MacAllister issued Plaintiff a disciplinary warning for Plaintiff's refusal to answer his questions and attempt to bring a representative, denying the meeting had anything to do with the EEO complaint, despite the fact that the meeting related directly to Plaintiff's EEO complaint and Plaintiff had informed MacAllister prior to and during the meeting that his questions related to Plaintiff's EEO complaint.

69. The March 13, 2003 disciplinary warning was unjustified reprisal for Plaintiff's insistence upon his representative rights and for Plaintiff's EEO activity.

70. On or around March 20, 2003 Plaintiff went to the USDA Compliance unit at the Civil Rights Office and informed them of the difficulty with which he met in attempting to comply with procedures set forth in the Settlement Agreement, including Ghiorzi's refusal to act as a 3rd party neutral in MacAllister's "disputes" with Plaintiff. Plaintiff filed a complaint with the USDA Compliance Unit on March 21, 2003.

71. On information and belief, The USDA Compliance Unit found on March 19, 2004 that the USDA had not complied with

15

the terms of the Settlement Agreement as they relate to the dispute resolution process (including Ghiorzi as a 3rd neutral) and instructed Salazar to implement the dispute resolution process.

72. The order stated that the USDA must provide a report of compliance within 30 days of receipt of the decision dated March 19, 2004.

73. The USDA never provided that report of compliance and, on information and belief, to date, has not implemented the dispute resolution process outlined in the Settlement Agreement.

74. On information and belief, Salazar failed to comply with a direct order and did not implement the dispute resolution process outlined in the Settlement Agreement of which the Compliance Unit found Salazar to be in breach.

75. On or around March 25, 2003, Plaintiff filed a formal Complaint of Discrimination with the USDA, alleging reprisal for EEO activity and creation of a hostile work environment, including the March 13, 2003 disciplinary warning and MacAllister's reduction of duties via refusal of certification rights.

76. Between March 2003 and present, MacAllister has consistently refused to admit Plaintiff had and has the power to certify funds and has not allowed Plaintiff to certify funds.

77. On June 17, 2004, Plaintiff amended his EEO complaint to include an incident in which a woman at work asked Plaintiff if he would certify something for her.

78. MacAllister, under Zorn's direction, stepped in and told Plaintiff that he would not be allowed to certify from now on.

79. Zorn, thus, also participated in the reduction of Plaintiff's duties as a reprisal for his protected activity.

80. In his performance at FNS-NERO, Plaintiff has been consistently Superior.

81. Nevertheless, the USDA has consistently restricted his duties and opportunities for training ever since Plaintiff became involved in actions against the USDA as an EEO representative and through filing his own complaints against the USDA.

82. This action was not taken against Plaintiff for any inconsistency or dissatisfaction in his work performance, but as a reprisal for Plaintiff's protected EEO activities, depositions and testimonies against Zorn, Ghiorzi, and MacAllister.

83. Plaintiff's 2004 performance at FNS-NERO was so Superior that he discovered the USDA had been overcharged by 1.2 million dollars per year for each of the last five years by the States of New York, Connecticut, and Maine for

17

unsubstantiated budget claims, directly leading to the recovery of the overcharged amounts.

84.  In addition, Plaintiff discovered two policies went against the Food Stamp Statute and participated in the nation-wide reformation of these policies.

85. Usually, recovering the amount of money Plaintiff recovered for FNS-NERO and aiding to reform incorrect policies would result in an award and/or promotion.

86. However, at the awards ceremony on October 7, 2004 Zorn gave many People in Plaintiff's department an award of cash or certificate except for Plaintiff, despite his exemplary performance, even amongst those who received awards.

87.  Later that same day, Plaintiff's current first line supervisor, Michael Malone, announced training for a possible vacancy in the Budget Analyst position, which is the one promotion position that is directly related to Plaintiff's current position.

88.  This announcement was made even though the current Budget Analyst has not announced his retirement or indicated in any way that he would leave.

