UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN G. PEDICINI,<br>       Plaintiff<br><br>-vs-<br><br>UNITED STATES OF AMERICA,<br>ANN M. VENEMAN, SECRETARY,<br>UNITED STATES DEPARTMENT<br>OF AGRICULTURE, and<br>LINDA SPRINGER, DIRECTOR<br>UNITED STATES OFFICE OF PERSONNEL<br>MANAGEMENT<br>       Defendants | Case No. 04-12395 JLT |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I. Introduction**

Defendants filed a partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and (6) asking for dismissal of Count Two, subpart A of Plaintiff's Amended Complaint. Plaintiff responds to Defendants' Motion with this Opposition.

Plaintiff's Amended Complaint states a cognizable claim in Count Two, subpart A, under the Administrative Procedure Act ("APA") for the United States Department of Agriculture's ("USDA") and Office of Personnel Management's ("OPM") failure to comply with the Notification and Federal Employee Anti-Discrimination and Retaliation Act of 2002 ("No Fear Act").

Defendants minimize Plaintiff's claim and injuries. Plaintiff's superiors have engaged in repeated and concerted retaliation against Plaintiff in an effort to prevent Plaintiff

from engaging in EEO activity which reflects poorly on his superiors by revealing their illegal discriminatory practices at the USDA.  In their efforts to deter Plaintiff's EEO activity, Defendants reduced his duties and his title, blocked his career advancement and violated their 2002 contract with Plaintiff which was intended to prevent such retaliation.  Defendants' allegations that Plaintiff suffered no harm that would entitle him to relief under Count Two, subpart A are preposterous.

**II. Standard of Review for Review for 12(b)(1) and (6) Motion**

The parties agree that the standard for review for this Motion is the same as for a Rule 12(b)(6) Motion.  Plaintiff's complaint should not be dismissed unless, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Roeder v. Alpha Indus., Inc., 814 F. 2d 22, 25 (1st Cir. 1987) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court should consider the pleadings, accept the allegations of the Complaint as true, and view the alleged facts in a light most favorable to Plaintiff in rendering its decision.

Defendants indicate that in deciding this motion, the court may also consider extrinsic materials to determine jurisdiction over the claims. However, Defendants have not submitted any extrinsic materials in support of their motion, as required under Federal Local Rules 7(b)(1). As such, there are no extrinsic

materials for the court to consider in determining Defendants' motion and the court must consider the claims as they are set forth in Plaintiff's Amended Complaint without any such extrinsic evidence.

## III. Count Two, Subpart A: Plaintiff Has Standing and States a Claim Under the APA

### a. Plaintiff is Within The Zone Of Interest

Defendants argue a lack of standing in Count II under subpart A. Plaintiff outlines the basis for his standing under subpart A.

Plaintiff's standing stems from the "zone of interest" test. "Under *Clark*, a plaintiff satisfies the prudential standing requirement if she was herself the subject of the contested administrative act, or if she shows that her rights are not so marginally related to the purpose of the statute that a court will assume Congress did not intend the suit...." Amgen v. Scully, 234 F. Supp 2d 9, 25 (D.D.C. 2002) (citing to Clark v. Securities Indus. Ass'n, 479 U.S. 388, 399 (1987)).  Only those whose interests or rights are so marginally related to the purpose of the statute that Congress could not have reasonably have been assumed to have intended that party bring suit are meant to be excluded from suit. Harvey v. Veneman, 396 F. 3d 28, 34 (1st Cir. 2005).

Plaintiff must show that his interests were those that

Congress could have expected to be protected under the statute, regulation, or order in question or that his interests were effected by agency action or inaction under the statute, regulation, or order. "[I]n applying the "zone of interests" test, we do not ask whether, in enacting the statutory provision at issue, Congress specifically intended to benefit the plaintiff. Instead we first discern the interests "arguably... to be protected" by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action are among them." Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co., 522 U.S. 479, 492 (1988). Plaintiff need not have been the specific beneficiary of the Act, but Plaintiff's interests must be affected by the agency inaction.

The issue of standing under the zone of interest test focuses, "'not on those who Congress intended to benefit, but on those who in practice can be expected to police the interests that the statute protects.'" Id. At 444 (quoting Mova Pharmaceutical Corp. v. Shalala, 140 F. 3d 1060, 1075 (D.C. Cir. 1998)). Plaintiff is an employee of a Federal Agency with a settlement agreement with that agency, who has represented those claiming discrimination and retaliation, who has been illegally retaliated against, who has claimed that he has been illegally retaliated against, and who fears continued illegal retaliation. As such, Plaintiff can be expected to police the interests the No

4

Fear Act protects.

