**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
_____

| |
|---|
| **JOHN G. PEDICINI,** |
| |
| **Plaintiff** |
| |
| **-vs-** |
| |
| **UNITED STATES OF AMERICA** |
| **UNITED STATES** |
| **DEPARTMENT OF AGRICULTURE,** |
| **ANN M. VENEMAN, SECRETARY,** |
| **Defendants** |

**CIVIL ACTION NO. 04-12395-JLT**

**Plaintiff's Motion for Leave to File Reply Memorandum of Law**

Pursuant to the Local Rule 7.1(b)(3), Plaintiff John G. Pedicini requests permission to file the attached Reply Memorandum with Exhibits in Support of Plaintiff's Motion for Leave to Depose Additional Witnesses. With this Motion, Plaintiff submits to this Honorable Court his Reply Memorandum with Exhibits In Support of His Motion for Leave to Depose Additional Witnesses and asks the Court to allow its filing. The creation and submission by Defendants of Affidavits from two of the three persons Plaintiff seeks to depose in his Motion for Leave to Depose Additional Witnesses and the omission of an affidavit for the third witness requires the responses contained in Plaintiff's

1

Reply Memorandum with Exhibits In Support of Plaintiff's Motion for Leave To Depose Additional Witnesses.

Dated: November 10, 2005

                          Respectfully Submitted,
                          /s/ Robert S. Catapano-Friedman
_____  Robert S. Catapano-Friedman
                          The Catapano-Friedman Law Firm
                          50 Franklin Street, 4th Floor
                          Boston, MA 02110
                          (617) 542-7711
                          Counsel for Plaintiff
                          BBO # 078980


### CERTIFICATION UNDER L.R. 7.1

I certify that in accordance with Local Rule 7.1, I have conferred with Defendants' counsel on November 8, 2005 via email asking for consent from them via email response by 5pm November 9, 2005 and have attempted in good faith to resolve the issues addressed in this Motion. I received no consent from the opposing parties by the requested date and time or at any time before or thereafter.

                          /s/ Robert Catapano-Friedman
_____  Robert S. Catapano-Friedman
                          Attorney for Plaintiff, John G. Pedicini

### CERTIFICATION OF SERVICE

Pursuant to L.R. 5.2(b) I hereby certify that a true copy of the above document and the memorandum with exhibits attached to the above motion will be served on the attorney of record for each Defendant by electronic notification by the court on November 10, 2005.

By: s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, Esq.
The Catapano-Friedman Law Firm
Attorney for Plaintiff

Dated: November 10, 2005

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN G. PEDICINI, | \| |
| | \| |
| Plaintiff | \| |
| | \| **CIVIL ACTION NO. 04-12395-JLT** |
| -vs- | \| |
| | \| |
| UNITED STATES OF AMERICA | \| **Reply Memorandum in Support of Motion** |
| UNITED STATES | \| **For Leave to Depose Additional** |
| DEPARTMENT OF AGRICULTURE, | \| **Witnesses under F.R.C.P. 30** |
| ANN M. VENEMAN, SECRETARY, | \| |
| Defendants | \| |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO DEPOSE**
**ADDITIONAL WITNESSES**

Plaintiff JOHN G. PEDICINI, through his attorneys, the
Catapano-Friedman Law Firm, comes before this court pursuant to
Federal Rules of Civil Procedure 30 for an order allowing the
deposition of three additional witnesses who possess information
relevant to his causes of action. On October 18, 2005 Plaintiff
filed a Motion for Leave to Depose Additional Witnesses, a
Memorandum of Law in support of that motion and two affidavits
with exhibits in support of that Motion. On November 2, 2005
Defendants filed their Oppositions to Plaintiff's Motion For
Leave to Depose Additional Witnesses ("Defendants' Opposition"),
attaching deposition materials and affidavits of Larry Blim and
Lisha Dorman.

1

FACTS

In the first paragraph of "Relevant Facts" in Defendants' Opposition, the Defendants misstate Plaintiff's claims. Defendants state, "Plaintiff, a financial management specialist for the Unites States Department of Agriculture, Food and Nutrition Service ("USDA-FNS"), claims that the USDA-FNS retaliated against him for filing actions against the agency in 2001 and 2003, and for asserting his "right" to represent co-workers in Equal Employment Opportunity matter." As revealed by Plaintiff's Amended Complaint, Plaintiff has alleged against the United States Department of Agriculture Food and Nutrition Services ("USDA-FNS") Title VII retaliation for filing a civil action against the agency on his own behalf in 2001, for representing another agency employee who filed against USDA-FNS, for filing his own EEO Complaints and participating in his own EEO cases, for deposing his superiors in February 2003 in connection with an EEO investigation of a co-worker's EEO complaint and for asserting his rights to represent and testify for co-workers in their EEO Complaints against USDA-FNS.

REPLY ARGUMENT

**Point 1: At Issue is Whether Plaintiff Held Position of Back Up or Alternate Funds Officer**

In their Memorandum in Opposition to Plaintiff's Motion for Leave to Depose Additional Witnesses, Defendants claim that they

2

do not contest that Plaintiff had back up duties to Martin Hines
("Hines"), the Funds Officer at Food and Nutrition Services-
Northeast Regional Office (hereinafter "FNS-NERO"). However, as
shown in the depositions attached as exhibits to the Affidavit by
Sarah Catapano-Friedman in support of Plaintiff's Motion for
Leave to Depose Additional Witnesses ("SCF Aff."), Defendants
have denied Plaintiff held a position entitled back up funds
officer or alternate funds officer, as claimed by Plaintiff in
his Amended Complaint.

Whether or not Mr. Pedicini is a Back Up Funds Officer is
critical because a Back Up Funds Officer by definition must be
able to perform the essential functions of a Funds Officer's job.
An essential function of a Funds Officer's job is certifying the
availability of funds. Plaintiff claims that he was both
appointed a Back Up Funds Officer and given certification rights
and duties and that Defendants have both stripped him of the
authorization to use the tile "Back Up funds Officer" or
"Alternate Funds Officer" and they have taken from him the
authorization that he had to certify the availability of funds,
all in retaliation for his Title VII protected activities.

