**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
——————————————————————

| |
|---|---|
| **JOHN G. PEDICINI,** | \| |
| | \| |
| **Plaintiff** | \| |
| | \| **CIVIL ACTION NO. 04-12395-JLT** |
| **-vs-** | \| |
| | \| |
| **UNITED STATES OF AMERICA** | \| |
| **UNITED STATES** | \| |
| **DEPARTMENT OF AGRICULTURE,** | \| |
| **ANN M. VENEMAN, SECRETARY,** | \| |
| **Defendants** | \| |

## Plaintiff's Motion for Leave to Depose Additional Witnesses, Make Document Requests, and Extend Discovery Period

Pursuant to Federal Rules of Civil Procedure Rules 26, 30(a)(2) and 34 and Local Rule 26.1(C), Plaintiff John G. Pedicini requests permission to depose two additional relevant witnesses before January 31, 2005, namely, Roger Hamilton, Supervisor in the Financial Management Department at the USDA Food and Nutrition Services Northeast Regional Office and Roger Potvin, Grade 11 at the USDA Food and Nutrition Services Northeast Regional Office on the grounds that he discovered on November 3, 2005 additional relevant information known by these two individuals. Bruce Potvin and Roger Hamilton have relevant

1

information on the key issue of Plaintiff, John G. Pedicini's career advancement, including Plaintiff's allegations that Defendants are blocking his career advancement and Plaintiff's allegations of retaliatory motive and animus as the basis for Defendants' actions against him as alleged in his Amended Complaint.

Plaintiff also asks this Honorable Court allow him to obtain Documents which Defendants refused to produce to Plaintiff voluntarily absent a motion and which are relevant to Plaintiff's allegations of retaliation, namely:

"A copy of the postings of the Section Chief FSP/IF position in FNS-NERO from 1999-present, namely all the copies of the position postings between the time Arthur LeBlanc left the position and Joseph Stanco was hired for the position and after Joseph Stanco left FNS-NERO, including all versions posted of announcement number NE-043-03-0 (posted on or around 7/16/03, 8/29/03 and 10/31/03), NE-017-01-O (all notices-in 2001 there should be at least two notices--crediting plans, and rankings for this vacancy), 99-05-NE-M (the number for this last one is a bit hard to discern because it is faded, but we would like the 1999 posting for the position before Joseph Stanco was hired), all versions posted of the posting for a temporary Supervisory Financial Management Specialist, GS-501-13 at FNS-NERO with a closing date of October 6, 2005, and copies of all of the

2

corresponding crediting plans and all the corresponding internal and external lists ranking the applicants for each posted version of the postings listed above. As you requested, the paragraphs in which John Pedicini's allegations regarding lost promotion and obstruction of his career in the Amended complaint appear, for example, without limit, in paragraphs 23, 24, 148, 149, 152, 172, 173."

Plaintiff asks this Honorable court grant an extension of the Discovery Period in the above captioned matter until January 31, 2006 to allow sufficient time to complete the discovery herein requested and for review of and follow on that discovery.

In support of this motion, Plaintiff files a memorandum with this motion and attaches to this motion and files with this motion an Affidavit of Sarah Catapano-Friedman with Exhibits and an Affidavit of John G. Pedicini, Plaintiff and asks this court to order the above named witnesses to be deposed, the documents requested be produced, and the discovery period be extended through January 31, 2006.

Dated: November 15, 2005

Respectfully Submitted,
/s/ Robert S. Catapano-Friedman
Robert S. Catapano-Friedman
The Catapano-Friedman Law Firm
50 Franklin Street, 4th Floor
Boston, MA 02110
(617) 542-7711
Counsel for Plaintiff
BBO # 078980

3

## **CERTIFICATION UNDER L.R. 7.1**

I certify that in accordance with Local Rule 7.1, I have
conferred with Defendants' counsel and have attempted in good
faith to resolve the issues addressed in this Motion on September
30, 2005, October 25, 2005, October 26, 2005, November 4, 2005,
November 8, 2005, and November 9, 2005 and that we were unable to
resolve the issues set forth in this motion.

/s/ Robert Catapano-Friedman
Robert S. Catapano-Friedman
Attorney for Plaintiff, John G. Pedicini

**<u>CERTIFICATION OF SERVICE</u>**

Pursuant to L.R. 5.2(b) I hereby certify that a true copy of the above document, the memorandum of law in support of the above motion, the affidavit of attorney Sarah Catapano-Friedman with exhibits attached to this document in support of the above motion, and the affidavit of John G. Pedicini attached to this document in support of the above motion will be served on the attorney of record for each Defendant by electronic notification by the court on November 15, 2005.

