UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN G. PEDICINI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 04-12395-JLT |
| UNITED STATES OF AMERICA, | : | |
| ANN M. VENEMAN, SECRETARY, | : | |
| UNITED STATES DEPARTMENT OF | : | |
| AGRICULTURE, AND LINDA | : | |
| SPRINGER, DIRECTOR, UNITED | : | |
| STATES OFFICE OF PERSONNEL | : | |
| MANAGEMENT, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, the United States of America, Ann M. Veneman,

Secretary of the United States Department of Agriculture

("USDA"), and Linda Springer,[1] Director of the United States

Office of Personnel Management ("OPM"), by their attorney,

Michael J. Sullivan, the United States Attorney for the District

of Massachusetts, hereby submit this Memorandum of Law in Support

of the Defendants' Motion for Summary Judgment dismissing

Plaintiff's Complaint in its entirety.

## I.    INTRODUCTION

Plaintiff John Pedicini, a current employee of the USDA,

claims that the agency has retaliated against him for filing an

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d)(1), the
new Director of the United States Office of Personnel Management,
Linda Springer, is hereby substituted for Dan G. Blair as a
defendant in this case.

action against the agency in 2001 and for asserting his "right" to represent co-workers in Equal Employment Opportunity matters. Specifically, he alleges that the USDA, in violation of Title VII, retaliated against him by reducing his job duties, denying him recognition at an awards ceremony, obstructing his career path, issuing him unjustified "letters of instruction," and referring him to a counselor.

Plaintiff also claims that the USDA violated the Administrative Procedure Act ("APA") by (i) failing to issue a written report to, among others, Congress, as is required by the Notification and Federal Employee Anti-discrimination and Retaliation Act of 2002 (the "No FEAR Act"), and (ii) failing to provide a report of compliance to the USDA's Office of Civil Rights as purportedly required by the Office's May 2004 order. Plaintiff similarly claims that OPM failed to perform certain duties as required by the No FEAR Act in violation of the APA. Plaintiff further claims injunctive relief on the grounds that the USDA deprived him of his due process rights by reducing his job duties and denying him recognition at an awards ceremony.

Throughout the twenty depositions taken by the Plaintiff in this simple employment discrimination case, Plaintiff has made his best efforts to convolute the issues and facts present before the court. A close analysis of the *relevant* facts, however, reveals that his claims are inadequate both legally and

factually, and fail as a matter of law.  As discussed in detail below, Plaintiff failed to exhaust his administrative remedies on many of the employment decisions he now claims were retaliatory acts.  With regard to the remaining events that he properly sought administrative redress for, Plaintiff fails to prove a prima facie case for retaliation.

Plaintiff's remaining claims are equally specious.  Indeed, his APA claims fail because (i) the agencies have not violated the No FEAR Act, (ii) he has no standing to bring this claim, and (iii) the USDA did, in fact, provide a report of compliance to its Office of Civil Rights.  Plaintiff's procedural due process claim fails because he cannot establish that the USDA deprived him of a property interest or of some due process of law. Finally, the record establishes that Plaintiff's breach of contact claim is simply false.  Accordingly, the Court should grant summary judgment dismissing the Complaint.

## II.  STATEMENT OF FACTS AND PROCEDURAL POSTURE

Defendant respectfully refers the Court to his Concise Statement of Material Facts to Which There is No Genuine Issue to Be Tried ("SOF") for a complete statement of the facts supporting this Motion.

## III. ARGUMENT

**A.** **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND PLAINTIFF HAS FAILED TO ADDUCE ADMISSIBLE EVIDENCE TO SUPPORT HIS CLAIMS**

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir. 1995)(quoting Fed. R. Civ. P. 56). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor or either side." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v. F.W. Morse & Company, Inc., 76 F.3d 413, 428 (1st Cir. 1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the non-moving party's case,'" the burden of production shifts to the non-movant." Dow v.

- 4 -

United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993)(citation omitted).  "As to issues on which the summary judgment target bears the ultimate burden of proof, [he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  Moreover, a plaintiff cannot defeat a summary judgment motion through conclusory statements, mere speculation or conjecture.  J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); see also Horta v. Sullivan 4 F.3d 2, 11 (1st Cir. 1993). Even in employment discrimination cases, summary judgment is appropriate where the non-movant relies "upon conclusory allegations, improbable inferences, and unsupported speculation." See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Because Plaintiff cannot meet that burden with respect to his claims, the Court must grant summary judgment, dismissing the Complaint in its entirety.

