UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JOHN G. PEDICINI,

    Plaintiff

-vs-

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
AGRICULTURE, ANN M. VENEMAN,
SECRETARY, AND LINDA
SPRINGER[1], DIRECTOR, UNITED
STATES OFFICE OF PERSONNEL
MANAGEMENT,

    Defendants.

CIVIL ACTION NO. 04-12395-JLT

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT

I.)    INTRODUCTION

Plaintiff, John G. Pedicini, has brought this action against the Defendants on the grounds of a pattern of unlawful retaliation and creation of a hostile work environment against him in connection with his exercise of protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. (hereinafter referred to as "Title VII"), which under 42 U.S.C. Section 2000e-16(c) and (d) allows for the bringing of this action after the expiration of one hundred and eighty days after agency charges have been filed. **(Count I )**

---

[1] Pursuant to Federal Rule of Civil Procedure 25 (d)(1), the new Director of the United States Office of Personnel Management, Linda Springer, is hereby substituted for Dan G. Blair as a defendant in this case.

Plaintiff also brings this action on the grounds of denial of his right to the statutorily prescribed administrative process and the allowance for judicial review set forth in the federal Administrative Procedure Act (hereinafter referred to as the "APA", 5 U.S.C. Sections 701-706 for the agency failure to follow Public Law 107-174 Sec. 204 (hereinafter referred to as the "No Fear Act"). **(Count II)**

Plaintiff also brings this action on the grounds of agency failure under the APA to follow a ruling from the United States Department of Agriculture Office of Civil Rights, in favor of the Plaintiff, as agency action in abuse of discretion, not in accordance with the law, without observance of procedure required by law, and agency action unlawfully withheld or unreasonably delayed. **(Count III)**

Plaintiff also brings this action on the grounds of denial of due process guaranteed by the Fifth Amendment to the United States Constitution, and on the grounds of breach of contract, over which the Court has pendant jurisdiction or supplemental jurisdiction under 28 U.S.C. 1367 since the contract claim arises from the same case or controversy and the nucleus of operative facts. **(Count IV)**

In addition to the above, the issue of spoliage of evidence has been established in this case. The testimony of computer security officials Juanita Makuta and Lori Lodato on February 28, 2006 indicate that a violation of 44 U.S.C. Chapter 31, Section 3106, unlawful removal and/or destruction of records

by the Defendants, during the discovery period of this case, by Plaintiff's first-line supervisor, Michael Malone, was reported to the USDA Office of the Inspector General by Ms. Makuta[2].

## II. PLAINTIFF'S STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Statement Of Material Facts As To Which Plaintiff Contends That There Is No Genuine Issue For Trial In Support of Plaintiff's Cross-Motion For Summary Judgment ("Plaintiff's Statement of Undisputed Facts").

## III. STANDARD OF SUMMARY JUDGEMENT REVIEW

Summary Judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Wrightman v. Springfield Terminal Railway Co., 100 F. 3d 228, 230 (1st Cir. 1996); Griggs-Ryan v. Smith, 904 F. 2d 112, 115 (1st Cir. 1990)("[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolved authentic disputes anent material facts.") Instead, such motions "simply require [the court] to determine whether either of the parties deserves judgment as a matter of

---

[2] See Deposition of Juanita Makuta ("Makuta Dep."), pp. 29-32, relevant pages attached as Exhibit 6. See Deposition of Lori Lodato ("Lodato Dep."), pp 22-31, relevant pages attached hereto as Exhibit 5.

3

law on facts that are not disputed." Wrightman, 100 Fed.3d at 230.

IV.  **ARGUMENT**

   A.  **PLAINTIFF HAS ADDUCED SUFFICIENT EVIDENCE TO SUPPORT A JUDGMENT IN HIS FAVOR ON TITLE VII CLAIM OF RETALIATION—COUNT I**

A prima facie case of retaliation has three elements (1) the plaintiff engaged in protected activity in a Title VII proceeding; (2) the employer acted adversely subsequent to or contemporaneous with employee activity; (3) there is a causal connection between plaintiff's activity and the employer's action. McDonnell Douglas Corp. v. Green, 411 U.S. 792(1973).

