UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JOHN G. PEDICINI,

    Plaintiff

-vs-

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
AGRICULTURE, ANN M. VENEMAN,
SECRETARY, AND LINDA SPRINGER[1],
DIRECTOR, UNITED STATES OFFICE
OF PERSONNEL MANAGEMENT,

    Defendants

CIVIL ACTION NO. 04-12395-JLT

---

**STATEMENT OF MATERIAL FACTS AS TO WHICH PLAINTIFF CONTENDS THAT THERE IS NO GENUINE ISSUE FOR TRIAL IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT**

    Pursuant to the Local Rules of the United States District Court, Rule 56.1, Plaintiff John G. Pedicini contends that there exists no genuine issue for trial as to the material facts set forth below:

**I.  Background**

1.  Plaintiff started work on August 1, 1997 in the Financial Management Unit of the Food and Nutrition Service, Northeast Regional Office, located at 10 Causeway Street, Boston, MA, hereinafter **"NERO"**, under a generic title of Financial Management Specialist, subject to performance appraisal standards. See Deposition of John G. Pedicini ("Pedicini Dep."), pp. 20-21, relevant pages attached hereto as Exhibit 1. See Affidavit of John G. Pedicini, dated March 30, 2006, p.1, attached as Exhibit 2.

2.  At all times relevant to this action, Plaintiff's duties and responsibilities were assigned according to performance

---

[1] Pursuant to Federal Rule of Civil Procedure 25 (d)(1), the new Director of the United States Office of Personnel Management, Linda Springer, is hereby substituted for Dan G. Blair as a defendant in this case.

standards, signed by his first-line and second-line supervisors. See Plaintiff's Exhibit 3, Performance Appraisal Standards, 2001-2005. The standard at issue in this action is "Administrative **Funds Control**", a critical element of the Plaintiff's duties. It states,

> "Incumbent will assist in the full utilization of the Foundation Financial Information System (FFIS) to maintain proper controls over Region's Food Program Administration (**FPA**) allowances and to ensure that **all** administrative funds transactions are completed timely and accurately."

This standard has always been the same. See Deposition of Douglas MacAllister ("MacAllister Dep."), p. 2-262, relevant pages attached hereto as Exhibit 4.

3.  Other individuals employed by the Defendants have been hired under generic titles and later assigned working titles. Lori Lodato, an employee of NERO, was hired as Information Technology Specialist. However, she also has the working title of "Regional Computer Security Officer". See Deposition of Lori Lodato ("Lodato Dep."), pp.7-8, relevant pages attached hereto as Exhibit 5. Juanita Makuta, an employee of Defendants' HQ office, was hired under the generic title of Computer Specialist. But, she has the working title of "Agency Computer Security Officer". See Deposition of Juanita Makuta ("Makuta Dep."), pp. 7-8, relevant pages attached hereto as Exhibit 6. Martin Hines, an employee of NERO, was hired under the generic title of "Budget Analyst". But, he has the working title of "funds control officer" and "FPA Officer". See Deposition of Martin Hines ("Hines Dep."), pp.87-88, relevant pages attached hereto as Exhibit 7.

4.  During his employment, Plaintiff has had the following supervisors:

| Name | Dates | Supervisor Type | Hereinafter Referred To As |
|---|---|---|---|
| Arthur LeBlanc | 8/1/97–9/1/00 | First-line | **"LeBlanc"** |
| Joseph Stanco | 9/10/01–9/1/03 | First-line | **"Stanco"** |
| Roger Hamilton | 12/1/03–3/1/04 | First-line | **"Hamilton"** |
| Michael Malone | 3/1/04–9/30/05* | First-line | **"Malone"** |
| Doug MacAllister | 8/1/97–Present | Second-line[2] | **"MacAllister"** |
| Frances Zorn | 8/1/97–6/27/05* | RA[3] | **"Zorn"** |
| John Ghiorzi | 8/1/97–1/2/04 | DRA[4] | **"Ghiorzi"** |

---

[2] MacAllister has acted as Plaintiff's first-line supervisor during periods when there was no first-line supervisor.
* Updated.
[3] Regional Administrator
[4] Deputy Regional Administrator

2

```
Robert Canavan    6/13/04-Present    DRA³           "Canavan"
Suzanne Biermann  12/05-Present*     RA²            "Biermann"
```

See Amended Complaint ¶¶ 2&12. Defendants' Answer ¶¶ 2&12.

