**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**JOHN G. PEDICINI,**
**Plaintiff**

**-vs-**

**UNITED STATES OF AMERICA, ANN M. VENEMAN, SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE, AND LINDA SPRINGER[1], DIRECTOR, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT,**

**Defendants.**

**CIVIL ACTION NO. 04-12395-JLT**

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

## I. INTRODUCTION

This action pursuant to a complaint against the above-named Defendants in violation of federal Title VII law, U.S.C. sections 2000e et seq., violations of various rights in connection with administrative agency procedures afforded Plaintiff under various federal statutes, breach of contract, and denial of Plaintiff's federal right of Due Process under the 5th Amendment to the United States Constitution, seeks to redress discrimination and retaliation against Plaintiff John G. Pedicini by the United States of America, U. S. Department of Agriculture, Ann M.

[1] Pursuant to Federal Rule of Civil Procedure 25 (d)(1), the new Director of the United States Office of Personnel Management, Linda Springer, is hereby substituted for Dan G. Blair as a defendant in this case.

Veneman, Secretary.[2] Plaintiff now opposes Defendants' Motion for
Summary Judgment.

Defendants argue first that Plaintiff failed to exhaust
available administrative remedies on several of the claims he now
asserts before the Court. They deny Plaintiff suffered any
adverse employment action and, even assuming *arguendo*, he did,
the adverse employment action was of no consequence. Defendants'
argument relies heavily on Frances Zorn's action of designating
people other than Plaintiff with Plaintiff's right to certify
funds availability. Defendants depend on irrelevant documents to
support their contention in Defendants' Exhibits 13 and 15.

More importantly, the section of the Defendants Motion for
Summary Judgment on pretext, pp. 13-14, is based on recanted
testimony in the Dorman affidavit dated November 1, 2005 and
attached as Defendants' Exhibit 5.[3]

Defendants' Motion for Summary Judgment is factually flawed
and must be denied in its entirety.

## II.    BRIEF SUMMARY OF THE STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's
Statement Of Material Facts As To Which Plaintiff Contends There
Exists A Genuine Issue To Be Tried and Response To Defendants'
Statement Of Facts ("Plaintiff's Statement of Disputed Facts").

---

[2]  Plaintiff seeks a trial by jury in this matter.

[3]  In their pretext argument, Defendants rely upon Paragraph 12 of Dorman's testimony that not all backup
funds officers have the right to certify funds availability. But, in her deposition, Dorman admitted that the
Plaintiff is one of those backup funds officers who does have the right to certify funds availability. See
Deposition of Lisha Dorman , p. 30-31,42, 75-77,86, relevant pages attached hereto as Plaintiff's Exhibit 8.

## III. ARGUMENT

Plaintiff hereby incorporates by reference his argument on Count I, Defendants' violation of Title VII, from his Memorandum In Support Of His Cross-Motion For Summary Judgment into this memorandum as if fully set forth herein.

### A. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND PLAINTIFF HAS ADDUCED ADMISSIBLE EVIDENCE TO SUPPORT HIS CLAIMS

On a motion for summary judgment, the court must look at the record most favorable to the party opposing the motion and must indulge all inferences favorable to that party. Stephanischen v. Merchants Despatch Transport. Corp., 722 F. 2d 922,929 (1st Cir. 1983). The court must never "weigh the evidence and determine the truth of the matter." Lipsett v. University of P.R.., 864 F. 2d 881,895 (1st Cir. 1988). Special care is required, moreover, in cases where the state of mind of one of the parties is crucial to the outcome of the case. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance. Thus courts are particularly cautious about granting summary judgment in such cases." Lipsett, 864 F. 2d at 895(citing Stepanischen, 722 F. 2d at 928). Courts must be especially watchful about granting summary judgment to a defendant in a case, like the present one, which is based on a claim of retaliation. "Courts should exercise particular caution before granting summary judgment for employers on such issues as

pretext, motive, and intent." Santiago-Ramos V. Centenniel P.R. Wireless Corp., 217 F. 3d 46 (1st Cir. 2000). Courts must also be especially cautious in deciding whether to grant summary judgment in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination. Dominguez-Cruz v. Suttle Caribe, Inc., 202 F. 3d 424 (1st Cir. 2000); Mulero-Rodriguez v. Ponte, Inc., 98 F. 3d 670, 677 (1st Cir. 1996) (determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury). Furthermore, if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is inappropriate. Thames Shipyard & Repair Co. v. United States, 350 F. 3d 247, 276 (1st Cir. 2003). In this action, the record of facts clearly favors the Plaintiff. Defendants' Motion for Summary Judgment must be denied.

**B. PLAINTIFF'S RETALIATION CLAIMS ARE TIMELY**

Under 1st Circuit precedent, retaliation which arises after the filing of an EEO complaint or after informal of formal complaint to the agency may be included in a civil case and will not be barred for lack of exhaustion of administrative remedies. The leading case stating this in the 1st Circuit is Clockedile v. New Hampshire Dept. of Corrections,245 F. 3d 1 (1st Cir. 2001), ruling, that when a public employee fails to file retaliation complaints on actions following the filing of an EEO Complaint or

agency complaint, that, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency-e.g. the retaliation is for filing the complaint itself." Id., At 6. This ruling intentionally expanded the 1st Circuit previous ruling in Johnson v. General Electric, 840 F. 2d 132, 139 (1st Cir. 1988), in which the 1st Circuit had concluded that, "a lawsuit is limited to claims that 'must reasonably be expected to…have been within the scope of the EEOC's investigation,' 840 F. 2d at 139… ." Id. At 4. Therefore, all that is required to bring charges of retaliation in court is that the subsequent retaliation be related to the initial charges brought. The subsequent retaliation need not have even been expected to have come up in the scope of the investigation, nor need it have been pled in any administrative avenue.

