UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

|                                              |   |                                   |
|----------------------------------------------|---|-----------------------------------|
| JOHN G. PEDICINI,                            | \ |                                   |
|        Plaintiff                             | \ |                                   |
|                                              | \ | CIVIL ACTION NO. 04-12395-JLT     |
| -vs-                                         | \ |                                   |
|                                              | \ |                                   |
| UNITED STATES OF AMERICA                     | \ |                                   |
| UNITED STATES DEPARTMENT OF                  | \ |                                   |
| AGRICULTURE, ANN M. VENEMAN,                 | \ |                                   |
| SECRETARY, AND                               | \ |                                   |
| LINDA SPRINGER[1] DIRECTOR,                  | \ |                                   |
| UNITED STATES OFFICE OF                      | \ |                                   |
| PERSONNEL MANAGEMENT,                        | \ |                                   |
|                                              | \ |                                   |
|        Defendants.                           | \ |                                   |

---

**STATEMENT OF MATERIAL FACTS AS TO WHICH PLAINTIFF CONTENDS THAT
THERE EXISTS A GENUINE ISSUE TO BE TRIED AND PLAINTIFF'S RESPONSE
TO DEFENDANTS' STATEMENT OF FACTS**

Pursuant to Local Rule 56.1, Plaintiff John G. Pedicini
(hereinafter referred to as "Plaintiff") contends that there
exists a genuine issue to be tried as to the disputed material
facts set forth below, and responds to the Statement of Material
Facts as to Which Defendants Contend there is no Genuine Issue
for Trial (hereinafter referred to as "Defendants' Statement of
Facts") as follows:

---

[1] Pursuant to Federal Rule of Civil Procedure 25 (d)(1), the new Director of the United States Office of
Personnel Management, Linda Springer, is hereby substituted for Dan G. Blair as a defendant in this case.

1

1.    Plaintiff, John Pedicini, began his employment in the
Financial Management Division, Northeast Regional Office ("NERO")
of the United States Department of Agriculture, Food and
Nutrition Service ("USDA-FNS") on August 1, 1997, as a Financial
Management Specialist. Defendant's Statement of Facts ¶ 1.

1.01 Disputed as Incomplete.  Plaintiff also began his
employment with a written description of his **performance
appraisal standards** that give specific details on his duties and
responsibilities. These were given to Plaintiff on the day that
he started work. See Deposition of John G. Pedicini ("Pedicini
Dep."), pp.40-41, relevant pages attached hereto as Plaintiff's
Exhibit 1. See Deposition of USDA-FNS Regional Funds Control
Officer Martin Hines ("Hines Dep.), pp. 236-238, relevant pages
attached hereto as Plaintiff's Exhibit 7. See Deposition of
Douglas MacAllister ("MacAllister Dep."), pp. 2-258—2-264,
relevant pages attached hereto as Plaintiff's Exhibit 4. See
Performance Appraisal Standards 2001-2005, relevant pages
attached hereto as Plaintiff's Exhibit 3.

2.    Plaintiff's official title with USDA-FNS since August 1,
1997, to present day has been "Financial Management Specialist".
Defendants' Statement of Facts ¶ 2.

 2.01. Disputed as Incomplete.  Many USDA-FNS employees have an
official title and working titles. For example, Juanita Makuta,
an employee of the Defendants, has an official title of "computer
specialist" and also has the working title of "information
systems security officer". See Deposition of Juanita Makuta
("Makuta Dep."), pp.7-8, relevant pages attached hereto as
Plaintiff's Exhibit 5. Lori Lodato, another employee of the
Defendants, has an official title of "information technology
specialist" and also has the working title of "regional deputy
security officer". See Deposition of Lori Lodato ("Lodato Dep."),
pp. 7-8, relevant pages attached hereto as Plaintiff's Exhibit 6.
Similarly, Plaintiff has the official title of "financial
management specialist" and also has the working title of "FPA
backup funds officer". See Funds Officer Listing, dated January
26, 1999, attached hereto as Plaintiff's Exhibit 11. Other
synonymous titles to this working title are "backup funds
officer", "alternate funds officer", "alternate funds control
officer", "FPA backup", "FCO Backup", "Funds Control Officer
backup". See Hines Dep., pp. 249-250. See Pedicini affidavit
dated March 30, 2006 ("Pedicini Affidavit"), attached hereto as
Plaintiff's Exhibit 2, p. 2,(8). See FM COOP-Contingency Contact
List", dated July 14, 2003, attached hereto as Plaintiff's
Exhibit 42. See "Memo  to All Funds Officers", dated November 8,
2001, attached hereto as Plaintiff's Exhibit 14. See  Appointment
of Plaintiff as FCO Backup by Joseph Stanco on September 20,
2001, attached hereto as Plaintiff's Exhibit 12.

2

3.      Plaintiff started as a Grade 7 on the federal employee pay
scale. Since August 1, 1997, USDA-FNS increased Plaintiff's grade
level from 7 to 9 in 1998, and from 9 to 11 in 1999. Today,
Plaintiff is a Grade 11 ("GS-11"). Defendants' Statement of Facts
¶ 3.

3.01 Disputed as incomplete. Increases in Grade level were
attained by a "satisfactory" on plaintiff's performance appraisal
standards that give detailed descriptions of the Plaintiff's
duties and responsibilities. Failure to attain a minimum of a
"satisfactory" rating would prevent Plaintiff from receiving
Grade level promotion. See Pedicini Dep., p. 40-41. See Pedicini
affidavit, p.2, (7).

4.      As a Financial Management Specialist, Plaintiff generally
is responsible for "planning, organizing, reviewing, analyzing,
and monitoring fiscal activity, accounting and internal controls
in the Region to provide proper accountability and financial
management over Federal funds." Defendants' Statement of Facts ¶
4

4.01 Completely disputed. Plaintiff's duties and
responsibilities are set forth in his performance appraisal
standards, signed by Plaintiff, his first-line supervisor, and
his second-line supervisor. See Pedicini dep. P. 40-41. See Hines
dep., pp. 236-238. See MacAllister dep., pp.2-258—2-264. See
Performance Appraisal Standards 2001-2005, attached as
Plaintiff's Exhibit 3.

5.      When Plaintiff began his employment at USDA-FNS, he
reported directly to Arthur LeBlanc, the Section Chief of the
Financial Management Division. Mr. LeBlanc held this position
from 1985 until 2000. Defendants' Statement of Facts ¶ 5.

5.01    Disputed in part. Duties and responsibilities in
administrative funds control were assigned by the funds control
officer, Martin Hines, with full approval of Mr. LeBlanc. For
administrative funds control duties and responsibilities,
Plaintiff reported directly to Mr. Hines. See Pedicini dep., pp.
38-39.  See Pedicini affidavit, p. 1-2,(4).

6.      After Mr. LeBlanc left the position, Joseph Stanco became
the Section Chief of the Financial Management Division and
Plaintiff' first-line supervisor from 2001 until 2003.
Defendants' Statement Of Facts ¶ 6.

6.01 Disputed in part. Duties and responsibilities in
administrative funds control were assigned by the funds control
officer, Martin Hines, with full approval of Mr. Stanco. See
Pedicini dep., pp. 38-39. See Pedicini affidavit, p. 1-2, (4).

7.     After Mr. Stanco left the position, Michael Malone, then
the Supervisory Information Technology Specialist, assumed the
responsibilities of Section Chief of the Financial Management
Division sometime in March 2004 until September 2005. Mr. Malone
assumed these responsibilities on a temporary basis. Defendants'
Statement of Facts ¶ 7.

7.01 Disputed in part.  Malone used several unauthorized titles
attempting to indicate that he had responsibilities of the
Section Chief of the Financial Management Division. See
Deposition of Michael Malone ("Malone Dep."). pp. 11-21, relevant
pages attached hereto as Exhibit 20. Duties and responsibilities
in administrative funds control were assigned by the funds
control officer, Martin Hines, with full approval of Mr. Malone
until October 22, 2004 **when Hines received a letter of
instruction, dated the same date, that prohibited him from
assigning any duties** . See Pedicini dep., pp. 38-39.  See
Pedicini affidavit, p. 1-2, (4). Plaintiff disputes the fact that
Malone's assumption of responsibilities was on a temporary basis.
MacAllister spent $10,000 in travel and training expenses on
Malone in a failed attempt to give him the necessary
qualifications to apply competitively for the job. See Pedicini
dep., pp. 159-161.

8.     Throughout Plaintiff's employment with USDA, his second-
line supervisor has been Douglas MacAllister, the Director for
Financial Management. Defendants' Statement of Facts ¶ 8.

8.01 Disputed as incomplete. MacAllister also served as first-
line supervisor when there was no first-line supervisor. Amended
Complaint, ¶ 2. Defendants' Answer ¶ 2.

9.     Plaintiff's third-line supervisor until January 2004, was
John Ghiorzi, the Deputy Regional Administrator for NERO. Robert
Canavan filled the Deputy Regional Administrator position soon
after Mr. Ghiorzi's retirement in 2004. Defendants' Statement of
Facts ¶ 9

9.01. Admitted.

10.    Frances Zorn, the Regional Administrator, headed NERO from
1996 until June 2005. Ms. Zorn indirectly reported to Roberto
Salazar, the Administrator of USDA-FNS.

10.01 Admitted.

## B. USDA-FNS's Funds Control Policy*

4

15.[+]  The Secretary for the USDA requires the National Finance
Center to consolidate the administrative payment of all sub-
agencies within USDA and to provide centralized accounting
services for the entire agency. Defendants' Statement of Facts ¶
15[+]

15.01[+]  Disputed as inaccurate. All funds control procedures and
accounting services are subject to reporting requirements from
the Department of the Treasury and the Office of Management and
Budget. See FNS Handbook 101 ("Handbook 101"), p. 3-4, Section D
(3), relevant pages attached hereto as Plaintiff's Exhibit 9.

16.     Each sub-agency, however, is responsible for "funds
control". Defendants' Statement of Facts ¶ 16.

16.01.  Disputed as inaccurate. All funds control procedures and
accounting services are subject to reporting requirements from
the Department of the Treasury and the Office of Management and
Budget. See Handbook 101, p. 3-4, Section D (3).

