UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN G. PEDICINI,                          *
                                           *
            Plaintiff,                     *
                                           *
      v.                                   *         Civil Action No. 04-12395-JLT
                                           *
UNITED STATES OF AMERICA, et al.,          *
                                           *
            Defendants.                    *

MEMORANDUM

March 29, 2007

TAURO, J.

      John G. Pedicini (the "Plaintiff"), brings this action against Defendants, the United States

of America, Ann M. Veneman, Secretary of the United States Department of Agriculture and

Linda Springer, Director of the United States Office of Personnel Management ("OPM"), for:

      (1)     Title VII retaliation;

      (2)     Claims under the Administrative Procedure Act ("APA") involving (a) the

              Notification and Federal Employee Antidiscrimination and Retaliation Act of

              2002 ("the No FEAR Act"), and (b) noncompliance with a Final Agency Order;

      (3)     Violation of Due Process under the 5th Amendment; and

      (4)     Breach of settlement agreement.

      Defendants move for summary judgment on all counts.  For the reasons set forth below,

Defendants' Motion for Summary Judgment [#59] is ALLOWED IN PART AND DENIED IN

PART.

      Plaintiff has filed a Cross-Motion for Summary Judgment [#54] on all counts.  As

explained below, that motion is DENIED.

**Background**[1]

Plaintiff is employed in the Financial Management Division, Northeast Regional Office ("NERO") of the United States Department of Agriculture, Food and Nutrition Service ("USDA-FNS"), located in Boston, Massachusetts. Since August 1, 1997, Plaintiff's official title has been "Financial Management Specialist."[2] His current salary level is Grade 11, Step 6 ("GS-11").

Plaintiff maintains that in addition to his official title, he also has a number of working titles, including "FPA backup funds officer," "backup funds officer," "alternate funds officer," and "alternate funds control officer."[3] This is disputed by Defendants.

In 1999, Plaintiff's coworker, Antoinette Belleza ("Belleza"), filed an Equal Employment Opportunity ("EEO") complaint against the USDA, alleging age and gender discrimination. Belleza identified Plaintiff as a witness to her claims. Plaintiff asserts that his extensive testimony

---

[1] The following background facts are taken as stated in: Defs.' Concise Statement of Material Facts as to Which There is No Genuine Issue to Be Tried [#62] [hereinafter Defs.' Statement of Facts]; Pl.'s Statement of Material Facts as to Which Plaintiff Contends That There is No Genuine Issue for Trial in Support of Pl.'s Cross-Motion for Summ. J. [#66] [hereinafter Pl.'s Statement of Facts]; Pl.'s Statement of Material Facts as to which Pl. Contends that there Exists a Genuine Issue to be Tried and Pl.'s Response to Defs.' Statement of Facts [#68] [hereinafter Pl.'s Resp. to Defs.' Statement of Facts]; and the Parties' myriad exhibits.

[2] Defendants maintain that, according to the position description, a Financial Management Specialist such as Plaintiff is generally responsible for "planning, organizing, reviewing, analyzing and monitoring fiscal activity, accounting and internal controls in the Region to provide proper accountability and financial management over Federal funds." Defs.' Statement of Facts, Ex. 2, p. 2. Disputing this assertion "[c]ompletely," Plaintiff submits that his duties and responsibilities are set forth in his performance appraisal standards. Pl.'s Resp. to Defs.' Statement of Facts 3.

[3] Pl.'s Resp. to Defs.' Statement of Facts 2.

2

to the EEO investigator bolstered Belleza's case.

On November 17, 2000, Plaintiff filed his own EEO Complaint against the USDA, claiming retaliation for his support of Belleza's complaint. Plaintiff alleged that after Belleza filed her complaint naming Plaintiff as her witness, Plaintiff's second-line supervisor Douglas MacAllister ("MacAllister") removed Plaintiff as an Alternate Dispute Resolution ("ADR") Mediator, denied him a promotion opportunity, and refused to send Plaintiff to two separate training sessions.

On September 13, 2001, Plaintiff filed a civil action in the United States District Court, District of Massachusetts, alleging that the USDA retaliated against him for his involvement in supporting Belleza's complaint. On June 17, 2002, Plaintiff resolved his civil action against the USDA through mediation. Both parties signed a settlement agreement ("the Agreement") which "neither determines nor implies a finding of or admission that discrimination occurred nor that the allegations are true or factual."[4]

Plaintiff agreed to withdraw his action without prejudice and waive all claims against the USDA up to the signing of the Agreement. And Plaintiff agreed not to represent any new EEO cases, except his own. In exchange, the USDA agreed to treat Plaintiff equally for training and career advancement opportunities and to provide Plaintiff further ADR training. The Agreement barred FNS from taking reprisal against Plaintiff for having filed his discrimination complaint. Also, the Agreement created a framework for resolving future conflicts:

> If [Plaintiff] and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party. If the 2nd level manager is unable to

---

[4] Defs.' Statement of Facts, Ex. 19, p. 1 [hereinafter "Settlement Agreement"].

resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official.[5]

Further, the Agreement assigned the Deputy Regional Administrator of FNS-NERO with the responsibility for ensuring that the actions in the settlement agreement take place within the prescribed time frames.

In 2001, prior to the Settlement Agreement, Plaintiff's co-worker, Luis Perez filed an EEO complaint against the USDA, and identified Plaintiff as his EEO representative.  On February 11, 2003, Plaintiff deposed Regional Director Frances Zorn ("Zorn"), second-line supervisor MacAllister and the Deputy Regional Administrator, Robert Canavan, concerning Mr. Perez's claims.

Plaintiff alleges that he was subjected to a series of retaliatory acts as a result of his prior EEO complaint against USDA and his continued representation of co-workers' EEO complaints.

_Alleged Retaliatory Act #1: USDA-FNS took away Plaintiff's ability to certify funds availability._

After learning that his name was not on a training list for USDA-FNS's new procurement system, the Integrated Acquisition System ("IAS"), Plaintiff sent his first-line supervisor Joseph Stanco[6] ("Stanco") a March 4, 2003, email requesting clarification of what duties Plaintiff had with regard to funds control[7] and IAS.  Among other things, Plaintiff wanted to know whether

---

[5] Settlement Agreement, p. 2.

[6] Stanco was also Section Chief from September 10, 2001, until September 1, 2003.

[7] According to Defendants, the USDA defines "funds control" as the various policies, procedures, and records used to exercise management control over public funds.

4

he would be expected to "backup" the funds officer when the funds officer is out of the office. Stanco responded, in an email entitled "IAS Duties," by informing Plaintiff that management expected Plaintiff to back-up Regional Funds Control Officer Martin Hines[8] ("Hines") when Hines is absent from the office. But, the response contained a proviso that where an employee needs certification that funds are available before a spending action occurs, Plaintiff must refer that situation to his supervisors, rather than certifying the funds himself. Plaintiff interpreted this statement to mean that his right to certify funds availability was being removed in the IAS procurement system only.

