UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN G. PEDICINI,                         :
                                          :
          Plaintiff,                      :
                                          :
     v.                                   :
                                          :     Case No. 04-12395-JLT
UNITED STATES OF AMERICA, et al.,:
                                          :
          Defendants.                     :
                                          :

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENAS**

Pursuant to Judge Tauro's Summary Judgment Order of March 29, 2005 ("Summ. J.

Order")[1], the following issues will be decided at trial beginning on August 13, 2007: (1) Title

VII retaliation claim regarding an alleged reduction in Plaintiff's job duties;

(2) Administrative Procedure Act ("APA") violation claim involving noncompliance with

a Final Agency Order; (3) Breach of settlement agreement claim.[2]  To date, Plaintiff has

subpoenaed <u>seventeen</u> individuals,  living in the District of Columbia, Virginia, and

---

[1] Expressly excluded by this Court's Summary Judgment Order of March 29, 2007, are the following claims: (1) refusal to permit Martin Hines to act as Plaintiff's EEO representative in a March 10, 2003 meeting; (2) letters of instruction issued to Plaintiff by his supervisors as a form of retaliation; (3) failure to give Plaintiff a performance award in 2004; (4) failure to train Plaintiff for the potential vacancy of Martin Hines' position; (5) referral of Plaintiff for counseling by supervisor Michael Malone; (6) removal of Plaintiff's name from list of funds officers on November 9, 2004; (7) No Fear Act violations; (8) Fifth Amendment Due Process violations.

[2] Per Judge Tauro's suggestion in the Summary Judgment Order, a motion to dismiss issue 2 as a matter of law, or, in the alternative, to consolidate issues 2 and 3 will follow.

Massachusetts areas, to testify at trial from August 13, 2007 to August 20, 2007[3]. Only <u>five</u> of the individuals Plaintiff subpoenaed are pertinent to Plaintiff's claims. **The remaining <u>twelve</u> subpoenaed witnesses have no connection to the three issues remaining for trial, or the relationship is so remote, as to be unnecessarily burdensome for these individuals to testify at trial.** Therefore, Defendants respectfully request that this Court quash the subpoenas of Juanita Makuta, Roberto Salazar, Sadhna True, Michael Watts, Angela McElmurray Speshock, Brooksie Spears, Jonathan Lash,[4] Lisha Dorman, Jada Johnson, Lori Lodato, Luis Perez, and Diane Harrington.

## I.    RELEVANT LAW

Rule 45 of the Federal Rules of Civil Procedure enumerates several grounds for quashing a subpoena. <u>See</u> Fed. R. Civ. P. 45(c)(3); <u>Irons v. Karceski</u>, 74 F.3d 1262 (D.C. Cir. 1995). A subpoena can be quashed if it fails to allow reasonable time for compliance, requires a non-party or an officer of a party to travel more than 100 miles from their residence or place of employment, requests disclosure of privileged or other protected information, or subjects a person to undue burden. <u>See</u> Fed. R. Civ. P. 45(c)(3).

---

[3] As these subpoenas appear to span from August 13, 2007, to August 20, 2007, it is obvious that Plaintiff assumes that he will be allowed to present his case and witnesses for the entire period.

[4] As of this date, Plaintiff has submitted a request to have Jonathan Lash's testimony presented at trial via deposition transcript. Accordingly, Defendants will submit objections to his deposition testimony on the same grounds that they objected to his live testimony.

Federal Rule 45(c)(3)(ii) limits the subpoena power of district courts to witnesses who reside or work within 100 miles of the trial site.[5] Farmer v. Arabian Am. Oil Co., 379 U.S. 227 (1964)(stating that the century-and-a-half-old special statutory provision relating to service of subpoenas more than 100 miles from the courthouse is designed to protect witnesses from the harassment of long tiresome trips and to minimize litigation costs) (Goldberg, J., concurring)("I do not agree that the 100-mile limit is a matter for even the narrow discretion which the [Supreme] Court would allow the lower federal courts to exercise."); Comm-Tract Corp. v. Northern Telecom, Inc., 168 F.R.D. 4 (D. Mass. 1996)(holding that the Court has no discretion but to quash or modify the subpoena because the witness must travel 100 miles from his residence, place of employment, and the place where he transacts business). A subpoena that seeks to reveal confidential, privileged information should also be quashed pursuant to Federal Rule 45(c)(3)(iii). See Fed. R. Civ. P. 45(c)(3); Stock v. Integrated Health Plan, Inc., 2007 WL 790032, 1 (S.D. Ill. 2007); Mcowen v. Marie, 2007 WL 338669, 1 (E.D. Pa. 2007). Furthermore, a subpoena that imposes an undue burden on a non-party will be quashed if the party demonstrates that the cost of requiring him or her to testify outweighs any benefit. See Jade Trading, LLC v. U.S., 65 Fed. Cl. 188 (Fed. Cl. 2005); Northwestern Memorial Hosp. v. Ashcroft, 362 F.3d 923, 935 (C.A.7 (Ill.) 2004)(the potential loss of privacy outweighs the probative value of the

