| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF MASSACHUSETTS | FILED<br>IN CLERKS OFFICE<br><br>2007 AUG -1  P 12: 27<br><br>U.S. DISTRICT COURT<br>DISTRICT OF MASS. |

JOHN G. PEDICINI,

    Plaintiff,

-vs-

UNITED STATES OF AMERICA ET AL.,

    Defendants.

CIVIL ACTION NO. 04-12395-JLT

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH PLAINTIFF'S SUBPOENAS

Plaintiff, John G. Pedicini, respectfully moves the Court to deny Defendants' Motion To Quash Plaintiff's Subpoenas. Plaintiff hereby submits this memorandum of law in support of such denial.

### ARGUMENT

Defendants' motion should be denied because: (1) it cannot meet its Rule 45 burden to quash the subpoenas; (2) there is a strong preference for live testimony; (3) Plaintiff has established that good cause exists under Rule 45(c)(3)(B)(iii); (4) the witnesses will not be subjected to any "undue hardship".

I. Defendants Do Not Meet Rule 45's Threshold Requirement for Quashing Subpoenas

A. The Burden of Proof is on Defendants to Quash Subpoenas

The Defendants have the burden of proof to quash subpoenas. The party "…seeking to quash a subpoena bears a heavy burden of proof… ." *Irons v. Karceski*, 74 F. 3d 1262, 1264 (D.C. Cir. 1995); see *Diamond State Ins. Corp. v. Rebel Oil Co.*, 157 F.R.D. 691, 698-700 (D. Nev. 1994)(placing burden on movant under Rule 45 (c)(3)(A)(iv)); 9 *Moore's Federal Practice* § 45.04 [3][a](Supp.2003). Defendants cannot meet that burden.

B. Defendants Have Not Met Any of Rule 45's Requirements for Quashing A Subpoena

Rule 45(c)(3) provides the exclusive mechanism in the rules for quashing subpoenas. See *Continental Coatings Corp. v. Metco, Inc.* 50 F.R.D. 382, 384 (N.D. Ill. 1970) (holding other rules inapplicable when Rule 45 is exclusive mechanism for subpoenas). Defendants do not allege sufficient facts, in its memorandum to satisfy Rule 45(c)(3)'s standard. Therefore, Defendants' motion should be denied.

A subpoena *must* be modified or quashed under Rule 45(c)(3)(A) when it: (i) "fails to allow reasonable time for compliance", (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, (iii) requires the disclosure of privileged information; or (iv) subjects the witness to "undue burden". *See* Fed. R. Civ. P. 45 (c)(3)(A)(i)(iii) &(iv). In this case, the trial subpoenas issued for the witnesses are not ones that must be modified or quashed under Rule 45(c)(3)(A) because: (1) they provide adequate time for compliance since they were issued twenty-five (25) days before the start of the trial; (2) witnesses will not be testifying to any privileged information; (3) there is good cause under F.R.C.P. Rule 45 (c)(3)(B)(iii) and (4) witnesses will not bear any "substantial burden".

A subpoena *may* be modified or quashed under Rule 45(c)(3)(B) when it: (i) requires the disclosure of trade secrets; (ii) requires the disclosure of an unretained expert's opinion or conclusions; or (iii) requires a

3

"substantial expense" due to travel. See Fed. R. Civ. P. 45(c)(3)(B)(i)-(m). The trial subpoenas are not ones that require quashing under Rule (c)(3)(B) because: (1) they do not require the disclosure of confidential information in open court; (2) there are no unretained experts; and (3) the witnesses will not incur a "substantial expense" since Plaintiff will be paying the travel expenses. For these reasons, Defendants motion should be denied.

## II. There Is A Strong Preference for Live Testimony

There is a strong preference for the presentation of live testimony. See Fed. R. Civ. P. 43(a) ("In every trial the testimony of witnesses shall be taken in open court... "); In re Adair, 695 F. 2d 777, 780 (9th Cir. 1992)("The Primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and to allow the trier of fact to observe the appearance and demeanor of the witness."); see also Planned Parenthood of Columbia/Williamette, Inc. v. American Coalition, 290 F. 3d 1058, 1118-19 (9th Cir. 2002)(Rule 32 "reflects the historical belief that live testimony better enables the jury to judge the credibility of a witness and therefore to determine the weight and import ascribed to the witness's testimony."); Murphy v.