89.  On information and belief, the candidates for this position would be trained in Plaintiff's duties.

90.  On information and belief, this announcement was unusual because no other position vacancy had ever been

18

solicited under Zorn's tenure, and certainly not for a
position that was not yet empty.

91.  On information and belief, there are also three
other positions in Plaintiff's work area where the employees
filling those positions are at or beyond normal retirement
age and no solicitation has ever been made to replace these
individuals.

92.  Defendants solicited the position of Budget
Analyst to obstruct Plaintiff's career path by training
others in the field in which Plaintiff is most qualified to
promote those others and prevent Plaintiff from advancing.

93. The denial of award illustrated MacAllister's
continued retaliation against Plaintiff for Plaintiff's EEO
activities, as did the denial to Plaintiff of the ability to
do his job as Alternate/Backup Funds Officers.

94. These inappropriate actions constitute illegal
retaliation in violation of the aforesaid federal laws,
prohibiting such retaliatory measures.

95. On October 13, 2004, Malone issued a disciplinary
letter of instruction to Plaintiff as a result of a
telephone call from Salazar's office.

96.  Plaintiff appealed the letter of instruction to
Salazar, who refused to rescind that portion of the letter
relating to the call from his office, despite acknowledging
that the decision had been based on an erroneous assumption.

19

97.  This letter also placed restrictions on Plaintiff's EEO activity.

98.  On information and belief, no other employee at NERO had ever received a letter of instruction restricting their EEO activities.

99.  The letter of instruction was issued not because of Plaintiff's wrongdoing but as reprisal for his engaging in protected EEO activity.

100.  Malone's letter of instruction dated October 13, 2004 incorrectly affirms that Plaintiff sought to unilaterally relinquish his supplemental duties in Nutrition Education.

101.  In reality, Malone had agreed to Plaintiff's reduced duties in Nutrition Education.

102.  In addition, on information and belief, another employee also relinquished that employee's duties in Nutrition Education on or around March 1, 2004 but no letter of instruction was issued to that employee.

103.  A letter of instruction was issued to Plaintiff because of his involvement with protected EEO activities and to create a harassing atmosphere.

104. On or around October 18, 2004, Malone sought to humiliate Plaintiff by referring him to counseling and making an appointment for Plaintiff without Plaintiff's permission.

105. On information and belief, in reality, Malone had expressed to MacAllister on June 7, 2004 Malone's own emotional issues resulting from the dispute over funds certification.

106. Malone's insistence on Plaintiff going to counseling was done to humiliate Plaintiff and as reprisal for Plaintiff's insistence on his certifying rights and demand to not be retaliated against for his protected EEO activity.

107. On or about October 22, 2004 Malone, under Zorn's direction, issued another disciplinary warning letter of instruction to Plaintiff.

108. The letter of instruction reprimanded Plaintiff for his use of the title "Alternate Funds Officer" on a report given Canavan.

109. The letter instructed Plaintiff not to refer to himself under the title of "Alternate Funds Officer".

110. This represented a further reduction of Plaintiff's position since now, he not only does not have certifying rights but he also no longer may use his title of Alternate/Backup Funds Officer.

111. Indeed, Plaintiff's stature has been further reduced within FNS-NERO (although not at FNS-HQ) to his no longer holding the position of Alternate/Backup Funds Officer—a list of Funds Officers was created on November 9,

2004 and omitted Plaintiff's name as a Funds Officer, but did not erase his phone number next to the space from which Plaintiff's name had been erased.

112. These inappropriate actions constitute illegal retaliation in violation of the aforesaid federal laws, prohibiting such retaliatory measures.

113. As a result of Defendants' unlawful discriminatory and retaliatory acts, Plaintiff has suffered and continues to suffer substantial monetary damages, hurt, humiliation, mental anguish, emotional distress and trauma, pain and suffering.

## SECOND COUNT

### CLAIMS UNDER THE APA

114. Plaintiff refers to and repeats all of the allegations in Paragraphs 1 through 113 hereinabove.

115. 5 USC 701 of the APA defines "agency" to mean, "each authority of the Government of the United States, whether or not it is within or subject to review by another agency...."