SubPart A of Plaintiff's Count Two is an APA claim for the OPM's and the USDA's failure to issue guidelines under the No Fear Act providing for monitoring and discipline of those who have retaliated against employees such as Plaintiff.  Plaintiff's Amended Complaint includes OPM as a named Defendant.  Because of OPM's failure to issue these guidelines, Plaintiff has suffered and continues to suffer exactly the type of continued retaliation which the No Fear Act intended to prevent.

Plaintiff's standing stems from the "zone of interest" test because the No Fear Act was enacted precisely in part to protect individuals in Plaintiff's situation.  Plaintiff's superiors have retaliated not only against Plaintiff, but against many other employees who have been involved in discrimination complaints against these superiors.  Their illegal discriminatory and retaliatory acts have been the subject of several investigations and civil suits on behalf of Plaintiff and on behalf of other employees in Plaintiff's office at the USDA.

Section 102 of the No Fear Act relates the "Sense of Congress."  That section provides: "(1) Federal agencies should not retaliate for court judgments or settlements relating to discrimination and whistleblower laws by targeting the claimant or other employees with reductions in compensation, benefits, or workforce to pay for such judgments or settlements; (2) the

5

mission of the Federal agency and the employment security of employees who are blameless in a whistleblower incident should not be compromised..." Plaintiff is exactly the type of individual Congress intended to protect through The No Fear Act. He has a settlement agreement with the USDA relating USDA retaliation against Plaintiff for his testimony as a witness against his superiors' violation of discrimination laws and has participated in EEO activities relating to claims of discrimination against the USDA.  In reaction to Plaintiff's protected Settlement Agreement and protected EEO activities, Plaintiff's supervisors have retaliated against him, unfettered by the protections which the No Fear Act was meant to afford individuals in Plaintiff's situation.

   OPM and the USDA have taken the wind out of the No Fear Act by refusing to enact regulations which would deal with individuals such as Plaintiff's supervisors against whom multiple complaints of retaliation and discrimination have been made by Plaintiff and others.  Due to Plaintiff's supervisors' continued illegal discriminatory activity, the USDA and U.S. have been forced to defend and settle multiple complaints brought by Plaintiff and other employees since the No Fear Act was enacted. Plaintiff has complained to the EEOC, the USDA Office of Civil Rights, and his USDA supervisors about the retaliation he has experienced after his 2002 Settlement with the USDA and all three

have allowed the retaliation to continue by postponing any finding on the investigation of his claims and refusing to discipline Plaintiff's supervisors.  Plaintiff's USDA supervisors have refrained from any action to prevent the continued retaliation against Plaintiff. In addition, Plaintiff has not been afforded the hearing process under his Settlement Agreement with the USDA on his claims of retaliation against him.

OPM and the USDA have been given the task under Section 204 of the No Fear Act to issue, "rules to carry out this title....[and] guidelines incorporating best practices that Federal agencies may follow to take actions against such employees."  The No Fear Act has no power if, under its terms, someone like Plaintiff can be subjected to reduction of duties, reduction in job title, reduction of responsibilities, and attempts to block his career advancement based on his participation in protected activities relating to discrimination law.  Plaintiff has suffered these very injuries.  Plaintiff's supervisors have experienced no discipline or guidance away from their retaliatory actions because there are no No Fear Act regulations in place to curtail their retaliation.  There are no No Fear Act Regulations in place because OPM has impermissibly delayed issuing its rules and guidelines for disciplining individuals who have allegedly acted as Plaintiff's supervisors have.  Such rules and guidelines, as well as issuance of

regulations by the USDA to deal with such individuals, are contemplated by the No Fear Act.  It has been nearly three years since the No Fear Act came into being and still neither OPM nor the USDA have chosen to issue regulations to curtail retaliation against employees who participate in protected activities.  Without these regulations, the No Fear Act is a sheet of paper, hanging in the wind.  Such a delay is impermissible, unreasonable and contrary to the purpose of the Act.

Under the No Fear Act, the guidelines to be enacted and regulations to be adopted by the USDA would have had to serve the primary purpose of creating, "appropriate disciplinary actions against a Federal employee who- (i) discriminated against any individual in violation of any of the laws cited under section 201(a)(1) or (2); or (ii) committed another prohibited personnel practice that was revealed in the investigation of a complaint alleging a violation of any of the laws cited under section 201(a) (1) or (2)...."  Plaintiff alleged facts showing that he was discriminated against and retaliated against in violation of Federal law cited under Section 201(a)(1) or (2) and such discrimination in part took the form of prohibited personnel actions and practices under the Civil Service Reform Act 5 U.S.C. Section 2302 (a)(2)(A)(ix), (x), and (xi) and 5 U.S.C. Section 2302 (b).  Plaintiff has also alleged that the USDA performed an investigation which clearly reveals that he has been retaliated