Defendant does not deny that Plaintiff is now being denied
the use of this title and that Plaintiff is now being denied the
authorization to certify the availability of funds. Defendant
claims that Plaintiff never received this title and that he never

received authority to certify the availability of funds. We believe that Mr. Blim and Ms. Dorman will be able to testify regarding whether Mr. Pedicini ever held the title of Alternate Funds Officer or Back Up Funds Officer and whether he ever held certification of funds availability authorization.

## Point 2. Defendants Omitted Any Affidavit from Angela MacElmurry

A glaring omission in the Affidavits provided by Defendants in support of Defendants' Opposition and in Defendants' Opposition is the omission of any testimony by Angela McElmurry or argument against her deposition. Because Jonathan Lash has testified that Angela MacElmurry created a list at Headquarters in 1998 listing Plaintiff as a Back Up Funds Officer and both Hines and Plaintiff have claimed that Plaintiff was appointed the Back Up Funds Officer in 1998 or 1997 and that appointment was transmitted to USDA-FNS Headquarters by Plaintiff's superior, Angela MacElmurry's testimony is essential in determining how Plaintiff's name came to be on the list and how Plaintiff ended up in the column listing him as a Back Up Funds Officer. Angela McElmurry's testimony is expected to rebut the testimony of Plaintiff's superiors that they never appointed him the Back Up Funds Officer. Angela McElmurray's testimony is critical to this point. In addition, Angela McElmurray will help authenticate this document and provide insight into it.

4

**Point 3. Neither Lisha Dorman's Nor Larry Blim's Affidavits Address Whether Plaintiff Is a Back Up Funds Officer or Whether Plaintiff has Certification Rights**

A glaring omission in the affidavit of both Lisha Dorman and Larry Blim is whether or not Plaintiff is a Back Up or Alternate Funds Officer. As stated in his Affidavit in Support of the Motion to Depose Additional Witnesses, Plaintiff expects both Lisha Dorman and Larry Blim to testify that he is a Back Up Funds Officer or Alternate Funds officer. Lisha Dorman's affidavit itself indicates that a Back Up Funds Officer is a designated role and position within USDA-FNS. See Defendant's Opposition, Dorman Affidavit paragraphs 10, 11. Since Plaintiff expects both Lisha Dorman and Larry Blim to support his allegation that he is a Back Up Funds Officer or Alternate Funds Officer, it is critical that Plaintiff be allowed to depose these individuals on this topic.

Another glaring omission from Lisha Dorman and Larry Blim's affidavits is testimony on their knowledge of whether Plaintiff was ever given certification rights and responsibilities. Since Plaintiff and Hines, as indicated by Plaintiff's Affidavit in support of this motion and Hines' attached testimony in support of this motion, (SCF Aff. Paragraph 18 and 25) have stated that Larry Blim and Lisha Dorman will testify that, to their knowledge, Plaintiff was granted certification rights and responsibilities, it is critical that Plaintiff be allowed to

5

depose these individuals on this topic. Because of Larry Blim's and Lisha Dorman's position within USDA-FNS, they both should have knowledge of who has been appointed certification responsibilities for the availability of funds and Plaintiff expects they will testify that he has been given certification responsibilities and duties for the availability of funds.

### Point 4. Blim's Lack of Memory of Conversation with Hines and Plaintiff

In paragraph 7 of his Affidavit in support of Defendants' Opposition, Larry Blim claims he does not remember the conversation both Hines and Plaintiff have alleged having with Larry Blim at the Funds Officer Meeting in April 2005. Such a lack of memory warrants Plaintiff being able to refresh Larry Blim's memory on that conversation through means available at a deposition.

### Point 5. Discrepancies between Blim and Dorman's Affidavits and Testimony of other Witnesses and Plaintiff's Affidavit

The affidavits of Larry Blim and Lisha Dorman submitted by Defendants with Defendants' Opposition contain glaring discrepancies between Hines' testimony (see SCF Aff. Paragraphs 18, 25, 32, 33, 34), Jonathan Lash's testimony (SCF Aff. Paragraph 16), John Ingemi's testimony (SCF Aff. Paragraph 13), and Plaintiff's Affidavit submitted with the Motion for Leave to Depose Additional Witnesses, especially on the topic of

6

conversations Hines and Plaintiff claim to have had with Larry
Blim and Lisha Dorman and the topic of whether Back Up or
Alternate Funds Officers, and specifically John Pedicini, have
the responsibility to certify funds in the absence of the primary
Funds Officer. Hines, Lash, and Ingemi have all testified that,
during the relevant time period prior to February or March of
2003, Back Up or Alternate Funds Officers have the
responsibilities to certify funds and that John Pedicini, as a
Back Up or Alternate Funds Officer, had the responsibility to
certify the availability of funds in the absence of the Primary
Funds Officer. Such discrepancies warrant Plaintiff deposing
these two witnesses to address these discrepancies with them.

In Paragraphs 15 and 16 of Lisha Dorman's affidavit in
support of Defendants' Opposition and paragraph 11 of Larry
Blim's affidavit in support of Defendants' Opposition, Lisha
Dorman and Larry Blim directly contest Hines' testimony that a
supervisor or manager cannot be appointed a back up funds officer
with certification of availability of funds responsibilities. See
Paragraphs 33 and 34 of SCF Aff. Lisha Dorman and Larry Blim
should be allowed to expand upon their testimony on this issue
and reconcile their testimony with that of Martin Hines in the
proper forum-a deposition.