By: s/Robert S. Catapano-Friedman
Robert S. Catapano-Friedman, Esq.
The Catapano-Friedman Law Firm
Attorney for Plaintiff

Dated: November 15, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN G. PEDICINI, | &#124; |
| | &#124; |
|     Plaintiff | &#124; |
| | &#124; |
| | &#124; CIVIL ACTION NO. 04-12395-JLT |
| -vs- | &#124; |
| | &#124; |
| UNITED STATES OF AMERICA | &#124; Affidavit |
| UNITED STATES | &#124; |
| DEPARTMENT OF AGRICULTURE, | &#124; |
| ANN M. VENEMAN, SECRETARY, | &#124; |
|     Defendants | &#124; |

COMMONWEALTH OF MASSACHUSETTS )
                                   ) ss.:
COUNTY OF SUFFOLK           )

JOHN PEDICINI, being duly sworn, deposes and says:

    1. I am the Plaintiff in the above captioned case and I assert the following based on my personal observation and knowledge, I am over 18, and I am of sound mind and am mentally competent to testify to the matters contained in this affidavit.

    2. Since October 18, 2005 I have learned of two additional witness in the above captioned matter-Bruce Potvin and Roger Hamilton.

    3. Roger Hamilton is a supervisor whose Grade is higher than mine who works in my Section (Financial Management Section or "FM") at the USDA Food and Nutrition Services Northeast Regional Office ("FNS-NERO"). He is a supervisor in the SNP section of FM at FNS-NERO.

    4. Bruce Potvin is a Grade 11 employee at FNS-NERO.

    5. On November 3, 2005 I had lunch with Bruce Potvin and, during that lunch, Bruce Potvin revealed to me that he had a

1

conversation in or around September 2004 relating to my
allegations in District Court Of Massachusetts Docket No. 04-
12395-JT. Bruce Potvin told me that in or around September 2004
he was looking for a higher grade position at FNS-NERO or outside
of FNS-NERO. Bruce Potvin told me that at that time, in or around
September 2004, Bruce Potvin had a conversation with Roger
Hamilton about promotional opportunities. Bruce Potvin told me
that in that conversation Roger Hamilton told Bruce Potvin that
he (Roger Hamilton) had heard that Martin Hines was retiring and
there would be an opening in the Budget Analyst/Funds Officer
position (Martin Hines' position). Roger Hamilton then told Bruce
Potvin that they were looking for someone to fill the Budget
Analyst/Funds Officer position and then Roger Hamilton said to
Bruce Potvin, "and it's not going to be John Pedicini." Bruce
Potvin will also testify that it was this statement that made him
realize that FNS-NERO held an animus against me.

    7. I have claimed in the above captioned matter that
Defendants have sought to block my career advancement by reducing
my duties, reducing my title, and training others for the avenue
of career advancement available to me-into the Budget
Analyst/Funds Officer position.

    8. I believe Bruce Potvin will testify to his conversation
with Roger Hamilton and that Roger Hamilton told Bruce Potvin
that he (Roger Hamilton) had heard that Martin Hines was retiring
and there would be an opening in the Budget Analyst/Funds Officer
position (Martin Hines' position). Roger Hamilton then told Bruce
Potvin that they were looking for someone to fill the Budget
Analyst/Funds Officer position and then Roger Hamilton said to
Bruce Potvin, "and it's not going to be John Pedicini."

    9. I believe Roger Hamilton will testify that in or around
September 2004 Bruce Potvin came to him to discuss career
opportunities. I believe Roger Hamilton will testify that at that
point he told Bruce Potvin that he heard Martin Hines was
retiring and that there would be a vacancy in the Budget
Analyst/Funds Officer position. I believe Roger Hamilton will
also testify that my superiors were looking for someone to fill
the Budget Analyst/Funds Officer position and said, "and it's not
going to be John Pedicini." I believe that Roger Hamilton will
also testify to his reasons for this statement and will testify
that his statement meant that my superiors had a retaliatory
animus against me and were blocking my career advancement as a
result through reduction of duties, reduction of title, and
training other people in my duties relating to the position of
Back Up or Alternate Funds Officer which make me uniquely
qualified to be promoted to the position of Budget Analyst/Funds
Officer when Martin Hines retires from that position.