**B.  <u>MOST OF PLAINTIFF'S RETALIATION CLAIMS ARE UNTIMELY</u>**

It is axiomatic that federal employees must first timely exhaust the EEOC's administrative remedies before bringing their claims to federal court. See, e.g., Roman-Martinez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996); Brown v. General Services Admin., 425 U.S. 820, 832-33 (1976).  For a federal employee to

- 5 -

exhaust administrative remedies, the plaintiff must first contact an EEOC counselor within forty-five days of the allegedly discriminatory incident.  29 C.F.R. § 1614.105(a)(1); see also Velazquez-Rivera v. Danziq, 234 F.3d 790, 794 (1st Cir. 2000) (administrative remedies had not been exhausted since there had been no contact with an EEOC counselor within 45 days); Roman-Martinez, 100 F.3d at 216-18 (holding that a federal employee's failure to contact an EEOC counselor within the limitations period causes him to lose his right to pursue a later de novo action in court).  The plaintiff must then file a formal complaint of discrimination asserting his or her claim within 15 days of receiving notice of his or her right to file a complaint. 29 C.F.R. § 1614.105(b).  Failure to follow these steps bars a plaintiff from bringing a court action based on that incident. See, e.q., Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990); Rice v. New England College, 676 F.2d 9, 11 (1st Cir. 1982); Miller v. Runyon, 32 F.3d 386, 388 (8th Cir. 1994).  The "continuing violation" doctrine cannot toll these requirements when the plaintiff knew or should have known that his employer allegedly was discriminating against him.  See Amtrak v. Morgan, 536 U.S. 101, 114-15 (2002); Desrosiers v. Great Atlantic & Pacific Tea Co., 885 F. Supp. 308, 312 (D. Mass 1995).

    Plaintiff failed to exhaust available administrative remedies on several of the claims he now asserts before the

Court.  Indeed, he admittedly failed to contact an EEOC counselor and/or file a formal EEO complaint on the following alleged retaliatory acts: (1) the USDA excluded his name from a training list in February 2003; (2) the USDA denied him EEO representation during a March 10, 2003 meeting; (3) the USDA failed to promote Plaintiff to the position of Supervisory Financial Management Specialist; (4) the USDA failed to give Plaintiff a performance award in October, 2004; (5) the USDA referred Plaintiff to its Employee Assistance Program on October 18, 2003; (6) the USDA removed his name from a list of funds officers on November 9, 2004; and (7) the USDA did not allow Plaintiff to participate in a telephone conference between Mr. Salazar and his co-worker, Mr. Ingemi.  <u>See</u> Formal EEO Complaints, dated March 25, 2003, and November 22, 2004, attached to SOF as Exhibits 29 and 40; Deposition of John Pedicini ("Pedicini Dep."), pp. 94-95, 108, 122, 126, 132, 139, relevant pages attached to SOF as Exhibit 1. Accordingly, Plaintiff is barred from pursuing these claims as a matter of law.[2]

---

[2]    Plaintiff is also precluded from asserting claims he raised for the first time during his deposition, namely (1) that he did not receive training that he requested in 2004, and (2) that the agency has not allowed him to rotate into the superior position left vacant by Mr. Malone.  Pedicini Dep., p. 99, 135. Indeed, Plaintiff never sought EEO counseling on these allegations.  <u>Id.</u>, p. 104, 139.

C.    **PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW**

The retaliation claims properly before the Court are
Plaintiff's allegations that the USDA retaliated against him (1)
on March 4, 2003, by taking away his right to certify that funds
are available; (2) on March 13, 2003, by issuing him a letter of
instruction; (3) in October 2004, by training his co-workers on
the funds officer's responsibilities; (4) on October 13, 2004, by
issuing him a letter of instruction; and (5) on October 22, 2004,
by issuing him a letter of instruction.  See Exhibits 29 and 40.