Plaintiff's job performance is not at issue in this case. Defendants admit that Plaintiff's performance has been rated "superior". See Amended Complaint ¶ 80. See Defendants' Answer To Amended Complaint ¶ 80.

   1.  **Plaintiff Was Engaged In Protected Activity[3]**

"An employer may not discriminate against an employee or applicant "because[the employee or applicant] has made a charge…or participated in any manner" in a Title VII investigation or proceeding." 42 U.S.C. Sec. 2000e-3(a).

On June 17, 2002, Defendants and Plaintiff signed a settlement Agreement as the result of a formal EEO complaint filed by Plaintiff on November 17, 2000[4]. In paragraph

---

[3] Defendants do not appear to contest this issue. In any event, Plaintiff discusses protected activity in greater detail in Part 3: Causal Connection.
[4] See Exhibit 31.

4

10, Defendants agreed not to take reprisal action against Plaintiff. In addition, Defendants agreed to treat Plaintiff equally in terms of training and career advancement opportunities, paragraph 1. Furthermore, in paragraph 4, Defendants sought to stop Plaintiff's EEO representation of co-workers, excepting the current cases of Perez and Bellezza, as a condition for becoming a "shared neutral".

From 2001-2003, Plaintiff was an EEO representative, pro bono, for co-worker, Luis Perez[5]. Plaintiff filed a formal EEO complaint on April 7, 2003[6]. From April 2004 to July 2004, Plaintiff was an EEO representative for Kathy Tankersley[7]. Plaintiff filed formal EEO complaints on July 15, 2004 and November 22, 2004[8].

### 2. Plaintiff Suffered Adverse Employment Actions These include assignment of duties, denial of training, and creation of hostile work environment.

> "Adverse employment actions include a refusal to hire, a discharge, or any discriminatory treatment with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. Sec. 2000e-3(a).

In this case, Defendants have raised the issue of adverse employment action, limiting the definition to immediate wage or benefit loss. However, the First Circuit has customarily used a broad definition to include divestiture of significant responsibilities. An adverse action is made out where an

---

[5] See Plaintiff's Statement of Undisputed Facts ¶¶ 40, 45, 47.
[6] Id., ¶ 59.
[7] Id., ¶¶ 71, 78.

5

employment action "disadvantages" persons engaging in the protected activity[9]. In this case, Plaintiff has experienced reduction in his duties as the backup/alternate funds officer for NERO and, eventually, a denial of his title as backup/alternate funds officer in a disciplinary letter of instruction. See Exhibit 23. In return, Defendants have assigned Plaintiff the duties of data entry (i.e. typing) and filing of travel vouchers.[10] Defendants' actions are tantamount to putting Plaintiff in a broom closet and attempting to maintain that no adverse employment action has occurred.

In the First Circuit, Section 2000e-3 encompasses a variety of adverse employment actions, including demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees[11]. Divesting an employee of assignments and responsibilities establishes an adverse employment action[12]. The First Circuit has considered an adverse employment action to be an alteration of the terms, conditions, or privileges of employment[13]. Adverse material changes have

---

[8] Id., ¶¶ 78, 92.
[9] Petitti v. New England Telephone and Telegraph Co., 909 F. 2d 28, 32 (1st Cir. 1990).
[10] See Deposition of John G. Pedicini ("Pedicini Dep."), p. 38, relevant pages attached hereto as Exhibit 1.
[11] Wyatt v. City of Boston, 35 F. 3d 13, 15 (1st Cir. 1994).

[12] Cf. DeNovellis v. Shalala, 124 F. 3d 298, 306 (1st Cir. 1997).

[13] Randlett v. Shalala, 118 F. 3d 857, 862 (1st Cir. 1997).

included disadvantageous assignments such as the employment actions at issue in this case[14].