5.  Plaintiff's job performance is not an issue in this case. Defendants admit that Plaintiff has consistently received "Superior" performance evaluations. Amended Complaint ¶¶ 45 and 80. Defendants' Answer to Amended Complaint ¶¶ 45 and 80.

6.  Plaintiff's loss of duties includes right to certify funds availability, status of funds reports. Leave-Without-Pay analysis, closeout activities on the budget, year-end estimates, staff determination and ceiling analysis. which were previously performed by Plaintiff. In addition, there is still a prohibition on using the title "Alternate Funds Officer". See Pedicini Affidavit, p. 2. See Pedicini dep., p. 170-171.

7.  Plaintiff is a Grade 11, Step 6. See Performance Appraisal for 2205. Similarly-situated individuals, as backup/alternate funds officer with the right to certify funds availablity, are at the Grade 13 level. See  Deposition of Lisha Dorman ("Dorman Dep."), pp. 85-86, relevant pages attached hereto as Exhibit 8.

8.  The terms  "backup funds officer","alternate funds officer", "FPA backup", "NPA backup", "FCO backup", and "FundsControl Officer backup" are synonymous terms. See Pedicini affidavit, p. 2. See Hines Dep., p. 250.

## II. USDA-FNS FUNDS CONTROL POLICY

9.  Foundation Financial Information System, hereinafter **"FFIS"**, is the only computer software program used by the Agency in Funds Management and its use is necessary to verify and certify funds availability according to agency policy. See Exhibit 9, FNS Handbook 101 ("Handbook 101"),pp. 3-1—3-4.

10. During 1997-1998, in order to strengthen financial controls, the Agency required all regional offices to have a backup funds officers. See Deposition of Angela McElmurray Speshock ("Speshock Dep."), pp. 9-10, relevant pages attached hereto as Exhibit 10. See Hines Dep., pp. 39-41.

3

11. On January 26, 1999, those backup funds officers were listed by region on a funds officers list. Angela MacElmurray Speshock developed the list. See Speshock Dep., pp.8-9.

12. All backup funds officers on the list have the right to certify funds availability. See Speshock Dep., pp. 10, 15-16.

13. Plaintiff's name was emailed to the agency's headquarters office by his supervisor, Arthur LeBlanc. The Regional Admionistrator, Frances Zorn, was copied on the email. See Speshock Dep., pp. 29-30. See Hines Dep., pp. 37-39.

14. Plaintiff was designated as Funds Control Officer backup (FCO backup) by his supervisor, Joseph Stanco, on September 20, 2001 and granted all rights of a funds control officer in the Agency's accounting system used to verify and certify funds availability known as Foundation Financial Information System (FFIS). See Exhibit 12, Designation As Funds Control Officer backup, dated September 20, 2001. The profile of FCO backup in FFIS is linked to the rights and duties in the workplace. See Makuta Dep., pp.25-27.

15. The right to certify funds disbursements is not, in any way, related to the right to certify funds availability. See Hines Dep., pp. 262-263, 266.

16. Funds Control officers do not certify funds disbursements (i.e. expenditures). See Handbook 101, p. 3-3, Section C (3).

17. The letter, stamped dated February 22, 1982 and signed by Raymond A. Pugh, Sr., to Regional Administrators on designating certifying officers in Regional offices applies to certifying officers for funds disbursements only. See Hines Dep., pp. 261-266.

18. The right to release and unrelease travel documents in the TRVL system is a distinct right of funds officers only. Id.,p. 8-2(f). There are no exceptions to the statement. See Makuta Dep, p. 36-37. See Dorman Dep., pp. 66-68. By virtue of the right to release and unrelease travel documents, one would be categorized as a funds officer. Id., p.67-68.