In their Motion For Summary Judgment, Defendants claim that there are seven alleged retaliatory acts which Plaintiff failed to contact an EEOC counselor and/or file a formal EEO complaint.[4] However, Defendants are in error on this point.

(1) Defendants have not provided training in certifying funds availability in IAS. Under *Clockedile*, the failure to provide training in IAS certification of funds availability grew out of Defendants' original intent of denying Plaintiff the right to certify funds availability as stated in the email from Joseph

---

[4] **Defendants claim that Plaintiff is prevented from claiming the failure of Defendants to provide training in 2004 to Plaintiff and the failure of the agency to rotate him into a superior position. However, under *Clockedile*, these claims grew out of the EEO complaints of 4/7/03, 7/15/04, and 11/22/04.**

Stanco on 3/4/03[5]. The denial of the right to certify funds availability by the Defendants was included in Plaintiff's formal EEO complaint dated 4/7/03. See Plaintiff's Exhibit 16. In addition, Defendants entered into a written agreement, known as an Individual Development Plan, to provide Plaintiff with training by November 28, 2004. See Plaintiff's Exhibit 49. Defendants did not provide any training. See Deposition of John G. Pedicini ("Pedicini Dep."), pp. 103-104, 251, relevant pages attached hereto as Plaintiff's Exhibit 1. During the same time, other employees received up to $10,000 worth of training. Id.,p. 160.

(2) The letter of instruction dated March 13, 2003 disputed Plaintiff's right to have an EEO representative at a meeting that dealt with issues in an EEO complaint. See Plaintiff's Exhibit 40, p.1. Plaintiff's EEO complaint included that letter. See Plaintiff's Exhibit 16.

(3) As background on the Defendants' animus toward Plaintiff, in 2001, Plaintiff received a score of 99 out of 100 for the position of Supervisory Financial Management Specialist. See Plaintiff's Exhibit 28. Plaintiff's supervisor, Mr. MacAllister has testified that he knew Plaintiff's name was on the "most qualified" external list and decided not to select from it. See MacAllister Dep. pp.2-115—2-116. Similarly, in 2003, when Plaintiff's name was on a "most qualified" list and Mr. MacAllister stated that he looked at the "most qualified"

[5] See Plaintiff's Exhibit 22.

external list and "didn't like what he saw". See Pedicini Dep., p. 159 and Deposition of Martin Hines ("Hines Dep."),pp. 118-120, relevant pages attached as Plaintiff's Exhibit 7.

(4) Prior to the filing of this action, Plaintiff received no award for discovering $1.2 million in overcharges in the Nutrition Education Program, in spite of the fact that Defendants were able to give Plaintiff a spot award. After the filing of this action, Plaintiff did receive an award, but it did not specify that the award was for Nutrition Education. See Pedicini Dep., pp. 184-185.

(5) The USDA referral to the Employee Assistance Program was included in Plaintiff's EEO formal complaint dated 11/22/04. On October 13, 2004, Plaintiff received two letters of instruction. One was at a formal meeting in the Personnel Office and the other was placed in Plaintiff's in-box at his desk. The first letter included the USDA referral to the Employee Assistance Program. See Plaintiff's Exhibit 55, p.1. In Plaintiff's formal EEO complaint filed on 11/22/04, all letters of instruction were included. See Plaintiff's Exhibit 58.

(6) Plaintiff's name did not appear on the Funds Officer List, dated November 9, 2004. See Hines Dep., pp. 222-223. The act of removal from list grew out of Defendants' contention that Plaintiff was not a backup funds officer/alternate funds officer in disciplinary letter of instruction dated October 22, 2004. See Plaintiff's Exhibit 23.

(7) The telephone call from Mr.Salazar's office involved the disciplinary letter of instruction on EEO activity. See Plaintiff's Exhibit 55 and 69. Furthermore, the Regional Administrator, Frances Zorn, also considered the telephone call to involve EEO activity. See 2005 Deposition of Frances Zorn ("Zorn 2005 Dep."), pp.97-99, relevant pages attached as Plaintiff's Exhibit 15.

In addition, Plaintiff's testimony on pp. 108, 126, and 139 was corrected in the Errata Sheet and in subsequent testimony[6]. See Pedicini Dep., pp. 139, 251-252, relevant pages attached hereto as Plaintiff's Exhibit 1. On page 132 of his testimony, Plaintiff states that the eTravel approval chain issue involved the right to certify funds availability which, under *Clockedile*, grew out of the formal EEO complaint filed on 7/15/04 whereby Plaintiff was denied any right to certify funds availability whatsoever. See Plaintiff's Exhibit 18. This is an ongoing violation in a pattern of retaliation, concerning the right to certify funds availability.

### C. PLAINTIFF'S RETALIATION CLAIM SUCCEEDS AS A MATTER OF LAW

Defendants fail to address Plaintiff's formal EEO complaint dated July 15, 2004. See Plaintiff's Exhibit 18. See Amended Complaint ¶¶ 9,77-79. In that complaint, Plaintiff claims that Defendants were removing his high level duties (i.e. the

right to certify funds availability) and replacing them with lower level duties (i.e. typing and filing of travel vouchers). Defendants' argument is conspicuously silent on this point.

Plaintiff was designated as backup/alternate funds officer in 1998 and his name was published in a nationwide Funds Officer List by the agency's headquarters office on January 26, 1999. See Plaintiff's Exhibit 11. Defendants have no explanation for this fact and numerous other major facts. Thus, their Motion for Summary Judgment must be denied.

**1. Plaintiff Has Established A Prima Facie Case Of Retaliation.**

Defendants use the burden-shifting framework from McDonnell-Douglas to support their motion. They do not contest the fact that Plaintiff was engaged in a protected action. Instead, Defendants focus on the second criterion—suffering an adverse employment action.