17.     The USDA defines "funds control" as the various policies,
procedures, and records used to exercise management control over
public funds. Funds control requires that each sub-agency
implement specific procedures which the sub-agency and its
employees must follow whenever they obligate or expend Federally
Appropriated Funds. Defendants' Statement of Facts ¶ 17.

17.01   Disputed as inaccurate. All funds control procedures and
accounting services are subject to reporting requirements from
the Department of the Treasury and the Office of Management and
Budget. See  Handbook 101, p. 3-4, Section D (3).

18.     The Budget Division of the USDA allocates Federally
Appropriated Funds to "allowance holders", which could include
the Administrator, Deputy Administrators, Staff Directors, and
Regional Administrators. Defendants' Statement of Facts ¶ 18.

18.01   Disputed as inaccurate. All funds control procedures and
accounting services are subject to reporting requirements from
the Department of the Treasury and the Office of Management and
Budget. See Handbook 101, p. 3-4, Section D (3).

---

[+] There appears to be no ¶¶ 11-14 in Defendants' Statement of Facts.

19.    Since February 22, 1982, the USDA had required the allowance holders to designate an employee as "a certifying officer." Defendants' Statement of Facts ¶19.

19.01 Completely disputed as irrelevant. Defendants have completely misrepresented Defendants' Exhibit 13 to the Court. This action is concerned with certifying **funds availability.** Defendants' Exhibit 13 deals with **disbursing funds**. On page 1 of Defendants' Exhibit 13, second paragraph clearly states, "When FSN Regional Offices assume responsibility for **disbursing activities**... .". Furthermore, the Defendants' own Regional Funds Control Officer, Martin Hines, has testified that Defendants' Exhibit 13 is irrelevant to this case for the same reason——it doesn't apply to funds availability. See Hines Dep., pp. 224-231.

20.    To satisfy this obligation, the allowance holders in each region typically designate a funds officer as the "certifying officer". Defendants' Statement of Facts ¶ 20.

20.01 Completely disputed as irrelevant. Defendants have completely misrepresented Defendants' Exhibit 13 to the Court. The case before the Court is concerned with certifying **funds availability.** Defendants' Exhibit 13 deals with **disbursing funds**. On page 1 of Defendants' Exhibit 13, second paragraph clearly states, "When FSN Regional Offices assume responsibility for **disbursing activities**... .". Furthermore, the Defendants' own Regional Funds Control Officer, Martin Hines, has reviewed Defendants' Exhibit 13 and has testified that Defendants' Exhibit 13 is irrelevant to this case for the same reason——it doesn't apply to funds availability. See Hines Dep., pp. 224-231.

21.    Also, each allowance holder has the authority to delegate his/her authority to allocate Federally Appropriated Funds to whomever he/she decides. Defendants' Statement of Facts ¶ 21.

**21.01** Completely Disputed. This paragraph is dependent on the preceding paragraph 20 which is completely disputed as irrelevant and the Plaintiff hereby incorporates the objections to Paragraph 20.01 as objections to Paragraph 21 in this Paragraph 21.01.   In addition, Paragraph 13 in the Dorman affidavit upon which this statement of fact is based is irrelevant.  The statement deals with the authority **"to allocate Federally Appropriated Funds"** - not **certifying funds availability.** The statement in the affidavit is also speculative since it makes a "general" statement by Lisha Dorman who states, "As referred to above, **generally**, each allowance holder has the authority to delegate his/her authority to allocate Federally Appropriated Funds to whomever he/she decides." See  Defendants' Exhibit 12. Furthermore, Dorman has testified that the Regional Funds Control Officer Martin Hines, cited above, would be the **"most knowledgeable on funds control**

6

**issues.** See Deposition of Lisha Dorman ("Dorman Dep."), pp. 13-14, relevant pages attached as Plaintiff's Exhibit 8. After reviewing the documents in this case, Dorman has testified that **"Everyone in Washington, myself included, would refer to [Plaintiff] as the backup funds officer".** Id. Pp. 30-32. After reviewing the Designation of Plaintiff as FCO backup by Stanco on 9/21/01, Plaintiff's Exhibit 12, Dorman continues by saying, **"Again, John, I don't know how to say it more clearly. In my mind, you have always been the backup funds officer for the Northeast Region, and I can't imagine anyone at headquarters even attempting to dispute that."** See Dorman Dep.,pp. 35-36.

22.    Each of the seven regions within USDA-FNS has at least one funds officer. Defendants' Statement of Facts ¶ 22.

22.01 Disputed. Each region has at least two funds control officers, a primary and backup. See Plaintiff's Exhibit 11, Funds Officer Listing.

23.    A funds officer is responsible for monitoring/tracking the agency's status of funds and for providing data on fund availability to the allowance holder. The funds officer is also responsible for (i) certifying that funds are available before spending actions occur, (ii) committing the funds for the spending actions in the agency financial system (i.e. the Foundation Financial Information System ("FFIS")), AND (iii) reporting the monthly status of the accounts to his/her allowance holder and quarterly to the Budget Division. Defendants' Statement of Facts ¶ 23.

23.01 Disputed. Funds control officers duties are described in FNS Handbook 101, pp.3-1—3-3. See FNS Handbook 101, relevant pages attached as Plaintiff's Exhibit 9.

24.    In each region, allowance holders assign certain employees "back up" roles to [the] some or all of the funds officer's functions. The "back up" is responsible for performing those functions only in absence of the funds officer. Defendants' Statement of Facts ¶ 24.

24.01  Completely Disputed. During 1997-98, as the result of an internal audit, a new policy was implemented to have backup funds control officers in all the regions with the right to certify funds availability. Plaintiff was appointed under this policy. See Deposition of Angela McElmurray Speshock ("Speshock Dep."), pp. 9-10,15-16, relevant pages attached as Exhibit 10. Plaintiff was designated by his supervisors. Id., pp. 29-32. A backup or alternate funds officer has all of the duties that a primary has or is supposed to have. See Hines Dep., pp. 39-41. Furthermore, Defendants have never placed any restrictions on Plaintiff's administrative funds control duties in his performance appraisal standards. See Plaintiff's Exhibit 3. In addition, Lisha Dorman

7

has recanted her testimony on paragraph 12 in her affidavit. See Dorman Dep., pp. 30-31, 42, 75-77.

25.    There is no USDA policy prohibiting the allowance holder from not delegating the authority to allocate Federally Appropriated Funds, including the authority to certify that funds are available, to a designated backup. Defendants' Statement of Facts ¶ 25.

25.01   Completely disputed. This paragraph is dependent on the preceding paragraph 20 which is completely disputed as irrelevant and the Plaintiff hereby incorporates the objections to Paragraph 20.01 as objections to Paragraph 25 in this Paragraph 25.01. During 1997-98, as the result of an internal audit, a new policy was implemented to have backup funds control officers in all the regions with the right to certify funds availability. See Speshock Dep., pp. 9-10, 15-16. Plaintiff was designated by his supervisors. Id., pp. 29-32. A backup or alternate funds officer has all of the duties that a primary has or is supposed to have. See Hines Dep., pp. 39-41.

26.    Further, there is no USDA policy prohibiting the allowance holder from delegating the authority to allocate Federally Appropriated Funds, including the authority to certify that funds are available, to a USDA-FNS supervisor or manager. Defendants' Statement of Facts ¶ 26.

26.01   Completely disputed. This paragraph is dependent on the preceding paragraph 20 which is completely disputed as irrelevant and the Plaintiff hereby incorporates the objections to Paragraph 20.01 as objections to Paragraph 26 in this Paragraph 26.01. Defendants defective delegation action on June 16, 2003 came within approximately two months after the Plaintiff's EEO formal complaint, dated April 7, 2003. See Plaintiff's Exhibit 16 and 17. Similarly, when the Plaintiff filed an informal EEO complaint on June 2, 2004, Zorn issued another defective delegation on June 9, 2004. See  Plaintiff's Exhibit 18 and 19. Prior to the Plaintiff's EEO complaint dated April 7, 2003, the allowance holder, Frances Zorn had not executed any delegated authority of certifying funds availability to anybody , including the Funds Control Officer. Martin Hines. See Zorn Dep., pp. 201-202. During 1997-98, as the result of an internal audit, a new policy was implemented to have backup funds control officers in all the regions with the right to certify funds availability. See Speshock Dep., pp. 9-10, 15-16. Plaintiff was designated by his supervisors. Id., pp. 29-32. A backup or alternate funds officer has all of the duties that a primary has or is supposed to have. See Hines Dep., pp. 39-41, relevant pages hereto attached as Exhibit 78.

8

## C. Funds Control AT USDA-FNS, NERO

24.[+]   In USDA-FNS,NERO, the Regional Administrator is the
allowance holder of Federally Appropriated Funds. Defendants'
Statement of Facts ¶ 24[+]

24.01[+] Admitted.

25.[+]   The practice in NERO is that [the] funds officer, his/her
first-line supervisor, and his/her second-line supervisor have
the authority to certify that funds are available before spending
actions occur. Defendants' Statement of Facts ¶ 25[+].

25.01[+]   Completely disputed. The Regional Funds Control
Officer, Martin Hines is the most knowledgeable person on funds
control policies at the Northeast Regional Office. See Dorman
Dep., pp. 13-14, relevant pages attached as Exhibit 76. Plaintiff
has the right to verify and certify funds availability. See Hines
Dep., pp. 267-268, relevant pages attached as Exhibit 79. The
only backup Funds Control Officer authorized by Northeast
Regional Office to verify and certify in the Foundation Financial
Information System is the Plaintiff. See Exhibits 66, 69,70. any
other first-line or second-line supervisor appear at any time
**Nowhere on any of those documents from the Defendants'
headquarters office do the names LeBlanc, Stanco, Malone,
MacAllister, or any other first-line or second-line supervisor
appear at any time.** Consequently there has never been a practice
as stated in Defendants' Paragraph 25[+]. The practice cited in
Paragraph 25 has no supporting documents from the agency's
headquarters office. This is a glaring omission in the
Defendants' Statement of Facts in #25[+].

26.[+]   Ms. Zorn was the allowance holder in NERO from 1996 until
June 2005. Defendants' Statement of Facts ¶ 26[+]

26.01[+]  Admitted.

---

[+] Paragraph numbering problem with Defendants Statement of Facts, paragraph numbers are repeating.