After receiving Stanco's email, Plaintiff emailed Jonathan Lash ("Lash"), a budget analyst coworker, asking whether Plaintiff's name appeared on a list of "backup funds officers" and whether Plaintiff had "certification rights." Lash answered affirmatively, and Plaintiff forwarded this response to Stanco.[9]

Plaintiff then emailed John Ghiorzi, the Deputy Regional Administrator, stating that USDA Headquarters confirmed that Plaintiff was the "backup funds officer" and that he had "certification rights." Plaintiff also reminded Ghiorzi that he expected the agency to abide by the June 17, 2002, settlement agreement and not reduce his duties.

Plaintiff asserts that in March 2003, Defendants took away his right to certify that funds

---

[8] Hines also had a title of budget analyst.

[9] Defendants assert that Lash admitted during his deposition that he has never been a management employee at USDA and that his list of "backup funds officers" was never approved by any member of management. Defendants also assert that Lash wrote the March 4, 2003, email to Plaintiff assuming that Plaintiff had the authority to certify funds availability, but that no manager had ever told him that Plaintiff had this authority. These assertions are "[c]ompletely disputed" by Plaintiff. Pl.'s Resp. to Defs.' Statement of Facts 16-17.

were available on the new IAS system, but that he still had the right to certify funds

availability–as did all backup funds officers authorized through headquarters and appearing on a

list published January 26, 1999.

Defendants maintain that Plaintiff never had the right to certify funds, either on the new

IAS system or otherwise.  According to Defendants, NERO's practice allows only the funds

officer, first-line supervisor and second-line supervisor to certify that funds are available before

spending occurs.  Further, Zorn, the supervisor with authority to designate an employee as a

funds certifying officer, never delegated to Plaintiff the authority to certify that funds are

available.  Defendants insist that Plaintiff never had the right to certify funds and that any funds

certification performed by Plaintiff was performed without Defendants' permission or

knowledge.[10]   Before March 2003, Plaintiff certified that funds were available between one and

three times a year.

In his deposition testimony, Plaintiff concedes that any alleged reduction in his ability to

certify funds did not immediately affect his compensation, benefits or pay grade.[11]  But Plaintiff

asserts that stripping him of the authority to certify funds adversely affected his career

advancement opportunities.

Plaintiff's current salary is GS-11.  Plaintiff alleges that similarly situated backup funds

officers with the right to certify funds are at the grade thirteen pay level.[12]  Defendants counter

---

[10] Defs.' Statement of Facts ¶ 31.

[11] Pl.'s Dep. 78-83, Oct. 25, 2005.

[12] This is supported by Lisha Dorman's testimony that the typical grade of a funds officer
that she has trained is GS-13. Dorman Dep. 86:4-7, Jan 12. 2006.

6

that, even if Plaintiff had the right to certify that funds are available, it would not necessarily mean that he would receive an increase in salary as Plaintiff would first have to apply for a "desk audit" with the Office of Personnel Management–which Plaintiff has never done.

Plaintiff also submits that since he has lost his ability to certify funds, he has experienced a reduction in duties and has been relegated to "typing and clerk work, Grade 7 job level."[13]  Since October 2004, Plaintiff alleges that Defendants have assigned him the duties of data entry and filing travel vouchers.[14]

On March 4, 2004, Plaintiff contacted the Deputy Regional Adminstrator, John Ghiorzi, as the third party neutral who serves as the final reviewing official in unresolved disputes between Plaintiff and his second-line supervisor.  Plaintiff maintains that Ghiorzi did not respond.  Two days later, on March 6, 2003, Plaintiff filed a complaint with an EEO counselor.

*Alleged Retaliatory Act #2: MacAllister retaliates against Plaintiff by denying him EEO representation.*

On March 6, 2003, Stanco attempted to schedule a meeting between himself, second-line supervisor MacAllister, and Plaintiff to discuss Plaintiff's duties in IAS.  Plaintiff planned to take an EEO representative to this meeting–Lou Spychalski ("Spychalski").  Plaintiff asserts that Stanco agreed and that second-line supervisor MacAllister tacitly approved Spychalski's presence at the meeting by carbon-copying him on correspondence about the meeting.  When Spychalski became suddenly unavailable to attend the meeting, Plaintiff sent an email to Stanco

---

[13] Pl.'s Dep. 38, Oct. 25, 2005.  Plaintiff maintains that his loss of duties also includes leave-without-pay analysis, closeout activities on the budget, year-end estimates, staff determination and ceiling analysis.  Pl.'s Statement of Facts ¶ 6.

[14] Pl.'s Mem. in Support of Pl.'s Cross-Mot. for Summ. J. 6.

requesting Hines as his EEO representative.  MacAllister denied Plaintiff's request, stating that

Hines was not a party to the meeting and that the purpose of the meeting was an "informal

discussion of current work assignments and how they will relate to the implementation of IAS"[15]

and, therefore, Plaintiff did not have the right to representation at the meeting.  Accordingly,

MacAllister refused to allow Hines to attend the meeting.

On March 10, 2003, on the morning of the scheduled meeting, Plaintiff sent MacAllister

and other supervisors an email stating that Plaintiff had filed an EEO complaint against

MacAllister and others regarding Plaintiff's duties.

According to Plaintiff, the March 10, 2003, meeting was not an informal conversation, but

instead a discussion of Plaintiff's assignment of duties and why Plaintiff thought he should be

allowed to certify funds–the subject of Plaintiff's EEO complaint.  At the meeting, Plaintiff

informed MacAllister of his dilemma in meeting without representation while his EEO complaint

was discussed.  MacAllister responded by telling Plaintiff not to answer any questions relating to

his EEO complaint.  Plaintiff says that he followed MacAllister's instructions and did not answer

MacAllister's three remaining questions.

*Alleged Retaliatory Act #3: MacAllister issues Plaintiff a letter.*

On March 13, 2003, MacAllister issued Plaintiff a letter for Plaintiff's refusal to answer his

questions at the March 10, 2003, meeting and for attempting to bring a representative to the

---

[15] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 64, p. 3.

meeting.[16]  Plaintiff characterizes the letter as a "disciplinary warning letter."[17]  Defendants assert

that the letter was a "letter of instruction."[18]  The letter stated that Plaintiff has an obligation to

answer management's questions relative to his work assignments.  Also, the letter noted that

"[c]ontinued noncompliance or non-cooperation with requests from your supervisors for work-

related face-to-face meetings will subject you to disciplinary action."[19]

Defendants assert that the letter was not placed in Plaintiff's personnel file, and that the

letter had no effect on Plaintiff's compensation, benefits or grade level.

On March 17, 2003, Plaintiff amended his March 5, 2003, EEO complaint to include the

March 13, 2003, letter from MacAllister.

*Alleged Retaliatory Act #4: USDA did not give Plaintiff a performance award on October 7, 2004.*

Plaintiff alleges that in 2004, he discovered that the USDA had been overcharged by $1.2

million per year for each of the last five years.  Plaintiff's discovery lead to the recovery of the

overcharged funds.  Plaintiff submits that recovering this amount of money would usually result

in an award or promotion.  But at the agency awards ceremony held on October 7, 2004,

Plaintiff did not receive any certificate or award of cash–even though many of his coworkers did.