---

[5] Although the Fed. R. Civ P. 45(C)(3)(ii) limits the courts from exercising the power to compel witnesses living beyond 100 miles of the trial site to attend trial, the provision does not prohibit witnesses from voluntarily appearing and testifying in court.

medical records); <u>Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2</u>, 197 F.3d 922, 924 (C.A.8 (Minn.) 1999)(quashed subpoenas because the requested information would be duplicative and irrelevant, sought to embarrass the nonparty, and would thereby impose an undue burden on the witness).

Beyond the Federal Rules of Civil Procedure, in granting a motion to quash subpoenas, the First Circuit Court of Appeals has also considered whether: (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case. <u>Bogosian v. Woloohojian Realty Corp.</u>, 323 F.3d 55, 66 (1st Cir. 2003).

## II.    SUBPOENAS TO QUASH

Plaintiff's subpoenas of witnesses living outside of the Boston area violate the 100-mile rule pursuant to Federal Rule  45(c)(3)(ii) and imposes an undue burden on these individuals.  Moreover, all of the witness testimonies objected to by Defendants in this Motion to Quash are irrelevant to the issues at trial and highly prejudicial.  Thus, the Government respectfully requests that this Court quash the following subpoenas, or in the alternative, limit the admissibility of the following witness testimony that Plaintiff intends to offer at trial[6]:

---

[6] <u>See</u> Defendant's Motion in Limine to Exclude Plaintiff's Witnesses, filed July 23, 2007.

**(1) <u>Juanita Makuta</u>**: Juanita Makuta's subpoena should be quashed as she can offer no testimony relevant to the contested issues. A computer specialist at the United States Department of Agriculture, Food and Nutrition Service ("USDA-FNS") Headquarters, Makuta will likely testify that Plaintiff possessed the same system access as a funds officer with certifying authority. However, the level of system access granted to Plaintiff has never been in dispute.[7] Moreover, the Government has stressed repeatedly that Plaintiff's system access in no way implies an authority to certify funds. Makuta has admitted as much in her Deposition. See Makuta Deposition 44. As Makuta has no personal knowledge of how certification rights are delegated in the Northeast Regional Office ("NERO") of the USDA-FNS, whatever evidence Plaintiff intends to offer through her testimony would be overly time consuming and irrelevant. Furthermore, Makuta's subpoena should be quashed because her place of employment is more than 100 miles from the place of the trial.

**(2) <u>Roberto Salazar</u>**: The subpoena of Roberto Salazar, Administrator of the USDA-FNS, should also be quashed, as his testimony is irrelevant. Salazar has had only one personal encounter with Plaintiff. The encounter consisted of an October 2004 e-mail exchange regarding confusion over whether Plaintiff's June 2002 Settlement Agreement with the Food and Nutrition Service ("FNS") permitted Plaintiff to act as an Equal Employment Opportunity ("EEO") representative on behalf of his fellow co-workers. See Pl.'s Ex. 44 (as indicated by Plaintiff's Rule 26(a)(3) Disclosure). The misunderstanding was resolved within the matter of a few days, with Salazar reaffirming Plaintiff's right to represent employees in EEO matters. Plaintiff's correspondence with Salazar does not at all relate to the issue of whether Plaintiff's supervisors breached the Settlement Agreement on May 10, 2003, by failing to follow proper dispute resolution procedures. In fact, the alleged breach occurred more than one year before Plaintiff's e-mail exchange with Salazar. As Salazar can offer no relevant testimony with respect to the alleged breach, Plaintiff's subpoena of this witness borders on harassment and should be quashed. Furthermore, Salazar's subpoena should be quashed because his place of employment is more than 100 miles from the place of the trial.

**(3) <u>Sadhna True</u>**: The subpoena of Sadhna True, an employee at the United States Department of Agriculture ("USDA" or "Agency") Office of Civil Rights in Washington, D.C., should be quashed, as her testimony is highly prejudicial and irrelevant to the issues at trial. True is expected to offer testimony regarding the Agency's finding that Plaintiff's supervisors breached the June 2002 Settlement

---

[7] The Government is willing to stipulate that Plaintiff was authorized the same level of system access as Funds Officer Martin Hines.