4

*Tivoli Enters.*, 935 F. 2d 354, 359 (8th Cir. 1992)("The federal rules strongly favor the testimony of live witnesses wherever possible, so that the jury may observe the demeanor of the witness to determine the witness's veracity.") Plaintiff's examination and Defendant's cross-examination of witnesses in open court will provide the Court an opportunity to judge witnesses in person.

In their motion, Defendants propose to quash the subpoenas of five witnesses (i.e. Makuta, Salazar, Speshock, Lash, and Dorman) who have already been deposed and reside in the Alexandria, VA area. Defendants' argument, taken to its logical conclusion, would bar all parties who reside more than 100 miles away from the courthouse from presenting live witness testimony. Instead of viewing witnesses and hearing live testimony, the finder of fact would be subjected to hours upon hours of deposition testimony. *Cf Murphy*, 935 F. 2d at 359 (preference for live testimony intended to preclude former practice of submitting edited depositions).

### III. Good Cause Exists Under Rule 45(c)(3)(B)(iii)

The present action before the Court is a highly complex matter, requiring specialized knowledge. There is a substantial need for the testimony of the following

individuals, because they possess unique information not available from other witnesses:

(1) **Juanita Makuta**: She is the Agency Information Systems Security Officer. She has detailed knowledge of the agency's "least privilege" policy linking rights in the computer system to duties in the workplace. See Makuta Dep., pp.20-21. She has detailed knowledge of USDA Form 1143 designating Plaintiff as FCO backup with all the rights of the funds officer, See Makuta Dep.pp.42-43. Those rights include the right to verify and certify which is at issue in Count I.

(2) **Roberto Salazar**: He personally received certified delivery of Non-Compliance Order, dated May 19, 2004, and was required to implement the 3rd step of the dispute resolution process in the Settlement Agreement, dated 6/17/2002, but failed to do so.

(3) **Sadhna True**: She is the Director of USDA Civil Rights Office. She has detailed knowledge of adjudicating noncompliance complaints involving USDA settlement agreements. Plaintiff's Settlement Agreement dated 6/17/2002 is based on the template for USDA settlement agreements from her office. Its status is required to be updated by her office.

(4) **Michael Watts**: He was the Agency Civil rights director who personally received the certified delivery of the Non-Compliance Order, dated 5/19/2004. He is now a USDA Civil Rights Director. In addition, on 8/28/2003, Mr. Watts wrote the response to USDA on original complaint of non-compliance by Plaintiff. In that response, Mr. Watts stated that he had conversations with Plaintiff's supervisors and there were no plans to change Plaintiff's duties as alternate to the funds officer—a key issue in Count I.

(5) **Angela McElmurray Speshock:** former Agency HQ Funds Officer who is the author of the Funds List, dated 1/29/1999, which bears her initials. She has detailed knowledge of this list. In its decision of 3/29/2007, the Court has stated that "…the presence of Plaintiff's name on the list may still be admissible at trial to support Plaintiff's position that he previously had authority to certify funds." See Summary Judgment Memorandum, dated

6

3/29/2007, p.24. Ms. Speshock has detailed knowledge of the rights of backup funds officers on the list. See Speshock Deposition, pp. 15-16.

(6) **Jonathan Lash:** Plaintiff has withdrawn his name from the list of witnesses due to a medical issue with his wife. Plaintiff has a pending motion to substitute parts of his deposition. Mr. Lash was an Agency Funds Officer at HQ for nine years. He has detailed knowledge about the practices of the Agency with regard to backup funds officers and the certification process. See Lash Deposition, pp.18-19 and pp. 26-29.

(7) **Lisha Dorman**: She is the Agency Administrative Funds Officer and has detailed knowledge of backup funds officers on Funds Officer List, dated 1/29/1999, See Dorman Deposition, pp. 47-48. She has reviewed several exhibits in this case and has stated that Plaintiff has the right to certify funds availability. See Dorman Deposition, pp. 40-41.