116. On information and belief both the USDA and FNS are "agencies" within the meaning of 5 USC 701 of the APA.

117. Under 5 USC 702 of the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a

relevant statute, is entitled to judicial review thereof. .
. The United States may be named as a defendant in any such
action, and a judgment or decree may be entered against the
United States: Provided, that any mandatory or injunctive
decree shall specify the Federal Officer or officers (by
name or by title) and their successors in office, personally
responsible for compliance."

118. On information and belief, Plaintiff is a person
suffering legal wrong because of agency action. He is
thereby entitled to judicial review of that agency action
(or inaction). He herein names the United States and the
USDA via Secretary Veneman as Defendants.

## PART A--No Fear Act Claim

119. Plaintiff reiterates and re-alleges paragraphs 1
through 118 above.

120. Plaintiff alleges that the USA and USDA are in
violation of the No Fear Act Sec. 204, stating, "The
President (or designee of the President) shall issue–(1)
rules to carry out this title....[and] advisory guidelines
incorporating best practices that Federal agencies may
follow to take such actions against such employees"; "Not
later than 30 days after the issuance of guidelines under
subsection (a) each Federal agency shall submit to the
Speaker of the House of Representatives, the President pro

23

tempore of the Senate, the Equal Employment Opportunity
Commission, and the Attorney General a written statement
specifying in detail–(1) whether such agency had adopted and
will fully follow such guidelines; (2) if such agency has
not adopted such guidelines; the reasons for the failure to
adopt such guidelines; and (3) if such agency will not fully
follow such guidelines, the reasons for the decision not to
fully follow such guidelines and an explanation of the
extent to which such agency will not follow such
guidelines."

121. On information and belief, the Office of Personnel
Management issued guidelines for repayment of judgments by
agencies into the Judgment Fund under Sec. 204 of the No
Fear Act on or around January 22, 2004.

122. It has been more than 30 days since the
publication of the No Fear Act guidelines.

123. On information and belief the USDA to present,
more than 30 days after the issue of guidelines, has not
submitted to the Speaker of the House of Representatives,
the President pro tempore of the Senate, the Equal
Employment Opportunity Commission and the Attorney General a
written statement specifying in detail–(1) whether the USDA
has adopted and will fully follow such guidelines; (2) if
the USDA has not adopted the guidelines, the reason for the
failure to adopt the guidelines; and (3) if the USDA will

24

not fully follow the guidelines the reasons for the decision not to fully follow the guidelines and an explanation of the extent to which such agency will not follow such guidelines.

124. On information and belief, the guidelines to provide for disciplinary action for employees who discriminate against other federal employees under the No Fear Act Sec. 203 have not been issued. On information and belief, OPM is responsible for issuing such guidelines under the No FEAR Act.

125. The non-issuance of the guidelines for No Fear Act Sec. 203 by the Office of Personnel Management ("OPM") is an impermissible delay and is "agency action unlawfully withheld or unreasonably delayed," under 5 USC Sec. 706 of the APA.

126. In addition, the non-issuance of guidelines by the Office of Personnel Management for the No Fear Act Sec. 203 is, "agency action...[that is] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law..., short of statutory right, [or] without observance of procedure required by law...." 5 USC Sec. 706 of the APA.

127. As a result of the delay and OPM inaction–or inaction of any other designated body--in promulgation of these guidelines, Plaintiff has suffered both a loss of his right to due process and direct harm.

128. Because of Defendant United States' delay in promulgating guidelines and regulations under the No Fear Act, the USDA has not issued regulations for the discipline of Plaintiff's supervisors.

129. Because the OPM and the U.S. have not issued guidelines which would have forced the USDA to respond within 30 days with a plan to follow the guidelines or be accountable to the Speaker of the House of Representatives, the President pro tempore of the Senate, the Equal Employment Opportunity Commission, and the Attorney General for their failure to implement the guidelines, the USDA has not disciplined MacAllister, Salazar, Canavan, Zorn, or Ghiorzi for their acts against Plaintiff.