against, but the USDA delayed issuing any finding despite the inception of the investigation in 2003 and conclusion of the investigation by 2004. However, the USDA Office of Civil Rights Compliance Division has found that the USDA violated the dispute resolution clause of Plaintiff's Settlement Agreement which Plaintiff attempted to invoke to curtail the retaliation against him.  Plaintiff has alleged that the USDA's refusal to enact his Settlement Agreement dispute resolution process is rooted in retaliation against him for his protected activities. Despite Plaintiff's superiors continued refusal to invoke the dispute resolution process in continued retaliation against Plaintiff, the USDA has taken no disciplinary action against Plaintiff's superiors. Had OPM and the USDA promulgated the disciplinary guidelines envisioned by the No Fear Act, such discipline would have had to have occurred.

### b. Plaintiff Suffered and Suffers Injury In Fact

Plaintiff's injury in fact need not be as direct as the Defendants suggest.  For example, even the observation of wildlife animals for purely esthetic reasons gives standing to challenge the treatment of those animals, since a Plaintiff is injured by viewing the animals' inhumane treatment. Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426 (D.C. Cir. 1998). Under Animal Legal Def. Fund, viewing the inhuman treatment of animals gives standing under a statute meant to prevent inhumane

treatment of animals which asked for the promulgation of sufficient standards to protect the animals' well-being; the retaliatory treatment of Plaintiff, the possibility for continued retaliation against Plaintiff, and his observation of the discriminatory and retaliatory treatment of others for whom he has acted as an EEO representative against Defendants should give Plaintiff standing under a statute intending to curtail retaliation and asking for the promulgation of guidelines to protect against retaliation.

The Second Circuit has held in Baur v. Venenman, 352 F. 3d 625 (2nd Cir. 2003) that even the possibility of being harmed by the refusal to enact or enaction of regulations is sufficient to satisfy the injury in fact requirement. In that case a consumer complained under the APA about USDA regulations which indicated downed livestock could be used for human consumption after passing a post-mortem inspection. Id. The possibility that a consumer might suffer future harm via increased risk of disease transmission caused by a USDA regulation gave that consumer sufficient injury in fact. Id. In that case, the allegations that a credible threat of harm to the Plaintiff existed was sufficient to sustain sufficient injury in fact to overcome a motion to dismiss. Id. See also, Harvey v. Veneman, 396 F. 3d 28, 34-35 (1st Cir. 2005). Similarly, the increased risk of harm has been held sufficient injury in fact in environmental cases. See

Friends of the Earth, Inc. v. Gaston Recycling Corp., 204 F. 3d 149, 160 (4th Cir. 2000)(concluding that increased risk of harm is sufficient injury in fact); Central Delta Water Agency v. U.S., 306 F. 3d 938, 947-48 (9th Cir. 2002); Johnson v. Allsteel, Inc., 259 F. 3d 885, 888 (7th Cir. 2001); Walters v. Edgar, 163 F. 3d 430, 434 (7th Cir. 1998), Cert. Denied 526 U.S. 1146 (1999); Mountain States Legal Found. v. Glickman, 320 U.S. App. D.C. 87, 94 (D.C. Cir. 1996) (increased risk of forest fires is sufficient for Article III purposes).

Plaintiff has suffered sufficient injury in fact. Plaintiff has suffered repeated retaliation by his superiors, the curtailment of which is directly contemplated by the No FEAR Act. In addition, Plaintiff has pleaded sufficient facts to show that the retaliation is ongoing and likely to occur or continue to occur in the immediate future. Plaintiff has also pleaded sufficient facts to show that, absent any discipline of his superiors via regulations promulgated under the No FEAR Act, the retaliation is likely to continue, since, his superiors have suffered no discipline and, as pleaded, Plaintiff's superiors continue to retaliate against Plaintiff and others. Not only does Plaintiff suffer, current, ongoing retaliation, but Plaintiff also has reason to fear that lack of promulgation of disciplinary regulations will lead to fairly immediate increased risk of retaliation against him. For sufficiency of injury in fact, this

honorable Court should draw no differential between the likelihood of continued or imminent future harm to Plaintiff in Plaintiff's work environment due to lack of required disciplinary regulation and other fear of imminent harm claims due to environmental regulations or consumer regulations (or lack thereof) already deemed sufficient injury in fact by this and other Circuits.