In addition, Plaintiff has obtained documentary evidence
that Plaintiff would like to present Lisha Dorman and Larry Blim

7

that contradicts their statements in their affidavits. Lisha
Dorman and Larry Blim should be given the opportunity in
deposition to reconcile their Affidavits submitted in support of
Defendants' Opposition with contradictory documentation in
Plaintiff's possession. For example, attached as Exhibit A is an
authorization form 674 signed in 2002 by Plaintiff's superiors,
Douglas MacAllister and Joseph Stanco authorizing Plaintiff to
release and unrelease funds when USDA-FNS changes their release
and unrelease functions from paper system to computerized system
in 2002.  This authorization allows Plaintiff to commit funds in
FFIS as a funds officer. In paragraph 8 of her affidavit, Lisha
Dorman states, "A funds officer is also responsible for (I)
certifying that funds are available before spending actions
occur, (ii) committing the funds for spending actions in the
agency financial system (i.e. the Foundation Financial
Information System ("FFIS")...." As such, Ms. Dorman's affidavit
supports Plaintiff's contention that his is a Back Up Funds
Officer.

In addition, the FNS Handbook, as identified by Hines in his
deposition testimony (See Paragraph 35 of SCF Aff.), clearly
states in 8-2 (f) that, other than the Agency Travel Coordinator
(Gail Brown, not Plaintiff) and the Agency Travel Coordinator's
Backup (Mary Ellen Cajka, not Plaintiff) only a funds officer can
have the rights granted by Form 674 to Plaintiff-the rights to

8

release travel documents and authorizations through TRVL and into FFIS. This portion of the FNS Handbook is attached hereto as Exhibit B. These rights are part of the certification process and Plaintiff has claimed that he held certification rights and was and should be the Backup or Alternate Funds officer. The rights to release and unrelease given to Plaintiff by Form 674 are also directly related to Lisha Dorman's former duties in etravel and FFIS and Larry Blim's duties in FFIS. As such, it is important that Plaintiff be able to depose both Lisha Dorman and Larry Blim to allow them to reconcile discrepancies between their affidavits and Plaintiff's affidavit and Hines' testimony and discrepancies between their affidavits and these and other documents and depositions in Plaintiff's possession.

### Point 5. Lisha Dorman's and Larry Blim's Affidavits Reveal Additional Issues To Which They Can Testify

In paragraph 16 of her Affidavit in support of Defendants' Opposition and in paragraph 11 of his Affidavit in support of Defendants' Opposition, Lisha Dorman and Larry Blim mention the procedure for the certification of the availability of funds. Despite Douglas MacAllister's contention that he is the back up for certification of availability of funds and Lisha Dorman's assertion in paragraph 15 of her affidavit that someone in MacAllister's position might hold the authority to certify funds, MacAllister's testimony in his deposition shows that he did not

9

follow or know the procedure for funds certification as described in paragraph 16 of Lisha Dorman's affidavit and paragraph 11 of Larry Blim's affidavit. Douglas MacAllister testified that he had the authority to certify the availability of funds, that he knew how to certify the availability of funds, and that certification process did not include checking anything in FFIS. See MacAllister Deposition Vol. 1 June 6, 2005 page 7 line 21 through page 22 line 18 attached hereto as Exhibit C.

Since the process Douglas MacAllister describes as being the certification process for the availability of funds is not the process described by Lisha Dorman and Larry Blim for certification by a supervisor or manager, it is essential that Lisha Dorman and Larry Blim be allowed to reconcile the differences between the testimony of the certification of availability of funds process. If Lisha Dorman's and Larry Blim's procedure in their affidavits is correct, then Douglas MacAllister's testimony is incorrect. Therefore, Lisha Dorman's and Larry Blim's testimony bears on the truthfulness and/or accuracy of Douglas MacAllister's testimony. As such, Plaintiff should be allowed to question Lisha Dorman and Larry Blim about the discrepancies in procedure in their affidavits and Douglas MacAllister's deposition and the meaning or consequences of Douglas MacAllister's attempts to certify the availability of funds if he did not follow the correct procedure.

10

**Point 6. Lisha Dorman's and Larry Blim's Affidavits do not Detail Who Is the Back Up Funds Officer at FNS-NERO and Who at FNS-NERO has Certification Duties and Responsibilities**

Nowhere in the affidavits signed by Lisha Dorman and Larry Blim in support of Defendants' Opposition do Larry Blim or Lisha Dorman state who at FNS-NERO has certification right or responsibilities for the availability of funds. Nor do they state who is the back up funds officer at FNS-NERO. These identifications should be within Larry Blim and Lisha Dorman's knowledge by virtue of their positions. While their affidavits suggest that a supervisor or manager *might* be appointed a back up funds officer with certification responsibility, neither Lisha Dorman nor Larry Blim say that any such supervisor had ever been appointed such position or responsibilities at FNS-NERO. However, Douglas MacAllister, Arthur LeBlanc, and Michael Malone have all claimed that they had that position and responsibilities. As such, Plaintiff should be allowed to depose Lisha Dorman and Larry Blim on these issues.

CONCLUSION

Accordingly, for the reasons articulated above and in Plaintiff's Motion for Leave to Depose Additional Witnesses, Plaintiff's Memorandum in Support of the Motion for Leave to Depose Additional Witnesses, Plaintiff's Affidavit and exhibits attached thereto in Support of Plaintiff's Motion for Leave to Depose Additional Witnesses, and the Affidavit of Sarah Catapano-

11

Friedman and the exhibits attached thereto in Support of
Plaintiff's Motion for Leave to Depose Additional Witnesses,
Plaintiff requests this Honorable Court order Angela MacElmurry,
Lisha Dorman, and Larry Blim to be deposed by Plaintiff.