    10. Whether or not my superiors and FNS-NERO had a
retaliatory motive in reducing my duties, denying me training

opportunities, reducing my position and title, and training
others in my duties to advance instead of me is a key issue in
this case and it is a contested issue because Defendants have
claimed in their answer that they did not retaliate against me
and, as such, there can be no retaliatory motive for any of their
actions I allege against me. As such, it is important I be
allowed to depose Bruce Potvin and Roger Hamilton.

11. Bruce Potvin's testimony will also bear relevance on the
truthfulness of Roger Hamilton's testimony in depositions.

12. Roger Hamilton is Bruce Potvin's direct supervisor.

13. Roger Hamilton has good verbal contact with my direct
line of supervisors and is at the same grade level as my direct
supervisor.

14. I believe Roger Hamilton will testify that my direct
supervisors conveyed to him that they wished to keep me from
becoming a Funds Officer/Budget Analyst by reducing my duties,
taking away my title and certification rights, refusing me
training, and training others in my duties to advance instead of
me.

15. I applied for the position of Section Chief FSP/IF in
the Financial Management unit at FNS-NERO several times-every
time it was posted in 2001 and every time it was posted in 2003.
Each time I applied for this position I was the best qualified
individual for the position on the external list. I also applied
for the Section Chief FSP/IF position when it was posted in 2000.

16. I was never selected or interviewed for the position of
Section Chief FSP/IF in the Financial Management unit at FNS-
NERO.

17. I claimed in my November 2004 and in my 2001 EEO
Complaints and Complaints to the USDA Office of Civil Rights of a
continuing violation of retaliation, including blocking my career
advancement, and, as part of that claim, failure to promote. In
January or February of 2004, after the Section Chief Position had
been posted several times in late 2003, I made an informal EEO
Complaint to Gregory Ferby, the EEO Counselor and asked a formal
complaint be lodged in the EEOC and in the USDA Office of Civil
Rights. However, because no one was ever formally selected for
the Section Chief Position, the EEO Counselor and the Office of
Civil Rights advised me not to file any formal complaints on the
issue of selection for the position of Section Chief. Instead,
Michael Malone was appointed without an interview or application
process to that position from early 2004 until Mr. Malone left
FNS-NERO in the summer of 2005.

18. I filed EEO complaints and complaints with the USDA
Office of Civil Rights in 2000, 2003, 2004, and 2005. The
postings of the Section Chief FSP/IF in the Financial Management
Unit at FNS-occurred shortly after I filed my 2000 complaint and
then again after I filed my 2003 EEO complaint and during the

period in 2003 in which Defendants retaliated against me in a continuing denial of my responsibilities regarding the certification of the availability of funds and reduction of my duties.

19. In July 2001 I was the EEO representative of Ann Bellezza and, as such, I deposed my superiors including, without limit, Frances Zorn, Arthur LeBlanc, Roger Hamilton, and Douglas MacAllister in July 2001.

20. In July 2001, in my role as EEO Representative of Ann Bellezza, a co-worker, I also filed a Motion to Compel the USDA Food and Nutrition Services to produce Julie Larkin for deposition. That motion was granted, I deposed Julie Larkin, and Julie Larkin's testimony was very damaging to the USDA Food and Nutrition Services in the Ann Bellezza case.

21. In August 2001 FNS-NERO made the 2001 selection for Section Chief FSP/IF in the Financial Management Unit. I was not selected for the position.

**John G. Pedicini**
**Plaintiff**

Dated: _11/15/05_

Sworn to before me this _15th_ day of November, 2005

**Notary Public**

ROBERT JONATHAN DUMO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 15, 2011

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

JOHN G. PEDICINI,                |
                                 |
        Plaintiff                |
                                 | CIVIL ACTION NO. 04-12395-JLT
-vs-                             |
                                 |
UNITED STATES OF AMERICA  | Affidavit
UNITED STATES                    |
DEPARTMENT OF AGRICULTURE,|
ANN M. VENEMAN, SECRETARY,|
_____Defendants_____|


COMMONWEALTH OF MASSACHUSETTS )
                              ) ss.:
COUNTY OF SUFFOLK             )


SARAH CATAPANO-FRIEDMAN, being duly sworn, deposes and says:

    1. I am an attorney for the Plaintiff in the above captioned
case and I assert the following based on my personal observation
and knowledge, I am over 18, and I am of sound mind and am
mentally competent to testify to the matters contained in this
affidavit.