Because Plaintiff cannot produce any direct evidence of
retaliatory intent, his claims are subject to the McDonnell
Douglas burden shifting analysis.[3]  See Colburn v. Parker
Hannifin/Nichols Portland Div., 429 F.3d 325, 335-336 (1st Cir.
2005).  Plaintiff's claims fail under this analysis as he cannot
prove a prima facie case of retaliation nor can he establish that

---

[3]    "Under [the McDonnell Douglas] framework, a plaintiff
employee must carry the initial burden of coming forward with
sufficient evidence to establish a prima facie case of . . .
retaliation.  If he does so, then the burden shifts to the
employer 'to articulate some legitimate, nondiscriminatory reason
for the [adverse employment action],' sufficient to raise a
genuine issue of fact as to whether it discriminated against the
employee. . . . If the employer's evidence creates a genuine
issue of fact, the presumption of discrimination drops from the
case, and the plaintiff retains the ultimate burden of showing
that the employer's stated reason for [the adverse employment
action] was in fact a pretext for retaliating against him for
having [engaged in protected activity]."  Hodgens v. General
Dynamics Corp., 144 F.3d 151, 160-61 (1st Cir. 1998) (citations
omitted) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792,
802 (1973)).

the USDA's legitimate, non-discriminatory reasons for its employment actions were pretexts for discrimination.

### 1.    Plaintiff Fails To Establish A Prima Facie Case Of Retaliation

"To make out a prima facie case [for retaliation], plaintiff must show (1) that he engaged in a protected action . . .; (2) that he suffered an adverse employment action . . .; and (3) that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, in that the two were not wholly unrelated." Colburn, 429 F.3d at 336 n.10. Plaintiff cannot establish that he suffered an adverse employment action and, thus, his claims fail.

It is undisputed that Ms. Zorn, in her role as Regional Administrator of NERO, was the sole person within NERO who had the authority to (i) designate employees as "certifying officers" of Federally Appropriated Funds, and (ii) delegate to employees the authority to certify that funds are available. It is also undisputed that Ms. Zorn did not designate Plaintiff as a "certifying officer," nor did she delegate to him the authority to certify that funds are available. Deposition of Frances Zorn ("Zorn Dep."), p. 105, relevant pages attached to SOF as Exhibit 9; Delegation of Authority memoranda, attached to SOF as Exhibit 15. Therefore, because Plaintiff never had the "right" to certify that Federally Appropriated Funds are available before

spending actions occur, his claim that the USDA "took" this right away from him defies logic.

Moreover, even if Ms. Zorn had designated Plaintiff as a "certifying officer" or delegated to him the authority to certify that funds are available, the USDA's purported act of taking this function from him would not amount to an adverse employment action. By Plaintiff's own admission, when he did perform the function of certifying that funds are available, unbeknownst to his superiors, he did so only one to three times a year. Pedicini Dep., p. 191. Indeed, he has been able to produce record that he performed this function on only three occasions. See Procurement Documents, attached to SOF as Exhibit 16. Moreover, Plaintiff admitted that this purported reduction of his duties has had no tangible effect on his compensation, benefits, or grade level.[4] Pedicini Dep., pp. 78-83. This alleged

---

[4]    Plaintiff claimed during his deposition that this alleged reduction of his duties could possibly have an effect on his grade level. Specifically, Plaintiff argued that he should be a Grade 12 employee on the federal employee pay scale, but cannot receive the grade increase because he no longer has the "right" to certify that funds are available. Pedicini Dep., p. 79-83. Such a grade increase, however, is not automatic, Plaintiff would have to first apply for a "desk audit" with OPM, which Plaintiff has never done. Id. Plaintiff claims that he failed to file such an application with OPM because, based on his own observations, such action would be futile as OPM would not grant him the grade increase without having the "right" to certify that funds are available. Id. Plaintiff admits, however, no one at OPM or USDA-FNS has ever represented to him that OPM would not grant him a grade increase or that a grade increase would hinge on whether he can certify funds availability. Id. Such an unsupported speculation cannot amount

- 10 -

reduction of his duties clearly does not meet the definition of
an adverse employment action under Title VII.  See e.g. Blackie
v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996) (for
employment decision to constitute adverse employment actions
under Title VII, "employer must either (1) take something of
consequence from the employee, say, by discharging or demoting
her, reducing her salary, or divesting her of significant
responsibilities or (2) withhold from the employee an
accouterment of the employment relationship, say, by failing to
follow a customary practice of considering her for promotion
after a particular period of service" (internal citations
omitted)).

        Similarly, Plaintiff's claim that the three letters of
instruction constitute adverse employment actions fails as a
matter of law.  Indeed, the letters of instruction were not a
form of discipline.  See Deposition of Douglas MacAllister
("MacAllister Dep."), p. 3/53-3/54, relevant pages attached to
SOF as Exhibit 6; Deposition of Michael Malone ("Malone Dep."),
p. 83-84, 202, relevant pages attached to SOF as Exhibit 5.
Also, the letters had (and has) no effect on Plaintiff's
employment, compensation, benefits, or grade level at USDA.
Pedicini Dep., p. 116; MacAllister Dep., p. 3/53-3/59, 3/62-3/64.