Defendants argue that the Regional Administrator, Frances Zorn, never delegated authority to certify funds availability to Plaintiff. So, according to Defendants, Plaintiff never had the right. However, Ms. Zorn's own testimony indicates that, prior to Plaintiff's filing of his EEO complaint, she never delegated the right to certify funds availability to anybody, including the Regional Funds Control Officer, Martin Hines[15]. Furthermore, the letter, Ms. Zorn claims gave her the authority to delegate, has been declared irrelevant by the Regional Funds Control Officer[16].

There is a list of indisputable events that clearly indicate Plaintiff is the backup/alternate funds officer and has the right to certify funds availability. They are as follows:
(1) Plaintiff's performance appraisal standards, signed by Plaintiff's supervisors every year, do not put any restrictions on the types of administration funds transactions included in Plaintiff's duties and responsibilities[17]. When it says "all" administrative funds transactions, it means "all". Defendants now seek to put restrictions where restrictions do not exist. They continue these actions against an employee who, by their own admission, performs his job at a "superior" level.

---

[14] Gu v. Boston Police Department, 312 F. 3d 6, 14 (1st Cir. 2002) (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998).
[15] See Plaintiff's Statement of Undisputed Facts, ¶ 23.
[16] Id., ¶ 17.
[17] Id., ¶2.

7

(2)   Plaintiff is listed as the backup/alternate funds officer for NERO on the nationwide Funds Officer List dated January 26, 1999. All backups on list have the right to certify funds availability. Plaintiff was appointed by his supervisor and the Regional Administrator was notified[18].

(3)   Plaintiff was again designated, in writing, as the backup/alternate funds officer on September 20, 2001 by his supervisor, Joseph Stanco and authorized to have all the rights of a Funds Control Officer in the agency's accounting system used to verify and certify funds availability, FFIS. Such rights are linked to the duties in the workplace[19].

(4)   Plaintiff was authorized by his supervisors, in writing, to have the exclusive right of a funds officer in releasing/unreleasing travel documents in FFIS[20].

(5)   Defendants admit Plaintiff is an **"IAS Funds Approver"**[21]. All IAS Funds Approvers have the right to certify funds availability. One cannot extricate the right from the duties of an IAS Funds Approver[22]. Defendants acknowledge Plaintiff is an IAS Funds Approver, but they won't let him certify funds in IAS. Nothing can be more contradictory. Plaintiff has proven his case on this point alone. Defendants offer no evidentiary material or testimony in their defense.

---

[18] Id., ¶¶ 11-13.
[19] Id., ¶ 42.
[20] Id., ¶¶ 18-19.
[21] See Defendants' Answer To Amended Complaint ¶ 36.
[22] See Plaintiff's Statement of Undisputed Facts ¶ 52.

(6) Defendants published Plaintiff's name on Regional List dated July 14, 2003 and distributed to all states in the Northeast Region[23]. On the same issues that are now before this honorable Court, on August 28, 2003, Defendants represented to the USDA Civil Rights Office that Plaintiff was the alternate to the NERO Funds Officer[24]. Eight days later, Plaintiff's supervisor testified that there was no alternate funds officer position[25]. On October 22, 2004, Defendants issued a disciplinary letter of instruction to Plaintiff prohibiting him from using the title of "alternate funds officer", but also referred to Plaintiff as a Certifying Officer in IAS[26].

Defendants argue that there is no loss of income or benefits from denying Plaintiff his duties of backup/alternate funds officer. However, Plaintiff has provided testimony that similarly-situated backup/alternate funds officers are at the Grade 13 level[27]. Assuming, *arguendo,* even if there was no monetary loss, in the First Circuit, a monetary impact is not necessary for an action to be materially adverse[28].