19. On two occasions, Plaintiff's supervisors authorized the Plaintiff to have the right to release and unrelease travel documents in the TRVL system. See Exhibit 13, Authorization to Release/Unrelease Travel Documents approved by Joseph Stanco and Douglas MacAllister on 3/12/02 and Authorization to Release/Unrelease Travel Documents approved by Roger Hamilton and Douglas MacAllister on February 25, 2004.

20. Duties and responsibilities in Funds Management are described in Chapter 3 of FNS Handbook 101. One of the duties is to **verify and certify,** whereby the funds officer verifies that the necessary funds are available and then certifies the availability. The verification is achieved by logging into FFIS and looking at the balance of available funds in the account. In addition, outstanding entries from other systems must be added to arrive at an accurate total. See Handbook 101, p.3-2 (3).

21. Other than the funds control officer, Martin Hines, Plaintiff is the only other employee at NERO who is authorized to verify and certify in the Agency's accounting system known as FFIS. See Funds Officer Memo, dated November 8, 2001 and attached as Exhibit 12.

### III.   Funds Control At NERO

22. Martin Hines, the funds control officer, is the most knowledgeable person on funds control issues at NERO. See Dorman Dep., p.13.

23. From August 1, 1997 up to and including the date of the Plaintiff's formal EEO complaint on certifying funds availability, April 7, 2003, the Regional Administrator never delegated the general right to certify funds availability in writing to the Funds Control Officer, Martin Hines. See 2005 Deposition of Frances Zorn ("Zorn 2005 Dep."), pp. 201-203, relevant pages attached hereto as Exhibit 15.

24. Less than 90 days after Plaintiff filed his formal EEO complaint on April 7, 2003, Ms. Zorn, for the first time during her tenure as Regional Administrator, on June 16, 2003, signed a memo attempting to give certifying rights on funds availability to two supervisors, Joseph Stanco and Douglas MacAllister, who were unauthorized as backup Funds Control Officers to verify and certify funds availability in the agency's accounting system. See Hines Dep., pp. 46-51.

25. On June 6, 2004, four days after Plaintiff filed an informal EEO complaint on being denied the right to certify funds availability, Ms. Zorn again signed a memo attempting to give certifying rights on funds availability to two supervisors, Michael Malone and Douglas MacAllister, who were unauthorized as backup Funds Control Officers to verify and certify funds availability in the agency's accounting system. See Exhibit 19. See Hines Dep., pp. 46-51.

5

26.  When asked how he would verify and certify funds availability without being authorized by the Agency in the accounting system, Mr. Malone testified that he would get the Plaintiff to verify and certify in the accounting system, and he (Malone) would sign his name to the paper document instead of the Plaintiff. According to Mr. Malone, this meant that the Plaintiff did not have the right to certify funds availability. See Deposition of Michael Malone ("Malone Dep. "), pp.51-54, relevant pages attached hereto as Exhibit 20.

27.  When asked how he would verify and certify funds availability without being authorized by the Agency in the accounting system, Mr. MacAllister testified that he did not verify and certify, he just signed his name to the paper document. Such a procedure was in violation of Agency policy. See MacAllister Dep., pp. 13-26.

28.  Neither Regional Administrator, Frances Zorn, nor her predecessor ever gave Douglas MacAllister the right to delegate authority as he had done in letters dated May 26, 1995 and on May 28, 2002. See Zorn 2005 Dep., pp. 199-200.

29.  Other than the Plaintiff, no NERO employee, including all supervisors (past and present), has ever been authorized by the Agency's headquarters office, **and confirmed in writing by his supervisor**, as a Funds Control Officer backup (FCO backup) in the agency's accounting system used to verify and certify funds availability known as FFIS. See Exhibit 12. See Exhibit 14. See Malone Dep.,pp. 58-59.

30.  Prior to March of 2003, no supervisor ever informed the region's funds control officer, Martin Hines, or the Plaintiff that the Plaintiff could not certify funds availability. See Hines Dep., p. 2-75.