Defendants' argument against Plaintiff establishing a prima facie case of retaliation is based on a false premise. According to the Defendants, Plaintiff never had the right to certify funds availability because the Regional Administrator, Frances Zorn, never designated him as a certifying officer and did not delegate the authority to him to certify funds availability. Thus, Defendants argue, since Plaintiff never had the right, USDA didn't "take" any right from him.

---

[6] At the exact time that Plaintiff was giving testimony on October 25, 2005, a selection decision was announced on the Temporary Supervisory Financial Management Specialist. Plaintiff filed an EEO

Four Budget Analysts have testified in this case (i.e. Hines[7], Lash[8], Dorman[9], and Speshock[10]). All four have supported the Plaintiff's argument that he is the backup/alternate funds officer for NERO and that he has the right to certify funds availability. No Budget Analyst has supported the Defendants' argument. Thus, Plaintiff has indeed had a significant duty and responsibility taken away from him, in addition to other duties that were removed on October 22, 2004.

Defendants' argument is based on the role of the Regional Administrator, Frances Zorn, to delegate authority on certifying funds availability. It is disputed by the Agency's longest-serving funds control officer, Martin Hines. Defendants' Exhibits 13 and 15 have been reviewed by Mr. Hines and declared irrelevant to this action. See Hines Dep., pp. 224-231, relevant pages attached as Plaintiff's Exhibit 7. Specifically, Defendants' argument relies upon a February 22, 1982 agency memo on designating certifying officers for disbursement activities. A plain reading of the memo fully supports this conclusion. The second paragraph reads, "*When FNS Regional Offices assume responsibility for* ***disbursing activities***, *each Region will need to file with Treasury the specimen signature of the manager authorized to designate certifying officers.*" **Funds control officers do not certify disbursements.** See FNS Handbook 101

---

complaint on 11/26/05.

[7] Deposition of Martin Hines, pp. 37-39, relevant pages attached hereto as Plaintiff's Exhibit 7.

[8] Deposition of Jonathan Lash, pp. 13-16, relevant pages attached hereto as Plaintiff's Exhibit 21.

[9] Deposition of Lisha Dorman, pp. 30-31,42, 75-77, relevant pages attached hereto as Plaintiff's Exhibit 8.

("Handbook 101"), p. 3-3, C(3), relevant pages attached hereto as Plaintiff's Exhibit 9. Certifying disbursements is completely different from certifying funds availability. See Hines Dep., pp. 224-231. Likewise, Mr. Hines has reviewed the undated "Delegation of Authority" from the early 1980s and has testified that this letter also pertains to certifying officers for disbursements. See Hines Dep., pp. 224-231, 294-295.

Defendants do not provide any evidence that Ms. Zorn's delegation authority includes certifying funds availability. In fact, Ms. Zorn testified that she never issued such a letter until after Plaintiff filed his formal EEO complaint on 4/7/03. Defendants' argument on this point is so illogical that it would prevent anybody from certifying funds availability until June 16, 2003, including the funds control officer, Martin Hines. Ms. Zorn has testified she never delegated authority to Hines, until June 16, 2003. Furthermore, she testified that she never delegated authority to MacAllister to issue the self-serving letter dated May 28, 2002. She testified that her predecessor never delegated authority to MacAllister to issue the self-serving letter dated May 26, 1995. See Zorn 2005 Dep., pp. 199-201.

In 1998, Plaintiff was designated as the backup funds officer by his supervisor and Ms. Zorn was notified. See Deposition of Angela (McElmurray) Speshock ("Speshock Dep."), pp. 9-10,29-30, relevant pages attached hereto as Plaintiff's Exhibit 10. Plaintiff's designation was published by the agency's

[10] **Deposition of Angela (McElmurray) Speshock, pp. 10, 15-16, 29-30, relevant pages attached hereto as**

headquarters office in a nationwide Funds Officer List, dated January 26, 1999. The list was developed by Angela (McElmurray) Speshock. Id.,pp.8-9. Plaintiff's name was on the list under the regional office name, "NERO". See Plaintiff's Exhibit 11, Funds Officer List. All backup funds officers on the list have the right to certify funds availability. Id., pp. 15-16.

Nobody can dispute the fact that Plaintiff is the backup funds officer for NERO. See Hines Dep., pp. 37-39. See Deposition of Jonathan Lash ("Lash Dep."), pp. 13-16, relevant pages attached as Plaintiff's Exhibit 21. Even Lisha Dorman has testified that "everyone in Washington, myself included, would refer to [Plaintiff] as the backup funds officer." See Deposition of Lisha Dorman ("Dorman Dep."), p. 31, relevant pages attached hereto as Plaintiff's Exhibit 8. This is the same Lisha Dorman who signed the affidavit that the Defendants have used to support their Motion For Summary Judgment. See Defendants' Exhibit 11. Ms. Dorman testified that Plaintiff, as an IAS Funds Approver, has the right to certify funds availability in the Integrated Acquisition System (IAS)—the very fact at issue in this action from the formal EEO complaint dated 4/7/03(See Plaintiff's Exhibit 16). See Dorman Dep.,pp. 75-76. See Blim Dep., p 66. Defendants have admitted that Plaintiff is an IAS Funds Approver. See Defendants' Answer To Amended Complaint, ¶ 36. Ms. Dorman has testified that Plaintiff also has the right to

---

**Plaintiff's Exhibit 10.**

certify funds availability in the Etravel system. See Dorman Dep., pp. 40-41. See Blim dep., p. 64.