9

27.     Before 1996, the Regional Administrator designated Martin
Hines as the funds officer (or certifying officer) for USDA-FNS,
NERO, and Ms. Zorn affirmed that designation. Defendants'
Statement of Facts ¶ 27.

27.01  Completely disputed . Defendants' Exhibit 15 does not
contain any document, signed by an allowance holder, designating
Martin Hines as having the right to certify funds availability,
before the filing of the EEO complaint by the Plaintiff on April
7, 2003. See Zorn Dep., pp. 201-202. The letter dated May 26,
1995 is not even signed by an allowance holder. It is a self-
serving document signed by a supervisor, Douglas MacAllister. The
Delegation of Authority Memo signed by Harold McLean applies to
disbursements. See Hines Dep. 224-231. The letter dated May 28,
2002 is also not signed by an allowance holder. It is also a
self-serving document signed by MacAllister. Zorn never delegated
her authority to MacAllister. See, Zorn dep., p. 199-200. Zorn
also testified that her predecessor did not delegate that
authority to MacAllister either, p. 200-201. Prior to the
defective delegation on June 16, 2003, Hines did not have a
general right to certify from Zorn either, Zorn pp. 201-202.


28.     Mr. Hines is not (and never has been) a managerial
employee at USDA-FNS and reports to the same chain-of-command as
Plaintiff. Defendants' Statement of Facts ¶ 28.

28.01  Disputed as inaccurate. Mr. Hines was a supervisor. See
Hines Dep.,p. 238. In addition to their regular chain-of-
command,as funds officers, Plaintiff and Mr. Hines also report
the monthly status of the accounts to their allowance holder as
well as other budget reports. See Defendants' Statement of Facts
¶ 23 (iii).

29.     Throughout Plaintiff's employment with the USDA, the
Regional Administrator has delegated to Messrs. Hines and
MacAllister, and the Section Chief of the Financial Management
Unit, the authority to certify that funds are available before
spending actions occur. Defendants Statement of Facts ¶ 29.

29.01  Completely Disputed. Prior to June 16, 2003, the Regional
Administrator never issued a letter delegating the right to
certify funds availability to any manager, and did not delegate a
general right to certify funds availability to the Funds Control
Officer, Martin Hines, until after the Plaintiff's EEO complaint
on June 16, 2003. See Zorn Dep. p, 141, 199-202.  During 1997-
1998, as the result of an internal audit, a new policy was
implemented to have backup funds control officers in all the
regions with the right to certify funds availability. See
Speshock Dep., pp. 9-10,15-16. Plaintiff was designated by his
supervisors. Id., pp. 29-32. Backups were required. Id., p. 18. A

10

backup or alternate funds officer has all of the duties that a
primary has or is supposed to have. See Hines Dep., pp. 39-41.
Throughout the Plaintiff's employment with the USDA, since 1997
the allowance holder, Frances Zorn, has **never** delegated the right
to certify funds availability to any supervisor until the
Plaintiff filed formal EEO complaints on the issue on April 7,
2004 and on July 25, 2004. All managers were not funds officers
authorized by the Defendants' headquarters office and in
violation of the agency's separation of duties provision as pre-
existing. These managers were certifiers of disbursements. See
Defendants Exhibit 15. See Hines Dep., pp. 46-51. See Deposition
of Jonathan Lash ("Lash Dep."), pp.33-36, relevant pages attached
as Exhibit 21.

## D.  USDA-FNS Assigns Plaintiff Certain "Back-up" Responsibilities

29.[+]  According to Plaintiff, in the spring of 1998, Mr. LeBlanc
informed Plaintiff that he was to serve as a "backup" on all of
Mr. Hines duties as a Funds Officer. Plaintiff claims that Mr.
LeBlanc, by designating Plaintiff as the "backup" Funds Officer,
gave him the authority to certify that funds are available.
Defendants' Statement of Facts ¶ 29[+].

29.01[+] Disputed in part. LeBlanc sent an email to the agency's
headquarters office in compliance with a new policy for backup
funds officers. Zorn was also notified. During 1997-98, as the
result of an internal audit, a new policy was implemented to have
backup funds control officers in all the regions with the right
to certify funds availability. See Speshock Dep., pp. 9-10.
Plaintiff was designated by his supervisors. Id., pp. 29-32.
Plaintiff was approved by the agency's headquarters office and
his name was published on the official list of funds officers.
See Plaintiff's Exhibit 11, Funds Officer Listing, dated January
26, 1999. On September 20, 2001, Plaintiff was designated Funds
Control Officer backup (FCO backup) by his first-line supervisor,
Joseph Stanco. See Plaintiff's Exhibit 12, Designation As FCO
Backup. On November 8, 2001, Plaintiff was listed as one of two
authorized funds officers for the Northeast Regional Office
(NERO) on a nationwide communication to all funds officers from
the agency's accounting division as trained and approved for FFIS
the only means to verify and certify funds availability. See
Plaintiff's Exhibit 14.Under the new policy, Backups were
required. See Speshock Dep., p. 18. A backup or alternate funds
officer has all of the duties that a primary has or is supposed
to have. See Hines Dep., pp. 39-41.

---

[+] Paragraph numbering problem with Defendants' Statement of Facts, numbers are repeating.

11

30.     Ms. Zorn, who was the allowance holder during the relevant
time period, however, never delegated Plaintiff the authority to
certify that funds are available. Further, there is no document
delegating Plaintiff with such authority similar to the memoranda
wherein such authority is delegated to Messrs. Hines,
MacAllister, and Section Chief. Defendants' Statement of Facts ¶
30.

30.01 Completely disputed. There is no document delegating the
authority to certify funds availability for Hines either, until
after the EEO complaint filed by the Plaintiff on April 7, 2003.
All backup funds officers on the list dated January 26, 1999 had
the right to certify funds availability. See Speshock Dep., pp.
9-10, 15-16. Zorn received notification. Id, pp. 28-30. Plaintiff
was designated by his supervisors. Id., pp. 29-32. See Hines
Dep., pp.39-41. Plaintiff was approved by the agency's
headquarters office and his name was published on the official
list of funds officers. See Plaintiff's Exhibit 11, Funds Officer
Listing, dated January 26, 1999. On September 20, 2001, Plaintiff
was designated Funds Control Officer backup (FCO backup) by his
first-line supervisor, Joseph Stanco. See Plaintiff's Exhibit 12,
Designation As FCO Backup. On November 8, 2001, Plaintiff was
listed as one of two authorized funds officers for the Northeast
Regional Office (NERO) on a nationwide communication to all funds
officers from the agency's accounting division as trained and
approved for FFIS the only means to verify and certify funds
availability. See Plaintiff's Exhibit 14. Under the new policy,
Backups were required. See Speshock Dep., p. 18. A backup or
alternate funds officer has all of the duties that a primary has
or is supposed to have. See Hines Dep., pp. 39-41.


31.     Despite the fact that Plaintiff's superiors did not grant
him the authority to certify that funds are available, he has
certified funds availability, unbeknownst to his superiors, on at
least three occasions. Defendants' Statement of Facts ¶ 31.

31.01 Completely disputed. Plaintiff's Superiors approved his
appointment in 1998. See Speshock Dep., p. 29-32. See HinesDep.,
pp. 38-43. Furthermore, Defendants' have admitted that Plaintiff
is an "IAS Funds Approver". Defendants' Answer To Plaintiff's
Amended Complaint ¶ 36. All "IAS Funds Approvers" have the right
to certify funds availability. See Dorman Dep., pp. 75. See
Deposition of Lawrence Blim ("Blim Dep."), p.66, relevant pages
attached as Plaintiff's Exhibit 24. The right to certify funds
availability cannot be extricated from the duties of an IAS Funds
Approver, as the Defendants have attempted to do in this case.
See Dorman Dep., p.76. See  Blim Dep., p.66-67. Furthermore, the
Defendants know it. In a letter of instruction dated October 22,
2004 to the Plaintiff, the "acting" first-line supervisor, Mr.
Malone, refers to the Plaintiff as "Certifying Officer(IAS)". See

Exhibit 23, Disciplinary Letter of Instruction dated October 22, 2004. In 2001, they designated him backup FCO, See Plaintiff's Exhibit 12, and gave him all the rights of the funds officer in FFIS, the certifying software for the agency. They circulated a chart with Plaintiff as the Alternate Funds Officer in 2003, See Plaintiff's Exhibit 42, and represented to the USDA Civil Rights Office that the Plaintiff was, indeed, **Alternate to the NERO Funds Officer**, no restrictions stated. See Plaintiff's Exhibit 43.

## E. Plaintiff's First EEO Complaint And Law Suit Against The USDA

32.    On December 29, 1999, Plaintiff's co-worker. Antoinette Bellezza, filed an EEO complaint against the USDA, alleging age and gender discrimination. Defendants' Statement of Facts ¶ 32.

32.01 Admitted.

33.    Ms. Bellezza identified Plaintiff as a witness to her claims and designated him as her EEO representative. Accordingly. The EEO Investigator investigating Ms. Bellezza's complaint interviewed Plaintiff. Defendants' Statement of Facts ¶ 33.

33.01 Disputed in part. Misstatement of fact by Defendants. Amended Complaint ¶ 19 does not state Plaintiff was an EEO representative for Ms. Bellezza at the time of her filing an EEO complaint. See Amended Complaint ¶ 19.

34.    On November 17, 2000, Plaintiff filed his own EEO Complaint against the USDA, claiming retaliation for his support of Ms. Bellezza's complaint. Specifically, Plaintiff claimed that after Ms. Bellezza filed her complaint, naming Plaintiff as a witness and her representative, Mr. MacAllister removed Plaintiff as an Alternate Dispute Resolution ("ADR") Mediator and refused to send Plaintiff to two separate training sessions. Defendants' Statement of Facts ¶ 34.

34.01 Disputed in part. Misstatement of fact by Defendants. Defendants' Exhibit 17 does not state that Plaintiff claimed he was an EEO representative for Ms. Bellezza. He didn't represent Ms. Bellezza until January of 2001. See Defendants' Exhibit 17.