---

[16] Plaintiff says the questions he refused to answer related to his EEO complaint. Defendants counter that the March 10, 2003, meeting was to discuss current assignments and that the questions Plaintiff refused to answer concerned his normal work responsibilities.

[17] Defs.' Statement of Facts, Ex. 29, p. 2.

[18] Defs.' Statement of Facts ¶ 61.

[19] Defs.' Statement of Facts, Ex. 28, p. 2.

Defendants maintain that Plaintiff's discovery happened too late in the year to be recognized at the 2004 awards ceremony but that he was recognized and received an award at the 2005 ceremony. Plaintiff counters that "spot awards" are customarily used in such situations.[20]

*Alleged Retaliatory Act #5: USDA announces a potential vacancy in the budget analyst position and begins training employees other than Plaintiff on those functions.*

In October 2004, Plaintiff's first-line supervisor at the time, Michael Malone, announced training for a possible vacancy in the budget analyst position. According to Plaintiff, this is the one promotion position that is directly related to Plaintiff's current position. This announcement was made even though the current budget analyst, Martin Hines, had not indicated he was leaving the department.

Further, Plaintiff submits that Defendants solicited the position of budget analyst to obstruct Plaintiff's career path by training others in the field in which Plaintiff is most qualified. This training would enable Plaintiff's co-workers to replace the current funds officer if and when the position became vacant. By training others for the position, Defendants allegedly planned to prevent Plaintiff from advancing his career.

Plaintiff also relies on the deposition testimony of another employee, Bruce Potvin, who said that a supervisor and selecting official, Roger Hamilton, told him that a job vacancy was going to occur as a result of Mr. Hines's retirement and that the Plaintiff was "not going to get that [position]."[21]

---

[20] Pl.'s Dep. 184:15, Oct. 25, 2005.

[21] Potvin Dep. 9:20, Jan. 18, 2006.

10

Plaintiff also asserts that the department did not solicit replacements for other filled positions that were expected to become vacant. Specifically, Plaintiff alleges that three other employees in the same work unit were at or beyond retirement age, yet the agency did not announce possible vacancies for those positions.

Defendants maintain that it is agency policy to prepare succession training plans for key positions and that they believed Hines intended to retire in the near future. Further, even if Hines retired, the agency asserts it could not promote Plaintiff to the position of budget analyst because the agency is required to post vacancies and engage in a non-biased selection process.

Hines has not yet retired and he continues to work as a budget analyst and in his capacity as a funds control officer.

*Alleged Retaliatory Act #6: Malone issues Plaintiff a second letter.*[22]

On October 13, 2004, Malone issued Plaintiff a letter stating that Plaintiff's recent relinquishment of his supplemental duties in Nutrition Education was "unacceptable." This letter was placed in a supervisor's file, as indicated by a handwritten notation on the bottom-left margin of the letter.[23]

According to Plaintiff, Malone had agreed to Plaintiff's reduced duties in that field. In contrast, Defendants submit that Plaintiff's declaration that he would no longer perform his Nutrition Education duties was unilateral and without the permission of supervisors.

Plaintiff maintains that another employee also relinquished duties in Nutrition Education

---

[22] As with the other letters, the Parties do not agree on how to classify this letter. Plaintiff describes it as a "disciplinary letter," while Defendants label it as a "letter of instruction."

[23] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 55, p. 1.

on or around March 1, 2004, but no letter of instruction was issued to that employee.

Further, Plaintiff maintains that he never stopped performing his Nutrition Education duties.[24]

### Alleged Retaliatory Act #7: Malone referred Plaintiff to the USDA's employee assistance program.

On October 18, 2004, Malone sent an email to Plaintiff to inform him that Malone had referred Plaintiff to an employee assistance program counselor, and that an appointment had been scheduled.  In the email, Malone encouraged Plaintiff to attend the appointment, but informed him that he was under no obligation to do so.  Malone also informed Plaintiff that the counseling was free and confidential, and that the scheduling of the appointment did not mean that a conclusion had been made that Plaintiff had a "problem."[25]

Plaintiff alleges that Malone sought to humiliate Plaintiff by referring him to counseling and making an appointment for Plaintiff without Plaintiff's permission.  Plaintiff did not attend the appointment.

### Alleged Retaliatory Act #8: Malone issued Plaintiff a third letter

On October 22, 2004, Malone issued Plaintiff another letter which directed Plaintiff not to refer to himself as an "alternate funds officer," and instead to use his official title of "financial management specialist."  Plaintiff asserts this represented a further reduction of Plaintiff's position as he now had no authority to certify funds and also no longer could use his title of alternate/backup funds officer.

---

[24] Pl.'s Dep. 115:7-22, Oct. 25, 2005.

[25] Defs.' Statement of Facts, Ex. 62.

Further, Plaintiff submits that on previous occasions, he had referred to himself as an "alternate funds officer" with no problems.  As an example, Plaintiff cites a November 18, 2003, email from funds control officer Martin Hines listing Plaintiff as "alternate funds officer."[26]

*Alleged Retaliatory Act #9: MacAllister removes Plaintiff's name from a list of funds officers on November 9, 2004.*

Plaintiff maintains that a list of funds officers was created on November 9, 2004, that omitted Plaintiff's name as an "alternate funds control officer."[27]  The list did not erase Plaintiff's phone number adjacent to the space from which Plaintiff's name had been erased.  Plaintiff maintains that erasing his name from the list was done in retaliation for his EEO activities.

Plaintiff filed formal EEO complaints on March 25, 2003, July 15, 2003, and November 22, 2004.

On March 26, 2003, Plaintiff filed an appeal with the Compliance Division of the USDA Civil Rights Office about USDA's compliance with the terms of the Settlement Agreement.  On May 29, 2004, the USDA Civil Rights Office issued a "Final Determination" that the USDA had "failed to comply" with the June 17, 2002, Settlement Agreement.[28]  The Final Determination also ordered the USDA to provide a report of compliance with thirty days.[29]

On November 12, 2004, Plaintiff filed this suit. Plaintiff advances four causes of action in his amended complaint: (1) a Title VII Retaliation claim; (2) claims under the APA; (3) violation

---

[26] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 45.

[27] Pl.'s Resp. to Defs.' Statement of Facts 34  ¶  94.01.

[28] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 50, p. 1,3.

[29] Id. at 4.

of Due Process under the 5th Amendment; and (4) breach of settlement agreement.

Discussion

## Summary Judgment Standard

This court will grant Summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[30]  The existence of "*some alleged factual dispute*" between the parties will not defeat an otherwise properly supported motion for summary judgment–the requirement is that there be "no *genuine* issue of *material* fact."[31]  "'[G]enuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'"[32]

The party moving for summary judgment must show an absence of evidence to support the nonmoving party's case.[33]  "Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[34]

In determining whether that burden is met, a court must consider "the record in the light

---

[30] Fed. R. Civ. P. 56(c); Gomez-Perez v. Potter, No. 06-1614, 2007 WL 431238, at *2 (1st Cir. Feb. 9, 2007).