Agreement.  As Defendants have argued in their Motion in Limine to Exclude Plaintiff's Exhibits, the lack of a full hearing before the Agency, the lack of cross-examination of witnesses, the lack of judicial assessment of the trustworthiness of the facts relied upon by the decision-maker, and the consideration of any and all "evidence" that would not ordinarily be admissible under the Federal Rules of Evidence in this Court, render these findings completely unreliable.[8]  Any probative value of the Agency's findings is far outweighed by the substantial risk of prejudice they pose.  Furthermore, as True's name appears no where on the Agency's Final Determination, in Plaintiff's exhibits or in the depositions of Plaintiff's key witnesses, it is unlikely that she will have any relevant first-hand testimony to offer.  In addition, True's subpoena should be quashed because she is employed more than 100 miles from the place of the trial.

**(4) <u>Michael Watts</u>**: To the extent that Michael Watts' testimony will be based on the USDA's Final Determination regarding the Settlement Agreement breach, his subpoena should also be excluded for the reasons set forth in paragraph (3) above. Moreover, Watts' subpoena should be quashed because he is employed more than 100 miles from the site of the trial.

**(5) <u>Angela McElmurray Speshock</u>**: The subpoena of Angela McElmurray Speshock, a former employee at the FNS Office of Governmental Affairs and Public Information in Alexandria, Virginia, should be quashed because she lives more than 100 miles from the site of the trial.  Spechock's testimony is also irrelevant to the issues at trial. Speshock will likely testify that she prepared an unofficial contact information list of funds officers, in which Plaintiff was included as a "backup funds officer."  This fact, however, is irrelevant to the question of whether Plaintiff had certifying rights.  The presence of Plaintiff's name, contact information, and unofficial title on an unofficial list is not determinative of the extent of Plaintiff's job responsibilities.  As Speshock was based in Alexandria, Virginia during her employment with FNS, she is also unlikely to have any personal knowledge of how certifying rights were delegated in the NERO.  Since there is little, if any, probative value to Speshock's testimony, Plaintiff's subpoena of this witness borders on harassment and her subpoena should be quashed.

---

[8] <u>See</u> Defendant's Motion in Limine to Exclude Plaintiff's Exhibits, at the objection to Plaintiff's Exhibit No. 34 (pages 4-5), filed July 23, 2007.

**(6) Brooksie Spears**: The subpoena of Brooksie Spears, Plaintiff's co-worker, should be quashed. Spears' testimony should be excluded to the extent that it references (a) her EEO complaint against the Agency, (b) EEO complaints of her co-workers, or (c) any letters of instruction issued to Plaintiff. First, allowing Spears to testify to the details of unrelated EEO discrimination claims would be extremely prejudicial to Defendants and would confuse the actual issues to be resolved at trial. The details of the EEO discrimination complaints of Spears and her co-workers are completely irrelevant to this case, as Plaintiff's retaliation claim is in no way connected to the factual circumstances of these complaints.[9] Second, Spears' testimony with respect the letters of instruction Plaintiff received from his supervisors should also be inadmissible, as Judge Tauro expressly excluded such evidence in his Summary Judgment Order. See Summ. J. Order at 21-22.

**(7) Jonathan Lash**: The subpoena of Jonathan Lash, a budget analyst at USDA-FNS Headquarters, should be quashed because his testimony is misleading and irrelevant. Lash is expected to testify that he sent an e-mail to Plaintiff confirming that Plaintiff was "authorized to certify funds availability." See Lash Deposition 15. As a staff member without the managerial authority to delegate certification rights, Lash's confirmation of Plaintiff's "authority" to certify funds availability is meaningless. Such authority can only come from the Regional Administrator. In addition, to the extent that Lash may testify that Plaintiff was listed as a "backup funds officer" on an unofficial contact information list of funds officers (see Lash Deposition 10-14), his testimony is irrelevant for the reasons set forth in paragraph (5) above. Finally, Lash's subpoena should be quashed because his place of employment is more than 100 miles from the place of the trial.