(8) **Jada Johnson:** She is HQ Funds Officer, who has detailed knowledge of funds control duties and responsibilities within the agency and regional offices. She has detailed information on the certification process and the role of the Foundation Financial Information System (FFIS) which are key issues in Count I of this case.

**IV  Good Cause For Remaining Witnesses**

Plaintiff has substantial need for the testimony of the remaining witnesses:

(9) **Brooksie Spears:** She is a co-worker at the Defendants' Boston office who also file an EEO Complaint against the Defendants and among her allegations was retaliation by Frances Zorn, who had Spears' work checked after the filing of an EEO complaint and resulted in Spears' Performance Appraisal being lowered. See Spears Deposition, pp. 59-61,98. Because of the "difficulties in proving discriminatory intent", the probative value of testimony from third-party witnesses in employment discrimination

cases is high. See Webb v. Hyman, 861 F. Supp. 1094, 1112 (D.D.C. 1994)

(10) **Lori Lodato:**: She is holder of the records at the Boston office of the Defendant agency. Her testimony is limited to authenticating Plaintiff's Exhibits 7-9 which are the computer access rights forms. She will testify that Exhibits 7-9 are authentic copies of forms on file in the Boston office.

(11) **Luis Perez:** He is the employee who filed an EEO complaint and had Plaintiff as an EEO representative. The ensuing retaliation, after a deposition on 2/11/2003, forms the basis of the Count I—Retaliation complaint before the Court. Perez has detailed knowledge of retaliatory acts by the Defendants towards himself and Plaintiff in response to the deposition. Although Federal Rule of Evidence 404(b) ("Rule 404(b)") provides that, as a general rule, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," it does permit the admission of such evidence "…for purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). In Glass v. Philadelphia Electric Company, 34 F. 2d 188, 195 (3rd Cir. 1994), Harold Glass, an activist for employees, alleged retaliation in employment, along with race and age discrimination. The Third Circuit cited Estes v. Dick Smith Ford, Inc., 856 F. 2d 1097, 1103(8th Cir. 1984) that the "…effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of his own motives."

(12) **Diane Harrington**: She was the secretary to Frances Zorn. In her deposition, Ms. Zorn specifically identified Ms. Harrington as the source of information that Plaintiff was creating "a buzz" in the Boston Office with his EEO representation and, consequently, Zorn believed that Plaintiff's EEO activity was "lowering the productivity of the office". See Zorn Deposition, pp. 196-198 Ms. Harrington's testimony will focus on the actions by Plaintiff that caused her to conclude that "a buzz" was

8

created by Plaintiff and her communication of that impression to Ms. Zorn.

## V.   Witnesses Will Not Suffer An Undue Hardship

Although Rule 45(c)(3)(A)(iv) does not specify what constitutes "undue burden", the Advisory Committee's notes focus on travel expenses and preventing the enforcement of irrelevant subpoenas issued for vexation reasons. *See* Fed.R. Civ. P.45 advisory committee's note subdivision(c)(amend. 1991). The witnesses will not e subject to travel expenses, as Plaintiff will be paying them. Plaintiff has not issued any subpoenas for any unethical or vexation reasons. No witness is expected to testify for more than 2.5 hours, plus an equal time for cross-examination. Thus, the witnesses will not suffer any undue hardship.

Defendants have failed to meet their heavy burden to quash the subpoenas.

## CONCLUSION

For the foregoing reasons, Defendants' motion to quash Plaintiff's subpoenas should be denied.

9

Respectfully submitted,

_____    8/1/07
John G. Pedicini, Plaintiff Pro Se        Date
10 Milano Drive
Saugus, MA 01906
781-248-1385


### CERTIFICATION UNDER L.R. 7.1

I certify that in accordance with Local Rule 7.1, I have conferred with Defendants' counsel and have attempted in good faith to resolve the issues addressed in this Motion on August 1, 2007 and that we were unable to resolve the issues set forth in this motion.

_____    8/1/07
John G. Pedicini, Pro Se              Date


### CERTIFICATION OF SERVICE

Pursuant to L.R.5.2(b), I hereby certify that a true copy of the above document was served on the Defendants on August 1, 2007, via U.S. Government email system: Gina Walcott-Torres, Assistant U.S. Attorney, Moakley Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

By: _____    8/1/07
John G. Pedicini, Pro Se              Date