130. The guidelines enacted and regulations thereafter adopted by the USDA would have had to serve the primary purpose of creating, "appropriate disciplinary actions against a Federal employee who– (i) discriminated against any individual in violation of any of the laws cited under section 201(a)(1) or (2); or (ii) committed another prohibited personnel practice that was revealed in the investigation of a complaint alleging a violation of any of the laws cited under section 201(a) (1) or (2)...."

131. After the passage of the No Fear Act, the U.S. and the USDA have been subjected to many civil actions and settlements with employees in the same office as Plaintiff

26

on the basis of discrimination stemming from MacAllister and
Zorn. Because, by their very nature and purpose, these
guidelines and regulations unreasonably delayed would have
had to discipline those in the USDA discriminating against
Plaintiff and other employees at the USDA after the passage
of the No Fear Act the way MacAllister, Salazar, Canavan,
Zorn, and Ghiorzi have, Plaintiff has suffered harm to his
career by the refusal and unreasonable delay of the United
States and USDA to adopt the guidelines and regulations that
would hold these supervisors thus accountable for their
actions.

132. Since the No Fear Act was passed in 2002 and took
full force in October, 2003, two years have passed in which
guidelines and regulations should have been implemented. The
failure to create the guidelines and implement regulations
under the No Fear Act is an unreasonable delay.

133. Plaintiff is in the class of persons meant to be
protected by the No Fear Act's decision to discipline those
who discriminate in the Federal government against Federal
employees. Plaintiff is a Federal employee who has been
discriminated against by his supervisors.

134. As a direct result of the unreasonable delay to
formulate guidelines and regulations, Plaintiff has suffered
continued discrimination at the hands of MacAllister, Zorn,

27

Salazar, Canavan, and Ghiorzi, who have continued their bad acts unchecked.

135. Also as a direct result of the unreasonable delay, Plaintiff's right to due process has been abridged because there are no regulations in place–where there should be regulations– allowing Plaintiff avenue of complaint, investigation and determination through which MacAllister, Zorn, Salazar, Canavan and Ghiorzi would have been reprimanded or otherwise appropriately disciplined for their illegal retaliatory acts against him.

### PART B–Noncompliance with Final Agency Order Claim

136. Plaintiff reiterates and realleges paragraphs 1 through 135 herein above.

137. On information and belief the USDA is in violation of the order issued by the United States Department of Agriculture Office of Civil Rights on May 19, 2004, (the "Determination") ruling that the USDA-specifically FNS-had not complied with Plaintiff's Settlement Agreement dated June 17, 2002.

138. The determination dated May 19, 2004 is final agency action on Plaintiff's allegation of non-compliance with the Settlement Agreement dated June 17, 2002.

139. The determination dated May 19, 2004 ruled that the USDA had not complied with Item 7 in the Settlement

Agreement, stating, "The Complainant and his supervisor agree to communicate on a regular basis to minimize any misunderstandings concerning work assignments, performance, training, etc, with the aim of building trust and understanding. Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties. If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party. If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing officer. During the discussions at the various levels identified above, the Complainant has the right to utilize the EEO complaints process."

140. At the conclusion of the Determination, the USDA was ordered to implement the dispute process; the order provided, "The Agency must provide a report of compliance to this office within 30 days of receipt of this decision."

141. On information and belief, the USDA received the decision in May or June of 2004.

142. On information and belief, the USDA has not to present provided a report of compliance to the United States Department of Agriculture Office of Civil Rights nor has the

29

USDA implemented the dispute resolution process, in violation of the Determination of the same office.

143. The refusal of the USDA to comply with the Determination is a violation under the APA and is "final agency action for which there is no other adequate remedy in a court." 5 USC Sec. 706.

144. This court, "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall-(1) compel agency action unlawfully withheld or unreasonably delayed."

145. The USDA's refusal to comply with the Determination is agency action unlawfully withheld or unreasonably delayed.

146. As a result of the USDA's refusal to comply with the Determination, Plaintiff has suffered continued discrimination at the hands of MacAllister, Salazar, Canavan, Malone and Zorn for which there is no recourse to a 3rd party neutral, in violation of the Settlement Agreement and in violation of the Determination.