The No FEAR Act itself acknowledges and foresees a risk of harm to federal employees such as Plaintiff-those employees with judgments or settlement agreements against federal agencies-without regulations in place to discipline those retaliating. The No Fear Act Findings in Section 101 (2) of that Act point to its intent to redress, "chronic problems of discrimination and retaliation against Federal Employees," which Congress found to exist.

Defendants argue that Plaintiff does not have standing because there has been no judgment against his superiors that they have retaliated against Plaintiff. As stated herein below, there is a 2003 judgment against his superiors of non-compliance with his Settlement Agreement's dispute resolution process. The non-compliance with Plaintiff's Settlement Agreement was retaliatory and, as pleaded, Plaintiff's superiors have continued to refuse to comply with his Settlement Agreement, unfettered by any disciplinary standards. In addition, only the increased risk

of harm or continued harm to Plaintiff by the lack of promulgation of the regulations is necessary injury in fact, so a judgment against Plaintiff's superiors is not necessary for his claim to survive a motion to dismiss under Claim II, subpart A. In addition, Plaintiff has pled that his superiors have consistently retaliated against him and continue their retaliation against him, which must be accepted as true for purposes of this Motion.

Plaintiff has also claimed in his Amended Complaint in the above captioned matter that he has been denied his right to due process by denial of a hearing on the retaliatory acts of his superiors–a hearing guaranteed by his settlement agreement with the USDA. The Defendants do not seek to dismiss this Count of Plaintiff's Amended Complaint regarding violation of these due process rights in their 12(b) Motion to Dismiss. Such a hearing may have found that Plaintiff's superior's actions were retaliatory–the same retaliation meant to be inhibited by the No FEAR Act. Defendants should not benefit from their argument that no one found Plaintiff's superiors to have retaliated against Plaintiff when Plaintiff alleges that this is due, in part, to Defendants' denial of his due process rights via refusal to grant Plaintiff a hearing on his claims of retaliatory conduct.

Subpart A of Plaintiff's Count Two is an APA claim for the OPM's and the USDA's failure to issue guidelines under the No

Fear Act providing for monitoring and discipline of those who have retaliated against employees such as Plaintiff.  Plaintiff's amended complaint includes OPM as a named Defendant.  Because of OPM's failure to issue these guidelines, Plaintiff has suffered and continues to suffer exactly the type of continued retaliation which the No Fear Act intended to prevent.

OPM's and the USDA's unreasonable delay in promulgating rules, guidelines and regulations to discipline those who have acted against Plaintiff is the direct cause of the continuance of the retaliation against Plaintiff to this very day and of Plaintiff's fear of continued retaliation.  Under the No Fear Act, OPM's refusal to issue guidelines indicating how to discipline Plaintiff's supervisors makes it complicit in the continuing retaliation against Plaintiff.

Defendants' argue that because Congress intended a study of disciplinary practices to be done prior to enacting disciplinary regulations that the delay in promulgating those regulations is not undue. However, Defendants present no evidence to show that OPM has issued rules to require the carrying out of this study or that this study is underway. Defendants have offered no evidence to show that OPM has made its best efforts to conduct a study and meet its task of issuing guidelines for discipline, which would help save OPM from a claim of unreasonable delay. As such, this is an issue of fact which must survive a Motion to Dismiss.

Because Plaintiff is in the zone of interest Congress intended to protect with the No Fear Act and Plaintiff has suffered injury due to OPM's and the USDA's failure to act under the Act, Plaintiff has standing to challenge their inaction. In addition, Plaintiff has stated a cognizable claim.

## Conclusion

Accordingly, for the reasons articulated above Count Two, subpart A of the Amended Complaint should not be dismissed.

Respectfully Submitted,
/s/Sarah A. Catapano-Friedman
Sarah A. Catapano-Friedman
Counsel for John G. Pedicini
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110
(617) 542-7711
BBO# 661351

Dated: September 26, 2005

## Certification under L.R. 7.1

I certify that in accordance with Local Rule 7.1, on September 8 and 9, 2005, I have conferred with Defendants' counsel and have attempted in good faith to resolve the issues addressed in this Motion and Opposition.

/s/ Sarah A. Catapano-Friedman

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on the date set forth below, a true and complete copy of the within **PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** will be

served upon the following attorneys for the Defendants in these proceedings by electronic notice from the Court, the original of the aforesaid document being filed electronically with the Court on this same date.

        **United States Attorney**
        **U.S. Attorney's Office**
        **John Joseph Moakley Courthouse**
        **1 Courthouse Way, Suite 9200**
        **Boston, Massachusetts 02210**

        **By: s/Sarah A. Catapano-Friedman**
            **Sarah A. Catapano-Friedman, Esq.**
            **The Catapano-Friedman Law Firm**
            **Attorney for Plaintiff**

**Dated: September 26, 2005**