Dated: November 10, 2005

                              Respectfully Submitted,


                              /s/ Robert S. Catapano-Friedman
                              Robert S. Catapano-Friedman
                              The Catapano-Friedman Law Firm
                              50 Franklin Street, 4th Floor
                              Boston, MA 02110
                              (617) 542-7711
                              Counsel for Plaintiff
                              BBO # 078980

**EXHIBIT A (1 Page)**

faxed on          MAR 1 4 2002

U.S. DEPARTMENT OF AGRICULTURE - Food and Nutrition Service

# FNS COMPUTER SYSTEM ACCESS REQUEST

**DATE OF REQUEST**

3/12/02

PLEASE TYPE. Instructions for completing this form may be found in Section 110 of Handbook 702

| 1. PRINT USER NAME (First, MI, LAST) | USER SIGNATURE | LOGON ID ☐ NEW ☑ EXISTING |
|---|---|---|
| John G. Pedicini | John H. Pedicini | FN 107 |

**2A. FNS USER (Check One)**

HQ ☐          REGION ☑          FIELD ☐

**3.** ORGANIZATION NAME (Federal or State Agency, Branch/Division, RO program, FO or satellite, or Company)

FNS - NERO

**2B. NON FNS USER (Check One)**

USDA ☐     OTHER ☐     STATE ☐     FIELD ☐

OTHER ☐

STATE ACCESS CODE: _____

PRINT STATE SECURITY OFFICER NAME: _____  PHONE NO: _____

STATE AGENCY VPS PRINTER ID: _____

**4. ADDRESS:**

U. S. D. A

10 Causeway St., Rm 501

Boston,     MA     02222
CITY          STATE     ZIP CODE

**5.** TELEPHONE NO. (Give Area Code & Number) _____

**5A.** SOCIAL SECURITY NO. _____
(NEW NFC USERS ONLY)

## 6. SYSTEM ACCESS ACTION

**a.** SYSTEM(S) YOU ARE REQUESTING ACCESS TO

☐ LAN (Local Use Only)        ☐ MAINFRAME        ☐ BRSB (Specify) _____

☐ RO/HQ MINI _____         ☐ CLIENT/SERVER     ☑ OTHER (Specify) TRVL
(Regional Location)

**b.** ACCESS REQUIREMENTS          Right to Release + Unrelease
Travel Documents.

| ACTION REQUESTED (Add, Modify, or Delete) | NAME OF SYSTEM (Ex. FSPIIS, ROAP, SNPIIS, STARS TRYL, CADI, PAYPERS) | SRP FORM/SCREEN {System Class or} (Ex. FNS-269, FNS-388A) | TYPE OF ACCESS (1) Inquiry, (2) Update, (3) Certify, (4) Delete, (5) Post, (6) Reject | TIME LIMIT (Beginning and end date, or NONE) |
|---|---|---|---|---|
| ADD | TRVL | Travel Document | Release and unrelease | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**c.** "COMMENTS, JUSTIFICATIONS, SPECIFIC INSTRUCTIONS"

_____

_____

_____

| APPRVL | DISAPP | DATE | 7. APPROVALS | |
|---|---|---|---|---|
| ☑ | ☐ | 3/12 | a. SIGNATURE OF SUPERVISOR | PHONE NO. 617-565-6451 |
| ☑ | ☐ | 3/13/02 | b. SIGNATURE OF REGIONAL DEPUTY OR STATE COMPUTER SECURITY OFFICER | PHONE NO. 617-565-6483 |
| ☑ | ☐ | 3/12/2002 | c. SIGNATURE OF AUTHORIZING OFFICIAL OR REGIONAL OFFICE COORDINATOR | PHONE NO. 617-565-6476 |
| | | | 8. DATE RECEIVED BY COMPUTER SECURITY OFFICER/DCSO MCSC | DATE COMPLETED |

FORM FNS-674 (5/98) Previous edition obsolete
Electronic Form Version Designed in JetForm 5.01 version

**EXHIBIT B (2 Pages)**

# FNS HANDBOOK 101

Published on December 9, 2002

First Edition

FNS HANDBOOK 101

example).

e      Resolves discrepancies. Incorrect charges can be transferred to the correct accounting code by use of a Form AD-757 as described in Chapter 3, section 304 and Chapter 11, section 1103 of this Handbook.

f      Releases travel vouchers in the NFC Travel System. Only funds officers, the Agency Travel Coordinator and the Agency Travel Coordinator's Backup can release travel vouchers in the NFC Travel System. Once this document is released it will be feed electronically into FFIS.

Chapter 5 of the FFIS Desk Top Procedures for Data Entry and Inquiry outlines how to process both the AD-202 and the AD-616 and includes specific examples of FFIS entries.

When Form AD-202 is approved and certified for available funds, the funds officer shall enter the estimated costs of the travel in FFIS. The Funds Officer will make one entry for object class 2100 and one entry for object class 2575. There will also be a third entry for object class 2111 when airline or train tickets are purchased with a GTR or through GVTS. However, per GSA regulations at 41 CFR 301-51.1, employees are required to use their government credit card to purchase airline or train tickets unless granted an exemption.

Upon completion of travel, the traveler shall forward a copy of the travel voucher to the funds officer. The funds officer will use this as a basis for accepting travel payments in accordance with Chapter 5 of the FFIS Desk Top Procedures, and also to reconcile travel reports in the Financial Data Warehouse.

NOTE: The Miscellaneous Expenses category (Section D, block 7) for Temporary Duty Travel (TDY) is recorded under object class 2575, which is an all other expense. Therefore, any charges appearing in this column for TDY travel will be recorded in the all other category, not travel.