    2. Since October 18, 2005 I have learned of two additional
witnesses in the above captioned matter—Bruce Potvin and Roger
Hamilton.

    3. On September 30, 2005 I sent a letter to the Defendants'
attorney, Damian Wilmot, Esq., telling him which documents we
would like to request in an attempt to resolve the matter out of
court. The documents listed in Item 1 of that letter are the
subject of Plaintiff's Motion for Leave to Depose Additional
Witnesses, Make Document Requests, and Extend the Discovery
Period. A copy of this September 30, 2005 letter is attached
hereto as Exhibit A.

    4. On October 26, 2005, Robert Catapano-Friedman, Damian
Wilmot, Esq., and I had a phone conversation in which we came to
agreement on all documents in Exhibit A except item Number 1.
Damian Wilmot told Robert Catapano-Friedman and me that we would
have to request the production of the documents in Item Number 1
of Exhibit A from the Court.

1

5. Damian Wilmot reconfirmed our October 26, 2005 conversation by letter dated November 9, 2005 reiterating his objections to Item 1 in Exhibit A and his refusal to produce these documents absent motion to the court. Damian Wilmot's November 9, 2005 letter is attached hereto as Exhibit B.

6. On November 4, 2005 I Robert Catapano-Friedman and I contacted Defendants' attorney, Damian Wilmot via email seeking whether he would oppose our motion to the court to depose Bruce Potvin and Roger Hamilton. The relevant portion of this November 4, 2005 email is attached hereto as Exhibit C.

7. On October 26, 2005 during a phone conversation Robert Catapano-Friedman, Damian Wilmot, and I agreed to agree to an extension of the Discovery period if necessary to complete discovery.

8. Via email on November 8, 2005, which was copied to me, which I read and of which I have knowledge, Robert Catapano-Friedman emailed Damian Wilmot asking to agree to an extension of the discovery period. Damian Wilmot replied on November 8, 2005, stating that he would not agree to an extension of the discovery period. These two emails are attached hereto as Exhibit D.

9. Via letter dated November 9, 2005 Damian Wilmot replied that he would oppose our deposition of Bruce Potvin and Roger Hamilton. See Exhibit B.

Sarah Catapano-Friedman
**Attorney for Plaintiff**

Dated: 11/15/05

Sworn to before me this 15th day of November, 2005

Notary Public

ROBERT JONATHAN DUMO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 15, 2011

2

**EXHIBIT A**
**(3 PAGES)**

LAW OFFICES
# THE CATAPANO–FRIEDMAN LAW FIRM
### 50 FRANKLIN STREET, 4TH FLOOR
### BOSTON, MASSACHUSETTS 02110
### (617) 542-7711

\* ROBERT S. CATAPANO-FRIEDMAN
\*\* SARAH A. CATAPANO-FRIEDMAN

\* ALSO ADMITTED IN NEW JERSEY AND NEW YORK
\*\* ADMITTED ONLY IN MASSACHUSETTS

AFFILIATES:
ROBERT S. CATAPANO-FRIEDMAN
ROBERT S. CATAPANO-FRIEDMAN, P.C.
744 BROADWAY, ALBANY, NY 12207
(518) 463-7501 (PHONE)
(518) 463-7502 (FAX)
rcf@cflawfirm.com (E-MAIL)

OTHER OFFICE:
37 Fleet St., Boston, MA 02109
(617) 557-4044 (PHONE AND FAX)

September 30, 2005

**VIA REGULAR MAIL**
Damian Wilmot
Department of Justice
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210
(617) 748-3100

**Re: John G. Pedicini v. U.S. et al. Civil Action No. 04-12395-JLT**

Dear Damian:

    As you requested, the following is a list of the documents we would wish to request as a result of the information obtained in the depositions for the above captioned matter. Please review the list and let us know whether you will send us these documents or whether we will have to Motion their production. As discussed, we are willing to stipulate to an extension of the protective order for any documents you feel are covered by the Privacy Act. The documents are as follow:

    1.  A copy of the postings of the Section Chief FSP/IF position in FNS-NERO from 1999-present, namely all the copies of the position postings between the time Arthur LeBlanc left the position and Joseph Stanco was hired for the position and after Joseph Stanco left FNS-NERO, including all versions posted of announcement numbers NE-043-03-O (posted on or around 7/16/03, 8/29/03 and 10/31/03), NE-043-03-1O (posted on or around 7/16/03 and 8/29/03 and 10/31/03), NE-017-01-O (all notices-in 2001 there should be at least two notices--crediting