---

to an adverse employment action under Title VII.  See Blackie, 75
F.3d at 725.

Moreover, Plaintiff's superiors did not place this letters in his personnel file. MacAllister Dep., p. 3/53-3/58; Malone Dep., p. 83-84, 202. See, e.g., Nelson v. Univ. of Me. Sys., 923 F. Supp. 275, 282 (D. Me. 1996) (a letter of reprimand, by itself, does not constitute an adverse employment action under Title VII because such a claim is far too speculative).

Plaintiff also claims that in October 2004, FNS-NERO managers began training his co-workers on the fund's officer's functions so that one of his co-workers could replace the current funds officer if and when the position became vacant. Plaintiff believes that prior to the period when FNS-NERO began training his co-workers on these functions, he was the heir apparent to the current funds officer, Martin Hines. This claim is without merit, and, considering the fact that Mr. Hines still occupies the funds officer position, is too speculative to constitute an adverse employment action. See Blackie, 75 F.3d at 725. Accordingly, because the events Plaintiff complains of do not constitute adverse employment actions, he fails to establish a prima facie case of retaliation as a matter of law.

### 2.    Plaintiff Cannot Establish That USDA's Legitimate, Non-Discriminatory Reasons For Its Employment Actions Are Pretexts For Discrimination

Assuming *arguendo* that the Court concludes that Plaintiff establishes a prima facie case of retaliation, summary judgment in favor of the USDA is still appropriate because he cannot show

that the USDA's legitimate, non-discriminatory reasons for its employment decisions are pretext for discrimination.  The record evidence overwhelmingly demonstrates that Mr. Stanco, in response to an inquiry by Plaintiff, informed Plaintiff (as did other management employees) that he did not have the authority to certify that funds are available because Ms. Zorn did not designate Plaintiff as a "certifying officer," nor did she delegate to him the authority to certify that funds are available.  See Zorn Dep.,p. 105; Exhibit 15.  The record is also clear that Ms. Zorn was under no obligation to designate Plaintiff as a "certifying officer" or delegate to him the authority to certify funds.  See Affidavit of Lisha Dorman ("Dorman Aff."), ¶ 14-15, attached to SOF as Exhibit 11.  Indeed, Ms. Zorn had complete discretion to decide whom to give this authority to.  Id., ¶ 13.

Plaintiff cannot satisfy his "ultimate burden" of demonstrating that the USDA's reason for informing Plaintiff that he did not have the authority to certify that funds are available is a pretext for retaliating against him for having engaged in protected activity.  See Hodgens, 144 F.3d at 160-61.  Plaintiff argues that because his superiors designated him as the "back-up funds officer," he, ergo, has the authority to certify that funds are available.  The record is clear, however, that while in some regions the "back-up funds officers" have this authority, not all

- 13 -

"back-up funds officers" within the agency have the authority to perform this function.  Dorman Aff., ¶ 10-12.  The record is also clear that while some employees, such the Plaintiff, may believe that the "best practice" is for the "back-up funds officer" to have this authority, agency policy does not require the Regional Administrators to bestow this authority to "back-up funds officers."  Id., ¶ 14.  Moreover, agency policy allows the Regional Administrators complete discretion in whom she/he designates a "certifying officer" or delegates the authority to certify funds.  Id., ¶ 13.  The fact that Plaintiff may disagree with agency policy does not save his claim from summary judgment as "the courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions."  See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991).

Similarly, the record is clear that Mr. MacAllister issued Plaintiff the March 13, 2003, letter of instruction because of Plaintiff's refusal to respond to questions concerning his job responsibilities during a March 10, 2003 meeting.  See Letter from D. MacAllister to Plaintiff, dated March 13, 2003, attached to SOF as Exhibit 28.  Mr. Malone issued Plaintiff the October 13, 2004, letter of instruction for unilaterally relinquishing duties management assigned to him and to remind Plaintiff that he must first seek supervisory approval to handle EEO matters during

official time.  See Letter from M. Malone to Plaintiff, dated
October 13, 2004, attached to SOF as Exhibit 35.  He issued
Plaintiff another letter of instruction on October 22, 2004, for
improperly using the title "Alternate Funds Officer" on an
internal memorandum despite the fact that Plaintiff's title is
"Financial Management Specialist."  See Letter from M. Malone to
Plaintiff, dated October 22, 2004, attached to SOF as Exhibit 38.