On March 13, 2003, October 13, 2004, and October 22, 2004, Defendants issued disciplinary letters of instruction to Plaintiff. These letters were written reprimands and they were

---

[23] Id., ¶ 63.
[24] Id., ¶ 64.
[25] Id., ¶ 65.
[26] Id, ¶ 88.
[27] See Hines Dep., pp. 29-30. See Dorman Dep., p. 86.
[28] Gu v. Boston Police Department, 312 F. 3d 6, 14 (1st Cir. 2002) (citing Marrero v. Goya of P.R., 304 F. 3d 7, 23-24 (1st Cir. 2002).

copied to a "supervisor's file".[29] Defendants downplay the nature of these actions by stating that they were not placed in a personnel file and, therefore, were not an adverse employment action. However, written reprimands can constitute adverse employment actions.[30]

The disciplinary letter of instruction to Mr. Hines on October 22, 2004, stopped him from assigning funds control work to Plaintiff.[31] Another letter claimed that Plaintiff made derogatory remarks that consisted of Plaintiff stating that, "the Regional Administrator was wrong".[32] Defendants' claim that the comment was made in a loud voice was not supported by another witness.[33] In addition, these letters, such as the one making an appointment with a counselor at the Employee Assistance Program, without Plaintiff's permission, served no purpose other than to harass Plaintiff and create a ubiquitous retaliatory conduct that interfered with Plaintiff's work. In essence, the letters fed the flames of a hostile work environment, which itself, constitutes an adverse employment action.[34]

### 3. Causal Connection Between The Protected Activity And The Adverse Employment Action

"An employee may establish a sufficient link between

---

[29] See Plaintiff's Statement of Undisputed Facts ¶ 87.
[30] Wideman v. Wal-mart Stores, Inc. (11th Cir. 1998) 141 F. 3d 1453, 1456.
[31] See Exhibit 62.
[32] See Deposition of Michael Malone ("Malone Dep."), pp. 127-128, relevant pages attached as Exhibit 20.
[33] See Deposition of Janice Sciarappa ("Sciarappa Dep."), pp. 43-44, relevant pages attached as Exhibit 66.
[34] Noviello v. City of Boston (1st Cir. 2005) 398 F. 3d 76.

>the adverse action and his or her protected activity by showing: (1) the adverse action occurred shortly after the protected activity; and (2) the person who undertook the adverse action was aware of the employee's protected activity before taking the action". EEOC Manual, Vol. 2, Sec. 8-II E.2.

Defendants have a pre-existing dislike for Plaintiff's protected activity as an EEO representative, pro bono, for co-workers, as is evidenced by the prohibition on such activity in the Settlement Agreement dated June 17, 2002. In addition Frances Zorn, the Regional Administrator, has testified that she found Plaintiff's protected activity to "lessen the productivity of the office and cause anxiety among his supervisors in the Financial Management Unit".[35]

There is strong temporal proximity of the events in this case to protected activity. Close proximity of events can constitute causal connection.[36] On February 11, 2003, Plaintiff deposed Frances Zorn, who has testified that she discussed the deposition with Plaintiff's supervisor, Mr. MacAllister.[37] On February 19, 2003, an entry was made in MacAllister's personal notes on IAS which read, **"To request J. Pedicini not included "**.[38] On February 27, 2003, Plaintiff discovers he is not included in IAS.[39] On March 4, 2003, Defendants appoint Plaintiff as an IAS Funds Approver, but deny him the right to certify funds

---

[35] See Zorn 2005 Dep., pp. 61, 77.

[36] Hodgens v. Gen. Dynamics Corp., 144 F. 3d 151, 168 (1st Cir. 1998).

[37] See Plaintiff's Statement of Undisputed Facts ¶ 48.

[38] Id., ¶ 50.