31. On October 22, 2004, Malone ordered the Regional Funds Control Officer, Martin Hines, to stop assigning duties. See Exhibit 14, letter from Malone to Hines, dated 10/22/04,(1). Plaintiff had received all of his administrative funds control assigned duties from Mr. Hines up to that point. See Pedicini affidavit, p.1-2. See Pedicini Dep., p.38-39.

II. **Plaintiff's First Formal EEO Complaint**

32.  In 1998, Plaintiff's name was sent to HQ to be a shared neutral (i.e. mediator) in the agency's dispute resolution program. Id.,p.45  On May 26, 1999, Plaintiff received information on the program and training dates for the "shared neutral" position. Id., p.45. See Exhibit 25, Letter from Mediation Program on training.

6

33. In May 2000, Charles Purter, an EEO investigator, notified NERO of his intention to investigate the EEO complaint of Annette Bellezza, and provided NERO with a list of witnesses to be interviewed; only two persons on this list were non-management employees for the Financial Management Unit and Plaintiff was one of those two employees. See Amended Complaint ¶ 20, Defendants' Answer ¶ 20. The other non-supervisory employee, Edmund Kelly, retired from federal service two months later in August of 2000. See Pedicini Dep.,p.45-46.

34. On June 12, 2000, MacAllister informed the Plaintiff that Plaintiff would not be the shared neutral for the region and would not receive any training scheduled in the May 26, 2000 information notice. No reason was given for this action. Id., pp.45-46.

35. Plaintiff filed a formal EEO complaint on November 17, 2000, alleging retaliation by the Defendants in this case See Exhibit 26.

36. On March 20, 2001, Plaintiff was refused training in Cost Allocation, a key subject area for promotion, by MacAllister, even when no other employee had applied for the second of two openings. See Exhibit 27, p. 7.

37. In April of 2001, Plaintiff applied for a Grade 13 position as Section Chief and received a score of 99 out of 100 as an external candidate. Plaintiff's name was listed on the "most qualified list sent to the selecting official, MacAllister. See Exhibit 28.

38. MacAllister has testified that he noticed Plaintiff's name on the "most qualified" external list and decided not to pick from that list. See MacAllister Dep., pp.2-115—2-116,2-120—2-131.

39. During July of 2001, in the Bellezza case, Plaintiff deposed MacAllister,Zorn, LeBlanc, and Hamilton. See Exhibit 29.

40. On July 24, 2001, Plaintiff became the EEO Representative, pro bono, for a Hispanic employee, Luis Perez. See Amended Complaint ¶ 32 and Defendants' Answer ¶ 32.

41. On September 13, 2001, Plaintiff filed a civil action on his formal EEO complaint. See Exhibit 27.

42. On September 20, 2001, Stanco, designated Plaintiff as "backup Funds Control Officer" or "backup FCO", **in writing** on Form AD-1143, an official U.S. Department of Agriculture form for authorizing rights in computer systems.See Exhibit 12. Said authorization is governed by the "least privilege" policy of the agency which is directly related to duties and responsibilities

7

of the employee in the workplace <u>See</u> Exhibit 30. <u>See</u> Makuta Dep., pp. 25-27. Plaintiff is given the same profile as the Funds Control Officer, Martin Hines. <u>Id</u>, pp. 41-43. Plaintiff was also given the right to release and unrelease travel documents in the TRVL computer system. Pursuant to Ms. Makuta's testimony, such a right is for "funds officers only". <u>See</u> Handbook 101, p. 8-2 (f). <u>See</u> Makuta Dep. p.36. <u>See</u> Dorman Dep., p. 67. Plaintiff was given the profile of "FCO backup" also known as "Funds Control Officer backup". The profile is **<u>linked to Plaintiff's duties and responsibilities in the workplace</u>** <u>See</u> Makuta Dep., pp. 25-27.

43. On November 8, 2001, Plaintiff was listed as one of two "funds officers" at the Defendants' Northeast Regional Office by the Budget Division of the Headquarters office in Alexandria. The other funds officer was Martin Hines. <u>See</u> Exhibit 14.