On September 20, 2001, Plaintiff's supervisor, Joseph Stanco designated Plaintiff as Funds Control Officer backup ("FCO backup"), in writing on the USDA's official Form 1143 used to authorized employees with all the rights of the funds control officer and such rights are linked to the Plaintiff's duties in the workplace. Plaintiff became the backup funds officer for NERO and authorized in the agency's accounting system use to verify and certify funds availability, Foundation Financial Information System (FFIS).See Plaintiff's Exhibit 12, Designation as FCO backup. See Deposition of Juanita Makuta ("Makuta Dep."),pp. 41-43, relevant pages attached hereto as Plaintiff's Exhibit 6. See Handbook 101, p.3-2 (3). On November 8, 2001, Plaintiff was one of only two employees at NERO to be authorized in FFIS. The other person was the funds control officer, Martin Hines. No NERO supervisors were authorized. See Plaintiff's Exhibit 14.

On March 12, 2002 and February 24, 2004, Plaintiff's supervisors gave him the right to release/unrelease travel documents in the agency's TRVL system. See Plaintiff's Exhibit 13, pages 1 and 2. Such a right is given only to funds control officers. See Handbook 101, p.8-2 (f), second sentence. See Makuta Dep., p.36. See Dorman Dep.,p.67.

On July 14, 2003, Defendants distributed a Financial Management Contact List to all states in the Northeast Region.

Plaintiff's name was listed with the title, "Alternate Funds Officer". See Plaintiff's Exhibit 42.

Defendants also state in their prima facie argument that, even if Plaintiff was a certifying officer with the right to certify funds availability, "taking of this function would not amount to an adverse employment action." The right to certify is a higher level right. It is indisputable that similarly-situated individuals at the agency's headquarters office are two grade levels (i.e. Grade 13)above Plaintiff's current grade level of 11. See Dorman Dep.,pp. 86. See Hines Dep.,pp.29-30.

Defendants claim that the disciplinary letter of instruction dated March 13, 2003 "was not a form of discipline". However, a plain reading of the letter clearly disproves the Defendants' contention. On Page 2 of the letter, next to the last paragraph, second sentence, states, "*Continued noncompliance or non-cooperation with requests from your supervisors for work-related face-to-face meetings will subject you to disciplinary action".* See Plaintiff's Exhibit 40. Defendants have used these alleged "letters of instruction" to establish a verifiable foundation for placing an employee on probation, also known as Performance Improvement Plan (PIP).

A supervisory file has been kept on the Plaintiff and these letters are copied to that file. On the October 13, 2004 disciplinary letter of instruction, at the bottom, left-hand margin, an annotation has been made that the letter has been copied to a **"SUPV FILE"**. See Plaintiff's Exhibit 55, p. 2. On

August 20, 2001, a co-employee, Luis Perez received a letter of instruction similar to the one received by Plaintiff. See Plaintiff's Exhibit 76. In the first paragraph, fourth sentence, it also states that the letter will not be part of "any official agency file". However, eight months later, Mr. Perez was placed on probation by Mr. MacAllister. See Deposition of Frances Zorn in 2003 ("Zorn 2003 Dep."), pp. 22-29, relevant pages attached hereto as Plaintiff's Exhibit 75. The disciplinary letter of instruction is a precursor to a suspension. It documents the trail. Plaintiff has testified that a book, entitled "The Federal Manager's Guide To Discipline" for a course taught at the USDA Graduate School, states that it is a written reprimand. The next step is suspension for 14 calendar days; then a reduction in Grade level; then removal from federal service. See Pedicini dep., pp. 241-246.

**2. Defendants Alleged Non-Discriminatory Reasons For Its Employment Actions Are Pretexts For Discrimination**

The Plaintiff can demonstrate pretext by identifying "weaknesses, implausability, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons "such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" Stantiago-Ramos v. Centenniel P.R. Wireless Corp., 217 F 3d 46,54 (1st Cir. 2000)(quoting Hodgens v. General Dynamics Corp., 144 F3rd 151, 168 (1st Cir.).

To argue against pretext, Defendants depend heavily on Ms. Zorn's "alleged" delegation authority". The supporting documents in Defendants' Exhibits 13 and 15 have been declared irrelevant by the Regional Funds Control Officer, Martin Hines. See Hines Dep., pp. 224-231. Assuming, *arguendo*, that Ms. Zorn had delegation authority, her use of the authority came in reaction to the EEO complaints filed by Plaintiff. Plaintiff's formal EEO complaint was dated on April 7, 2003. See Plaintiff's Exhibit 16. On June 16, 2003, Ms. Zorn issues a memo on delegation authority, for the first time. See Plaintiff's Exhibit 17. See Zorn 2005 Dep.,pp. 141-142. On June 2, 2004, Plaintiff filed an informal EEO complaint on an attempt by Messrs. MacAllister and Malone to take all rights to certify funds availability away from Plaintiff. See Plaintiff's Exhibit 18. Just one week later, Ms. Zorn issued another memo on June 9, 2004. See Plaintiff's Exhibit 19. Plaintiff filed a formal EEO complaint on July 16, 2004. See Plaintiff's Exhibit 18.

There is strong evidence that Plaintiff's EEO Representation bothered Ms. Zorn. She has testified that Plaintiff's EEO representation "**lessened the productivity of the office** " and **"caused anxiety among his supervisors"**. See Zorn 2005 Dep.,pp.61,77. Furthermore, there is strong temporal proximity between Plaintiff filing his EEO complaints and Ms. Zorn issuing these memos. It is indisputable that Ms. Zorn knew about Plaintiff's EEO Representation, since she was deposed on February 11, 2003 by Plaintiff and forced to admit that she did not hire

any minorities for supervisory positions in the food programs at NERO. See 2003 Deposition of Frances Zorn ("Zorn 2003 Dep."), pp.13-14, relevant pages attached hereto as Plaintiff's Exhibit 75.