35.    On September 13, 2001, Plaintiff filed a civil action in the United States District Court, District of Massachusetts, alleging that the USDA retaliated against him for his involvement in Ms. Bellezza's complaint. Specially, Plaintiff alleged that the USDA discriminated against him by (i) removing as the ADR Mediator for FNS-NERO without explanation, (ii) denying him a promotion for which he was best qualified, and (iii) denying him training opportunities that would have advanced his career. Defendants' Statement of Fact ¶ 35.

35.01 Disputed in part. Count II was denial of promotional opportunity. Count III was obstruction from competitive training. See Defendants' Exhibit 18.

36.    On June 17, 2002, Plaintiff resolved his civil action against the USDA via a settlement agreement after mediation. In engage for Plaintiff's dismissal of the action and waiver of all other claims he could have against the USDA up to the date of the agreement, the USDA promised to (i) treat Plaintiff equally with regard to training opportunities, (ii) provide Plaintiff training so that he could become a "Shared Neutral". Defendants' Statement of Facts ¶  36.

36.01 Disputed in part. On page 1, paragraph 1, in terms of training and **career advancement opportunities,** the Agency agreed to treat the Complainant equally. On page 2, paragraph 7, a dispute resolution process was established. On page 3, paragraph 9, the Deputy Regional Administrator assumed "…responsibility for ensuring that the actions in this agreement take place within the time frames identified above." See Defendants' Exhibit 19.

37.    Also pursuant to the settlement agreement, both parties agreed that Plaintiff and his superior should frequently communicate and, in the event of a disagreement, discuss such disagreements privately. They also agreed that if the Plaintiff and his supervisor could not resolve the disagreement during the private meeting, Plaintiff could address the issue with his second-line supervisor (Mr. MacAllister),who would act as an objective third-party. If Plaintiff's second-line supervisor cannot resolve the disagreement between Plaintiff and his first-line supervisor, the agreement calls for the Deputy Regional Administrator to review the issue and make a final determination. Defendants' Statement of Facts ¶37.

37.01 Disputed in part. Paragraph 7 of the Agreement states that the Deputy Regional Administrator "…will serve as the final reviewing official." See. Defendants' Exhibit 19.

38.    Thereafter, on June 25, 2002, both parties moved to dismiss Plaintiff federal law suit. Defendants' Statement of Facts ¶  38.

**38.01** Disputed in part. The civil action in U.S. District Court was dismissed **without prejudice.** See Defendants' Exhibit 19, paragraph 5 of the settlement agreement.

39.    In 2001, Plaintiff's co-worker, Luis Perez filed an EEO complaint against the USDA, and identified Plaintiff as a his EEO representative. Defendants' Statement of Facts ¶  39.

39.01 Admitted.

14

40.    On February 11, 2003, Plaintiff deposed Ms. Zorn, Mr.
MacAllister and the Deputy Regional Administrator, Robert Canavan,
concerning Mr. Perez's claims. Defendants' Statement of Facts ¶
40.

40.01 Admitted.

## G. ALLEGED RETALIATORY ACTS NUMBERS 1 AND 2: USDA-FNS Excludes Plaintiff's Name From Training List And Took Away His "Right" To Certify Funds Availability

41.    On February 19, 2003, Mr. Stanco, prepared a list of
employees who should receive training in the USDA-FNS's new
procurement system, the Integrated Acquisition System. He sent
this list to headquarters Lisa Wilusz, via email, and copied
Plaintiff. Defendants' Statement of Facts ¶ 41.

41.01 Admitted.


42.    In response, on February 27, 2003, Plaintiff asked Mr.
Stanco why his name did not appear on the list as the "alternate"
to the funds officer. Defendants' Statement of Facts ¶ 42.

42.01 Admitted.

43.    Mr. Stanco replied that Plaintiff's name should be on the
user list, and, accordingly, edited the list to include
Plaintiff's name. Defendants' Statement of Facts ¶ 43.

43.01 Admitted.

44.    Thereafter, on March 4, 2003, Plaintiff emailed Mr. Stanco
asking what his new duties with regard to funds control would be
in the Integrated Acquisition System. Plaintiff further asked
whether management would require him to back up Mr. Hines in the
event that Mr. Hines was not in the office, as his co-worker
Janice Sciarappa. Defendants' Statement of Facts ¶ 44.

44.01 Disputed. The copy of Defendants' Exhibit 22 given to the
Plaintiff does not contain an email dated March 4, 2003. In the
email dated March 4, 2003 at 7:13am, Plaintiff asked Mr. Stanco
as follows,

        "In order to prevent any misunderstanding, please
    explain what duties in IAS I will have as they relate to
    the Funds Control part of my Performance Appraisal. For
    example, will I be expected to backup the Funds Officer in
    the event that he is not in the office, as is the case
    with Janice ? Or will you be performing the duties of the
    Funds Officer in IAS ? Also, am I to assume that I will be
    attending the IPAS training session in Chicago on May 25-

15

27th ?" See Plaintiff's Exhibit 22, email dated March 4, 2003 at 7:13am.

45.    Mr. Stanco replied to Plaintiff's email, stating that management expected Plaintiff to back up Mr. Hines when he is absent from the office, however, if a situation arose where an employee needs certification that funds are available before a spending action occurs, Plaintiff must refer that situation to Messrs. Stanco or MacAllister. Defendants' Statement of Facts ¶ 45.

45.01 Disputed. Misstatement of fact by Defendants. The subject heading on the email is **"IAS Duties"**. Defendants attempt to say that Stanco applied this statement to all rights of certification. The prior emails and subject headings deal only with **"IAS Duties"**. See Plaintiff's Exhibit 22. See Defendant's Exhibit 22. Thus, Plaintiff interpreted this statement to mean that the Plaintiff's right to certify funds availability was being removed in IAS only. See Pedicini affidavit, p.2, (11).

46.    After receiving Mr. Stanco's email, Plaintiff emailed co-worker, Jonathan Lash, a budget analyst, asking whether Plaintiff's name appeared on a list on "backup funds officers" and whether Plaintiff had "certification rights" to which Mr. Lash answered in the affirmative. Plaintiff forwarded this Mr. Lash's response to Mr. Stanco. Defendants' Statement of Accepted Facts ¶ 46.

46.01 Admitted.

47.    Plaintiff then emailed Mr. Ghiorzi, the Deputy Regional Administrator, stating that USDA "headquarters" confirmed that he was the "backup funds officer" and had "certification rights". He also stated therein that he expected the agency to abide by the June 17, 2002 settlement agreement and not reduce his duties. Defendants' Statement of Facts ¶ 47.

47.01 Admitted.

48.    Mr. Lash, however, admitted during his deposition however that he has never been a management employee at USDA and that his list of "backup funds officers" was never approved by any member of management. Mr. Lash also admitted that he wrote the March 4, 2003 e-mail to Plaintiff assuming that Plaintiff had the authority to certify funds availability, but no manager from NERO had ever told him that Plaintiff had this authority. Defendants' Statement of Facts ¶ 48.

48.01 Completely disputed. Lash stated that his predecessor, Angela McElmurray Speshock developed the original list which bears Plaintiff's name. See Lash Dep., p 11. Ms. Speshock has testified that Plaintiff was appointed with the approval of NERO

managers, including RA, and that Plaintiff has right to certify. See Speshock Dep.,pp. 29-32. Lash has testified that in practice all backups have right to certify. Lash Dep., pp. 18-19. No NERO manager ever told Lash because in the normal course of his duties, Lash doesn't get to talk to many managers. See Lash Dep., p.45. Lash bases his opinion on agency practice as established by his reviews. Lash Dep. , p.44.

49.     Plaintiff claims that prior to March 3, 3003, he had the "right" to certify that funds were available and that Messrs. MacAllister and Stanco took this "right" away, thereby reducing his duties. Defendants' Statement of Facts ¶ 49.

49.01 Disputed. In March 2003, Stanco and MacAllister took away right to certify in the IAS system only. Plaintiff makes the claim that prior to March 3, 2003, not 3003, he had the right to certify funds availability as did all backup funds officers authorized through HQ and appearing on the list published on January 26, 1999. See Speshock Dep.,pp 9-10, 15-16. See Dorman Dep., pp.30-31, 42, 75-77.  See Deposition of Lawrence Blim, pp. 64,66, relevant pages attached hereto as Plaintiff's Exhibit 24.

50.     Oddly, Plaintiff now claims that he believed Messrs. Stanco and MacAllister only took his ability to certify funds availability in the Integrated Acquisition System. He claims that he did not learn that he had no "certification rights" at all until June 2004, when Mr. Malone informed him that he could not certify funds availability on procurement requests. Nevertheless, Plaintiff amended his EEO compaint to include this latter allegation. Defendants' Statement of Facts ¶ 50.

50.01 Disputed as inaccurate. Email subject heading from Stanco had "IAS Duties". See Plaintiff's Exhibit 22, email dated 3/4/03 at 7:46 am. Thus, Stanco's statement on March 4, 2003 applied to IAS Duties. On June 2, 2004,Plaintiff was informed that he could not certify funds availability "in any way whatsoever". See Plaintiff's Exhibit 18, Formal EEO Complaint.

51.     Plaintiff admitted, however, during his deposition that this "reduction of his duties" had no effect on his compensation, benefits or grade at USDA-FNS.  Furthermore, Plaintiff testified that, at best, he had only certified that funds were available one to three times a year. Defendants' Statement of Facts ¶ 51.

51.01 Disputed. Plaintiff testified that the actions by the Defendants adversely affected his career advancement opportunities. See Pedicini Dep., p. 79. Plaintiff testified that his current duties consist of "typing and clerk work, Grade 7 job level." See Pedicini Dep., p. 38. Furthermore, prior to a disciplinary letter of instruction by acting first-line supervisor Michael Malone, dated October 22, 2004, to Hines,

whereby Malone instructs Hines to stop assigning duties,
plaintiff had all of the duties of an alternate funds officer
except the right to certify funds availability. See Plaintiff's
Exhibit 62. Similarly situated Backup funds officers with the
right to certify are at the Grade 13 level. See Dorman Dep., p.
86.

52.    Plaintiff argues that he should be a Grade 12 employee on
the federal employee pay scale, but cannot receive the grade
increase because he no longer has the "right" to certify that
funds are available. Such a grade increase, however, is not
automatic, Plaintiff would have to first apply for a "desk audit"
with the Office of Personnel Management ("OPM"), which Plaintiff
has never done. Defendants' Statement of Facts ¶ 52.