[31] Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (emphasis in original).

[32] Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218-19 (1st Cir. 2004).

[33] Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

[34] Id. (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor."[35]  But a court need not afford any weight to "conclusory allegations, improbable inferences, and unsupported speculation."[36]  Summary judgment provides the necessary opportunity for a court "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"[37]

## (I) Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against a person based on race, color, religion, sex or national origin.[38]  It also includes an anti-retaliation provision which forbids discrimination against an employee or job applicant who has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.[39]

Where there is no direct evidence of retaliation to support a Title VII claim, courts in the First Circuit follow the McDonnell Douglas tripartite burden shifting framework.[40]  Under this framework, a plaintiff carries the initial burden of coming forward with sufficient

---

[35] Id. (quoting Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000)).

[36] See Dialogo, LLC v. Bauza, 456 F. Supp. 2d 219, 227 (D. Mass. 2006) (internal quotation marks and citation omitted).

[37] Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir. 2005) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

[38] 42 U.S.C. § 2000e-2(a) (2007).  See also Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2408 (2006).

[39] § 2000e-3(a).

[40] Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 335 (1st Cir. 2005).

evidence to establish a prima facie case of retaliation.[41]  If he makes this showing, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[42]  Lastly, if the defendant presents such a reason, the plaintiff must demonstrate that this proffered reason is a pretext masking illegal retaliation.[43]

 A. Prima Facie Case

To establish a prima facie case for retaliation, a plaintiff must establish that (1) he engaged in protected conduct, (2) he suffered a materially adverse action, and (3) there is a causal connection between the protected activity and the adverse action.[44]

The anti-retaliation provision of Title VII does not protect an individual from all retaliation–it protects from retaliation that produces an injury or harm.[45]  This harm must meet a certain threshold in order to be actionable.  Trivial harms, petty slights, lack of good manners and minor annoyances do not meet this standard.[46]  Instead, the plaintiff must show that a reasonable employee would have found the challenged action "materially adverse."[47]  Materially adverse means that the challenged action "well might have dissuaded a reasonable worker from making

---

[41] Id. at 336 (quotations and citations omitted).

[42] McDonough v. City of Quincy, 452 F.3d 8, 17 (1st Cir. 2006) (citations omitted).

[43] Id. (citations omitted).

[44] Billings v. Town of Grafton, 441 F. Supp. 2d 227, 238 (D. Mass. 2006) (citing White, 126 S.Ct. 2405).

[45] White, 126 S.Ct. at 2414.

[46] Id. at 2415.

[47] Id.

or supporting a charge of discrimination."[48]  This standard is applied to "the challenged

retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint."[49]

An action is materially adverse if the employer:

> (1) take[s] something of consequence from the employee, say, by
> discharging or demoting her, reducing her salary, or divesting her
> of significant responsibilities or (2) withhold[s] from the employee
> an accouterment of the employment relationship, say, by failing to
> follow a customary practice of considering her for a promotion
> after a particular period of service.[50]

## 1.  Protected Conduct

This court need not linger on the first element of the prima facie test as it is undisputed

that Plaintiff engaged in protected conduct.[51]  On June 17, 2002, Plaintiff signed a Settlement

Agreement with the USDA as the result of a formal EEO complaint.  Plaintiff also engaged in

EEO representation for co-workers Belleza and Perez.

What remains are the questions of whether Plaintiff satisfies the second and third elements

of a prima facie case.

---

[48] Id. ("We refer to reactions of a reasonable employee because we believe that the
provision's standard for judging harm must be objective.").

[49] Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (quoting White, 126
S.Ct. at 2416).

[50]  Billings, 441 F. Supp. 2d at 240 (quoting Blackie v Maine, 75 F.3d 716, 725-26 (1st
Cir. 1996)).

[51] 42 U.S.C. §  2000e-(3)a  ("It shall be an unlawful employment practice for an employer
to discriminate against any of his employees . . . because he has made a charge, testified, assisted,
or participated in any manner in an investigation, proceeding, or hearing . . . .").

### 2. Materially Adverse Action

This court now applies the materially adverse action standard to Plaintiff's retaliation claims.

### *Alleged Retaliatory Act #1: USDA-FNS takes away Plaintiff's ability to certify funds availability*

This alleged act comprises the core of Plaintiff's case.  According to Plaintiff, his supervisor, Joseph Stanco granted him all rights of a fund control officer in the Agency's accounting system.[52]  This included the right to certify funds.[53]  Plaintiff also maintains that he had the right to certify funds by virtue of his position as an Alternate/Backup Funds Officer. Plaintiff insists that he has been stripped of this right and assigned lower level tasks in retaliation for his EEO activities.

Defendants respond by arguing that even if Plaintiff was stripped of this authority, the right to certify funds is not material because it did not affect Plaintiff's salary and Plaintiff only certified funds availability on a handful of occasions.  In Billings v. Town of Grafton, another court in this district concluded that a plaintiff who had her job changed to a slightly less prestigious position, but continued the same duties of typing, copying, answering the phone and assisting the public did not experience a materially adverse action.[54]  The court noted that "'a transfer or reassignment that involves only minor changes in working conditions' normally is not

---

[52] Pl.'s Statement of Facts ¶ 14.

[53] In support of his contention that he had the right to certify funds, Plaintiff cites the testimony of coworkers Hines, Potvin, Angela Speshock and Jonathan Lash.

[54] Billings, 441 F. Supp. 2d at 240-41.

18

actionable even if it causes the plaintiff to feel 'stigmatized and punished.'"[55]

But courts have found that more significant reassignment of duties can be a materially adverse action.  In <u>White</u>, the Supreme Court noted that "[c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties [of the job] and less time performing those that are easier or more agreeable."[56]  And an employee can suffer a materially adverse action even where the reassignment of duties is within the employee's job description.[57]

Here, Plaintiff asserts that he has endured a reduction in duties as he has lost his ability to certify funds, which he maintains is high-level work that merits pay at the GS-13 level, and has instead been assigned the "duties of data entry (i.e. typing) and filing of travel vouchers."[58] Plaintiff maintains that he has been reassigned lower-level work that is consistent with a pay grade of GS-7.[59]  In <u>White</u>, an employee was transferred from fork-lift operator to track labor.[60] The Supreme Court concluded that this transfer was materially adverse because the employee's former duties required more qualifications, which were an indication of greater prestige, and her

---

[55] <u>Id.</u> at 240 (quoting <u>Marrero v. Goya of Puerto Rico, Inc.</u>, 304 F.3d 7, 23 (1st Cir. 2002)).

[56] <u>White</u>, 126 S.Ct. at 2416 (concluding that a jury could find that the reassignment of plaintiff's duties was materially adverse where evidence showed that the plaintiff was given dirtier and more difficult tasks and the task from which she was removed had a greater degree of prestige and required more qualifications).

[57] <u>Id.</u>

[58] Pl.'s Mem. in Support of Pl.'s Cross-Mot. for Summ. J. 6.

[59] Pl.'s Dep. 38, Oct. 25, 2005.