**(8) Lisha Dorman**: The subpoena of Lisha Dorman, an administrative officer at USDA-FNS Headquarters, should be quashed, as her testimony is irrelevant. In addition to having Dorman testify that Plaintiff was a "backup funds officer" in the NERO, Plaintiff is also likely to elicit testimony from Dorman regarding her opinion that backup funds officers should be able to perform all of the functions of a funds officer. Plaintiff's role as a backup to Funds Officer Martin Hines is not in dispute, and Dorman's opinion that "backup funds officers" should perform all the functions of a funds officer is not relevant to the issue of whether Plaintiff actually had certifying rights. In fact, Dorman confirmed in her affidavit that there is no FNS policy granting "backup funds officers" the authority to perform all of the functions of the funds officer. Dorman Aff. 12. She also stated that in the NERO, the regional

---

[9] The Government is willing to stipulate that Plaintiff has served as an EEO Representative on behalf of his co-workers.

administrator has <u>sole</u> authority to delegate certifying rights.  <u>Dorman Aff</u>. 13.  As Dorman's testimony is not pertinent to the issues before the Court, Dorman should be excluded as a witness at trial.  Furthermore, Dorman's subpoena should be quashed because her place of employment is more than 100 miles from the site of the trial.

**(9) <u>Jada Johnson</u>**: The testimony of Jada Johnson, a staff member in the accounting department at Headquarters, should be excluded as irrelevant to the extent that she will testify that Plaintiff was known as a "backup funds officer" at Headquarters.  As established in paragraphs (5), (7) and (8) above, the fact that Plaintiff may have been known as a "backup funds officer" is not determinative of whether he had certifying authority.[10]  Furthermore, Johnson's subpoena should be quashed because her place of employment is more than 100 miles from the site of the trial.

**(10) <u>Luis Perez</u>**: The subpoena of Luis Perez, a Purchasing Specialist in the NERO, should be quashed, as his testimony would be highly prejudicial and irrelevant.  Perez will likely testify that Plaintiff served as his EEO representative in a discrimination complaint against the Agency.  However, details of Perez's EEO discrimination complaint would be highly prejudicial by creating a negative impression of Defendants.  Such details are also irrelevant to the issues at hand.  As Perez can offer no testimony pertinent to any of Plaintiff's claims, his subpoena borders on harassment and should be quashed.[11]

**(11) <u>Diane Harrington</u>**: The subpoena of Diane Harrington, Confidential Secretary to the former Deputy Administrator of the NERO, Douglas MacAllister, should be quashed, as her testimony will reveal privileged information.  <u>See</u> <u>Stock v. Integrated Health Plan, Inc.</u>, 2007 WL 790032, 1 (S.D. Ill. 2007); <u>Mcowen v. Marie</u>, 2007 WL 338669, 1 (E.D. Pa. 2007).  As a Confidential Secretary, any information Harrington may have about Plaintiff with regard to the issues before the Court are protected by the confidential nature of her position.  Moreover, any other information that Harrington may offer will be irrelevant to any of the disputed issues in this case.

---

[10] The Government is willing to stipulate that Plaintiff was known by his colleagues as a "backup funds officer".

[11] The Government is willing to stipulate that Plaintiff has served as an EEO Representative on behalf of his co-workers.

**(12)  Lori Lodato**:[12] To the extent that Lori Lodato, an IT Specialist at the FNS regional office, will testify that Plaintiff's supervisor Michael Malone deleted or destroyed Agency information upon resigning his position, her testimony will be highly prejudicial and irrelevant.  First, the rumors of the deleting of evidence were never formalized into an official complaint.  Furthermore, testimony of these rumors would be extremely prejudicial to Defendants and would have absolutely no probative value in support of Plaintiff's case.  In addition, testimony from Lodato regarding the level of system access granted to Plaintiff is irrelevant and unnecessary, as Plaintiff's level of access does not prove that he had certifying rights and the Government has already expressed its willingness to stipulate that Plaintiff has the same level of system access as Funds Officer Martin Hines. Therefore, Lodato's subpoena should be quashed.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court quash

Plaintiff's subpoenas of the above-named individuals.


                                        Respectfully submitted,

                                        Michael J. Sullivan
                                        United States Attorney


                               BY:    /s/ Gina Walcott-Torres
                                        GINA WALCOTT-TORRES
                                        Assistant U.S. Attorney
                                        John Joseph Moakley U.S. Courthouse
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02110
Dated:  July 30, 2007                   (617) 748-3369

---

[12] Defendants' request to quash Ms. Lodato's subpoena may become a moot issue, as the parties have discussed the possibility of stipulating to the authentication of certain documents, which would make her appearance unnecessary.  The parties will alert the Court of this circumstance once finalized.

## CERTIFICATE OF SERVICE

I certify that on July 30, 2007, I caused a copy of the foregoing document to be served on *pro se* Plaintiff, John G. Pedicini, 10 Milano Drive, Saugus, MA 01906, by first class mail, postage pre-paid.

/s/ Gina Walcott-Torres
GINA WALCOTT-TORRES
Assistant U.S. Attorney