147. On information and belief, as a result, MacAllister and Zorn not only refused to allow Plaintiff to certify funds and discriminated against him for awards, but also trained other coworkers in the Plaintiff's duties with the intent of obstructing Plaintiff from career advancement.

148. On information and belief, as a result, neither Ghiorzi, Canavan, Salazar, MacAllister nor Zorn have acted in accordance with the Settlement Agreement by acting as a 3rd party mediator to resolve differences between Plaintiff and MacAllister and review retaliatory actions taken against Plaintiff.

149. On information and belief, as a result of this USDA inaction, Plaintiff has suffered and continues to suffer professional harm, demotion, continued hostile work environment, humiliation, reduction of duties, and segregation from promotional opportunity.

## THIRD COUNT

## VIOLATION OF DUE PROCESS UNDER THE 5th AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND BREACH OF SETTLEMENT AGREEMENT

150. Plaintiff reaffirms and re-alleges paragraphs 1 through 149 herein above.

151. The 5th Amendment to the U.S. Constitution reads, "No person shall be... deprived of life, liberty, or property, without due process of law...."

152. Plaintiff has a property interest both in his certifying duties as Backup/Alternate Funds officer and the training opportunities that come along with his position, on being afforded fair and reasonable award and promotion

opportunities (especially relating to positions for which he was best qualified, applied for and was denied), but also a property interest in the Settlement Agreement dispute process. Plaintiff has a property interest in his position as free from unequal treatment, as outlined in the contract which is his June 17, 2002 Settlement Agreement with the USDA.

153. By reducing Plaintiff's duties without a hearing before or after, refusing to admit him training opportunities granted others in his position or in lower positions (or with lesser qualifications), denying him awards and promotions for which he was best qualified, and refusing to comply with the dispute process in the Settlement Agreement of June 17, 2002 which was intended to resolve Plaintiff's 2001 civil complaint alleging retaliation, the USDA has denied Plaintiff due process of law in denial of his property rights guaranteed to him and has breached the Settlement Agreement.

154. Plaintiff started as Alternate/Backup Funds Officer in 1998.

155. The position of Alternate/Backup Funds Officer included ability to certify funds and to receive training necessary to certify funds. Plaintiff's position of Alternate/Backup Funds Officer was also created by paper

32

designation and contract in 1998 and reaffirmed by FNS via email.

156. USDA's demotion of Plaintiff, failures to promote Plaintiff and to grant him the awards that he earned, and reduction of his duties by removing his position as Alternate/Backup Funds Officer, violated Plaintiff's right to due process in taking away the position and duties without adherence to the dispute procedure outlined in the Settlement Agreement which provides Plaintiff an opportunity to be heard either before or after any such treatment, and breached that agreement.

157. Plaintiff's supervisors never afforded him the opportunity for a hearing on the unequal reduction of his duties or promotional opportunities.

158. Plaintiff's supervisors never conducted any form of formal or informal hearing before or after reducing Plaintiff's duties and position nor before or after denying him earned promotion and awards.

159. While MacAllister met Plaintiff on March 10, 2003 to discuss his certifying rights (the subject of Plaintiff's EEO complaint), by MacAllister's own admission, on information and belief, the meeting was not a formal or informal hearing on Plaintiff's reduction of duties, reduction of awards and limitation of opportunities.

33

160. In addition, Plaintiff's supervisors unilaterally reduced Plaintiff's duties, denied Plaintiff promotional and monetary awards and demoted him without explanation or cause, and without opportunity for Plaintiff to be heard by a 3rd party neutral or final reviewing officer as outlined by his Settlement Agreement.

161. The June 17, 2002 Settlement Agreement is a contract formed through Mediation that was meant to address Plaintiff's 2001 civil complaint of retaliation against him for participation in protected activities.