2     National Finance Center.

a      Processes all approved travel vouchers including an audit and verification of payment information for propriety and payment authorization.

b      Provides an explanation of any amounts suspended or disallowed by forwarding a Form AD-216 to the traveler's originating office.

c      Certifies for payment approved travel vouchers and bills and collects overpayments erroneously certified.

d      Obligates charges according to the appropriate accounting code and object class.

e      Bills carriers for unused tickets and portions of tickets paid by Government Transportation Request (GTR) and reported on the travel voucher.

f      Provides information on the status of vouchers when requests are made to NFC

**EXHIBIT C (8 Pages)**

1

Volume I
Pages 1 to 39
Exhibits None

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - -x
                                 :
JOHN G. PEDICINI,               :
          Plaintiff,            :
                                 :
      vs.                        :    Civil Action
                                 :    No. 04-12395 JLT
UNITED STATES OF AMERICA, and   :
ANN M. VENEMAN, SECRETARY,      :
UNITED STATE DEPARTMENT OF      :
AGRICULTURE,                    :
          Defendants.           :
                                 :
- - - - - - - - - - - - - - - - -x

        DEPOSITION OF DOUGLAS MacALLISTER, a
witness called on behalf of the Plaintiff, taken
pursuant to the Federal Rules of Civil Procedure,
before Jane M. Williamson, Registered Merit Reporter
and Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Doris O. Wong
Associates, 50 Franklin Street, Boston,
Massachusetts, on Monday, June 6, 2005, commencing
at 4:06 p.m.

PRESENT:

    The Catapano-Friedman Law Firm
        (By Robert S. Catapano-Friedman, Esq., and
        Sarah Catapano-Friedman, Esq.)
        50 Franklin Street, Boston, MA  02110, for
        the Plaintiff.


        (Continued on Next Page)

Page 5

[1] your right, I assume he's your counsel in these
[2] proceedings; is that correct?
[3]     **A:** Yes. I believe he is.
[4]     **Q:** I'm going to ask a question. And after I
[5] ask my question, I want you to pause briefly to
[6] allow your counsel opportunity, if he chooses, to
[7] object. Then I want you to answer the question. If
[8] your counsel objects, give him time to finish his
[9] objection and follow his instructions.
[10]     Is there any reason today — now, this is
[11] an extension of the court. Even though we're here
[12] in a conference room, you're under oath. It's your
[13] obligation to tell the truth. Do you understand
[14] that?
[15]     **A:** Yes, I do.
[16]     **Q:** Is there any reason today why you cannot
[17] tell the truth? Are you under any kind of
[18] medication, physical or mental impairment that will
[19] impair your ability to tell the truth as we sit here
[20] today?
[21]     **A:** No, I am not.
[22]     **Q:** The person to your left is a stenographer.
[23] She takes down the words that you say. Your
[24] responses have to be verbal. So hand expressions,

Page 7

[1] Agriculture, Food and Nutrition Service. I'm
[2] employed in the northeast regional office.
[3]     **Q:** How long have you been in the northeast
[4] regional office?
[5]     **A:** Since May of 1976.
[6]     **Q:** And what's your current position?
[7]     **A:** I am the director for financial management.
[8]     **Q:** And how long have you held that position?
[9]     **A:** I believe it will be 16 years this month.
[10]     **Q:** So that's since 1989?
[11]     **A:** Yes.
[12]     **Q:** Can you tell us what your duties are as the
[13] director of the financial management unit?
[14]     **A:** I manage the information technology
[15] section, the support services section, the financial
[16] management section, to include the accounting, the
[17] budgeting, grants management, report analysis.
[18] Basically I'm overall responsible for putting
[19] together the work plans that meet the goals and
[20] requirements and aims of the agency.
[21]     **Q:** And as part of your duties, are you
[22] authorized to delegate certifying of funds
[23] authority?
[24]     **A:** Yes, I am.

Page 6

[1] nods, she can't take down. So when I ask a
[2] question, I need a verbal response. Do you
[3] understand that?
[4]     **A:** Yes, I do.
[5]     **Q:** It's also very important that you
[6] understand the questions I ask you. So if you don't
[7] understand any of the questions I ask you, I want
[8] you to tell me you don't understand it, so that I
[9] can rephrase the question in a way that you can.
[10] Can we agree to that?
[11]     **A:** Yes, we can.
[12]     **MR. WILMOT:** And Bob, before you continue,
[13] for the record, I assume we're going by the same
[14] stipulations?
[15]     **MR. CATAPANO-FRIEDMAN:** Same stipulations
[16] we made in the prior. And I don't think we need to
[17] restate this. We'll just automatically, if we can,
[18] go by the same stipulations in each deposition in
[19] this case. Is that agreeable to you, Mr. Wilmot?
[20]     **MR. WILMOT:** That's fine.
[21]        **BY MR. CATAPANO-FRIEDMAN:**
[22]     **Q:** Mr. MacAllister, can you tell me who your
[23] employer is.
[24]     **A:** I work for the United States Department of

Page 8

[1]     **Q:** And where did you receive this
[2] authorization?
[3]     **A:** I have been authorized for as long as I can
[4] remember by my regional administrator from nineteen
[5] probably eighty-nine or ninety.
[6]     **Q:** And what is the source of your
[7] authorization?
[8]     **A:** My regional administrator.
[9]     **Q:** Are these authorizations verbal or in
[10] writing?
[11]     **A:** They probably were in writing. I do not
[12] have a copy of them.
[13]     **Q:** So the only authorization that you can tell
[14] us about, then, is verbal at this point in time?
[15]     **A:** I have, I believe, letters from my current
[16] regional administrator to the delegates to me.
[17]     **Q:** Letters from your current regional
[18] administrator, like in 2003 and 2004?
[19]     **MR. WILMOT:** Objection.
[20]     **A:** I don't remember the exact dates.
[21]     **Q:** Now, do those letters delegate to you
[22] backup certifying rights or does it allow you to
[23] name who has the authority to certify funds?
[24]     **A:** I believe the letters state that the