1

plans, and rankings for this vacancy), 99-05-NE-M
(the number for this last one is a bit hard to
discern because it is faded, but we would like the
1999 posting for the position before Joseph Stanco
was hired), all versions posted of the posting for
a temporary Supervisory Financial Management
Specialist, GS-501-13 at FNS-NERO with a closing
date of October 6, 2005, and copies of all of the
corresponding crediting plans and all the
corresponding internal and external lists ranking
the applicants for each posted version of the
postings listed above. As you requested, the
paragraphs in which John Pedicini's allegations
regarding lost promotion and obstruction of his
career in the Amended complaint appear, for
example, without limit, in paragraphs 23, 24, 148,
149, 152, 172, 173.

2. The email response Michael Malone received in
response to his request for guidance on 29 CFR
1614 Ch. 5, XIII (c)(5), as outlined in Michael
Malone's deposition page 143 line 21 through p.
145 line 6, if not already provided. Mr. Malone
states the email came from Lou Meyi or Douglas
MacAllister.

3. Janice Sciarappa's 2003 and 2004 performance
standards and individual development plan for
those years.

4. Any and all documents showing that John Pedicini's
EEO activities were disruptive to or adversely
affected the FNS-NERO office or its productivity
or showing that John Pedicini was disruptive in or
that his behavior negatively impacted other
employees in the office at FNS-NERO.

5. Frances Zorn's email to Roberto Salazar on or
around October 18, 2004 relaying her admission
that her interpretation of John Pedicini's rights
under the Settlement Agreement were in error.

6. Any written or email communications between
Roberto Salazar and John Ingemi as a follow-up or
relating to the telephone conversation between
Roberto Salazar and John Ingemi that took place on
or around October 12, 2004.

7. A list of the individuals (and their titles) in
the room with Roberto Salazar during his call with
John Ingemi to address problems in FNS-NERO on or
around October 12, 2004.

We would also like to request the point by point listing of

2

what OPM has done to comply with the ordered study and promulgation of guidelines under the No FEAR Act relating to appropriate disciplinary measures. As we discussed, as an initial matter we would like this list of the steps OPM has taken towards promulgating the relevant No FEAR Act disciplinary guidelines. We will discuss further document discovery at a later date and reserve any rights to examine the relevant documentation. We have not received a Rule 16 disclosure on the No FEAR Act yet. We also request a list of witnesses who would testify in relation to the promulgation of the relevant No FEAR Act disciplinary guidelines and a summary of their testimony.

Please do not hesitate to contact us with any questions. In addition, please let us know promptly whether you will be able to provide us with the above requested documentation. Thank you.

Sincerely,

Sarah Catapano-Friedman

**EXHIBIT B**
**(6 PAGES)**



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 9, 2005

**VIA REGULAR MAIL AND FACSIMILE (617) 557-4044**
Sarah Catapano-Friedman
50 Franklin Street, 4th Floor
Boston, MA 02210

      **Re:  John G. Pedicini v. United States of America**
         **U.S.D.C. MA, Civil Action No. 04-12395-JLT**

Dear Sarah:

    This letter serves as the government's response to your September 30, 2005, and October 20, 2005 letters, requesting additional documents and information.

The Government's Response To Your September 30, 2005 Letter

    **Request No. 1:** A copy of the postings of the Section Chief FSP/IF position in FNS-NERO from 1999-present, namely all the copies of the position postings between the time Arthur LeBlanc left the position and Joseph Stanco was hired for the position and after Joseph Stanco left FNS-NERO, including all versions posted of announcement numbers NE-043-03-0 (posted on or around 7/16/03, 8/29/03 and 10/31/03), NE-043-03-10 (posted on or around 7/16/03 and 8/29/03 and 10/31/03), NE-017-01-0 (all notices-in 2001 there should be at least two notices--crediting plans, and rankings for this vacancy), 99-05-NE-M (the number for this last one is a bit hard to discern because it is faded, but we would like the 1999 posting for the position Joseph Stanco was hired), all versions posted of the posting for a temporary Supervisory Financial Management Specialist, GS-501-13 at FNS-NERO with a closing date of October 6, 2005, and copies of all of the corresponding crediting plans and all the corresponding internal and external lists ranking the applicants for each posted version of the posting listed above.