While Plaintiff may believe that he had a right to act the
way he did in these incidences, he still must prove that Messrs.
MacAllister and Malone issued him these letters of instruction in
retaliation for Plaintiff's engagement in protective activities.
Plaintiff has failed to produce any evidence that contradicts
Messrs. MacAllister's and Malone's stated reasons for issuing the
letter, accordingly, the claim fails.

Moreover, Plaintiff has failed to provide any evidence, for
example, that (1) the USDA held other employees, who did not
engage in protected activity and are similarly situated in all
respects, to a different standard, (2) the USDA subjected other
employees who engaged in similar protected activity to adverse
employment actions, or (3) other instances of poor treatment
toward him occurred. See, e.g., McDonnel Douglas, 411 U.S. at
804; Mesnick, 950 F.2d at 824; see also Pedicini Dep., p. 191-92.
Therefore, in the absence of any "evidence from which a
reasonable jury could infer, without the most tenuous

insinuation," that the USDA's legitimate, non-discriminatory reasons for its employment decisions were pretexts for discrimination, the USDA is entitled to summary judgment on Plaintiff's retaliation claims. See Mesnick, 950 F.2d at 826.

### D.    PLAINTIFF'S APA CLAIMS FAIL AS A MATTER OF LAW

Plaintiff alleges that on January 22, 2004, OPM, pursuant Section 204(a) of the No FEAR Act,[5] issued guidelines to all federal agencies concerning their obligations to repay discrimination settlements and judgments paid by the Financial Management Service, Department of Treasury on their behalf. See also Pub. L. No. 107-174, 116 Stat. 568-569 (regarding repayment of judgments by agencies). Plaintiff alleges that Section 204(b) of the No FEAR Act[6] required the USDA to submit a "written

---

[5] Section 204(a) of the No FEAR Act states in relevant part: ". . . The President (or the designee of the President) shall issue (1) rules to carry out this title; (2) rules to require that a comprehensive study be conducted in the executive branch to determine the best practices relating to the appropriate disciplinary actions against Federal employees who commit the actions described under clauses (i) and (ii) of section 203(a)(6)(A); and (3) based on the results of such study, advisory guidelines incorporating best practices that Federal agencies may follow to take such actions against such employees." Pub. L. No. 107-174, 116 Stat. 570-571.

[6] Section 204(b) of the No FEAR Act states in relevant part: ". . . Not later than 30 days after the issuance of guidelines under subsection (a), each Federal agency shall submit to the Speaker of the House of Representatives, the President pro tempore of the Senate, the Equal Employment Opportunity Commission, and the Attorney General a written statement specifying in detail (1) whether such agency has adopted and will fully follow such guidelines; (2) if such agency has not adopted such guidelines; the reasons for the failure to adopt such

statement" to the Speaker of the House of Representatives, the
President pro tempore of the Senate, the Equal Employment
Opportunity Commission, and the Attorney General within 30 days
of the OPM's guidelines issued on January 22, 2004.  Plaintiff
claims that the USDA failed to do this and, therefore, violated
the APA.  Further, he alleges that OPM and USDA failed to follow
Section 203 of the No Fear Act[7] by not yet issuing guidelines or
regulations that provide for disciplinary action against federal
employees who are found to have discriminated against other
federal employees.  Finally, he claims that the USDA violated the
APA by failing to provide a report of compliance to the USDA's

---

guidelines; and (3) if such agency will not fully follow such
guidelines, the reasons for the decision not to fully follow such
guidelines and an explanation of the extent to which such agency
will not follow such guidelines."  Pub. L. No. 107-174, 116 Stat.
570-571.

   [7] Section 203 of the No FEAR Act states in relevant part: ".
. . not later than 180 days after the end of each fiscal year,
each Federal agency shall submit to the Speaker of the House of
Representatives, the President pro tempore of the Senate, the
Committee on Governmental Affairs of the Senate, the Committee on
Government Reform of the House of Representatives, each committee
of Congress with jurisdiction relating to the agency, the Equal
Employment Opportunity Commission, and the Attorney General an
annual report which shall include, with respect to the fiscal
year . . . a detailed description of (A) the policy implemented
by that agency relating to appropriate disciplinary actions
against a Federal employee who (i) discriminated against any
individual in violation of any of the laws cited under section
201(a) (1) or (2); or (ii) committed another prohibited personnel
practice that was revealed in the investigation of a complaint
alleging a violation of any of the laws cited under section
201(a) (1) or (2) . . . ."  Pub. L. No. 107-174, 116 Stat. 569-
570.