11

availability.[40] On April 7, 2003, Plaintiff submits his formal complaint to the USDA Civil Rights Office.[41] On June 16, 2003, Ms. Zorn issues a memo, for the first time during her tenure as Regional Administrator, attempting to delegate the right to certify funds availability to two supervisors, who are not authorized as backup funds control officers in the agency's accounting system used to verify and certify funds availability.[42]

On June 2, 2004, Plaintiff files an informal EEO complaint on an expanded prohibition of his right to certify funds availability.[43] On June 6, 2004, Ms. Zorn issues another memo, attempting to delegate the right to certify funds availability to two supervisors, who are not authorized as backup funds control officers in the agency's accounting system used to verify and certify funds availability.[44] On July 15, 2004, Plaintiff submits his formal EEO complaint to the USDA Civil Rights Office.[45] On August 5, 2004, from over 100 positions in the Northeast Region and with no written or direct notice of retirement from the Funds Control Officer (i.e. Budget Analyst), Martin Hines, Defendants decide that they need to train other

---

[39] Id., ¶ 51.
[40] Id., ¶ 52.
[41] Id., ¶ 59.
[42] Id., ¶ 61.
[43] Id., ¶ 76.
[44] Id., ¶ 77.
[45] Id., ¶ 78.

individuals as backup funds officers because of the impending unannounced retirement of Mr. Hines.[46]

The First Circuit has held that evidence of an employer's comments which "intimate a retaliatory mindset" can constitute causal connection.[47] Similarly in this case, during September of 2004, a supervisor and frequent hiring official, Roger Hamilton, recruited a co-worker, Bruce Potvin, for the possible vacancy in the Budget Analyst and told him Plaintiff is not going to get it.[48] There can be no stronger retaliatory mindset against the Plaintiff that a hiring official telling one of Plaintiff's co-workers that Plaintiff will not be selected, even before a job opening is announced.

### 4.) Employers non-discriminatory reason is pretextual.

Plaintiff can prove that Defendants' non-discriminatory reasons are pretextual through a preponderance of the evidence that the legitimate reasons offered by the Defendants were not their true reasons, but were a pretext for discrimination.[49] In the First Circuit, the term "pretext plus" has been inaccurately used. The phrase does not mean Plaintiff must present evidence

---

[46] Id, ¶ 80.
[47] Mesnick v. General Electric Co., 950 F. 2d 816, 828 (1st Cir. 1991). Simas v. First Citizens' Fed. Credit Union, 170 F. 3d 37, 51 (1st Cir. 1999). Cariglia v. Hertz Equip. Rental Corp., 363 F. 3d 77 (1st Cir. 2004),
[48] Id, ¶¶ 81-83.
[49] Texas Dept. of Community Affairs v. Burdine, 450 U.S. 253 (1981). St. Mary's Honor Center et al. v. Hicks, 509 U.S. 507-508 (1993).

beyond the proof of pretext to establish discrimination.[50] Plaintiff may establish that he was the victim of intentional discrimination "by showing that employer's proffered explanation is unworthy of credence."[51]

Plaintiff has established through evidentiary material and testimony that he has been the back/alternate funds officer for NERO; he has the right to certify funds availability; Ms. Zorn was notified of his designation and appointment.[52] Defendants point to Ms. Zorn's authority to delegate but have offered no proof that such authority extends to certifying funds availability. Assuming, *arguendo,* that she did have such authority, no federal official can abuse his/her authority by retaliating against an employee engaged in a protected activity. Defendants' argument is completely unworthy of credence, when one discovers that Ms. Zorn tries to delegate her authority to two supervisors, who are unauthorized by the agency's headquarters office as backup funds control officers in the agency's accounting system used to verify and certify funds availability (FFIS).[53]

Defendants' argument against pretext falls completely apart when Lisha Dorman, who signed the affidavit dated November 1, 2005 supporting the argument, recants paragraph 12, and after reviewing the evidence in this case, emphatically states

---

[50] Thomas v. Eastman Kodak Co., 183 F 3d 38, 57 (1st Cir. 1999) cert. Denied, 120 S. Ct. 1174 (2000). Wood v. Friction Materials, Inc., 30 F 3d 225 (1st Cir. 1994).
[51] Burdine, at 255, n.10.
[52] See Plaintiff's Statement of Undisputed Facts, ¶ 13.