44. With regard to Plaintiff's civil action, the Defendants and the Plaintiff entered into a settlement agreement on June 17, 2002. The Defendants required Plaintiff not to engage in any EEO representation if he became a "shared neutral". Plaintiff sought to be treated equally in training and career advancement opportunities. Central to the settlement agreement was a dispute resolution process designed to resolve future disagreements. Plaintiff was given the right to continue with pre-existing cases (i.e. Bellezza and Perez). <u>See</u> Exhibit 31.

45. From October of 2002 to December of 2002. Plaintiff entered into settlement discussions on the Perez case with Ghiorzi, MacAllister, and Malone. <u>See</u> Pedicini Affidavit ("Pedicini Affadavit"), p. 2 (12), relevant pages attached as Exhibit 2.

46. On January 28, 2003, due to the at-home care of his father who was bed-ridden, Plaintiff informed Ghiorzi that he would not be able to complete the "shared neutral" courses outline in the settlement agreement dated June 17, 2002.
<u>See</u> Exhibit 32. A status report was issued by Ghiorzi on the other provisions of the Settlement agreement. <u>See</u> Exhibit 33.

### III. <u>Plaintiff's Second Formal EEO Complaint</u>

47. On February 11, 2003, Plaintiff, as EEO Representative of Luis Perez, deposed Zorn and Canavan. <u>See</u> Pedicini Dep., p. 63, 250.

48. In her testimony in this case, Zorn has admitted to telling MacAllister about the Perez deposition . <u>See</u> Zorn 2005 Dep., p.75.

49. Zorn has also testified that Plaintiff's EEO representation of employees  "lessened the productivity of the office " and

created "anxiety among the supervisors in the Financial Management Unit." Id., p.61, 77.

50. Eight days after the Plaintiff deposed Zorn and Canavan in the EEO case of Luis Perez, on February 19, 2003, an entry was written in the personal notes of MacAllister. The notes pertain to an important software procurement system for the Plaintiff's job known as the Integrated Acquisition System, hereinafter "**IAS**". The note states as follows, "***J. Stanco to Lisa Wilusz—To Request J. Pedicini not included.***" See Exhibit 35.

51. On February 27, 2003, Plaintiff learned he had been excluded from a training list of employees for IAS. See Exhibit 36.

52. In an email string from Stanco, Plaintiff was included in the IAS training as an "**IAS FUNDS APPROVER**", but the right to certify funds availability was denied to the Plaintiff. See Exhibit 22 and 37. However, all IAS Funds Approvers do have this right See Deposition of Lawrence Blim ("Blim Dep."), p.66, relevant pages attached as Exhibit 24. See Dorman Dep., pp. 75-77. Furthermore, the right to certify funds availability cannot be extricated from the duties and responsibilities of an IAS Funds Approver, as the Defendants have attempted to do to the Plaintiff. See Blim Dep., pp. 66-69. See Dorman Dep., p. 77. The IAS Funds Approver gets the whole package. See Blim Dep., pp. 66-67.

53. Plaintiff filed an informal EEO complaint on March 5, 2003 and elected Martin Hines, as his EEO representative on March 6, 2003. See Exhibit 38.

54. MacAllister denied Plaintiff the right to have a representative at the meeting. See Hines Dep., pp. 27-29. In his testimony, when asked under what regulations he was denying the right to representation (e.g. agency regulations or EEO regulations), MacAllister stated that it was under "his rules". See MacAllister Dep.,p. 2-177.

55. Plaintiff sought to invoke the dispute resolution section of the Settlement Agreement dated June 17, 2002 and appealed to the issue to Ghiorzi. See Exhibit 39. Ghiorzi did not respond.

56. In their answer to Plaintiff's Amended Complaint, Defendants admit that MacAllister told Plaintiff not to answer questions related to his EEO complaint at the March 13, 2003 meeting. See Defendants' Answer To Amended Complaint, ¶ 64.

57. MacAllister's questions dealt with Plaintiff's right to certify funds availability—the same issue in his EEO complaint. See Amended Complaint ¶¶ 62-65.

58. On March 13, 2003, Plaintiff was issued a letter of instruction, warning him of disciplinary action if he did not answer questions asked by MacAllister in the future. See Exhibit 40.