Defendants' argument on some backup funds officers having the right to certify funds availability and others not having that right is totally dependent on Paragraph 12 in the affidavit of Lisha Dorman. However, in her deposition, Ms. Dorman recanted Paragraph 12 and, after reviewing the evidence, testified that Plaintiff was the backup funds officer for NERO and he did have the right to certify funds availability. See Dorman Dep., 30-31,42,75-77,86. She testified that Paragraph 12 was incorrect on this point. Indeed, in her testimony, Dorman remarks that the Plaintiff has always been the backup funds officer and "…how could anyone dispute that." See Dorman Dep., p 36. In addition, Dorman defers judgment to Martin Hines and testifies that Mr. Hines is the most knowledgeable person on funds control issues at NERO. Id., p.13.

Mr. MacAllister's disciplinary letter of instruction dated March 13, 2003, prohibited EEO representation on issues pertaining to an EEO complaint (i.e. the right to certify the availability of funds in IAS). Defendants admit in their pleadings that Mr. MacAllister told Plaintiff not to answer any questions pertaining to his EEO complaint. See Defendants' Answer To Amended Complaint, ¶ 64. When Plaintiff doesn't answer a few questions because they pertained to his complaint, he receives a

disciplinary letter of instruction which MacAllister has used in the past to support a performance-improvement-plan (PIP)(i.e. probation before suspension). <u>See</u> Zorn 2003 Dep., pp. 22-29. Furthermore, Mr. MacAllister labels the meeting as "informal" in order to prevent EEO representation. When, in fact it was a formal meeting with a set time, place, and topic. In contrast, Plaintiff received an email from the Deputy Regional Administrator outlining the grievance procedure, which does constitute a formal meeting and does permit representation. <u>See</u> Plaintiff's Exhibit 71.

In the disciplinary letter of instruction dated October 13, 2004, issued after the meeting in the Personnel office, Mr. Malone states as follows, "You will secure from me approval for official time to engage in **<u>any</u>** EEO related activity prior to engaging in such activity." <u>See</u> Plaintiff's Exhibit 55. In order to file his formal EEO complaint dated November 22, 2004, Plaintiff was required to obtain advance permission. <u>See</u> Plaintiff's Exhibit 73. By comparison, Mr. Hines did not have to obtain prior permission to file an EEO complaint. <u>See</u> Pedicini Dep., p 128.

The disciplinary letter of instruction with the most contradictions associated with it is the one pertaining to the use of the title, "Alternate Funds Officer", on October 22, 2004. In the letter, Mr. Malone admits that Plaintiff is **"<u>Certifying Officer (IAS)</u>"**, which is exactly what Defendants deny in their Motion For Summary Judgment. It was also denied by Mr. Stanco in

his email dated March 4, 2003. See Plaintiff's Exhibit 22. Also, the Defendants designated Plaintiff with the title, "Alternate Funds Officer", and published it in a Regional Listing to all states in the Northeast Region. See Plaintiff's Exhibit 42. Furthermore, on August 28, 2003, on page 1, Defendants represented to the USDA Civil Rights Office as follows,

> "Douglas MacAllister …explained that no decision had been made to remove [Plaintiff] as **alternate to the NERO Funds Officer.** John Ghiorzi, Deputy Regional Administrator, …explained that no decision had been made to remove [Plaintiff] as **alternate to the NERO Funds Officer.**" See Plaintiff's Exhibit 43.

Oddly, fourteen months later, on October 22, 2004, Defendants are reprimanding Plaintiff for using the title of "Alternate Funds Officer".

On October 7, 2004, Defendants sought to recruit and train and other employees, excluding Plaintiff, in order to select one of these employees as Budget Analyst, on the belief that the current Budget Analyst was going to retire. Training was detailed and in-depth. Several disciplinary letters of instruction were issued to Mr. Hines to force him to train the individuals. See Plaintiff's Exhibit 57. One employee, Bruce Potvin, was specifically recruited by a selecting official, Roger Hamilton. When Mr. Potvin mentioned Plaintiff's name as a qualified candidate, Mr. Hamilton responded that " Plaintiff was not going get that". See Deposition of Bruce Potvin ("Potvin Dep."), pp. 9-10,16, relevant pages attached hereto as Plaintiff's Exhibit 52. In essence, Defendants sought to obstruct any career advancement

opportunity available to the Plaintiff. Mr. Hamilton is a selecting official in hiring actions.[11] In assessing whether the employer had a discriminatory motive, a court may consider any statements by members of a decision-making body.[12]

**PLAINTIFF'S APA CLAIM AS A MATTER OF LAW**

**1. OPM and USDA Failure To Issue Guidelines**

SubPart A of Plaintiff's Count Two is an APA claim for the OPM's and the USDA's failure to issue guidelines under the No FEAR Act providing for monitoring and discipline of those who have retaliated against employees such as Plaintiff. Plaintiff's Amended Complaint includes OPM as a named Defendant. Because of OPM's failure to issue these guidelines, Plaintiff has suffered and continues to suffer exactly the type of continued retaliation which the No FEAR Act intended to prevent.

OPM and the USDA have taken the wind out of the No FEAR Act by refusing to enact regulations which would deal with individuals such as Plaintiff's supervisors against whom multiple complaints of retaliation and discrimination have been made by Plaintiff and others. Due to Plaintiff's supervisors' continued illegal discriminatory activity, the USDA and U.S. have been forced to defend and settle multiple complaints brought by Plaintiff and other employees since the No FEAR Act was enacted. Plaintiff has complained to the EEOC, the USDA Office of Civil

---

[11] See MacAllister Dep., pp. 2-93—2-94, 2-112.

[12] Hodgens v. General Dynamics Corporation, 144 F3d, 151, 169. (1st Circuit 1998) quoting Reno v. Bossier Parish School Board, 520 U.S. 471 (1997).