52.01 Disputed. Lisha Dorman, who has been cited extensively
throughout the Defendants' Statement of Facts, has testified that
Plaintiff is the backup funds officer with the right to certify
funds availability and similarly situated employees at HQ are a
Grade 13. See Dorman Dep., p.86.

53.    Plaintiff claims that he failed to file such an application
with OPM because, based on his own observations, such action
would be futile as OPM would not grant him the grade increase
without having the "right" to certify that funds are available.
Plaintiff admits, however, no one at OPM or USDA-FNS has ever
represented to him that OPM would not grant him a grade increase
or that a grade increase would hinge on whether he can certify
funds availability. Defendants' Statement of Facts ¶ 53.

53.01 Disputed. Plaintiff has testified that his current duties
of typing and clerk work are at the Grade 7 level. See Pedicini
Dep.,p. 38. Plaintiff has testified that he is a former examiner
with the U.S. Department of Labor, Pedicini Dep., p. 19.  Lisha
Dorman, who has been cited extensively throughout the Defendants'
Statement of Facts, has testified  on January 12, 2006 that
Plaintiff is the backup funds officer with the right to certify
funds availability and similarly situated employees at HQ are a
Grade 13. See  Dorman Dep., p. 86.

## H. ALLEGED RETALIATORY ACTS NUMBERS 3 AND 4: MacAllister Retaliates Against Plaintiff By Denying Him EEO Representation And By Issuing Him A Letter Of Instruction

54.    On March 5, 2003, Mr. Stanco attempted scheduled a meeting
between Mr. MacAllister, Plaintiff, and himself to discuss
Plaintiff's duties in the Integrated Acquisition System.
Defendants' Statement of Facts ¶ 54.

54.01 Disputed. Date is March 6, 2003, not March 5, 2003. See
Defendants' Exhibit 26. Requested meeting was with Stanco,

MacAllister, Plaintiff, and Mr. Spychalski. See Defendants'
Exhibit 26, email dated March 6, 2003 at 9:17 am.

55.     In response, Plaintiff inquired whether union
representative, Louis Spychalski, could attend the meeting; to
which Mr. Stanco had no objection. Accordingly, Mr. Stanco
scheduled the meeting for Monday, March 10, 2003. Mr. Spychalski,
however, became unavailable for the meeting. Defendants'
Statement of Facts ¶ 55.

55.01 Disputed. Spychalski was never identified as a union
representative. See Defendants' Exhibit 26, email dated March 6,
2003 at 8:55am and email dated March 6, 2003 at 9:17 am. Mr.
MacAllister was copied on the 3/6/03 email at 9:17am and there
was no objection.

56.     That same day, Plaintiff contacted an EEO Counselor,
alleging that USDA-FNS retaliated against him by "remov[ing] him
as the alternate to the [NERO Funds Officer." Plaintiff also
informed the EEO Counselor that Mr. Hines was his designated
Representative. Defendants' Statement of Facts ¶ 56.

56.01 Disputed. Plaintiff became suspicious because he was
being forced to justify his current duties. No other employee had
experienced similar treatment. Plaintiff's performance had been
ranked "superior" for the prior calendar year 2002. See
Plaintiff's Exhibit 63. See Pedicini Dep., p. 74-77. In addition,
the supervisors had already made their decision on March 4, 2003
that Plaintiff would not certify funds in IAS. See Defendants'
Exhibit 26, email dated March 4, 2004 at 7:46am.

57.     The next morning, Plaintiff contacted Mr. Stanco and asked
whether he could substitute Mr. Hines for Mr. Spychalski at the
March 10, 2003 meeting with his supervisors. Defendants'
Statement of Facts ¶ 57.

57.01 Disputed. It was one hour after the scheduling of the
meeting. Stanco emailed Plaintiff at 9:17am on March 6, 2003
establishing the time of the meeting. At 10:13am on March 6,
2003, Plaintiff sent an email to Stanco stating that Spychalski
couldn't make it and requesting Hines as the representative. See
Defendants' Exhibit 26, emails dated March 6, 2003 at 9:17 am and
at 10:13am.

58.     Mr. MacAllister denied Plaintiff's request, stating that
Mr. Hines was not a party to the meeting. Plaintiff responded to
Mr. MacAllister stating that he had a "right" to have a
representative at the meeting and would not attend a meeting with
his supervisors without Mr. Hines. Mr. MacAllister again informed
Plaintiff that the purpose of the meeting was to discuss
Plaintiff's duties in the Integrated Acquisition System, and,
therefore, pursuant to the union agreement, Plaintiff did not

19

have the right to representation at the meeting. Defendants'
Statement of Facts ¶ 58.

58.01 Disputed. MacAllister's email response is dated Friday,
March 7, 2003. Plaintiff is not in the office on Fridays.
See Plaintiff's Exhibit 63, p. 3. Thus, Plaintiff did not see
this email until Monday, March 10, 2003, the day of the meeting.
Also, on the same day, Plaintiff received an email from Deputy
Regional Director, John Ghiorzi, which outlined a dispute
resolution process, identical to the one in the union agreement,
which did allow for representation. See Plaintiff's Exhibit 64,
email from John Ghiorzi dated March 7, 2003 at 1:16 pm. See
Plaintiff's Exhibit 71 (Grievance Procedure). See Plaintiff's
Exhibit 72 (Representation).

59.      On March 10, 2003, at 6:38 am, on the morning of the
scheduled meeting, Plaintiff sent Mr. MacAllister and other
management members an email stating that Plaintiff had filed an
EEO complaint against Mr. MacAllister and other regarding
Plaintiff's duties. Plaintiff also stated that Mr. Hines was his
"EEO representative" and, therefore, Plaintiff had a right to
have Mr. Hines attend the meeting with him and that no meeting
would occur without Mr. Hines. Defendants' Statement of Facts ¶
59.

59.01 Disputed as incomplete. Plaintiff arrived in his office on
Monday, March 10, 2003 to find two conflicting emails. One was
from Mr. Ghiorzi describing a dispute resolution process that
permitted representation. See Plaintiff's Exhibit 71, pp. 163-166
and Plaintiff's Exhibit 72, p. 17 (h). The other was an email
from Mr. MacAllister that characterized the meeting as "informal"
with no representation. See Plaintiff's Exhibit 64,p. 3,email
from MacAllister on 3/7/03 at 2:09pm.

60.      After Plaintiff and Mr. MacAllister exchanged a few more
emails restating their positions on Mr. Hines's attendance at the
meeting, Plaintiff, despite Mr. MacAllister's objections, arrived
at Mr. MacAllister's office with Mr. Hines for the scheduled
meeting. Mr. MacAllister again informed Plaintiff that he did not
have a right to representation in a discussion about Plaintiff's
duties in the Integrated Acquisition System. Eventually, Mr.
Hines left and the meeting between Messrs. MacAllister, Stanco,
and Plaintiff began. Plaintiff, however, refused to answer most
of Mr. MacAllister's questions concerned the subject matter of
his EEO complaint. Mr. MacAllister therefore adjourned the
meeting. Defendants' Statement of Facts ¶ 60.

60.01 Disputed. Mr. MacAllister has testified that he denied Mr.
Hines access to the meeting based on "his rule", " the
MacAllister rule". See MacAllister dep. , p. 2-170——2-177. In his
deposition, Mr. MacAllister on p.2-170, states that he issued the

Plaintiff a disciplinary letter of instruction ecause the
Plaintiff "..refused to answer some basic questions that a
manager needs to have the responses to that would not reflect on
any EEO complaint that I'm aware of." Then, also on page 2-174 he
states, "I had no idea what the complaint was about." In
addition, on page 2-174, MacAllister admits to approving
Spychalski as a representative.

61.     Thereafter, on March 13, 2003, Mr. MacAllister wrote
Plaintiff a "letter of instruction" regarding Plaintiff's refusal
to cooperate during the March 10, 2003 meeting. Defendants'
Statement of Facts ¶ 61.

61.01 Disputed. Defendants characterization of the letter is
inaccurate. It clearly threatens disciplinary action. On page 2,
it states, "Continued noncompliance or non-cooperation with
requests from your supervisors for work-related face-to-face
meetings will subject you to **disciplinary action**." See
Defendants' Exhibit 28, p.2.

62.     Mr. MacAllister did not place the letter of instruction in
Plaintiff's personnel file. Moreover, the letter, which is not a
form of discipline, had no effect on Plaintiff's compensation,
benefits or grade at USDA-FNS. Defendants' Statement of Facts ¶
62.

62.01 Disputed. Defendants characterization of the letter is
inaccurate. It clearly threatens disciplinary action. On page 2,
it states, "Continued noncompliance or non-cooperation with
requests from your supervisors for work-related face-to-face
meetings will subject you to **disciplinary action**." See
Defendants' Exhibit 28, p.2. Written reprimand is a form of
discipline. See Pedicini Dep., pp. 241-246. Defendants put
letters in a "supervisors file". See Plaintiff's Exhibit 55, p.
1, dated October 13, 2004 and annotated on bottom left margin,
"**cc: SUPV FILE**".

63.     Based on the events surrounding the March 10, 2003
meeting, Plaintiff claims that Mr. MacAllister retaliated against
him by denying Plaintiff's request that Mr. Hines attend the
meeting and issuing him a letter of instruction on March 13,
2003. Defendants' Statement of Facts ¶ 63.

63.01 Disputed as incomplete. Plaintiff also claimed that Mr.
MacAllister issued the disciplinary letter of instruction for
"refusal to answer [MacAllister's] questions… ." See Amended
Complaint ¶ 68.

64.     On March 17, 2003, Plaintiff amended his March 5, 2003 EEO
complaint, claiming only that the agency retaliated against him
by "issu[ing] him a letter of counseling [on March 13, 2003]."

21

After receiving a "notice to file" letter from the EEO Counselor,
Plaintiff filed a Formal Complaint of Discrimination, dated March
25, 2003, alleging reprisal and harassment based upon the agency
issuing him a "warning letter" on March 13, 2003. The Office of
Civil Rights for USDA dismissed Plaintiff's harassment claim but
accepted for investigation his allegations that USDA retaliated
against him by removing him as the "alternate [NERO] Funds
Officer" and issuing him a letter of instruction on March 13,
2003. Defendants' Statement of Facts ¶ 64.