[60] <u>White</u>, 126 S.Ct. at 2417.

former duties were objectively considered better than her new duties.[61]

Similarly, Plaintiff has presented evidence that his reduction and reassignment of duties–the stripping of his right to certify funds availability, and the reassignment to lower level clerical work–constitute a materially adverse action sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. Accordingly, this court concludes that Plaintiff has established the second part of a prima facie case, with respect to alleged retaliatory act #1.

### *Alleged Retaliatory Act #2: MacAllister retaliates against Plaintiff by denying him EEO representation.*

Plaintiff asserts that MacAllister barred Plaintiff's EEO representative from attending their March 10, 2003, meeting in retaliation for Plaintiff's prior EEO complaint and his continued EEO representation of coworkers. It is Defendants' position that no retaliation occurred and that MacAllister prevented Hines from joining the meeting because it was an informal discussion of regular work duties rather than a discussion of Plaintiff's EEO complaint.

Even with all inferences in Plaintiff's favor, this activity is insufficient to qualify as a materially adverse action. Plaintiff's supervisor told him that he did not need to respond to any questions that Plaintiff felt involved his EEO claims, and Plaintiff did not. As a one-time meeting involving questions and answers, rather than a substantial change in overall work responsibility, a reasonable employee would not find this activity would interfere with an employee's access to the remedial provisions of Title VII.

---

[61] <u>Id.</u>

_Alleged Retaliatory Acts #3, #6 & # 8: Plaintiff receives a series of three letters._

Plaintiff asserts that the letters he received from his supervisors are materially adverse.  In response, Defendants point out that the letters are not in Plaintiff's personnel file, nor did they affect Plaintiff's compensation or benefits.[62]

The letters instructed Plaintiff that his employer found his behavior "inappropriate"[63] and "not acceptable."[64]  Also, the first letter informed Plaintiff that "[c]ontinued noncompliance or non-cooperation with requests from your supervisors for work-related face-to-face meetings will subject you to disciplinary action."[65]

These letters are similar in content to two letters an employer sent to an employee in Sweeney v. West, a Title VII case reviewed by the Seventh Circuit Court of Appeals.  There, the letters stopped short of imposing any discipline, but instructed the employee to "cease from this type of behavior and conduct[.]"[66]  One of the letters also noted that any "further complaints of behavior and conduct of this nature will result in disciplinary action."[67]  The Seventh Circuit found that, at most, plaintiff "has documented instances in which she was unfairly reprimanded

---

[62] Pl.'s Dep. 116:3-18, Oct. 25, 2005.

[63] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 23.

[64] Id. Ex. 55.

[65]  Defs.' Statement of Facts, Ex. 28, p. 3.

[66] Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998).

[67] Id.

for conduct she either did not engage in or should not have been responsible for."[68]  But the court concluded that this alleged conduct did not rise to the level of being materially adverse.[69]

As in <u>Sweeney</u>, the letters in this case stopped short of disciplining Plaintiff, but admonished him to improve.  And as the District Court of Maine has noted, "this Court is not aware of any court in the First Circuit that has held that mere criticism, or counseling, of an employee constitutes adverse employment.  An actionable retaliation claim requires more."[70]

This court agrees.  These three letters fall short of the materially adverse standard.[71]  The letters were not so serious in nature that they would dissuade a reasonable employee from making or supporting a charge of discrimination.

### *Alleged Retaliatory Act #4: USDA does not give Plaintiff a performance award on October 7, 2004.*

Plaintiff maintains he was deprived of an award at the 2004 agency awards ceremony in retaliation for his EEO activities.  Defendants counter that Plaintiff's discovery of over-billing

---

[68] <u>Id.</u> at 557 ("If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit.").

[69] <u>Id.</u>  <u>See also</u> <u>Powell v. Yellow Book USA, Inc.</u>, 445 F.3d 1074, 1079 (8th Cir. 2006) ("[F]ormal criticisms or reprimands that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action under Title VII.").

[70] <u>Nelson v. Univ. of Maine System</u>, 923 F.Supp 275, 282 (D. Me. 1996) (citations omitted).  The case at bar is distinguishable from <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453 (11th Cir. 1998), upon which Plaintiff relies.  In that case, the plaintiff was suspended by her employer after receiving a series of reprimands.  Here, no such suspension occurred.

[71] <u>See</u> <u>Harris v. Potter</u>, 310 F. Supp. 2d 18, 21 (D.D.C. 2004) ("[F]ormal letters of admonishment and disciplinary notices that have no effect on an employee's grade or salary level do not constitute adverse employment action.").

occurred too late in the year for the agency to recognize him at the 2004 awards ceremony, but that Plaintiff was properly recognized at the 2005 awards ceremony.

This court concludes that being snubbed at the office awards ceremony "is the kind of *de minimis* employment hand-slap which falls beneath the radar screen of Title VII."[72] "Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of an administrative suit."[73] The awards ceremony act, therefore, does not survive summary judgment.

### *Alleged Retaliatory Act #5: USDA announces a potential vacancy in the budget analyst position and begins training employees other than Plaintiff on those functions.*

Plaintiff maintains that he was not trained for a potential vacancy that the agency expected would become vacant when Hines retired. Hines did not retire, however, and the vacancy never occurred. As a result, this retaliatory act fails to satisfy the materially adverse standard. "Plaintiff cannot make his *prima facie* case on speculative contentions."[74] Instead, the alleged retaliatory conduct must have at least a tangible adverse effect on plaintiff's employment.[75]

---

[72] Wyse v. Summers, 100 F. Supp. 2d 69, 77 (D. Mass. 2000) (noting that no adverse employment action occurs where the alleged retaliatory act had no tangible consequences on the employee's job).

[73] Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).

[74] Colon v. U.S., No. 05-1478, 2006 WL 2345955, at *3 (D.P.R. Aug. 10, 2006) (granting summary judgment in a Title VII discrimination case where plaintiff did not aver sufficient facts to support a prima facie case).

[75] Hooks v. Bank of Am., 183 Fed. Appx. 833, 836 (11th Cir. 2006) (quotation omitted). See also Beaumont v. Tex. Dep't of Crim. Justice, 468 F. Supp. 2d 907, 927 (E.D. Tex. 2006) (finding an employee's subjective beliefs about speculative future promotional opportunities did not constitute a materially adverse action).

Here, Plaintiff cannot show how the training of others for a job that never became vacant materially affected his terms of employment. This lack of training would not dissuade a reasonable worker from protected conduct. This alleged conduct, therefore, does not constitute a materially adverse act.

*Alleged Retaliatory Act #7: Malone refers Plaintiff to the USDA's employee assistance program.*

This court does not find a supervisor's suggestion that Plaintiff seek counseling to be a materially adverse action. Because there were no tangible job consequences attributable to the supervisor's statement, the statement was not an adverse employment action.[76] Also, a supervisor's confidential suggestion to attend counseling would not dissuade a reasonable employee from making or supporting a charge of discrimination. This alleged retaliatory act fails.