162. In drafting the June 17, 2002 Settlement Agreement, the USDA sought to create an understanding that Plaintiff would not be deprived of his position, training opportunities, career advancement or other benefits absent an opportunity to be heard and a review of any such disputed decision.

163. The USDA fostered an understanding that any decision regarding Plaintiff's position, training opportunities, career advancement or other benefits would not be made arbitrarily or unequally and that sufficient cause would have to be shown to the reviewing officer, since the Settlement Agreement gave Plaintiff the opportunity to dispute the cause of any such action.

164. The Settlement Agreement also promised equal treatment and the right to not have training opportunities unreasonably withheld without an explanation of cause.

165. The USDA also fostered an understanding that Plaintiff would have access to a hearing by a 3rd party neutral and/or a final reviewing officer on any action regarding his employment should Plaintiff feel retaliation occurring.

166. Plaintiff's Settlement Agreement conferred upon Plaintiff a benefit from the USDA that guarantees equal treatment and that the USDA afford Plaintiff a hearing before a 3rd party neutral or final reviewing officer should a dispute arise between Plaintiff and MacAllister, such as the dispute over reduction of Plaintiff's duties, demotion, and refusal of training opportunities.

167. The Settlement Agreement affords Plaintiff a benefit which the USDA has denied without due process of law, and in breach of the Settlement Agreement.

168. Plaintiff was entitled to this dispute resolution process at the time any dispute arose between MacAllister and Plaintiff as a review of the reduction of his duties, the stripping of his title, and the refusal to grant him training opportunities.

169. The Settlement Agreement created an entitlement that Plaintiff not be disciplined by MacAllister for a

dispute that arose between them until they attempted to resolve it with the 3rd party neutral or final reviewing officer.

170. MacAllister issued a letter of warning to Plaintiff due to their dispute without adhering to proper procedure of submitting that dispute to a third party neutral.

171. The letter of warning placed Plaintiff on a type of probation.

172. As a result of USDA's denial of due process and breach of the Settlement Agreement, Plaintiff's supervisors retaliated against him by reducing his duties and limiting his opportunities without adhering to the process outlined in his Settlement Agreement, without complying with the final order by the USDA Compliance Unit in the USDA Civil Rights unit to comply with the process outlined in the Settlement Agreement, without mediation or neutral 3rd party intervention and/or factual determination, and without opportunity for Plaintiff to be heard prior to denial of his benefit of dispute procedure and prior to denial of the benefits of his position, monetary awards, promotions and rank as Alternate/Backup Funds Officer.

173. As a result of USDA's denial of due process and its breach of the Settlement Agreement, Plaintiff has suffered and continues to suffer harm to his career,

demotion, loss of training opportunity, loss of deserved promotion and awards, humiliation, and other harm.

## FOURTH COUNT

### BREACH OF CONTRACT

174.    Plaintiff reaffirms and re-alleges paragraphs 1 through 173 herein above.

175.    The aforesaid actions by Defendants in violation of the aforesaid provisions of the Settlement Agreement constitute a breach of contract, causing Plaintiff the injuries and damages stated hereinabove and entitling him to money damages and to the benefit of the processes and protections set forth in that agreement.

WHEREFORE, Plaintiff prays for equitable relief against Defendants in the form of an injunction against the USDA and order requiring it to comply with the Settlement Agreement and the Determination, an injunction and order against the USDA requiring it to cease and desist from taking action in retaliation against Plaintiff for engaging in a Title VII protected activity, an injunction against the Defendants ordering them to implement guidelines and regulations under the No Fear Act, an injunction against the USDA ordering it to promote Plaintiff to the appropriate Grade 13 position, (or, in the alternative, the awarding to Plaintiff of equivalent front pay), an injunction against the USDA

ordering it to rescind all letters of instruction against Plaintiff herein described, an injunction ordering any additional equitable relief this Court deems just and proper, attorney's fees and costs, as well as back pay, compensatory damages, and other money damages (with regard to those causes of action allowing for money damages) accrued as a result of the USDA's non-compliance with the Determination and improper failure to provide Plaintiff with awards and opportunities for promotion and its improper failure to promote Plaintiff and provide Plaintiff with earned awards, and such further relief as this Court may deem just and proper.