Page 9

[1] financial officer — I think that's the title — has
[2] the delegated right, that the supervisor of the
[3] financial officer has a delegated right, and that I
[4] have a delegated right.
[5]     Q: You have a delegated right.
[6]     A: Uh-hum.
[7]     Q: I don't believe I've seen these letters.
[8] Have you produced them to your counsel?
[9]     A: Yes.
[10]     Q: Can you produce them for us.
[11]     MR. WILMOT: I off the record.
[12]     (Discussion off the record)
[13]         BY MR. CATAPANO-FRIEDMAN:
[14]     Q: My question is, do you have the right to
[15] delegate to other individuals certifying of funds
[16] authority?
[17]     A: And I thought we just said orally from my
[18] regional administrator before, yes, I have.
[19]     Q: Now, do you have something in writing that
[20] gives you this authority to delegate certifying
[21] authority to other employees?
[22]     A: Specifically in writing, no. No.
[23]     Q: So you don't have anything in writing,
[24] either before or under your current administrator,

Page 10

[1] that gives you the right to delegate to other
[2] employees this authority, correct?
[3]     A: Not explicitly, correct.
[4]     Q: But you do have in writing the delegation
[5] to you to certify funds?
[6]     A: Yes, I do.
[7]     Q: And this is because you have the ability to
[8] do so, to certify funds, correct?
[9]     A: Yes.
[10]     Q: And your current administrator, Frances
[11] Zorn, delegated to you the authority to certify
[12] funds, correct?
[13]     A: Yes, she did.
[14]     Q: Who else in the northeast region of FNS has
[15] the authority to certify funds?
[16]     A: The funds officer, who currently is Marty
[17] Hines; the supervisor to the funds officer in his
[18] absence; and then myself.
[19]     Q: And who is the supervisor to the funds
[20] officer?
[21]     A: Currently it's Mr. Michael Malone.
[22]     Q: And in the past who was it?
[23]     A: Art LeBlanc, Joe Stanco.
[24]     Q: And all of you know how to certify funds?

Page 11

[1]     A: I would say yes.
[2]     Q: Can you tell me what process you go through
[3] to certify funds.
[4]     A: Basically certification is a stamp on a
[5] procurement document. Most of the AD700, it has a
[6] stamp that says "Funds are available," and you sign
[7] on that little block where it says "Funds are
[8] available."
[9]     Q: Do you know who is responsible for that
[10] stamp?
[11]     A: I'm not sure I understand.
[12]     Q: Well, who has custody of that stamp?
[13]     A: The budget officer or financial officer.
[14]     Q: And that's Marty Hines?
[15]     A: Yes, it is.
[16]     Q: Are you given custody of that stamp in his
[17] absence?
[18]     A: Do I have that stamp personally? No, I do
[19] not.
[20]     Q: Do you have use of that stamp when Marty
[21] Hines is not available?
[22]     A: We have in the past located the stamp and
[23] used it. We also have signed funds availability
[24] without the stamp, certification without the stamp.

Page 12

[1]     Q: So when Marty Hines is not available, you
[2] look for the stamp? Is that the first thing you do,
[3] is look for the stamp?
[4]     A: Yes.
[5]     Q: And if you can locate the stamp, you use
[6] it, right?
[7]     A: Yes.
[8]     Q: And if you can't locate it, you certify
[9] without the stamp, correct?
[10]     A: Yes.
[11]     Q: And that's the entirety of the funds
[12] certification process?
[13]     A: That's the entirety of the visible portion
[14] of funds certification, yes.
[15]     Q: Is there an invisible portion of funds
[16] certification?
[17]     A: The basic purpose behind the certification
[18] of eligibility of funds is to make the determination
[19] that the funds that are being requested are to be
[20] used in the manner — okay. It's not — what it is
[21] is a statement that management wants to use the
[22] funds for that purpose, whether it be for a computer
[23] or for whatever.
[24]     Q: Tell me what the invisible portion is.

Douglas MacAllister
Vol. 1, June 6, 2005    Case 1:04-cv-12395-JLT    Document 39-2    Filed 11/10/2005    Page 22 of 26    John G. Pedicini  v.
United States of America, et al.

Page 13

[1] What do you do as part of the invisible portion of
[2] certifying funds?

[3]    A: Basically make a determination seeing what
[4] the funds are requested for; that we do, indeed,
[5] want to buy that particular equipment or whatever
[6] with our available funds.

[7]    Q: Can you tell me step by step what you do.
[8] Say I'm somebody who has asked you for some funds.
[9] What would be the first thing you would do?

[10]    A: Well, the entire process — first there's
[11] an originator of a request for a procurement. Then
[12] the document, when it's completed, goes to support
[13] services; or when the request comes in, it goes to
[14] support services. Support services creates the
[15] AD700.

[16]    Q: So an AD700 is created?

[17]    A: Yes.

[18]    Q: What is an AD700?

[19]    A: It's a procurement document. I believe
[20] we've provided some samples.

[21]    Q: So somebody else creates an AD700?

[22]    A: Support services.

[23]    Q: And then what happens?

[24]    A: The next step in the process is to send it

Page 15

[1] authority to sign.

[2]    Q: So what would be within your authority to
[3] sign?

[4]    A: Usually anything under $500 and things of a
[5] routine nature. Like, you want to buy a toner
[6] cartridge. Pretty expensive stuff; it can go up to
[7] $1,00 or $3,000. But because it's routine, I've
[8] been delegated the responsibility to sign it, so it
[9] doesn't have to go up to the front office and waste
[10] their time, because it's pretty much a supply.

[11]    Q: So even when Marty Hines is available,
[12] there are certain small items that you can sign
[13] without sending it to him for certification?

[14]    A: No. We're not finished with the process
[15] yet.

[16]    Q: So it comes to you?

[17]    A: Right.

[18]    Q: What happens to it? You look at it, and
[19] what do you do next?

[20]    A: As I say, if it meets my delegated
[21] authority, I can make a decision to sign approval.
[22] If it doesn't, I'll send it up to the front office,
[23] and they will sign their approval or their denial,
[24] whichever it may be, and then it's returned.

Page 14

[1] for approval of the front office.

[2]    Q: The AD700 form?

[3]    A: Yes. It comes to me, and then I send it to
[4] the front office for approval or I sign it based on
[5] delegations to me.