    **Response:** The United States objects to this document request

Sarah Catapano-Friedman
November 9, 2005
Page 2

on the grounds that it is overly broad, unduly burdensome, and
vague.   The United States also objects to this request to the
extent it seeks documents that are protected from disclosure by the
Privacy Act of 1974.   Further, the United States objects on the
grounds that this request does not seek relevant information, nor
is the request reasonably calculated to lead to discoverable
evidence.  Indeed, any claim by the plaintiff that the USDA did not
select him for the above positions in retaliation would be barred
under the law as plaintiff did not timely exhaust his
administrative remedies as to such a claim.

**Request No. 2:**  The email response Michael Malone received in
response to his request for guidance on 29 CFR 1614 Ch. 5, XIII
(c)(5), as outlined in Michael Malone's deposition page 143 line 21
through p. 145 line 6, if not already provided.

**Response:**  The United States previously responded to this
request in its September 20, 2005 letter, and, therefore, the
government refers you to that letter.

**Request No. 3:**  Janice Sciarappa's 2003 and 2004 performance
standards and individual development plan for those years.

**Response:**  The United States objects to this document request
on the grounds that the information sought is protected from
disclosure pursuant to the Privacy Act of 1974.  Without waiving
this objection, the United States refers plaintiff to the attached
protected documents.  See Bates Stamped Documents Nos. US0411-
US0425.

**Request No. 4:**  Any and all documents showing that John
Pedicini's EEO activities were disruptive to or adversely affected
the FNS-NERO office or its productivity or showing that John
Pedicini was disruptive in or that his behavior negatively impacted
other employees in the office at FNS-NERO.

**Response:**  The United States objects to this document request
on the grounds that it is vague.  Without waiving this objection,
the United States refers plaintiff to the attached non-privileged
documents, which demonstrate that some of plaintiff's coworkers
found his behavior in the office disruptive and unprofessional.
See Bates Stamped Documents Nos. US0426-US0427.

**Request No. 5:**  Frances Zorn's email to Roberto Salazar on or
around October 18, 2004[,] relaying her admission that her
interpretation of John Pedicini's rights under the Settlement

Sarah Catapano-Friedman
November 9, 2005
Page 3

Agreement were in error.

**Response:**  The United States objects to this document request
on the grounds that it is vague.  The United States also objects to
your representation as to what Ms. Zorn's email to Mr. Salazar
says, as the document speaks for itself.  Without waiving these
objections, the United States refers plaintiff to the attached non-
privileged documents.  See Bates Stamped Document No. US0428.

**Request No. 6:**  Any written or email communications between
Roberto Salazar and John Ingemi as a follow-up or relating to the
telephone conversation between Roberto Salazar and John Ingemi that
took place on or around October 12, 2004.

**Response:**  The United States objects to this document request
on the grounds that the information sought is protected from
disclosure pursuant to the Privacy Act of 1974.  Further, the
United States objects on the grounds that this request does not
seek relevant information.

**Request No. 7:**  A list of the individuals (and their titles)
in the room with Roberto Salazar during his call with John Ingemi
to address problems in FNS-NERO on or around October 12, 2004.

**Response:**   To the extent plaintiff hopes to use this
information to conduct depositions of the individuals in Mr.
Salazar's office when he participated in a telephone conference
with Mr. Ingemi on or about October 12, 2004, the United States
objects to this document request on the grounds that the
information sought is protected from disclosure pursuant to the
Privacy Act of 1974.  Further, the United States objects on the
grounds that this request does not seek relevant information.
Without waiving these objections, the United States states that
present with Mr. Salazar during his telephone conference with Mr.
Ingemi on or about October 12, 2004, were Nancy Garcia, the
Confidential Assistant to the Administrator, Jessica Shahin, then
the Acting Deputy Administrator for the Food Stamp Program, Jeff
Cohen, then the Acting Associate Deputy Administrator for the Food
Stamp Program, and Cleve Hall, then the Employee Relations
Specialist, Human Relations.