Office of Civil Rights as purportedly required by the Office's May 2004 order. These claims fail as a matter of law.

1.   **The USDA And OPM Have Not Violated The No FEAR Act**

With regard to the USDA's alleged failures regarding repayment of discrimination judgments, Plaintiff clearly misreads the No FEAR Act and OPM's January 22, 2004, publication in the Federal Register. Specifically, Plaintiff has conflated the statutory requirement to promulgate rules for specific provisions with a later obligation to issue advisory guidelines related solely to the issue of discipline. See supra footnote 5.

The No FEAR Act does not require OPM to issue guidelines to federal agencies concerning their obligations to repay discrimination judgments paid from the Treasury Department's Judgment Fund. Instead, the No FEAR Act requires OPM to promulgate rules on agency reimbursement of the Judgment Fund for payments concerning violations of federal discrimination and whistle-blower protection laws. See Implementation of Title II of the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, 69 Fed. Reg. 14,2997-2999 (Jan. 22, 2004)(to be codified at 5 C.F.R. pt. 724). OPM's January 22, 2004, publication was not a list of guidelines to federal agencies, as Plaintiff claims, but a publication in the Federal Register of final interim regulations on agency reimbursement of the Judgment Fund and a request for comments on those

- 18 -

regulations.  See id.  OPM's publication of the final interim regulations did not, as Plaintiff argues, trigger a 30-day period within which the USDA had to submit a responsive written statement to the Attorney General and others.

Furthermore, with regard to OPM's and USDA's failure to issue advisory guidelines incorporating best practices related to disciplinary action against federal employees who are found to have discriminated against other federal employees, the No FEAR Act sets no deadlines by which OPM must issue such advisory guidelines.  Indeed, by closely reading Section 204(a) of the Act (supra footnote 5), which became effective on October 1, 2003, one can presume that Congress did not expect OPM to quickly turnaround "advisory guidelines incorporating best practices that Federal agencies may follow to take [appropriate disciplinary] actions against [Federal employees who violate anti-discrimination and whistle-blower protection laws]."  Pub. L. No. 107-174, 116 Stat. 570.  Indeed, the Act instructs OPM to base these advisory guidelines on a "comprehensive study" of each and every agency in the executive branch -- which would obviously take some time.  Id. (emphasis added).  Further, the Act does not require an agency to adopt OPM guidelines -- another misconception on Plaintiff's part.  Pub. L. No. 107-174, 116 Stat. 571.  Indeed, the Act allows agencies to reject the guidelines.  Id.  Accordingly, Plaintiff's APA claim under the No

FEAR Act fails as a matter of law.

### 2. Plaintiff Lacks Standing To Assert An APA Claim Under To The No FEAR Act

Nevertheless, Plaintiff lacks standing to assert a violation of the APA based on the allegations described above. The APA is clear that in order to bring a suit under the Act the plaintiff must have suffered a sufficient injury in fact.[8] See 5 U.S.C. § 702; see also U.S. Const. art. III. Plaintiff cannot satisfy this prerequisite showing.

First, with regard to the USDA's purported failures regarding repayment of discrimination judgments, Plaintiff cannot establish that the USDA has not followed or is not following OPM's final interim regulations concerning reimburse of the Judgment Fund. Further, assuming *arguendo* that the USDA was non-compliant in repaying discrimination judgments, Plaintiff cannot show how such a failure has caused him harm.

Plaintiff also lacks standing to bring a claim against OPM for its purported unreasonable delay in issuing guidelines that provide for disciplinary action against federal employees who

---

[8]Furthermore, the APA imposes a prudential standing requirement in addition to the requirement, imposed by Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact. Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1998). Indeed, Plaintiff must first prove that his allegations are within the "zone interests" Congress sought to protect by creating the No FEAR Act. See Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1988).

have been found to have discriminated against other federal
employees.  Plaintiff alleges he has suffered harm by OPM's
alleged delay in issuing the guidance because the USDA, in turn,
has not implemented regulations which (Plaintiff claims) would
require it to discipline his supervisors for discriminating
against him and others.  This claim is specious.  No adjudicator
has ever found that Plaintiff's supervisors discriminated or
retaliated against him or others -- which obviously would have to
occur to trigger the USDA's obligation to discipline these
individuals under the No FEAR Act (assuming such an obligation
currently existed).  It is clear that Plaintiff lacks standing to
sue the United States under the APA as he has not suffered any
harm as a result of the USDA's or OPM's purported inactions.
Accordingly, this claim fails as a matter of law.