Plaintiff is the backup funds officer and does have the right to certify funds availability.[54]

Defendants treat Plaintiff differently when they deny him the right to certify funds in IAS, but still admit that he is an IAS Funds Approver. One cannot extricate the right from the duties of an IAS Funds Approver.[55] Consequently, the Defendants' argument is so lacking in credence that they have left Plaintiff with the title of "IAS Funds Approver", but without the duties to approve funds in IAS. Again, Defendants attempt to place Plaintiff in a broom closet and maintain that he is not the victim of discrimination.

The disciplinary letters of instruction also treat Plaintiff differently than other employees. Other employees are permitted to relinquish their duties in Nutrition Education, but not Plaintiff.[56] Other employees are permitted to use official time to file their own EEO complaint, without supervisory approval, but not Plaintiff.[57] Other employees are permitted to state that the Regional Administrator is wrong, without receiving a written reprimand, but not Plaintiff.[58] Other employees have working titles and associated duties, without receiving a written reprimand removing them, but not Plaintiff.[59]

---

[53] Id., ¶29.
[54] See Deposition of Lisha Dorman ("Dorman Dep."), pp. 30-31, 42, 75-77, relevant pages attached hereto as Exhibit 8.
[55] See Plaintiff's Statement of Undisputed Facts, ¶ 52.
[56] See Pedicini Dep., pp. 111-112.
[57] Id., p. 128.
[58] See Plaintiff's Statement of Undisputed Facts, ¶ 99.
[59] Id, ¶ 3.

15

Defendants have used the term "succession planning" as a cover to train other employees in Plaintiff's duties. It is clear that the guidelines and the program for succession planning had not been established as of February of 2005 and also by January of 2006.[60] Defendants' time frame of August 2004 is completely erroneous.

Lastly, Plaintiff has provided testimony from agency computer security officials that Defendants removed and/or destroyed computer files in the computer of Plaintiff's first-line supervisor, Michael Malone, during the discovery period of this case.[61] This action speaks volumes on the Defendants' attempt to cover their tracks.

    B.    **CLAIMS UNDER THE APA, PART A : NO-FEAR ACT CLAIM; PART B: NONCOMPLIANCE WITH FINAL AGENCY ORDER CLAIM (COUNT II)**

Plaintiff hereby incorporates by reference his argument on Count II, on claims under the APA, Part A: No-FEAR Act claim; Part   B: Noncompliance with final agency order from his Memorandum In Opposition To Defendants' Motion For Summary Judgment into this memorandum as if fully set forth herein.

    C.    **VIOLATION OF DUE PROCESS UNDER THE 5TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND BREACH OF SETTLEMENT AGREEMENT (COUNT III)**

Plaintiff hereby incorporates by reference his argument on Count III, violation of due process under the 5th Amendment to the U.S. Constitution and breach of settlement agreement from his

---

[60] Id., ¶¶ 97-98.

Memorandum In Opposition To Defendants' Motion For Summary Judgment into this memorandum as if fully set forth herein.

### D. BREACH OF CONTRACT (COUNT IV)

Plaintiff hereby incorporates by reference his argument on Count IV, breach of contract from his Memorandum In Opposition To Defendants' Motion For Summary Judgment into this memorandum as if fully set forth herein.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Cross-Motion for Summary Judgment in its entirety.

Dated: April 12, 2006

Respectfully submitted,

*/s/ John G. Pedicini/*

John G. Pedicini, Plaintiff Pro Se
10 Milano Drive
Saugus, MA 01906
781-233-5274

### CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2006, I sent a copy of the foregoing document to the Defendants, via certified mail return receipt requested, to Damian Wilmot, Esq., Assistant U.S. Attorney, One Courthouse Way, Suite 9200, Boston, MA 02110.

*/s/ John G. Pedicini/*

John G. Pedicini, Plaintiff Pro Se

---

[61] See Plaintiff's Statement of Undisputed Facts, ¶¶ 95-96.