59. On March 25, 2003 and April 7, 2003, Plaintiff filed his second formal EEO complaint of retaliation. See Exhibit 16.

60. Plaintiff sought to enforce the terms of the settlement agreement dated June 17, 2002 by appealing to the Compliance Division of the USDA Civil Rights Office on March 26, 2003. See Exhibit 41.

61. On June 12, 2003, MacAllister informs Zorn that there is a need to execute an official delegation on certifying funds. MacAllister approaches Zorn to appoint himself and Stanco. Prior to that date, Zorn had not issued this letter to MacAllister or Stanco. See Zorn 2005 Dep., pp. 141-142. Neither MacAllister or Stanco were authorized or trained in verifying and certifying funds availability according to agency policy See Hines Dep., pp. 40-51.

62. Authorization and training in FFIS are required because, "when presented with a document to certify that funds are available, the funds officer will input data into FFIS as either a commitment or obligation document." See Handbook 101, p. 3-8. See Hines Dep., pp. 40-51.

63. On July 14, 2003, Defendants issued the FM COOP List to all state officials in the Northeast Region. Plaintiff's title is listed as **"Alternate Funds Officer"**. "COOP" is an abbreviation for "Continuation of Operations". See Exhibit 42.

64. On August 28, 2003, in the Defendants' **official** response to the Compliance Division of the USDA Civil Rights Office, regarding Plaintiff's allegations of breach of the settlement agreement and Title VII retaliation violations, the Defendants state,
> "Douglas MacAllister, Director, Financial Management is Mr. Pedicini's first-line supervisor. He explained that no decision has been made to reduce Mr. Pedicini's duties in FFIS, remove him as **the alternate to the NERO Funds Officer** or circumvent his participation in the implementation of IAS. John Ghiorzi, Deputy Regional Administrator, stated that he is Mr. Pedicini's second-line supervisor. He explained that no decision had been made to reduce Mr. Pedicini's duties in FFIS, remove him as **the alternate to the NERO Funds Officer** or circumvent his participation in the implementation of IAS." See Exhibit 43.

10

65.   Just 8 days after the above statement to the USDA Civil Rights Office, the Defendants changed their explanation of the Plaintiff's title. In an affidavit to the EEO investigator on September 8, 2003, MacAllister states, "There is **no 'Alternate Financial Funds Officer'** position. The Budget Officer, Mr. Martin Hines, has the responsibility for the execution of our administrative funding accounts in NERO. There is **no "Alternative Funds Officer"** to consider Mr. Pedicini for. See Exhibit 44.

66.   On November 18, 2003, pursuant to a request from LaTonya Williams from the Defendants' Headquarters office, Plaintiff was listed as **"Alternate Funds Officer"** in an email from the Funds Control Officer, Martin Hines. MacAllister received a copy of the email and raised no objections. See Exhibit 45.

67.   Plaintiff applied for the job vacancy in the Section Chief's position in the Financial Management Unit at NERO advertised on August 2003, October 2003, and February 2003. See Exhibit 46.

68.   Plaintiff was informed by Personnel Officer, Donna Davis that the crediting plan was altered and caused Plaintiff's score to decrease. See Exhibit 47.

69.   Plaintiff filed an informal EEO complaint on February 2004, but was advised by EEO Counselor, Gregory Ferby that since there was no official hiring action form the job announcement, the complaint would not be accepted for investigation. See Pedicini Affidavit, p. 3 (15).

70.   On February 29, 2004, Hamilton and MacAllister again gave Plaintiff the right to release and unrelease travel documents in the TRVL computer system. Pursuant to Ms. Makuta's testimony, such a right is for "funds officers only". See Exhibit 13. See Handbook 101, p. 8-2 (f), second sentence. See Makuta Dep., p. 36. See Dorman Dep., p. 67.

71.   In April of 2004, Plaintiff became the EEO representative of Kathy Tankersley, an employee in the Plaintiff's work area. See Exhibit 48.

72.   On April 5, 2004, Plaintiff and Malone signed an Individual Development Plan on training, in which the Plaintiff was to receive at least one training course by November 28, 2004. Plaintiff didn't receive any training during this time period. See Exhibit 49.