Rights, and his USDA supervisors about the retaliation he has experienced after his 2002 Settlement with the USDA and all three have allowed the retaliation to continue by postponing any finding on the investigation of his claims and refusing to discipline Plaintiff's supervisors. Plaintiff's USDA supervisors have refrained from any action to prevent the continued retaliation against Plaintiff. In addition, Plaintiff has not been afforded the hearing process under his Settlement Agreement with the USDA on his claims of retaliation against him.

OPM's and the USDA's unreasonable delay in promulgating rules, guidelines and regulations to discipline those who have acted against Plaintiff in the direct cause of the continuance of the retaliation against Plaintiff to this very day and of Plaintiff's fear of continued retaliation. Under the No FEAR Act, OPM's refusal to issue guidelines indicating how to discipline Plaintiff's supervisors makes it complicit in the continuing retaliation against Plaintiff.

Defendants' argue that because Congress intended a study of disciplinary practices to be done prior to enacting disciplinary regulations that the delay in promulgating those regulations is not undue. However, Defendants present no evidence to show that OPM has issued rules to require the carrying out of this study or that this study is underway. Defendants have offered no evidence to show that OPM has made its best efforts to conduct a study and meet its task of issuing guidelines for discipline, which would help save OPM from a claim of unreasonable delay.

**2. Plaintiff Has Standing Within The Zone of Interest To Assert An APA Claim Under The No FEAR Act And Plaintiff Has Suffered Injury In Fact.**

Defendants argue a lack of standing in Count II under subpart A. Plaintiff outlines the basis for his standing under subpart A.

Plaintiff's standing stems from the "zone of interest" test. "*Under Clark*, a plaintiff satisfies the prudential standing requirement if she was herself the subject of the contested administrative act, or if she shows that her rights are not so marginally related to the purpose of the statute that a court will assume Congress did not intend the suit… ." Amgen v. Scully, 234 F. Supp. 2d 9, 25 (D.D.C. 2002) (citing to Clark v. Securities Indus. Ass'n, 479 U.S. 388, 399 (1987)). Only those whose interests or rights are so marginally related to the purpose of the statute that Congress could not have reasonably have been assumed to have intended that party bring suit are meant to be excluded from suit. Harvey v. Veneman, 396 F. 3d 28, 34 (1st Cir. 2005).

Plaintiff must show that his interests were those that Congress could have expected to be protected under the statute, regulation, or order in question or that his interests were effected by agency action or inaction under the statutory provision at issue, Congress specifically intended to benefit the plaintiff. Instead we first discern the interests "arguably… to be protected" by the statutory provision at issue; we then

inquire whether the plaintiff's interests affected by the agency action are among them." Nat'l Credit Union Admin. V. First Nat'l Bank and Trust Co.,  552 U.S. 479, 492 (1988). Plaintiff need not have been the specific beneficiary of the Act., but Plaintiff's interests must be affected by the agency inaction.

The issue of standing under the zone of interest test focuses, "not on those who Congress intended to benefit, but on those who in practice can be expected to police the interests that the statute protects." Id. At 444 (quoting Mova Pharmaceutical Corp.v. Shalala, 140 F. 3d 1060, 1075 (D.C. Cir. 1998)). Plaintiff is an employee of a Federal Agency with a settlement agreement with that agency, who has represented those claiming discrimination and retaliation, who have been illegally retaliated against, who has claimed that he has been illegally retaliated against, and who fears continued illegal retaliation. As such, Plaintiff can be expected to police the interests the No FEAR Act protects.

Section 102 of the No FEAR Act relates the "Sense of Congress." That section provides: "(1) Federal agencies should not retaliate for court judgments or settlements relating to discrimination and whistleblower laws by targeting the claimant or other employees with reductions in compensation, benefits, or workforce to pay for such judgments or settlements; (2) the mission of the Federal agency and the employment security of employees who are blameless in a whistleblower incident should not be compromised… ." Plaintiff is exactly the type of

individual Congress intended to protect through the No FEAR Act. He has a settlement agreement with the USDA, relating USDA retaliation against Plaintiff for his testimony as a witness against his superiors' violation of discrimination laws and has participated in EEO activities relating to claims of discrimination against the USDA. In reaction to Plaintiff's protected Settlement Agreement and protected EEO activities, Plaintiff's supervisors have retaliated against him, unfettered by the protections which the No FEAR Act was meant to afford individuals in Plaintiff's situation.

Defendants minimize Plaintiff's claims and injuries. Plaintiff's superiors have engaged in repeated and concerted retaliation against the Plaintiff in an effort to prevent Plaintiff from engaging in EEO activity which reflects poorly on his superiors by revealing their discriminatory practices at the USDA. In July of 2001, Plaintiff, as an EEO representative for co-worker Antoinette Bellezza, forced his superior, Arthur LeBlanc to admit under oath to soliciting sex from a female subordinate while on official business of the U.S. Government. USDA official, David Burr, was representing the agency. See Deposition in 2001 of Arthur LeBlanc ("LeBlanc 2001 Dep."), pp. 34-35, relevant pages attached hereto as Plaintiff's Exhibit 74. On February 11, 2003, Plaintiff, as EEO representative for co-worker Luis Perez, forced Frances Zorn, the Regional Administrator, to admit under oath that NERO did not hire any

minorities for supervisory positions in the food programs. See Zorn 2003 Dep., pp. 13-14.

Plaintiff's injury in fact need not be as direct as the Defendants suggest. For example, even the observation of wildlife animals for purely esthetic reasons gives standing to challenge the treatment of those animals, since a Plaintiff is injured by viewing the animals' inhumane treatment. Animal Legal Def. Fund, Inc. v. Glickman, 154 F. 3d 426 (D.C. Cir. 1998). Under Animal Legal Def. Fund, viewing the inhuman treatment of animals gives standing under a statute meant to prevent inhumane treatment of animals which asked for the promulgation of sufficient standards to protect the animals' well-being; the retaliatory treatment of Plaintiff, the possiblity for continued retaliation against Plaintiff, and his observation of the discriminatory and retaliatory treatment of others for whom he as acted as an EEO Representative, pro bono, against Defendants should give Plaintiff standing under a statute intending to curtail retaliation and asking for the promulgation of guidelines to protect aginst retaliation.