64.01 Disputed in part. The term, "letter of counseling" is a
characterization made by the EEO Counselor and not the Plaintiff.
See Defendants' Exhibit 27, p.2. The March 25, 2003 formal
complaint by the Plaintiff characterized the letter as a
"disciplinary warning letter". See Defendants' Exhibit 29, p.2.
On both of Plaintiff's EEO Complaints, dated 3/25/03 and 4/7/03,
Plaintiff states that he received "a disciplinary warning
letter. See Plaintiff's Exhibit 16.

65.     Plaintiff also claims that the USDA breached the June 17,
2002 settlement agreement by not activating the "third party
neutral" stage of the ADR process with regard to his dispute with
Messrs. MacAllister and Stanco over the March 13, 2003 meeting.
Plaintiff, however, did not attempt to initiate the process
thereafter. Defendants' Statement of Facts ¶ 65.

65.01 Disputed. Paragraph 7 of the settlement agreement dated
June 17, 2002 states that the Deputy Regional Administrator is to
serve as "the final reviewing official". It also permits the
Plaintiff to utilize, concurrently, the EEO complaints process.
See Plaintiff's Exhibit 31, p.2. Mr. Ghiorzi was requested on
March 10, 2003 to fulfill his role as the final reviewing
official. See Plaintiff's Exhibit 39, email to Ghiorzi on March
10, 2003. The USDA Civil Rights Office has adjudicated the issue
and on May 19, 2004 ruled that the Defendants were in
noncomplaince with the agreement. It was a final agency action.
See Plaintiff's Exhibit 50, p.4. Furthermore, Defendants' have
misstated the Plaintiff's deposition on p. 182-183. As a result
of Ghiorzi's failure to assume the role of final reviewing
official, the Plaintiff testified that he sought an overseeing
authority at the USDA to enforce the Agreement. See Pedicini
Dep., p.182-183.

## I. ALLEGED RETALIATORY ACT NUMBER 5: USDA-FNS Does Not Hire
## Plaintiff For The Vacant Supervisory Financial Management
## Specialist Position In October 2003.

66.     On July 16, 2003, the USDA posted a vacancy announcement
for the position of Supervisory Financial Management Specialist
(GS-13) in the NERO, USDA-FNS. Defendants' Statement of Facts ¶
66.

66.01 Disputed as incomplete. Closing date is stated as **8/29/03.** See Defendant's Exhibit 32.

67.    The agency re-posted the vacancy on October 31, 2003, because it wanted to revise some of the listed requirements. Plaintiff claims that the re-posted announcement, however, did not contain the revised requirements, so the agency posted the announcement for a third time on November 3, 2003, containing the revised requirements. Defendants' Statement of Facts ¶ 67.

67.01 Disputed. Plaintiff questions the motives of the Defendants in re-posting the job announcement. See Plaintiff's Exhibit 65.

68.    Plaintiff applied to each of these postings. Because Plaintiff was a GS-11, and not a GS-12 OR GS-13, pursuant to agency policy, human resources could not place his name on the internal list of applicants for the position. Instead, pursuant to agency policy, human resources placed Plaintiff's name on the external list of applicants. Defendants' Statement of Facts ¶ 68.

68.01 Admitted.

69.    Pursuant to agency procedure, after compiling both the internal and external lists, human resources then assigned each applicant a numerical score (0-100) and divided the applicants into three categories based on their number: best qualified, satisfactory, and not qualified. Defendants' Statement of Facts ¶ 69.

69.01 Admitted.

70.    During his deposition, Plaintiff testified that in October 2003, he called human resources to inquire what his score was for the Supervisory Financial Management Specialist position. Plaintiff alleges that Human Resources informed him that he was in the "best qualified" category having received a score of 97. Defendants' Statement of Facts ¶ 70.

70.01 Admitted.

71.    In a complaint to the U.S. Office of Special Counsel, however, Plaintiff claimed that he had a score of 97 for the initial July 16, 2003, regional posting, but that this score dropped to 81 for the August 29, 2003, because the agency altered the crediting plan. Because Plaintiff's score was 81, he was no longer on the list of "best qualified" candidates. Defendants' Statement of Accepted Facts ¶ 71.

71.01 Disputed. Score applied to second posting in October 31, 2003. There was a transcription error on the OSC form, See

23

Plaintiff's Exhibit 65, p.1. The date of August 29, 2003 was the closing date on the first announcement. See Plaintiff's Exhibit 46, p 1.

72.   Plaintiff further claims that during a Financial Management Division meeting in October 2003, Mr. MacAllister stated that he reviewed the external list of Applicants for the vacant Supervisory Financial Management Specialist position and "did not like what he saw on the list". Defendants' Statement of Facts ¶ 72.

72.01 Admitted.

73.   Mr. MacAllister denies ever reviewing the external list or making these comments. Instead, in February of 2004, the agency ultimately decided not to fill the vacant Supervisory Financial Management Specialist position until management of NERO fully understood the impact a then ongoing agency restructuring would have on the Financial Management Division and the office as a whole. Defendants' Statement of Facts ¶ 73.

73.01 Disputed. There was no agency restructuring. See Pedicini Dep. pp.156-163. MacAllister did make the statement about the External List. See Hines Dep., pp. 118-121, Exhibit 7.

74.   Accordingly, Mr. MacAllister asked Messrs. Malone, who was the supervisor of the information technology unit, to assume, in additional to his duties, the responsibilities of Supervisory Financial Management Specialist until management decided to fill the vacancy. As a result, in March 2004, Mr. Malone assumed the responsibilities of Plaintiff's first-line supervisor. Defendants' Statement of Facts ¶ 74.

74.01 Disputed. The purpose was to "give" Malone the position by training him while in the position. See Pedicini Dep. p. 160.


75.   Nevertheless, Plaintiff admitted during his deposition that  the external list likely contained the names of other applicants, some of which could have scored higher than Plaintiff. Plaintiff testified that at best, his name, at some point in time, was merely among the names of other "best qualified" candidates. Finally, Plaintiff admitted that even had the agency decided to fill the position, any conclusion that it would have hired him for the job would be pure speculation. Defendants' Statement of Facts ¶ 75.

75.01 Completely disputed. The Defendants' intentions toward the Plaintiff's career advancement opportunities have been exposed in the Potvin Testimony, whereby the Defendants have sought to intentionally obstruct any career advancement opportunity. See

Deposition of Bruce Potvin ("Potvin Dep."), attached hereto as Plaintiff's Exhibit 52.

76.    Plaintiff claims that he contacted an EEO counselor claiming that his non-selection for these position was discriminatory in February 2004. He admits, however, that he failed to subsequently file a formal EEO complaint alleging the same. Defendants' Statement of Facts ¶ 76.

76.01 Disputed as inaccurate. The EEO Counselor, Greg Ferby, advised not to file a formal complaint because no hiring action had taken place. Plaintiff followed that advice. See Pedicini Dep., p.3.

## J. ALLEGED RETALIATORY ACT NUMBER 6: USDA-FNS Does Give Plaintiff A Performance Award On October 7, 2004

$80^+$.    On October 7, 2004, during an agency awards ceremony in NERO, FNS-USDA, Ms. Zorn gave several employees awards of money or certificates of recognition. Plaintiff and other employees did not receive an award or certificate at this ceremony. Defendants' Statement of Facts ¶ $80^+$.

$80.01^+$. Admitted.

81. Plaintiff claims that his performance in 2004 was exemplary and superior to some of the employees who received awards on October 7, 2004. He alleges that Ms. Zorn did not give him an award in 2004 in retaliation. Defendants' Statement of Facts ¶ 81

81.01 Admitted.


82.    Plaintiff, however, did not receive an award in 2004 because no one nominated him for an award in 2004. Furthermore, the accomplishments Plaintiff claims made him worthy of an award occurred late in the year and past the deadline for award nominations in 2004. Defendants' Statement of Facts ¶ 82.

82.01 Disputed. Spot awards are used in these situations. See Pedicini dep. p. 184.

83.    Mr. Malone however nominated Plaintiff for a recognition award in 2005 for his job performance in 2004, which he did receive. Defendants' Statement of Facts ¶ 83.

---

[+] Paragraph numbering problem with Defendants' Statement of Facts. ¶¶ 77-79 are missing.

83.01 Disputed as inaccurate. Defendants did not cite any accomplishment in Nutrition Ed. Instead, the award cited "national recognition for the unit in reviews". Id., p. 184-85.

## K. ALLEGED RETALIATORY ACT NUMBER 7: USDA-FNS Announce A Potential Vacancy In The Budget Analyst Position And Begins Training Employees Other Than Plaintiff On Those Functions

69[+].  It is agency policy to prepare succession training plans for key positions. That is, to ensure continuity in key positions, USDA policy calls for management to cross-train employees on the functions performed by key personnel. Defendants' Statement of Facts ¶ 69[+].

69.01 Completely disputed as a pretext to discrimination. Succession planning was not in effect on October 7, 2004. No other position in the entire region had been identified. Eric Bost, the UnderSecretary of Agriculture, came to Boston in February of 2005 and stated that "succession planning" had not started in any of the regional offices. See Hines Dep., pp. 170-171. See Pedicini Affidavit, p.3,(18). Suzanne Biermann, the current Regional Administrator, in January of 2006, stated that the guidelines for "succession planning" had not been established. Id., p. 3, (19).

70[+].  Management at NERO determined, based on the fact that it had several retirement-eligible employees in the Financial Management Division, that it needed to implement a succession training for the division. Defendants' Statement of Facts ¶ 70[+]

70.01 Completely disputed as a pretext for discrimination. Another employee, Bruce Potvin, has testified that a supervisor and selecting official, Roger Hamilton, told him that a job vacancy was going to occur as a result of Mr. Hines' retirement and the Plaintiff "…would not get that." Plaintiff was being excluded from consideration and other employees were being trained. See Potvin dep., p 9-10.

71[+]. Although Mr. Hines did not submit any "official" statement to the agency concerning his desire to retire from the agency, he made several employees aware that he intended to retire in the near future. As such management decided that it would begin its

---

[*] Paragraph Numbering problem with Defendants' Statement of Facts, numbers are repeating.

succession training plan with Mr. Hines's position, Budget
Analyst. Defendants' Statement of Facts ¶ 71⁺.