*Alleged Retaliatory Act #9: MacAllister removes Plaintiff's name from a list of funds officers on November 9, 2004.*

In his amended complaint, Plaintiff asserts that the USDA retaliated against him by removing his name from a list of funds officers. A reasonable employee would not find this act serious enough to dissuade them from making or supporting a charge of discrimination. Accordingly, this alleged retaliatory act does not support an independent claim of retaliation, though the presence of Plaintiff's name on the list may still be admissible at trial to support Plaintiff's position that he previously had authority to certify funds.

---

[76] Wyse, 100 F. Supp. 2d at 77.

24

### 3. Causal Connection

The third element of a prima facie case is a causal connection between the protected activity and the adverse action.[77] This may include, but is not limited to: "evidence of differential treatment in the workplace, statistical evidence showing disparate treatment, temporal proximity of an employee's protected activity to an employer's adverse action, and comments by the employer which intimate a retaliatory mindset."[78]

"To 'survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory.'"[79] Here, Plaintiff points to the strong temporal proximity of the alleged events. On February 11, 2003, Plaintiff deposed supervisors Zorn and Canavan in his capacity as EEO representative for coworker, Luis Perez.[80] On February 19, 2003, an entry was written in the personal notes of MacAllister regarding IAS–the new software procurement system. The note states, "[t]o Request J. Pedicini not included."[81] Plaintiff interprets this note as evidence that MacAllister planned to limit Plaintiff's access to IAS. Plaintiff alleges that approximately two

---

[77] Douglas v. J.C. Penney Co., 474 F.3d 10, 15 (1st Cir. 2007).

[78] Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (internal citations omitted). See also Costello v. Mass. Rehab. Comm'n, 982 F. Supp. 61, 66 (D. Mass. 1997) (finding it well settled that a plaintiff can make the causal connection "by showing that the adverse employment action occurred shortly after the plaintiff engaged in protected activity").

[79] Douglas v. J.C. Penney Co., 422 F. Supp. 2d 260, 279 (D. Mass. 2006) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 57 (1st Cir. 2000)).

[80] Pl.'s Statement of Facts ¶ 47.

[81] Id. ¶ 50; Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 35.

weeks later he learned that he no longer had the right to certify funds.[82]

Plaintiff also attempts to establish causation through the testimony of regional director Zorn. In her deposition, she said that as a result of Plaintiff's EEO representation of employees, "the overall productivity [of the office] was lessened"[83] and that Plaintiff's activities "elevated the level of anxiety within his work unit."[84] These statements when read in a light most favorable to the plaintiff, tend to indicate that Zorn saw Plaintiff's protected activity as bothersome meddling. The statements thus help create a genuine dispute of material fact as to whether Zorn acted with discriminatory animus.

Considering this close temporal proximity and possible evidence of animus, Plaintiff supplies sufficient evidence to show causation and establish a prima facie case of retaliation.

<u>Non-Retaliatory Reason</u>

Having made a prima facie case, the burden now shifts to the employer to provide a "legitimate, non-retaliatory reason" for its action.[85] The employer's burden is only a burden of production–the burden of persuasion remains with the Plaintiff.[86]

_____

[82] Plaintiff also alleges that on February 27, 2003, he learned that he had been excluded from a training list of employees for IAS. This court will not consider this alleged act as evidence of materially adverse action nor as evidence of causation because Plaintiff never included it in any of his EEO complaints. See Defs.' Statement of Facts, Exs. 29, 40; Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Exs. 18, 58.

[83] Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 15. (Zorn Dep. 77:10-11, June 6, 2005).

[84] Id. (Zorn Dep. 61:10).

[85] Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 95 (1st Cir. 2006).

[86] See Santiago-Ramos, 217 F.3d at 54 (citation omitted).

Defendants provide a non-retaliatory reason for barring Plaintiff from certifying funds availability. According to Defendants, Plaintiff never had the right to certify funds because regional director Zorn never designated Plaintiff as a certifying officer, nor did she grant him the authority to certify funds. And Defendants argue, it would be impossible to retaliate against Plaintiff by stripping him of a right he never had. Once the Defendants learned of Plaintiff's unauthorized activity, they assert, they took appropriate steps to stop it. The employer has met its burden.

<u>Pretext</u>

The burden now returns to the plaintiff, who must proffer sufficient evidence that the reason provided by the employer was not its true reason, but instead was a pretext for a desire to retaliate.[87] Whether summary judgment is then appropriate depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."[88]

Defendants argue that because Plaintiff never had explicit authority to certify funds availability, USDA barring him from doing so could not possibly qualify as retaliation. This court disagrees. Many workers have job responsibilities that may not be explicit, but are implied in fact. As a result, the efficacy of Title VII would be undermined if an employer could retaliate by executing a material shift in implicit job functions and escape liability.

---

[87] <u>Billings</u>, 441 F. Supp. 2d at 243 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (internal quotation omitted)).

[88] <u>Id.</u> (quoting <u>Reeves</u>, 530 U.S. at 148-49).

After reviewing the evidence and making all reasonable inferences in favor of the non-moving party, this court concludes that Plaintiff has supplied evidence to show that the Defendants' proffered reason for barring Plaintiff from certifying funds is pretextual. Whether Plaintiff ever had the implicit authority to certify funds and whether the removal of this authority was a retaliatory act are disputes of material fact that may proceed to a jury trial.    In making this finding, the court is persuaded by the temporal proximity between Plaintiff's depositions of his supervisors as part of an EEO case of a coworker and Plaintiff learning that he had no authority to certify funds. Other factors include Zorn's statements that Plaintiff lessened productivity in the office and caused anxiety within his work unit, and deposition testimony of Plaintiff's coworkers who support his position that he had the de facto right to certify funds.[89] Accordingly, Defendants are not entitled to summary judgment on the Title VII retaliation claim.

<u>Exhaustion</u>

Before bringing his claims to federal court, a federal employee must first timely exhaust the EEOC's administrative remedies.[90] Defendants argue that a number of the alleged retaliatory acts must be dismissed because Plaintiff failed to properly exhaust his administrative remedies. Plaintiff responds that these acts occurred after he filed his initial EEOC complaint, and that these subsequent retaliatory acts are saved under the precedent established by the First

---

[89] See Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., Ex. 8; Ex. 15 (Zorn Dep. 77:10-11, 61:10, June 6, 2005). See also Pl.'s Statement of Facts ¶ 52; Hines Dep. 36:13-20, 39:12-19, July 22, 2005; Dorman Dep. 75-78, Jan 12. 2006.

[90] Roman-Martinez v. Runyon, 100 F.3d 213, 216 (1st Cir. 1996).

28

Circuit in Clockedile v. New Hampshire Dept. of Corrections.[91]  Defendants assert that

Clockedile does not apply because Plaintiff filed subsequent EEOC complaints that did not

mention a number of the alleged retaliatory acts.  Because the only actions alleged to be untimely

filed are not materially adverse employment actions, this court need not address this issue.[92]

## (II) Claims Under the APA

*No FEAR Act*

Next, Plaintiff asserts a claim under the APA for the OPM's and USDA's failure to adhere

to the No FEAR Act.[93]  This act, which went into effect October 1, 2003, includes provisions

that assign federal agencies additional reimbursement, notification and reporting requirements for

discrimination cases.[94]

_____

[91] 245 F.3d 1 (1st Cir. 2001).