Respectfully submitted,
By: s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, Esq.
BBO No. 078980
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110
(617) 542-7711 (phone and fax)
Attorneys for Plaintiff
Dated: July 11, 2005, 2005

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to the provisions of the federal Rules of Civil Procedure, the Court is advised that Robert S. Catapano-Friedman, Esq. is hereby designated as trial counsel.

By: s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, Esq.
Date: July 11, 2005

38

### DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by jury of six (6) on all the issues set forth in this Complaint.

By: s/Robert S. Catapano-Friedman
      Robert S. Catapano-Friedman, Esq.
      The Catapano-Friedman Law Firm
      Attorneys for Plaintiff John G.
      Pedicini

Dated: July 11, 2005

### CERTIFICATION

We hereby certify that the matters in controversy herein are not the subject of any other action pending in any Court or of a pending arbitration proceeding.  We further certify that no other action or arbitration proceeding is presently contemplated.

By: s/Robert S. Catapano-Friedman
      Robert S. Catapano-Friedman, Esq.
      The Catapano-Friedman Law Firm
      Attorneys for Plaintiff John G.
      Pedicini

Dated: July 11, 2005

<u>**CERTIFICATION OF SERVICE**</u>

The undersigned hereby certifies that on the date set forth below, a true and complete copy of Plaintiff's Amended Complaint was served upon the current Defendants in these proceedings by electronic service and that upon receipt from the Court of the requested summonses service will be made by process server upon the following additional party and attorneys for that additional party to the following addresses:

> United States Office of Personnel Management
> 1900 E Street NW
> Washington, DC 20415-1000 (added party)
>
> United States Attorney General
> U.S. Department of Justice, Room B-103
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530-0001 (added party)
>
> United States Attorney
> U.S. Attorney's Office
> John Joseph Moakley Courthouse
> 1 Courthouse Way, Suite 9200
> Boston, Massachusetts 02210 (both current and added party)

> By: s/Robert S. Catapano-Friedman
>     Robert S. Catapano-Friedman, Esq.
>     The Catapano-Friedman Law Firm
>     Attorney for Plaintiff

Dated: July 11, 2005

LAW OFFICES

# THE CATAPANO-FRIEDMAN LAW FIRM

### 50 FRANKLIN STREET, 4TH FLOOR
### BOSTON, MASSACHUSETTS 02110

\*  ROBERT S. CATAPANO-FRIEDMAN
\*\* SARAH A. CATAPANO-FRIEDMAN

\* ALSO ADMITTED IN NEW JERSEY AND MASSACHUSETTS
\*\* ADMITTED ONLY IN MASSACHUSETTS

AFFILIATES:
ROBERT S. CATAPANO-FRIEDMAN
ROBERT S. CATAPANO-FRIEDMAN, P.C.
744 BROADWAY, ALBANY, NY 12207
(518) 463-7501 (PHONE)
(518) 463-7502 (FAX)
rcf@cflawfirm.com (E-MAIL)

OTHER OFFICE:
37 Fleet St., Boston, MA 02109
(617) 557-4044 (PHONE AND FAX)

July 11, 2005

**VIA ELECTRONIC FILING**
**Clerk, United States District Court**
**for the District of Massachusetts**
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

**Re: John G. Pedicini v. U.S. et al. Civil Action No. 04-12395-JLT**

Dear Sirs and Mesdames:

In connection with the Amended Complaint filed in these proceedings herewith, please issue and mail to us summonses to the following persons and addresses so that we can appropriately serve the party added by this amended complaint with the amended complaint and appropriate summonses:

United States Office of Personnel Management
1900 E Street NW
Washington, DC 20415-1000

United States Attorney General
U.S. Department of Justice, Room B-103
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

United States Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Please contact me with any questions.  Thank you.

Respectfully submitted,

S/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman

PHONE: 617-542-7711    FAX: 617-542-7711    E-MAIL: scf@cflawfirm.com