[6]    Q: So this AD700, which is a request for
[7] funds, then comes to you in your position as
[8] director of the financial management unit, correct?

[9]    A: Yes.

[10]    Q: Not as a backup funds officer?

[11]    A: Right.

[12]    Q: So it comes to you. And what do you do
[13] with it?

[14]    A: I take a look at it. And if it's within my
[15] delegated authority, I may sign for the regional
[16] administrator. There's a stamp that says "regional
[17] administrator allowance" — I don't know exactly
[18] what it says — yes or no in regards to the
[19] procurement.

[20]    And when I sign it, I sign for the regional
[21] administrator. If I determine it's not within my
[22] delegated responsibility, it goes up to the front
[23] office for either the regional administrator or the
[24] deputy administrator, because they both have the

Page 16

[1]    Q: So it's either been approved or denied.
[2] And then it comes back to you?

[3]    A: To support services. It doesn't have to
[4] come back to me every time. Most times the front
[5] office will usually send it back to me, but then I
[6] send it back to support services; or the front
[7] office will send it directly back to support
[8] services, as the procurement clerk gets it back
[9] again.

[10]    Q: So you're still acting in your director of
[11] the financial management unit function at this
[12] point? You're not acting as backup funds officer?

[13]    A: I would argue that I'm acting as backup
[14] funds officer because it's part of my responsibility
[15] as the financial management director. So I'm always
[16] acting as the financial management director.

[17]    Q: Okay. So at this point it's a backup funds
[18] officer function that you're performing?

[19]    A: No. I am backing up the management of the
[20] front office at this point, at the approval process
[21] point.

[22]    Q: Okay. What happens next?

[23]    A: As I say, it's either returned to me or
[24] directly to support services, but I will return it

Page 17

[1] to support services.
[2] **Q:** Okay.
[3] **A:** Then support services will return it to the
[4] budget unit for the certification of availability of
[5] funds. That's basically the last step in the
[6] process.
[7] **Q:** The last step in the process, the
[8] certification.
[9] **A:** Right.
[10] **Q:** So so far, certification hasn't occurred?
[11] **A:** Correct.
[12] **Q:** Now, what's the last step before the
[13] certification of funds part of the process?
[14] **A:** Support services has it returned to them
[15] approved. Because if it's disapproved, they're not
[16] going to send it to budget.
[17] **Q:** Then the certification occurs. What's the
[18] first step that occurs in the certification process?
[19] **A:** Basically it's a stamp that their funds are
[20] available and a sign-off.
[21] **Q:** So the only thing you do as the certifying
[22] officer is once it's been approved by everybody
[23] else, you will affix a stamp to the document, and
[24] you sign your name that the funds are available?

Page 18

[1] **A:** Not quite.
[2] **Q:** Tell me exactly what you do.
[3] **A:** Part of the thing you have to look at is to
[4] determine whether based on your knowledge of
[5] appropriations law, that's an appropriate use of
[6] funds of the agency. With that the stamp is affixed
[7] that the funds are available, and basically it says
[8] they're available for this purchase and we're going
[9] to use it that way.
[10] **Q:** So you make a determination based on your
[11] knowledge of law whether it's an appropriate use or
[12] not?
[13] **A:** Yes.
[14] **Q:** And if you decide it's not an appropriate
[15] use, what do you do?
[16] **A:** We will not certify it.
[17] **Q:** You will not certify it?
[18] **A:** Correct.
[19] **Q:** And if you determine that it is an
[20] appropriate use, what do you do?
[21] **A:** If the budget officer's not there and it's
[22] come to me, I will certify it.
[23] **Q:** And you'll either affix a stamp, if you can
[24] find it; or if you can't find it, you'll just say

Page 19

[1] "approved" and you sign it and that's it?
[2] **A:** Usually I will also write "Funds are
[3] available" besides just signing it." I substitute
[4] for the stamp with my own handwriting.
[5] **Q:** "Funds are available." And how do you know
[6] that the funds are available?
[7] **A:** Basically because we have an appropriation
[8] that we haven't expended; and if we want to use it
[9] for that, we'll go ahead and use it for that.
[10] **Q:** So you just have general knowledge that
[11] there's an appropriation and that funds are
[12] available and you have in your head that they're
[13] available. And if it's something that funds are
[14] available for, you know it's available and you say
[15] it's available.
[16] **A:** No. We have status reports. We have
[17] periodic status reports that tells us basically
[18] where we are in spending our appropriations and will
[19] there be travel, et cetera. So obviously there's a
[20] bit of knowledge, too, that goes into where we are
[21] currently with our appropriations.
[22] **Q:** So how frequently do you receive these
[23] status reports?
[24] **A:** We have a monthly status report, but we

Page 20

[1] normally don't start at least until — well, because
[2] of the appropriation process, Congress doesn't pass
[3] our appropriations on time, as I think everybody is
[4] aware, they normally don't start until the first of
[5] the year or February that we start the budget status
[6] reports.
[7] **Q:** Okay. So from your monthly status report,
[8] plus your general knowledge of what's happening in
[9] the agency, since then, you know — you have a good
[10] idea whether funds are available or not. And based
[11] on that, you can say whether they're available or
[12] not; is that right?
[13] **A:** Yes, but I do need to correct something.
[14] They used to be monthly. I don't believe those
[15] status reports are monthly anymore, for a couple of
[16] years. I believe they're quarterly now.
[17] **Q:** They're quarterly now.
[18] **A:** Yeah.
[19] **Q:** And does that impair your ability to know
[20] whether funds are available or not or do you think
[21] that's sufficient, for quarterly?
[22] **A:** That's sufficient, because I have
[23] interaction with the budget officer.
[24] **Q:** And who is the budget officer?

Case 1:04-cv-12395-JLT    Document 39-2    Filed 11/10/2005    Page 24 of 26

Douglas MacAllister                                                    John G. Pedicini    v.
Vol. 1, June 6, 2005                                          United States of America, et al.