The Government's Response To Your October 20, 2005 Letter

**Request No. 1:**  A copy of all emails, communications, or
documents from July 1, 2004 through the end of December 2004[,]

Sarah Catapano-Friedman
November 9, 2005
Page 4

relating to a potential vacancy in the Budget Analyst, Budget
Officer of Funds Officer position in the Northeast Regional Office
for the Food and Nutrition Services ("FNS-NERO") or training for
that position or possible vacancy, including, without limit, any
documents, emails or communications relating to who will be or
should be trained for a possible Budget Analyst, Budget Officer, or
Funds Officer Vacancy at FNS-NERO.

**Response:** The United States objects to this document request
on the grounds that it is vague, overly broad, and unduly
burdensome. The United States also objects to this request on the
grounds that it seeks irrelevant information. Without waiving
these objections, the United States refers plaintiff to the
attached non-privileged documents. See Bates Stamped Documents
Nos. US0429-US0471. These documents supplement documents
previously produced to plaintiff while his administrative
complaints were pending and/or during the course of litigation in
the instant action.

**Request No. 2:** All emails, documents, and communications
relating [t]o any letters of instruction or instructing memorandum
issued to Martin Hines or John Pedicini [f]rom March 2003 through
present including, without [l]imit, the letters of instruction
issued to John Pedicini in March 2003, October 2004 and November
2004.

**Response:** The United States objects to this document request
on the grounds that it is vague, overly broad, and unduly
burdensome. The United States also objects to this request on the
grounds that it seeks irrelevant information. Without waiving
these objections, the United States refers plaintiff to the
attached non-privileged documents. See Bates Stamped Documents
Nos. US0472-US0484. These documents supplement documents
previously produced to plaintiff while his administrative
complaints were pending and/or during the course of litigation in
the instant action.

**Request No. 3:** All emails, documents, and communications
relating [t]o or on the subject of Martin Hines' alleged [p]ossible
retirement.

**Response:** The United States objects to this document request
on the grounds that it is vague, overly broad, and unduly
burdensome. The United States also objects to this request on the
grounds that it seeks irrelevant information. Without waiving
these objections, the United States refers plaintiff to the

Sarah Catapano-Friedman
November 9, 2005
Page 5

attached non-privileged documents.  See Bates Stamped Documents
Nos. US0435-US0437, US0460.  These documents supplement documents
previously produced to plaintiff while his administrative
complaints were pending and/or during the course of litigation in
the instant action.

     Also attached, without waiving the objections asserted in my
September 20, 2005 letter, please find an additional document
responsive to your previous request for "Douglas MacAllister's
notes during the March 10, 2003 meeting with John Pedicini which
Douglas MacAllister claimed to have provided [AUSA Wilmot]."  See
Bates Stamped Documents Nos. US0485-US0486.  These documents
supplement documents previously produced to plaintiff while his
administrative complaints were pending and/or during the course of
litigation in the instant action.


     As to your request for a "point by point listing of what OPM
has done to comply with the ordered study and promulgation of
guidelines under the No FEAR Act[,] relating to appropriate
disciplinary measures," the United States declines to respond to
this request to the extent it seeks information that would be
protected by the deliberative process privilege.  Further, the
government believes, as stated in defendants' Memorandum in Support
of their Partial Motion to Dismiss, that your interpretation of the
No FEAR Act is erroneous.  Indeed, the No FEAR Act sets no
deadlines by which OPM must issue advisory guidelines incorporating
best practices related to disciplinary action against federal
employees who are found to have discriminated against other federal
employees.  By closely reading Section 204(a) of the Act, which
became effective on October 1, 2003, one can presume that Congress
did not expect OPM to quickly turnaround such advisory guidelines.
Pub. L. No. 107-174, 116 Stat. 570.  The Act instructs OPM to base
these advisory guidelines on a "comprehensive study" of each and
every agency in the executive branch -- which would obviously take
some time.  Id.  Moreover, the Act does not require an agency to
adopt OPM's guidelines.  Pub. L. No. 107-174, 116 Stat. 571.
Indeed, the Act allows agencies to reject the guidelines.  Id.

     That said, OPM has done (and is doing) a great deal concerning
its responsibilities under the No FEAR Act.  Title II of the No
FEAR Act has four main parts:  (1) the reimbursement provisions,
(2) the notice and training requirements, (3) the agency annual
reporting requirements, and (4) the development of best practices
guidelines that agencies may follow when disciplining federal
employees who violate the anti-discrimination or whistle blower

Sarah Catapano-Friedman
November 9, 2005
Page 6

protection laws.    OPM promulgated regulations concerning
reimbursement of the Department of Treasury's Judgment Fund on an
interim final basis.    It also promulgated regulations concerning
notice and training as proposed regulations, with a comment period
that was extended at the request of Congress and stakeholder
groups.  OPM has not completed yet the regulations for the annual
report and the comprehensive study.  OPM has promulgated the No
FEAR regulations segment by segment, and the study part, logically,
is last because OPM base it on several years of accumulated data
from the covered agencies.  I hope this information is sufficient
to convince your client to withdraw his APA claims against the
government.