### 3.    The USDA Complied With The Agency's Office Of Civil Right's May 2004 Order

The record evidence demonstrates that the USDA did in fact
provide a report of compliance to the USDA's Office of Civil
Rights as required by the Office's May 2004 order.  See USDA,
Office of Civil Rights Order, dated May 19, 2004, attached to SOF
as Exhibit 41; Report of Compliance, attached to SOF as Exhibit
42.  Moreover, even if the USDA had not complied with the
Office's order, Plaintiff fails to show how such a failure has
caused him any harm.  Indeed, following the May 2004 order,
Plaintiff has not tried to invoke the dispute procedure found in

the Settlement Agreement.  Pedicini Dep., at pp. 182-83.

Accordingly, this claim also fails as a matter law.

### E.    PLAINTIFF FAILS TO PROVE BREACH OF CONTRACT

Plaintiff speciously claims that the USDA breached the June 17, 2002, Settlement Agreement ("Settlement Agreement) by not activating the "third party neutral" stage of the ADR process outlined therein when he had a dispute with Messrs. MacAllister and Stanco over the March 10, 2003 meeting.  The record evidence demonstrates, however, that Plaintiff never attempted to invoke the dispute procedure found in the Settlement Agreement concerning the March 10, 2003 meeting, nor has he attempted to initiate the process thereafter.  See Email correspondence between J. Ghiorzi and Plaintiff, dated March 7, 2003, attached to SOF as Exhibit 31; see also Pedicini Dep., at pp. 182-83.  The plain language of the agreement specifically calls for Plaintiff to request the dispute procedure.  See Settlement Agreement, dated June 17, 2002, attached to SOF as Exhibit 19.  His failure to follow the provision of the agreement by requesting the "third party neutral" stage of the ADR process is fatal to his breach of contract claim.  See, e.g., Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999) (citing Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995)).

**F.**   **PLAINTIFF'S DUE PROCESS CLAIM FAILS AS A MATTER OF LAW**

Plaintiff seeks injunctive relief under the Fifth Amendment on the grounds that the USDA violated his due process rights by reducing his job duties and title, depriving him training opportunities, denying him promotions, and refusing him recognition at an awards ceremony.  Plaintiff's demand for injunctive relief fails as a matter of law because he cannot establish that the USDA deprived him of a property interest or of some due process of law.  See Brown v. Hot, Sexy & Safer Productions, Inc., 68 F.3d 525, 534 (1st Cir. 1995); Garrison v. Johnson, 286 F. Supp. 2d 41, 42 (D. Me. 2003); Brayton v. Monson Pub. Sch., 950 F. Supp. 33, 37 (D. Mass. 1997).

**1.**   **Plaintiff Cannot Establish That The USDA Deprive Him Of A Property Interest**

The employment decisions Plaintiff complains of have either had no effect on Plaintiff's employment or are too speculatory to constitute a property interest.  Indeed, as stated above, Plaintiff admits that the USDA's purported reduction of his duties has had no tangible effect on his compensation, benefits, or grade level. Pedicini Dep., p. 78-83.  He also admitted that when he performed the function of certifying funds - again, unbeknownst to his superiors - he did so only one to three times a year.  Id., p. 191.  Courts have held that reduction of an employee's job duties or title that has no tangible effect on the employee's employment does not constitute a deprivation of a

property interest.  See, e.g., Stiesberg v. State of California, 80 F.3d 353, 357 (9th Cir. 1996) (employee does not possess a property right to be free from assignment of duties); Ferraro v. City of Long Beach, 23 F.3d 803, 806-807 (3d Cir. 1994) (reduction of duties, without decrease in salary, did not implicate protected property interest); Maples v. Martin, 858 F.2d 1546, 1550 (11th Cir. 1988) (no property interest at issue when employee is transferred and suffers no reduction in pay or rank); Garvie v. Jackson, 845 F.2d 647, 651 (6th Cir. 1988) (no property interest at issue when employee's duties are reduced); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (reappointment of non-tenured teacher with concurrent reduction of teaching duties does not deprive plaintiff of property interest); Cordova v. Vaughn Mun. Sch. Dist., 3 F.Supp.2d 1216, 1222-1223 (D.N.M. 1998) ("personnel actions that do not result in a reduction of pay or loss of other tangible benefits do not implicate protected property interests").