73.   On May 29, 2004, the USDA Civil Rights Office found the Defendants to have breached the settlement agreement dated June 17, 2002, giving the Defendants 30 days to comply and send **proof** of such compliance to the USDA Civil Rights Office. Delivery of

the Order was certified to Roberto Salazar, the FNS Administrator, and Michael Watts, the Civil Rights Director. See Exhibit 50. Defendants failed to implement the dispute resolution process pursuant to Order from USDA Civil Rights Office. See Pedicini Affidavit, p.2(13).

### IV. Plaintiff's Third Formal EEO Complaint

74. On May 31, 2004, another employee, Patricia Churchill asked the Plaintiff to certify funds availability on a document. Plaintiff checked with Malone. See Pedicini Dep., pp. 96-97.

75. Malone and MacAllister prohibited Plaintiff from certifying funds availability anywhere. See Exhibit 18.

76. Plaintiff filed an informal EEO complaint on June 2, 2004. See Exhibit 18.

77. On June 6, 2004, Defendants' Zorn attempted another delegation of authority of certifying funds availability. This time to MacAllister and Malone. However, neither MacAllister nor Malone had authorization or training in FFIS to "verify and certify" funds availability according to the agency policy in FNS 101. See Exhibit 19. See Hines Dep., p.46-51.

78. On July 15, 2004, Plaintiff filed his third formal EEO complaint alleging retaliation. See Exhibit 18.

79. In August of 2004, Jonathan Lash, a Budget Analyst from HQ, during a trip to Rhode Island with Zorn, mentions that Martin Hines, the Funds Control Officer, might be retiring after the coming fiscal year (i.e. 10/1/04 to 09/30/05). See Deposition of Jonathan Lash ("Lash Dep."), p. 52, relevant pages attached hereto as Exhibit 21.

80. On August 5, 2004, Defendants issued a memorandum about the retirement of Martin Hines. See Exhibit 51.

81. On or around September of 2004, Bruce Potvin, another employee in the Financial Management Unit, is told by Hamilton, that Martin Hines will be retiring and there will be a job opening. Hamilton also tells Potvin that there will be training and a selection will be made. When Potvin mentions Plaintiff's name, Hamilton states that Plaintiff "…is not going to get that". See Deposition of Bruce Potvin ("Potvin Dep."), pp. 8-10, relevant pages attached as Exhibit 52.

82. Hamilton has frequently been a selecting official for job hiring in the Plaintiff's work area, the Financial Management Unit. See MacAllister Dep., pp. 2-93-2-94, 2-112.

12

83. In his testimony, Hamilton has denied telling anybody that Martin Hines was retiring. See Deposition of Roger Hamilton ("Hamilton Dep."), pp. 12-14, relevant pages attached hereto as Exhibit 53. However, in addition to Bruce Potvin, two of Hamilton's fellow NERO supervisors, MacAllister and Malone have testified that Hamilton also told them that Martin Hines was retiring. See MacAllister Dep., p. 3-11. See Malone Dep., p. 76.

### V. Plaintiff's Fourth Formal EEO Complaint

84. On October 7, 2004, Plaintiff's first-line supervisor held a meeting in which he announced "training for possible vacancy in the Budget Analyst position." No other possible job vacancies were announced at the meeting, in spite of the fact that there are three other positions in Plaintiff's work area where the employees filling those positions are at or beyond normal retirement age, and no solicitation has ever been made to replace these individuals. See Hines Dep., pp. 71-75.

85. On October 7, 2004, the Budget Analyst, Martin Hines, objected to the announced training, since he had no plans to retire, had not filed any retirement forms, and had not been asked by any of his supervisors. See Hines Dep., pp. 71-75.

86. On October 7, 2004, since Malone was advocating training employees in Plaintiff's Administrative Funds Control duties, Plaintiff offered his duties in Nutrition Education. See Pedicini Dep., pp. 110-115.