The Second Circuit has held in Baur v. Veneman, 352 F. 3d 625 (2nd Cir. 2003) that even the possibility of being harmed by the refusal to enact or enaction of regulations is sufficient to satisfy the injury in fact requirement. In that case a consumer complained under APA about USDA regulations which indicated downed livestock could be used for human consumption after passing a post-mortem inspection. Id. The possibility that a

consumer might suffer future harm via increased risk of disease transmission caused by a USDA regulation gave that consumer sufficient injury in fact. Id. See also, Harvey v. Veneman, 396 F. 3d 28, 34-35 (1st Cir. 2005). Similarly, the increased risk of harm has been held sufficient injury in fact on environmental cases. See Friends of the Earth, Inc. v. Gaston Recycling Corp., 204 F. 3d 149, 160 (4th Cir. 2000) (concluding that increased risk of harm is sufficient injury in fact); Central Delta Water Agency v. U.S., 306 F. 3d 938, 947-48 (9th Cir. 2002); Johnson v. Allsteel, Inc., 259 F. 3d 885, 888 (7th Cir. 2001); Walters v. Edgar, 163 F. 3d 430, 434 (7th Cir. 1998), Cert. Denied 526 U.S. 1146 (1999); Mountain States Legal Found. V. Glickman, 320 U.S. App. D.C. 87, 94 (D.C. Cir. 1996) (increased risk of forest fires is sufficient for Article III purposes).

Plaintiff has suffered sufficient injury in fact. Plaintiff has suffered repeated retaliation by his superiors, the curtailment of which is directly contemplated by the No FEAR Act. In addition, Plaintiff has demonstrated through testimony that the retaliation is ongoing and likely to occur in the immediate future. Plaintiff has also demonstrated through testimony that, absent any discipline of his superiors via regulations promulgated under the No FEAR Act, the retaliation is likely to continue, since, his superiors have suffered no discipline and, as demonstrated through testimony, Plaintiff's superiors continue to retaliate against Plaintiff and others. See Hines Dep.,pp.30. Not only does Plaintiff suffer, current, ongoing retaliation, but

Plaintiff also has reason to fear that lack of promulgation of disciplinary regulations will lead to fairly immediate increased risk of retaliation against him. For sufficiency of injury in fact, this honorable Court should draw no differential between the likelihood of continued or imminent future harm to Plaintiff in Plaintiff's work environment due to lack of required disciplinary regulation and other fear of imminent harm claims due to environmental regulations or consumer regulations ( or lack thereof) already deemed sufficient injury in fact by this and other Circuits.

The No FEAR Act itself acknowledges and forsees a risk of harm to federal employees such as Plaintiff—those employees with judgments or settlement agreements against federal agencies—without regulations in place to discipline those retaliating, The No FEAR Act Findings in Section 101(2) of that Act point to its intent to redress, "chronic problems of discrimination and retaliation against Federal Employees," which Congress found to exist.

Defendants argue that Plaintiff does not have standing because there has been no judgment against his superiors that they have retaliated against Plaintiff. As stated herein below, there is a 2003 judgment against his superiors for non-compliance with his Settlement Agreement's dispute resolution process. The non-compliance with Plaintiff's Settlement Agreement was retaliatory and, as demonstrated by testimony (See Pedicini Affidavit, p.2 (13)), Plaintiff's superiors have continued to

refuse to comply with his Settlement Agreement, unfettered by any disciplinary standards.

Because Plaintiff is in the zone of interest Congress intended to protect with the No FEAR Act and Plaintiff has suffered injury due to OPM's and the USDA's failure to act under the Act, Plaintiff has standing to challenge their inaction. In addition, Plaintiff has stated a cognizable claim.

### 3. The USDA Failed To Comply With The Agency's Office Of Civil Rights' May 19, 2004 Order

A plain reading of the Order dated May 19, 2004 clearly states that the Defendants were required to implement the dispute resolution process in writing. The Order reads as follows on page 4,

> "It is the final decision of the USDA that the Agency has not complied with Item 7 of the Settlement Agreement. **Therefore, the Agency shall implement the dispute Process outlined in Item 7 in writing.** This is the final Determination of USDA on the complainant's notice of non-compliance." See Plaintiff's Exhibit 50.

Defendants have never contacted Plaintiff to implement the dispute process. See Pedicini Affidavit, p. 2 (13). Defendants are unable to offer any evidence that the dispute resolution was implemented.

Defendants misrepresent Plaintiff's testimony on pp. 182-183 of his deposition. Plaintiff stated that he sought to enforce the agreement on the Defendants. Indeed, the dates on the Order confirm Plaintiff's testimony. On page 1, the date of the allegation is March 20, 2003 and the date of the decision is May

19, 2004. Id., p.1. Plaintiff spent over a year attempting to obtain a final agency action on the allegation. As a result of the agency's failure to fully implement the dispute resolution process, Plaintiff has incurred over $100,000 in legal fees as of December 20, 2005.

**E. PLAINTIFF HAS PROVED BREACH OF CONTRACT**

The USDA Civil Rights Office has already adjudicated this issue and found the Defendants to have breached the Settlement Agreement. The Plaintiff clearly communicated the disputed issue to the Deputy Regional Administrator, John Ghiorzi, on March 10, 2003, and notified him that the dispute had passed through the first two stages of the dispute resolution process, remaining unresolved. Mr. Ghiorzi was reminded that he was the final reviewing official. Mr. Ghiorzi abandoned his responsibility.