71.01 Completely disputed as a pretext for discrimination.
Nowhere on Malone's agenda does it mention "succession planning".
See Plaintiff's Exhibit 54. On October 7, 2004, there were three
other employees in the same work unit who were at or beyond
retirement age. They were Antoinette Bellezza, Themi
Stamboulidis, and Janice Sciarappa. There were no possible
vacancies announced in their positions. See Pedicini Affidavit,
p.3. See Hines Dep., pp. 72-76.

72⁺.  On October 7, 2004, during a staff meeting, Mr. Malone
announced management's succession training plan for the Financial
Management Division and stated that several employees would have
to begin training on the functions of Budget Analyst. Defendants'
Statement of Facts ¶ 72⁺.

72.01 Completely disputed. Completely disputed as a pretext to
discrimination. Succession planning was not in effect on October
7, 2004. No other position in the entire region had been
identified. Eric Bost, the UnderSecretary of Agriculture, came to
Boston in February of 2005 and stated that "succession planning"
had not started in any of the regional offices. See Hines Dep.,
pp. 170-171. See Pedicini Affidavit, p.3. Suzanne Biermann, the
current Regional Administrator, in January of 2006, stated that
the guidelines for "succession planning" had not been
established. Id., p. 3. Plaintiff was being excluded from
consideration for the position and other employees were being
trained. See Potvin Dep.,pp. 9-10.

73⁺.    Plaintiff, who believes that he is the best qualified
employee to replace Mr. Hines when he retires, claims that
management devised this plan and began training other employees
on the Budget Analyst position to obstruct Plaintiff' career
path. Defendants' Statement of Facts ¶ 73⁺.

73.01 Disputed. Management did not want Plaintiff in the Budget
Analyst position. See Potvin Dep., pp. 9-10.

74⁺.    Although the agency is training other employees on the
Budget Analyst position, Mr. Hines, however, has not yet elected

---

⁺ Paragraph numbering problem with Defendants' Statement of Facts, paragraph numbers are repeating.

27

to retire from the position. Moreover, even if Mr. Hines decided to retire, the agency could not simply promote Plaintiff to the position of Budget Analyst, as the agency is required to post vacancy and engage in an non-biased selection process. Defendants' Statement of Facts ¶ 74[+].

74.01. Completely disputed. Following the filing of this action, agency halted the in-depth training on Hines' position that it had compelled Hines to do via disciplinary letters of instruction. See Plaintiff's Exhibit 57, Training For Possible Budget Analyst Vacancy. Beneath the title at the top of the page in parentheses are the words **"Per SUPV INSTRUCTION LETTERS DATED 10/13/04, 10/21/04"**. On the page are the list of training areas in FFIS, IAS, TRVL, and other areas of the Plaintiff's duties and responsibilities. Since the filing of this action on November 12, 2004, the Defendants have dropped the in-depth training plan for the Budget Analyst position. The detailed plan has never been discussed with the Budget Analyst, Martin Hines. See Hines Dep., p. 137-144. Agency intended to avoid selection of Plaintiff. See Potvin Dep., p. 9-10.

## L. ALLEGED RETALIATORY ACT NUMBER 8: Malone Issues Plaintiff A Letter Of Instruction On October 13, 2004.

75[+]. Plaintiff claims that during a staff meeting in September, 2004, he informed Mr. Malone that he had to relinquish his previously assigned Nutrition Education responsibilities because he was having difficulty simultaneously preparing the budget for Nutrional Education and helping Mr. Hines prepare the administrative funds control budget as both tasks had the same annual deadline. Plaintiff further alleges that he told Mr. Malone that management would have to find another employee after the fiscal year ended to assume the Nutrition Education responsibilities. In response, Mr. Malone purportedly, saying nothing, nodded his head in agreement. Defendants' Statement of Facts ¶ 75[+].

75.01 Disputed. The problem involved three deadlines in the areas of IPAS, Budget, and Nutrition Education. All three have the same annual deadline, September 30th. See Pedicini Dep. p. 111. Another employee, Themi Stamboulidis had relinquished his nutrition education duties in March of 2004. Id, p.112. Plaintiff never stopped performing his Nutrition Ed. Duties. Id., p. 115.

76.[+] On October 7, 2004, during another staff meeting, Plaintiff again told Mr. Malone that he could no longer handle the

---

[+] Paragraph numbering problems with Defendants' Statement of Facts, numbers are repeating.

Nutrition Education duties. Defendants' Statement of Facts ¶ 76[+].

76.01 Disputed. Since on-the-job training was announced at the October 7, 2004 meeting, Plaintiff has testified that he planned to relinquish his duties to see if anyone else was interested. Malone again nodded his head. Id., pp.113-114.

77[+]. Immediately following the October 7 meeting, some of Plaintiff's co-workers complained to Mr. Malone about Plaintiff's unprofessional behavior during the meeting and in the workplace generally. Defendants' Statement of Facts ¶ 77[+].

77.01 Completely disputed. Malone has testified that the "unprofessional behavior" by the Plaintiff consisted of the Plaintiff saying that "Fran Zorn [the Regional Administrator] doesn't know what she is doing… ." See Malone Dep., p. 129. Janice Sciarappa has testified that one of her friends, Jeanette Crose, has said the same thing. However, Ms. Sciarappa testified that she would never report Ms. Crose because she was a friend. See Deposition of Janice Sciarappa,pp. 68-69, relevant pages attached hereto as Plaintiff's Exhibit 66. Another employee, Brooksie Spears testified that people say that thing all the time. She knows of at least ten people. But the only letter of instruction that she ever seen is the one that the Plaintiff received. See Deposition of Brooksie Spears, pp. 93-94, relevant pages attached hereto as Plaintiff's Exhibit 67.

78[+]. On October 13, 2004, Mr. Malone issued Plaintiff a letter of instruction informing him that he could not unilaterally relinquish a responsibility given to him by management. Mr. Malone also informed Plaintiff that his disruptive behavior must not continue and reminded Plaintiff that, pursuant to EEO guidelines, he must first receive permission from management to perform EEO-related activity during official time. Defendants' Statement of Facts ¶ 78[+].

78.01 Completely disputed. Plaintiff never stopped doing his nutrition education duties. See Pedicini Dep., p.115. Other employees had made the same statements and did not receive letters of instruction. See Sciarappa Dep., pp. 68-69. See Spears Dep., pp. 93-94. Furthermore, Plaintiff was required to receive permission from management for **any** EEO activity, including filing his own EEO complaint. See Defendants' Exhibit 35. On October 18, 2004, Plaintiff had to see permission from his supervisors to

[+].Paragraph numbering problem with Defendants' Statement of Facts, paragraph numbers are repeating

file an EEO complaint that would eventually become a formal EEO complaint on 11/22/04. See Plaintiff's Exhibit 73

79[+]. Although Mr. Malone had not been the subject of Plaintiff's, Ms. Bellezza's, or Mr. Perez's EEO complaints, Plaintiff' claims that Mr. Malone issued him the October 13, 2004 letter in retaliation for his previous EEO-related activities. Defendants' Statement of Facts ¶ 79.[+]

79.01. Disputed. Malone was one of the subjects of July 15, 2004 EEO formal complaint, filed by the Plaintiff, and based on denying the Plaintiff the right to certify funds availability. See Plaintiff's Exhibit 18.

80[+] Mr. Malone did not place the letter of instruction in Plaintiff's personnel file. Also, the letter had no effect on Plaintiff's compensation or benefits. Defendants' Statement of Facts ¶ 80[+].

80.01 Disputed. The disciplinary letter of instruction is a precursor to a suspension. It documents the trail. Plaintiff has testified that a book, entitled "The Federal Manager's Guide To Discipline" for a course taught at the USDA Graduate School, states that it is a written reprimand. The next step is suspension for 14 calendar days; then a reduction in Grade level; then removal from federal service. See Pedicini Dep., pp. 241-246. Another employee, Luis Perez, was given a letter of instruction and eventually lead to his probation. Id. P. 247. In addition, the Defendants have maintained a "supervisory file" on the Plaintiff in which the letters of instruction have been kept. At the bottom of the disciplinary letter of instruction are the words, "Cc: Supv. File." See Plaintiff's Exhibit 55, p.1, at bottom left-hand margin.

---

[+] **Paragraph numbering problem with Defendants' Statement of Facts, paragraph numbers are repeating.**

## M. ALLEGED RETALIATORY ACT NUMBER 9: Malone Refers Plaintiff To The USDA's Employee Assistance Program On October 18, 2004.

81[+]. On October 18, 2004, Mr. Malone informed Plaintiff that he had referred Plaintiff to the Employee Assistance Program counselor, who scheduled an appointment to meet with Plaintiff. Mr. Malone informed Plaintiff that while Plaintiff was under no obligation to meet with the counselor, he strongly encouraged Plaintiff to do so. Defendants' Statement of Facts ¶ 81[+].

81.01. Completely disputed. Malone scheduled the appointment in Plaintiff's name, without the permission of the Plaintiff. See Defendants' Exhibit 36. If any person needed counseling, it was Malone, who had informed his superior MacAllister, that he almost "lost it" during a confrontation with the funds control officer, Marty Hines. See Plaintiff's Exhibit 68, email dated June 7, 2004 from Malone to MacAllister. Malone did not receive a letter of instruction and no appointment was made in his name at Employee Assistance Program.

82[+]. Plaintiff claims that Mr. Malone issued him the October 18, 2004 letter in retaliation and to harass him. Defendants' Statement of Facts ¶ 82[+].

82.01 Admitted.

83[+]. Plaintiff, however, did not contact an EEO counselor or file a formal EEO complaint asserting this claim. Defendants' Statement of Facts ¶ 83[+].

83.01.Completely disputed. On page 139 of his deposition, Plaintiff testified that the events in October were all lumped together with the training for possible vacancy in budget analyst position and the three letters of instruction of one complaint of retaliation. See Pedicini Dep., p. 139. Furthermore, the referral to Employee Assistance Program was listed on the first disciplinary letter of instruction given to Plaintiff. See Plaintiff's Exhibit 55, p.1, at bottom. Plaintiff included all disciplinary letters of instruction in his formal EEO complaint filed on 11/22/04. See Plaintiff's Exhibit 58.