[92] Defendants concede that Plaintiff properly exhausted his administrative remedies prior to filing his EEOC complaint regarding the alleged retaliatory act of the USDA taking away Plaintiff's rights to certify that funds are available. See Defs.' Mem. of Law in Supp. Mot. for Summ. J. 8.

[93] The purpose of the No FEAR Act is:
> [t]o require that Federal agencies be accountable for violations of antidiscrimination and whistleblower protection laws; to require that each Federal agency post quarterly on it public Web site, certain statistical data relating to Federal sector equal employment opportunity complaints filed with such agency; and for other purposes.

Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, Pub. L. No. 107-174, 116 Stat. 566, 566 (2002).

[94] No FEAR Act, § 201-03. This act requires federal agencies to use money from their own budgets to reimburse the Judgment Fund when whistleblowers win or successfully settle their discrimination and retaliation cases against the agencies. See No FEAR Act, § 201(a)-(c). Another major provision is that agencies must educate their employees, in writing, and on the internet of their rights under anti-discrimination and whistleblower laws.  See No FEAR Act, §

Plaintiff asserts that Defendants violated § 204 of the No FEAR Act, which states that:

> The President (or the designee of the President) shall issue-- . . .
> (2) rules to require that a comprehensive study be conducted in the executive branch to determine the best practices relating to the appropriate disciplinary actions against Federal employees who commit [discrimination]; and
>
> (3) based on the results of such study, advisory guidelines incorporating best practices that Federal agencies may follow to take such actions against such employees.[95]

After these guidelines are issued, each Federal agency shall submit, within thirty days, to the Speaker of the House of Representatives, the President Pro Tempore of the Senate, the EEOC, and the Attorney General, a written statement that specifies whether the agency has adopted and will follow the guidelines.[96]  Section 204 states that a Federal agency shall provide an explanation if it decides not to adopt the guidelines.[97]

On January 22, 2004, OPM, pursuant to the No FEAR Act, promulgated an interim final rule concerning agencies' obligations to repay discrimination settlements and judgments.[98] Plaintiff alleges that the USDA failed to follow the terms of the No FEAR Act by failing to timely file the required statement.

---

202(a)-(b). Also, agencies must annually submit reports on the quantity and substance of their whistleblower retaliation and discrimination cases to Congress, the EEOC, and the Attorney General.  See No FEAR Act, § 203.

[95] Id. § 204.

[96] Id.

[97] Id.

[98] Implementation of Title II of the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, 69 Fed. Reg. 2,997, 2,997 (Jan. 22, 2004) (codified at 5 C.F.R. § 724).

Standing

In its motion for summary judgment, Defendants argues that Plaintiff lacks standing to assert an APA claim under the No FEAR Act. Though there is no private cause of action under the No FEAR Act, Pedicini could have standing to challenge a failure of rule making where he alleges that this failure caused him injury by failing to prevent the retaliation that allegedly occurred.[99] And as a federal employee, Plaintiff is within the zone of interest the No FEAR Act is designed to protect.[100]

Merits

Though he may have standing to challenge an administrative action, Plaintiff's challenge here, upon review of a complete record,[101] fails as a matter of law. OPM's January 22, 2004, publication was not a list of guidelines to federal agencies, but rather a publication in the Federal Register of final "interim" regulations on agency reimbursement of the Judgment Fund and a request for comments on those regulations.[102] As it was not a final agency action, it did not trigger a thirty-day deadline in which the USDA was required to distribute a written statement.

Further, Plaintiff alleges that the OPM and the USDA violated § 203 of the No FEAR Act by failing to issue guidelines or regulations that provide for disciplinary action against federal

---

[99] See Harvey v. Veneman, 396 F.3d 28, 34 (1st Cir. 2005) (laying out the test for standing in a case challenging agency rulemaking).

[100] See Id. at 34-35 (defining the zone of interests test).

[101] On November 15, 2005, this court denied Defendants' Partial Motion to Dismiss Count II, Subpart A.

[102] Implementation of Title II of the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, 69 Fed. Reg. 2,997, 2,997 (Jan. 22, 2004).

employees.  Plaintiff asserts that the OPM's non-issuance of the guidelines is an "impermissible

delay" that has caused him direct harm.[103]  And Plaintiff maintains that this delay has resulted in

the USDA not disciplining Plaintiff's supervisors for their continued discrimination of him.

Plaintiff classifies this delay as "agency action unlawfully withheld or unreasonably delayed,"

under 5 U.S.C. § 706 of the APA.

    This claim also fails.  The No FEAR Act does not impose a deadline on the OPM's or

USDA's duty to issue these advisory guidelines and instead requires a "comprehensive study."

Under prevailing interpretations of 5 U.S.C. § 706, the passage of a few years before agency

adoption does not make the agency action unlawfully held or unreasonably delayed.[104]  The No

FEAR Act went into effect October 1, 2003, and Plaintiff asserts he was subject to retaliatory

conduct in 2003 and 2004.  This passage of time is insufficient to support Plaintiff's claim of

unreasonable delay.

*Noncompliance with a Final Agency Order*

    Plaintiff also asserts that the USDA violated the APA by failing to provide a report of

compliance to the USDA's Office of Civil Rights, as required by that Office's May 19, 2004,

order.  Plaintiff maintains that this refusal to comply is agency action "unlawfully withheld or

unreasonably delayed," in violation of 5 U.S.C. § 706 of the APA.[105]  And Plaintiff alleges that as

---

[103] Am. Compl. ¶ 125.

[104] Compare Pub. Citizen Health Research Group v. Chao, 314 F.3d 143 (3rd Cir. 2002)
(finding a federal agency's nine-year delay in adopting a new standard excessive) with Oil, Chem.
& Atomic Workers Union v. Occupational Safety & Health Admin., 145 F.3d 120, 123-24 (3rd
Cir. 1998).

[105] Am. Compl. ¶¶ 143-45.

a result of this refusal to comply, he has suffered continued retaliation.

According to the Department of Agriculture's Final Determination on an Allegation of Non-Compliance,

> It is the final determination of the USDA that the Agency has not complied with <u>Item 7</u> of the Settlement Agreement.  Therefore, the Agency shall implement the dispute process outlined in <u>Item 7</u> in writing.  This is the final determination of USDA on the complainant's notice of non-compliance.  The Agency **must** provide a report of compliance to this office within 30 days of receipt of this decision.[106]

Defendants respond by pointing to the Agency's Compliance Report, which was written on October 18, 2004.[107]   Plaintiff maintains that even if the Agency has issued a compliance report, it still has not implemented the dispute resolution process in writing.  Defendants counter that even if the USDA failed to comply to the Agency order, Plaintiff did not suffer harm.

The parties' briefing on this claim is sparse.  Defendants have not convinced the court that Plaintiff has suffered no harm as a result of Defendants alleged non-compliance.  At the same time, the court is not convinced that the Agency did not adequately comply with the order, or that this claim is properly before the court.