Page 21

[1]   **A:** Marty Hines.

[2]   **Q:** And how often do you have interaction with

[3] him?

[4]   **A:** Every day.

[5]   **Q:** Every day. So you know, just through your

[6] interaction with Marty Hines, whether funds are

[7] available or not for a particular procurement?

[8]   **A:** I know that with my interaction with Marty

[9] Hines, where we are in our appropriation process,

[10] yes.

[11]   **Q:** Okay. So based on your interactions with

[12] Marty Hines, the reports you get and your general

[13] knowledge of what's happening, you are able to

[14] certify funds are available or not available with

[15] respect to a particular request?

[16]   **A:** Yes.

[17]   **Q:** Is that correct?

[18]   **A:** Yes.

[19]   **Q:** Is there anything else that goes into that

[20] process?

[21]   **A:** Whenever I do certify that funds are

[22] available, I do check with the budget officer when

[23] he's available.

[24]   **Q:** But if he's not available, what do you do?

Page 22

[1]   **A:** I go ahead and make a decision, but I do

[2] check with him afterwards. Understand that I only

[3] certify funds available if it is required that it be

[4] done when he's not there. If it can wait, it waits.

[5]   **Q:** But there are occasions when it can't

[6] wait, right?

[7]   **A:** Sure, there are.

[8]   **Q:** And there are occasions where you've

[9] certified availability of funds when Marty Hines has

[10] not been around, correct?

[11]   **A:** Yes.

[12]   **Q:** And then when he comes back —

[13] (Witness confers with Mr. Wilmot)

[14]   **A:** As a matter of fact, I would say to you

[15] that there's been five times in 1,100 to 1,200

[16] procurement documents since 2002 that I have signed

[17] for the availability — certified the availability

[18] of funds.

[19]   **Q:** And you said in addition to you, there are

[20] a couple of other individuals — Joseph Stanco,

[21] Arthur LeBlanc and Michael Malone — who have

[22] certifying rights; is that correct?

[23]   **A:** There is only one individual besides myself

[24] and the budget officer who has certifying rights.

Page 23

[1] Those are people who have at some point in time had

[2] certifying rights because they were the supervisor.

[3]   **Q:** So there are two people besides Marty Hines

[4] who have certifying rights. That would be Marty

[5] Hines' immediate supervisor and you, who is the

[6] supervisor above him, correct?

[7]   **A:** Yes.

[8]   **Q:** And do you know how many times since 2002

[9] the immediate supervisor has certified funds?

[10]   **A:** In my review of the files, the documents I

[11] have touched, I have not seen it.

[12]   **Q:** You haven't seen it happen once?

[13]   **A:** No, although I will say I believe it was

[14] supposed to have been done this year, but the files

[15] for this year are not as put together as the files

[16] are for prior years.

[17]   **Q:** Okay. So it may well have happened then,

[18] but it doesn't happen that often; is that right?

[19]   **A:** It's very rare, actually.

[20]   **Q:** And the current person who has certifying

[21] rights is Michael Malone; is that the name?

[22]   **A:** That's the current supervisor, yes.

[23]   **Q:** And have you discussed with him the

[24] certifying process?

Page 24

[1]   **A:** Yes, I have.

[2]   **Q:** And can you tell me whether Michael Malone

[3] follows the identical process that you follow in

[4] certifying funds?

[5]   **A:** If the one event that I'm aware of that

[6] Michael might have signed that certification for

[7] eligibility, yes, we discussed it before he signed

[8] it. Other than that, I do not believe that Michael

[9] Malone has had the opportunity or the — has been

[10] the only person around to certify.

[11]   **Q:** Okay. And when he did certify it in that

[12] one event, did you go over with him the process that

[13] you go over — that you follow in certifying funds?

[14]   **A:** I spoke with him about the reasonableness

[15] and the availability of the funds for that

[16] particular procurement, yes, I did.

[17]   **Q:** And he was able to certify funds on that

[18] one instance?

[19]   **A:** I would say that if he did, yes, he would

[20] have been able to. I can't corroborate for you that

[21] we actually ended up signing it or did indeed wait

[22] for Marty Hines.

[23]   **Q:** But he asked you for your guidance on how

[24] to do it?

E R R A T A   S H E E T   DOUGLAS MACALLISTER

| Page | Line | Corrections |
|------|------|-------------|
| 8 | 16 | "to the" change to "that" to reflect what I meant/said. |
| 11 | 5 | "Most of" to "mostly" to reflect what I meant/said. |
| 12 | 18 | "eligibility" to "availability" to reflect what I meant/said. |
| 17 | 19 | "their" to "the" to reflect what I said. |
| 19 | 17 | "tells" to "tell" to reflect what I said |
| 24 | 7 | "eligibility" to "availability" to reflect what I meant/said. |
| 25 | 17 | "wouldn't" to "went" to reflect what I said. |
| 26 | 1 | "eligibility" to "availability" to reflect what I meant/said. |
| 26 | 19 | "eligibility" to "availability" to reflect what I meant/said. |
| 28 | 17 | Add "division at" after word "budget" to reflect what I meant/said. |
| 30 | 12 | "There has never been" change to "I do not recall that there has ever been". Upon further consideration of the question I am not absolutely certain. Until sometime around the mid 1990's NERO had a second budget analyst position, GS560, grade 11/12. That position supported the work of the Budget Officer, Marty Hines. The job title was Budget Analyst, not Backup Funds Officer or Alternate Funds Officer. The latter two titles have never existed formally in NERO, or in all of FNS's financial community that I recall. When that staff person left NERO we lost that |

Douglas A. MacAllister

( cont'd )

7/28/2005

E R R A T A    S H E E T    DOUGLAS MAC ALLISTER

Page        Line        Corrections

30    12 (cont'd)    position in our organizational

structure. We have had only one

GS-560 position ever since, Marty

Hires at grade 12

Douglas A. Mac Allister
7/28/2005