     Finally, with regard to your inquiry whether I would oppose
your motion for leave to depose Bruce Potvin and Roger Hamilton, my
answer is yes.  As I stated in my September 20, 2005 letter, the
United States will oppose any additional depositions by the
Plaintiff in this action.  Please see my September 20, 2005 letter
and the Government's Opposition to your motion for leave to depose
additional persons for further explanation on this topic.

     Should you have any questions concerning the above, please do
not hesitate to contact me.

                              Sincerely,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                              DAMIAN W. WILMOT
                              Assistant U.S. Attorney


encl.

**EXHIBIT C**
**(1 PAGE)**

## Sarah Catapano-Friedman

**From:** Sarah Catapano-Friedman [scf@cflawfirm.com]
**Sent:** Friday, November 04, 2005 5:08 PM
**To:** 'Wilmot, Damian (USAMA)'
**Cc:** scf@cflawfirm.com; catapan@worldnet.att.net
**Subject:** Pedicini

Damian,

We will also wish to depose Bruce Potvin. We believe Potvin spoke to Roger Hamillton in September or October of 2004, was informed by Hamilton that Hamilton had heard Hines might retire, Hamilton told Potvin FNS-NERO was looking for someone to replace Hines and then Hamilton told Potvin that the replacement would not be John Pedicini. Since Hamilton is a supervisor in the Financial Management Unit, this would constitute a party admission to Bruce Potvin. In addition, the statement is obviously relevant to the retaliation claim. We may also wish to depose Hamilton. Will you oppose us in seeking to depose Bruce Potvin and Roger Hamilton? Please let us know by Tuesday, November 8th whether you would be amenable to these depositions if we motioned for them.



Sarah and Bob

**Sarah Catapano-Friedman, Esq.**
**The Catapano-Friedman Law Firm**
**50 Franklin Street, 4th Floor**
**Boston, MA 02110**
**Phone: (617) 542-7711**
**Cell:    (617) 529-5780**
**Fax:    (617) 542-7711**

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and then delete the material from any computer.

**EXHIBIT D**
**(1 PAGE)**

# Sarah Catapano-Friedman

| | |
|---|---|
| **From:** | Wilmot, Damian (USAMA) [Damian.Wilmot@usdoj.gov] |
| **Sent:** | Tuesday, November 08, 2005 11:58 AM |
| **To:** | Robert Catapano-Friedman |
| **Cc:** | Sarah Catapano-Friedman |
| **Subject:** | RE: Pedicini v. U.S. |

I'll send you my response to your previous letters today by fax and regular mail.  I will not agree to an extension of the discovery period at this time as I do not think an extension is necessary.

---

**From:** Robert Catapano-Friedman [mailto:catapan@worldnet.att.net]
**Sent:** Tuesday, November 08, 2005 11:46 AM
**To:** Wilmot, Damian (USAMA)
**Cc:** Sarah Catapano-Friedman
**Subject:** Re: Pedicini v. U.S.

Damian:

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

I understand now that we have resolved all production issues except item 1 in our September letter, asking for production, and that you will be producing those documents.  I understand that we will need to seek item 1 documents by motion, which we would like to do this week.

Please advise today whether you will also produce the items requested in our October 20 letter or whether we must include them in our new motion.  Also, please advise today if you will assent to the two additional depositions our client is requesting.

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

Given all of the above, I think it would be appropriate to agree to a modest extension in the discovery period through, say, January 15, 2005, given that discovery during the forthcoming Holiday season will be difficult to obtain at best.  Will you agree to such an extension?  In either event, we will need the court to approve it and must include it in our new motion as a consented to or disputed item.

Thank you Damian.

Bob


----- Original Message -----
**From:** Wilmot, Damian (USAMA)
**To:** Robert Catapano-Friedman
**Cc:** Sarah Catpano-Friedman
**Sent:** Tuesday, November 08, 2005 10:33 AM
**Subject:** RE: Pedicini v. U.S.

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

11/14/2005