During his deposition, Plaintiff was unable to identify any training opportunity that the USDA denied him.  Pedicini Dep., p. 99, 179.  Further, the USDA gave Plaintiff a recognition award in 2005 for his job performance in 2004.[9]  Pedicini Dep., p. 189-85;

---

[9]    The Government has found no authority stating that denial of a merit award or recognition at an awards ceremony implicates protected property interests.  However, because the Complaint does not allege that the denial of an award somehow resulted in the diminution of Plaintiff's salary or rank, it

Malone Dep., p. 200-201.  Lastly, Plaintiff admitted that several
employees, in addition to himself, applied for the vacant
Supervisory Financial Management Specialist position and that his
name was merely among the names of other candidates ranked as
"best qualified."  Pedicini Dep., pp. 90, 92.  He also admitted
that even had the agency decided to fill the vacancy, any
conclusion that it would have hired him for the job would be
speculation.  <u>Id.</u>, p. 92.  Accordingly, Plaintiff has failed to
establish that the United States has deprived him of any property
right.

### 2.    Plaintiff Cannot Establish That The USDA Deprived Him Of Due Process

Assuming *arguendo* that the Court finds that Plaintiff
sufficiently demonstrates a deprivation of a property interest,
he fails to establish that he was denied due process.  Indeed,
Plaintiff fails to point to any provision of any USDA handbook or
any provision of law that prohibits the USDA from making the
challenged employment decisions.  He also fails to cite any
provision of any USDA handbook or any provision of law that
required the USDA to conduct a hearing before making the
challenged employment decisions.  Instead, he relies on the
"dispute procedure" outlined in the Settlement Agreement between
he and the USDA.  Specifically, Plaintiff argues that the

---

similarly cannot constitute a deprivation of a property interest.

Settlement Agreement guarantees him "a hearing before a 3rd party neutral should a dispute arise between Plaintiff and [his supervisor, Douglas] MacAllister, such as the dispute that led to reduction of Plaintiff's duties, demotion, and refusal of training opportunities."

His reliance on the Settlement Agreement for due process rights is misplaced. As an initial matter, the record evidence demonstrates that Plaintiff never attempted to invoke the dispute procedure found in the Settlement Agreement after the USDA informed Plaintiff that he did not have the authority to certify that funds are available. See Exhibit 31; Pedicini Dep., p. 182-83. Further, even if he had attempted to invoke this procedure, his argument fails because the Settlement Agreement only calls for a meeting between Plaintiff, his supervisor, and a third-party neutral to attempt to resolve the dispute between he and his supervisor. Exhibit 19. The Settlement Agreement does not promise Plaintiff a due process proceeding before the USDA decides to make employment decisions with regard to Plaintiff.[10]

_____

[10]    With regard to dispute resolution, the Settlement Agreement states only:

The [Plaintiff] and his supervisor agree to communicate on a regular basis to minimize any misunderstandings concerning work assignments, performance, training, etc., with the aim of building trust and understanding. Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties. If he and his supervisor are unable to resolve differences, they both will meet with the

Id.  Nowhere in the paragraph concerning dispute resolution, or
elsewhere in the Settlement Agreement, does the USDA promise
Plaintiff a due process proceeding before (or even after) it
decides to make employment decisions with regard to Plaintiff.
Accordingly, the Plaintiff's due process claim fails as a matter
of law.

**IV.  CONCLUSION**

For the foregoing reasons, this Court should enter summary
judgment for the Defendants dismissing Plaintiff's Complaint in
its entirety.

                          Respectfully submitted,

                          Michael J. Sullivan
                          United States Attorney

                    BY:   /s/ Damian W. Wilmot
                          DAMIAN W. WILMOT
                          Assistant U.S. Attorney
                          Moakley Federal Courthouse
                          One Courthouse Way, Suite 9200
                          Boston, MA 02110
Dated: March 23, 2006     (617) 748-3398

---

2nd level manager who will serve as an objective 3rd party.
If the 2nd level manager is unable to resolve the dispute,
the Deputy Regional Administrator (DRA) will serve as the
final reviewing official.  During the discussions at the
various levels identified above, the [Plaintiff] has the
right to utilize the EEO complaints process.

See Exhibit 19.

### CERTIFICATE OF SERVICE

I certify that on March 23, 2006, I caused a copy of the foregoing document to be served on *pro se* Plaintiff, John G. Pedicini, 10 Milano Drive, Saugus, MA 01906, by first class mail, postage pre-paid.

 /s/ Damian W. Wilmot
DAMIAN W.  WILMOT
Assistant U.S. Attorney