87. On October 13, 2004, Plaintiff was called into the Personnel office at the Northeast Region. Malone verbally read to the Plaintiff a disciplinary letter of instruction, which included a referral to Employee Assistance program for counseling. Later that same day, Malone put a second disciplinary letter of instruction in Plaintiff's in-box at his desk. This second letter was copied to a "supervisor's file" with the annotation "**SUPV File**". See Exhibit 55.

88. On October 22, 2004, 15 months after issuing a region-wide list with the Plaintiff having the title of "alternate funds officer" and 14 months after representing to the USDA Civil Rights Office that there "was no decision to remove Plaintiff as **the alternate to the NERO Funds officer**", Defendants issue an disciplinary letter of instruction to the Plaintiff to stop using the title of "Alternate Funds Officer", per order of Canavan. The letter referred to Plaintiff as " **Certifying Officer (IAS)**". See Malone Dep., p.18. See Exhibit 23.

89. Malone has admitted to using an unauthorized title and did not receive a letter of instruction from MacAllister or any USDA official. See Malone Dep., pp. 11-17.

13

90. On November 1, 2004, Malone issued another disciplinary letter of instruction to Martin Hines, stating that the training program must be detailed. See Exhibit 57.

91. On November 12, 2004, Plaintiff filed this action in U.S. District Court. See Plaintiff's Original Complaint filed 11/12/04.

92. On November 22, 2004, Plaintiff filed a formal EEO complaint alleging retaliation. See Exhibit 58.

93. On March 7, 2005, Plaintiff was named primary eTravel administrator. See Exhibit 59.

94. On March 11, 2005, Defendants' HQ office emailed approval chain spreadsheets to Defendants' Boston office. The spreadsheets contained a column entitled "Alternative Funds Control Officer". Plaintiff's name was put in that column by his supervisors. However, the words "funds control officer" in the title were scratched out and altered to "Alternative Funds Approver". MacAllister, in testimony, has admitted to making this alteration to indicate that Plaintiff "did not have certifying rights". But, the Defendants did not elect delegation authority for etravel and the Plaintiff, in spite of the actions of his supervisors, had the right to certify funds availability. See MacAllister Dep., pp. 2-245—2-246. See Blim Dep., pp. 65-66. See Dorman Dep., pp. 40-41.

95. During the last week of September of 2005, and during the discovery period of this case, computer security official, Lori Lodato, examined the computer of Malone and found all computer files removed. See Lodato Dep., pp.22-31.

96. Lodato reported her finding to Agency Computer Security Official, Juanita Makuta, who reported the incident as a violation of the Records Management Act and notified the Office of the Inspector General. See Makuta Dep., pp. 29-32.

97. At an All Employees meeting in February 2005, Eric Bost, the UnderSecretary of Agriculture stated that succession planning had not started. See Hines Dep., pp. 170-171. See Pedicini Affidavit, p.3 (18)

98. At an All Employees meeting in January 2006, Regional Administrator, Suzanne Biermann stated that the guidelines for succession planning had not been established by the agency. See Pedicini Affidavit, p.3 (19).

99. The only NERO employee to receive a letter for stating that Frances Zorn was wrong was Plaintiff. See Deposition of Brooksie

14

Spears ("Spears Dep."), pp.93-94, relevant pages attached hereto as Exhibit 67.
98.

100. Plaintiff's statement about Frances Zorn being wrong was made in a normal voice, not a loud voice. See Deposition of Janice Sciarappa ("Sciarappa Dep."), p.43-44, relevant pages attached hereto as Exhibit 66.


Dated: April 12, 2006                    Respectfully Submitted,

                                         /s/ John G. Pedicini
                                         John G. Pedicini, Pro Se
                                         10 Milano Drive
                                         Saugus, MA 01906
                                         781-233-5274


**CERTIFICATE OF SERVICE**

I certify that on April 12, 2006, I served a copy of the foregoing documents on the Defendants, via certified mail, return receipt requested, to Damian Wilmot, Esq., One Courthouse Way, Suite 9200, Boston, MA 02110.

Dated: April 12, 2006                    /s/ John G. Pedicini
                                         John G. Pedicini, Pro Se

15