The EEOC has held that a Settlement Agreement constitutes a contract between the employee and the agency, to which ordinary rules of contract construction apply. Herrington v. Department of Defense, EEOC Request No. 05960032 (December 9, 1996). The USDA Civil Rights Office ruled that Plaintiff had met his burden of proof to show that Defendants breached the contract. Vega v. United States Postal Service, EEOC Appeal No. 01986613 (June 30, 2000). Similar to their behavior with the USDA Civil Rights Office, the Defendants have still not implemented the dispute resolution process as of today's date.

**F. DEFENDANTS VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS**

A public employer cannot deprive its employee of a constitutionally recognized liberty interest, or of a substantial property interest in public employment, without affording the employee due process. Board of Regents v. Roth, 408 U.S. 564 (1972). Under the Fifth Amendment to the U.S. Constitution, a federal employee has a constitutional right to due process prior to deprivation of a property interest in employment. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985).

**1. Defendants Deprived Plaintiff Of His Property Interest in Backup/Alternate Funds Officer Position**

The position of backup/alternate funds officer included the ability to certify funds availability and to receive the necessary training. Plaintiff's appointment and designation was created by paper designation and contract in 1998 and reaffirmed by FNS via email. Defendants also represented to the USDA Civil Rights Office, in the same dispute that is before this honorable Court, that Plaintiff was indeed alternate to the NERO Funds Officer. See Plaintiff's Exhibit 43. Defendants' actions continue on an ongoing basis. In 2004, Defendants failed to comply with a training plan for Plaintiff, as is evidenced by Plaintiff's Exhibit 49 and by Item 1 in the Settlement Agreement. See Pedicini Dep., pp. 143-144.

The Supreme Court recognized a due process right for a public employee with a protected property interest to be free from arbitrary and capricious action. Harrah Independent School

District v. Martin, 440 U.S. 194 (1979). The court has also found that public employees have a protected property interest in his/her job rank. Greene v. Barrett, 174 F. 3d 1136 (10th Cir. 1999). Hennigh v. City of Shawne, 155 F. 3d 1249 (10th Cir. 1998). Even an ambiguous policy statement may create a protected property interest. Peterson v. Minidoka School District, 118 F. 3d 1351 (9th Cir. 1997). Several courts have decided cases raising due process rights in connection with changes in rank, job assignments, and work schedules. In Greenwood v. New York, 163 F. 3d 119 (2d Cir. 1998), the court found that a staff psychiatrist had a constitutionally protected property interest in his clinical staff privileges.

Plaintiff has a property interest in his certifying duties as backup/alternate funds officer and the necessary training opportunities associated with that position. Testimony from Lisha Dorman and the Regional Funds Officer, Martin Hines, unequivocally states that the right to certify funds availability enables Plaintiff to advance to a higher grade level. See Dorman Dep., p. 86. See Hines Dep., pp.29-30. Plaintiff also has a property interest in the Settlement Agreement, as an employment agreement between employer and employee, which includes the dispute resolution process in Item 7 of that agreement. Furthermore, Plaintiff's property interest in his position is to be free from unequal and retaliatory treatment as stipulated in the provisions of that agreement. Defendants' actions have deprived Plaintiff of that property interest.

**2. Defendants Deprived Plaintiff Of Due Process**

The Settlement Agreement is a contract. It not only provides for dispute resolution, but also for training and the expectation that Plaintiff would be treated equally to all employees in training and career advancement opportunities.

To overcome Plaintiff's claim on due process, Defendants again ignore the decision by the USDA Civil Rights Office and attempt to maintain that Plaintiff did not invoke the dispute resolution procedure in the settlement agreement. Defendants seek to put conditions where conditions do not exist. This issue has already been adjudicated. The USDA Civil Rights Office relied on the plain meaning rule that "… if the writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature… ." Montgomery Elevator Co. v. Building Eng'g Servs. Co., 730 F 2d 377 (5th Cir. 1984). As a result, Defendants were found to have breached the agreement.

It is clear from the decision by the USDA Civil Rights Office that the settlement agreement is to be interpreted as an employment contract. Similarly this contract gives Plaintiff a property interest to be free from arbitrary and capricious actions, especially those that violate Title VII. Case law relating to the due process rights of public employees establishes that the "root requirement of due process is 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Purisch v.

Tennessee Tech. Univ., 76 F. 3d 1414, 1423 (6th Cir. 1996)(quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)). Defendants breached that employment contract and essentially engaged in demoting Plaintiff to a secretarial position of typing and filing. At the same time, Defendants took away his right to certify funds availability, his title of backup/alternatefunds officer, substituted lower level duties (i.e. typing and filing) for higher level duties (i.e. Leave-Without Pay Reports, right to certify funds availability, etc.), recruited Plaintiff's co-worker for a possible vacancy in the Funds Control Officer's position by telling a co-worker that Plaintiff would not be selected, and denied Plaintiff any training in a 2004 training plan. More importantly, Defendants violated the employment contract and treated Plaintiff unequally in terms of training and career advancement opportunities and engaging in reprisal actions against him. As in *Harrah,* Plaintiff is a public employee with a protected property interest and a right to due process. Consequently, Defendants' Motion for Summary Judgment fails on this count.

**IV. CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion for Summary Judgment in its entirety.

Dated: April 12, 2006

Respectfully submitted,

John G. Pedicini, Plaintiff Pro Se
10 Milano Drive
Saugus, MA 01906
781-233-5274

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2006, I sent a copy of the foregoing document to the Defendants, via certified mail return receipt requested, to Damian Wilmot, Esq., Assistant U.S. Attorney, One Courthouse Way, Suite 9200, Boston, MA 02110.

John G. Pedicini, Plaintiff Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.