84. Moreover, the letter had no effect on Plaintiff's compensation or benefits. Defendants' Statement of Facts ¶ 84.

---

[+] Paragraph numbering problems with Defendants' Statement of Facts, paragraph numbers are repeating.

---


Exhibit 43. Furthermore, in the disciplinary letter of
instruction issued on October 22, 2004, Mr. Malone identifies
Plaintiff as **"Certifying Officer (IAS)"** , admitting that the
Plaintiff has the right to certify funds availability in IAS—the
one thing the Defendants have denied since March 4, 2003! See
Plaintiff's Exhibit 23. In addition, on October 22, 2004, Malone
sends a disciplinary letter of instruction to Mr. Hines,
instructing him that Mr. Malone would be making work assignments
on administrative funds control duties, not Mr. Hines. See
Plaintiff's Exhibit 62.

88.     Plaintiff also claims that Mr. Malone issued him the
October 22, 2004 letter in retaliation. Defendants' Statement of
Facts ¶
88.

88.01 Admitted.

89.     Plaintiff admits, however, that he had never used the
title of "Alternate Funds Officer" on a memorandum to a
supervisor before his October 19, 2004 memorandum. Defendants'
Statement of Facts ¶ 89.

89.01 Disputed as inaccurate. Plaintiff testified that he rarely
issues memos, in general, to his supervisors. However, Plaintiff
has used the title in correspondence with other funds officers.
See Pedicini dep., pp. 124-126. In addition, Plaintiff's name has
frequently been designated with the title "Alternate Funds
Officer" on the Regional List to the states. See Plaintiff's
Exhibit 42.

90.     Plaintiff further admits that he did not contact an EEO
counselor asserting this claim. Defendants' Statement of Facts ¶
90.

90.01 Completely disputed. On page 139 of his deposition,
Plaintiff testified that the letters of instruction had been
included in his EEO complaint in November of 2004. See
Plaintiff's Dep., p. 139. See Plaintiff's Exhibit 58, Formal EEO
Complaint dated November 22, 2004.

91.     Moreover, Mr. Malone did not place the letter of
instruction in Plaintiff's personnel file, nor did it have any
effect on Plaintiff's compensation of benefits. Defendants'
Statement of Facts ¶ 91.

91.01 Completely Disputed. The disciplinary letter of
instruction is a precursor to a suspension. It documents the
trail. Plaintiff has testified that a book, entitled "The Federal
Manager's Guide To Discipline" for a course taught at the USDA
Graduate School, states that it is a written reprimand. The next
step is suspension for 14 calendar days; then a reduction in

33

Grade level; then removal from federal service. See Pedicini dep., pp. 241-246. Another employee, Luis Perez, was given a letter of instruction and eventually lead to his probation. Id. P. 247. In addition, the Defendants have maintained a "supervisory file" on the Plaintiff in which the letters of instruction have been kept. At the bottom of the disciplinary letter of instruction are the words, **"Cc: Supv. File."** See Plaintiff's Exhibit 55, p.1, at bottom left-hand margin.

## O. ALLEGED RETALIATORY ACT NUMBER 11: MacAllister Removes Plaintiff's Name From List Of Funds Officers on November 9, 2004.

92.    In February, 2005, Messrs. MacAllister and Malone appointed Plaintiff assistant administrator for approving travel arrangements made on the agency's "E-Travel" system. Defendants' Statement of Facts ¶ 92.

92.01 Disputed as inaccurate. Plaintiff was appointed "primary system administrator". See Pedicini Dep., Errata Sheet P. 251. Also, it was stated in an email dated February 10, 2005 from Mr. Malone. See Plaintiff's Exhibit 59.

93.    Soon thereafter, Lisha Dorman, an administrative officer, sent Plaintiff an email attaching a spreadsheet listing the approval chain for the E-travel system in each unit within NERO. On the spreadsheet, Plaintiff name appeared in the column entitled "Alternative Funds Officer." Plaintiff forwarded the email to Mr. MacAllister. Defendants' Statement of Facts ¶ 93.

93.01 Dispute as inaccurate. Column was entitled "Alternative Funds Control Officer". See Plaintiff's Exhibit 60.

94.    Mr. MacAllister then edited the spreadsheet, changing the column entitled "Alternative Funds Officer" to read "Alternative Funds Approver." Defendants' Statement of Facts ¶ 94.

94.01 Disputed as inaccurate. Column originally read, "Alternative Funds Control Officer". See Plaintiff's Exhibit 61.

95.    Plaintiff claims that Mr. MacAllister edited the column in retaliation against him. Defendants' Statement of Facts ¶ 95.

95.01  Admitted.

96.    Plaintiff admits, however, that he did not contact an EEO counselor asserting this claim. Defendants' Statement of Fact ¶ 96.

96.01  Disputed as incomplete. Plaintiff testified that he considered this event to be an **"ongoing violation"** of his formal complaints already filed. See Pedicini Dep., p. 132. Similar to

the events in the July 15, 2004 formal EEO complaint that
involved the right to certify funds availability. See Plaintiff's
Exhibits 18.

## P. ALLEGED RETALIATORY ACT NUMBER 12: Salazar Informs Plaintiff
## That Could Not Participate In Co-Worker's Telephone Conference

97.    On October 12, 2004, John Ingemi, an employee of the USDA,
contacted Roberto Salazar, the director of the agency, requesting
an informal meeting between them to discuss employment problems
Mr. Ingemi was having. Mr. Salazar agreed to have the meeting by
telephone. Defendants' Statement of Facts ¶ 97.

97.01 Disputed as inaccurate. Defendants misstate the testimony
of Mr. Salazar. Nowhere on pages 15-16 of his testimony does
Salazar describe the meeting as "informal". See Defendants'
Exhibit 10, Salazar Dep., pp. 15-16.

98.    Mr. Ingemi also asked Mr. Salazar whether Plaintiff could
participate in the telephone conference, to which Mr. Salazar
initially agreed. Accordingly, Mr. Salazar's secretary contacted
Plaintiff to inform him that she would connect him to the
telephone conference between Mr. Ingemi and Mr. Salazar.
Defendants' Statement of Facts ¶ 98.

98.01  Admitted.

99.    Before the start of the meeting, Ms. Zorn contacted Mr.
Salazar and informed him that, pursuant to a provision in the
June 17, 2002, Settlement Agreement, Plaintiff agreed not to
participate in such matters. Ms. Zorn's information, however, was
inaccurate because the provision, which was conditioned on
Plaintiff serving as a "Shared Neutral", became void on January
28, 2003, when Plaintiff ceased his pursuit of the "Shared
Neutral" position. Ms. Zorn was unaware that Plaintiff had chose
not to become a "Shared Neutral". Defendants' Statement of Facts
¶ 99.

99.01. Disputed as inaccurate. On October 12, 2004, Frances Zorn
contacted Mr. Salazar that Plaintiff might be calling him in a
request to represent an employee in a **"EEO matter".** See
Defendants' Exhibit 10, Salazar Dep., p. 16.

100.   Moreover, Mr. Ingemi never designated Plaintiff as his
representative, he just wanted Plaintiff'' assistance during the
telephone conference. Defendants' Statement of Facts ¶ 100.

100.01 Disputed as inaccurate. Mr. Ingemi was discussing possible
EEO action and representation with Plaintiff. See Plaintiff's
Exhibit 70, Ingemi Dep., p. 21-22.

101.    Accordingly, Mr. Salazar conducted the telephone
conference with Mr. Ingemi without Plaintiff. After learning of
the error in reasoning, Mr. Salazar apologized to Plaintiff for
the confusion. Defendants' Statement of Facts ¶ 101.

101.01 Disputed as incomplete. In an email dated 10/14/04 at
7:48am, Plaintiff cited his disciplinary letter of instruction on
EEO activity and requested Salazar to rescind it. See Plaintiff's
Exhibit 69, email string, p.2. Salazar responded by citing the
settlement agreement as follows, "**It is my understanding that you
have signed an agreement, by which you are prohibited from
representing employees in EEO matters. Given this fact, it is
appropriate that you receive supervisory instruction regarding
this prohibition. I respecfully deny your request**". Id.,email
dated 10/14/04 at 9:44am from Salazar. Plaintiff informed Salazar
that he disagreed with Salazar's decision. Id., email from
Plaintiff to Salazar dated 10/18/04 at 10:41am. After further
review, Salazar discovered that his original decision was
incorrect. However, he did not offer to rescind the disciplinary
letter of instruction on EEO activity. Id., email dated 10/18/04
at 5:31pm from Salazar to Plaintiff. Frances Zorn was copied
throughout the entire email string.

102.    Plaintiff claims his exclusion from this telephone call
was in retaliation. Defendants' Statement of Facts ¶ 102.

102.01 Disputed as inaccurate. The call resulted in a
disciplinary letter of instruction to receive approval from
Plaintiff's supervisor before engaging in all EEO matters. See
Pedicini Dep., pp. 126-128. Furthermore, Plaintiff's supervisors
knew it was about "**EEO matters**" as is evident from Mr. Salazar's
testimony when he mentions Fran Zorn. See Defendants' Exhibit 10,
Salazar dep., p.16.

103.    Plaintiff admits, however, that he did not contact an EEO
counselor asserting this claim. Defendants' Statement of Facts ¶
103.

103.01    Completely disputed. This incident caused the
disciplinary letter of instruction on EEO activity. See
Plaintiff's Exhibit 69, email dated 10/14/04 from Plaintiff to
Salazar. Plaintiff testified that he did contact an EEO counselor
on the disciplinary letters of instruction. See Pedicini dep.,
p.139. See Plaintiff's Exhibit 58, Formal EEO complaint dated
11/22/04.

Dated: April 12, 2006

Respectfully Submitted,

John G. Pedicini, Pro Se
10 Milano Drive
Saugus, MA 01906
781-233-5274

## CERTIFICATE OF SERVICE

I certify that on April 12, 2006, I served a copy of the foregoing documents on the Defendants, via certified mail, return receipt requested, to Damian Wilmot, Esq., One Courthouse Way, Suite 9200, Boston, MA 02110.

Dated: April 12, 2006

John G. Pedicini, Pro Se