Accordingly, the court denies Defendant's Motion for Summary Judgment on this count WITHOUT PREJUDICE.  To the extent that Defendants contend that this count must be dismissed as a matter of law, Defendants may submit further briefing.  If instead the parties conclude that this count simply rehashes Plaintiff's claim of non-compliance with the settlement

---

[106] Defs.' Statement of Facts, Ex. 41, p. 5 (emphasis in original).

[107] <u>See</u> Defs.' Statement of Facts, Ex. 42.

procedure, the parties may instead indicate to the court that this count shall be consolidated with the breach of contract claim for trial, where the question of whether plaintiff suffered harm can be more adequately addressed.

**(III) <u>Violation of Due Process</u>**

Plaintiff alleges that Defendants violated his 5th Amendment right of Due Process by reducing his job duties and title, depriving him of training opportunities, and refusing to recognize him at an awards ceremony. To claim a denial of procedural due process, a plaintiff must allege facts sufficient to support an alleged deprivation of an interest which implicates life, liberty or property rights and also that the denial occurred without due process of law.[108]

Defendants assert that Plaintiff does not sufficiently allege the deprivation of a protected property interest and therefore fails to allege a viable procedural due process claim. This court agrees. Plaintiff is still employed at USDA-FNS. His official title has not changed–he remains a Financial Management Specialist. And in his deposition, Plaintiff conceded that the reduction in his ability to certify funds had no immediate effect on his compensation or benefits.[109] Plaintiff also fails to show how a lack of training or non-recognition at an awards ceremony reduced his salary or rank.

Courts have repeatedly found that a change in duties, without an accompanying change in

---

[108] <u>Brayton v. Monson Pub. Sch.</u>, 950 F. Supp. 33, 37 (D. Mass. 1997) (citing <u>Brown v. Hot, Sexy & Safer Prod., Inc.</u>, 68 F.3d 525, 534 (1st Cir. 1995)).

[109] Pl.'s Dep. 78-79, Oct. 25, 2005.

salary, does not constitute a property interest.[110]  Further, the First Circuit determined that supervisory duties, conferred on a discretionary basis, do not qualify as a property interest.[111]

And as the Third Circuit has noted, "if we considered that a mere change in work assignment deprived an employee of a property interest, as a practical matter we would be federalizing routine employment decisions."[112]  This court concludes that Plaintiff was not deprived of a property interest.  Accordingly, Plaintiff's Due Process claim fails as a matter law.  Since Plaintiff does not make the necessary showing that he was deprived of a protected property interest, this court need not weigh Plaintiff's argument that Defendants deprived him of due process.

Plaintiff's reliance on Greenwood v. New York is misplaced.[113]  In that case, a staff psychiatrist had a property interest in his clinical staff privileges at a state hospital because those privileges were guaranteed by state law.[114]  In contrast, no such law guarantees Plaintiff the right to certify funds availability.

_____

[110] See Fields v. Durham, 909 F.2d 94, 98 (4th Cir. 1990) ("[T]he constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services.");  Huang v. Bd. of Governors, 902 F.2d 1134, 1141-42 (4th Cir. 1990) (holding that any property interest in employment does not extend to right to possess and retain particular job or to perform particular services);  Maples v. Martin 858 F.2d 1546, 1550 (11th Cir. 1988) (finding no property interest where job transfers did not result in any diminution of salary or rank);  Cordova v. Vaughn Mun. Sch. Dist. Bd. of Educ., 3 F. Supp. 2d 1216, 1222 (D.N.M. 1998) ("[P]ersonnel actions that do not result in a reduction of pay or loss of other tangible benefits do not implicate protected property interests.").

[111] See Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003).

[112] Ferraro v. City of Long Branch, 23 F.3d 803, 806 (3rd Cir. 1994).

[113] See 163 F.3d 119 (2d Cir. 1998).

[114] Id. at 122.

**(IV) <u>Breach of Contract</u>**

The June 17, 2002, Settlement Agreement between Plaintiff and the USDA barred FNS from taking reprisal against Plaintiff and also created a framework for resolving future conflicts.[115]  Plaintiff asserts that Defendants breached this agreement by continuing to retaliate against him and by not following the agreed upon dispute resolution procedures.

Defendants insist that they have not breached the Agreement and move that this count be dismissed on summary judgment.  The alleged retaliatory act of stripping Plaintiff of his right to certify funds has survived summary judgment and is proceeding to trial.  Therefore, the issue of whether USDA breached its promise not to retaliate against Plaintiff also survives summary judgment.

Also at issue is whether the USDA breached the Settlement Agreement by not following the prescribed process for resolving differences between Plaintiff and his supervisor.  Defendants maintain that the Settlement Agreement's dispute procedures are inapplicable because Plaintiff never attempted to invoke them when he contacted Deputy Regional Administrator Ghiorzi on March 10, 2003, regarding his dispute with Stanco and MacAllister.  This is contested by Plaintiff, who maintains he did invoke the proper procedures and that Defendants failed to follow protocol.  Plaintiff's position that the USDA did not follow the terms of the Settlement Agreement is supported by the USDA's Final Determination of May 19, 2004.  Whether

---

[115] Under the Agreement, "[t]he Food and Nutrition Service shall not take reprisal against the Complainant as a result of his having filed the complaint of discrimination . . . ."  Also, regarding disputes, "[i]f [Plaintiff] and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party.  If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official." Settlement Agreement 2-3.

Defendants breached the Settlement Agreement's dispute resolution procedures involves questions of material facts as to the meaning of the Settlement Agreement, the parties understanding of how the dispute process would operate and their respective obligations. At this juncture, the court is unwilling to dispose of this claim on summary judgment.

**Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff moves for summary judgment on all counts. This Motion [#64] is DENIED in its entirety. It would be inappropriate for this court to allow summary judgment for Plaintiff where numerous factual disputes exist regarding the allegedly retaliatory conduct, its causal relationship to Plaintiff's activity and to whether or not the USDA's proffered reasons for its employment actions are merely pretextual.

### Conclusion

For these reasons, Defendants' motion for summary judgment is ALLOWED IN PART AND DENIED IN PART with respect to Count I (Title VII retaliation). Of the alleged retaliatory acts, the only one that survives for trial is Plaintiff's claim that Defendants stripped him of his ability to certify funds and reduced his duties. Summary judgment is ALLOWED as to Count II, Part A (APA claims involving the No Fear Act). Summary judgment is DENIED WITHOUT PREJUDICE as to Count II, Part B, (APA claims involving Noncompliance with a Final Agency Order). Summary judgment on Count III (violation of Due Process under the 5th Amendment) is ALLOWED. Count IV (breach of contract) remains for trial.

Because no claims remain against Defendant Dan Blair, acting director of OPM, he is dismissed from this case.

37

Plaintiff's Cross-Motion for Summary Judgment is DENIED in its entirety.

AN ORDER WILL ISSUE.

                                                     <u>/s/ Joseph L. Tauro</u>

                                                United States District Judge