```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


JOHN G. PEDICINI,

        Plaintiff

-vs-                                       CIVIL ACTION NO. 04-12395-JLT

UNITED STATES OF AMERICA
UNITED STATES DEPARTMENT OF
AGRICULTURE,
MICHAEL JOHANNS[1], SECRETARY,
        Defendants
```

### PLANTIFF'S REPLY TO DEFENDANTS' FURTHER MEMORANDUM ON COUNT II(B)

Plaintiff JOHN G. PEDICINI, pro se, submits this memorandum in response to the Defendants' Further Memorandum On Count II(B), Plaintiff's claim under the Administrative Procedure Act ("APA"), pursuant to the Court's Memorandum dated March 29, 2007 permitting further briefing. Plaintiff asserts that the USDA's refusal to comply with the Final Determination, ("Determination"), dated May 19, 2004, including the refusal by the USDA's Office of Civil Rights ("OCR") to respond to a complaint of continued noncompliance, dated June 10, 2004, are violations under the APA. The refusal to comply with the Determination, after a complaint of continued noncompliance,

dated June 10, 2004, was filed with the Assistant Secretary of Civil Rights is "final agency action for which there is no other adequate remedy in a court."[2] Am. Complaint at ¶ 143. Plaintiff claims that such action is "agency action unlawfully withheld or unreasonably delayed". Id. at ¶ 145. As a result of the USDA's refusal to comply with the Determination, Plaintiff has suffered continued discrimination at the hands of his supervisors for which there is no recourse to a 3rd party neutral, in violation of the Settlement Agreement and in violation of the Determination. Id at ¶ 146. Thus, Defendants' Motion For Summary Judgment on Count II(B) should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2004, the Office of the Assistant Secretary of Civil Rights for the U.S. Department of Agriculture issued a final determination that the Defendants had not complied with a settlement agreement, dated June 17, 2002, and ordered the Defendants to implement the dispute resolution process outlined in Item 7 of the agreement, in writing.[3] This provision of the settlement agreement required the Deputy Regional Administrator to act as the final reviewing official in the third part of the dispute resolution process. Plaintiff was satisfied with the decision and did not wish to appeal any part of it.

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d)(1), the new Secretary of the United States Department of Agriculture, Michael Johanns, is hereby substituted for Ann M. Veneman in this case.
[2] 5 USC Sec. 706.

2

On June 10, 2004, receiving no contact from any of the Defendants, Plaintiff sought **_enforcement_** of the Determination and filed a complaint of continued noncompliance with the OCR's Assistant Secretary of Civil Rights, a copy attached hereto as Exhibit A. It is the express duty of the Assistant Secretary of Civil Rights to "**_...enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, prohibiting discrimination in Federal employment._**"[4] Plaintiff informed the OCR of the continued noncompliance of the Defendants and requested assistance. The OCR never responded. Thus, Plaintiff was not advised by the OCR of any additional avenues of enforcement. Consequently, Plaintiff never filed an EEOC complaint on the enforcement aspect of the Final Determination dated May 19, 2004, believing that an OCR decision was enforceable by OCR, and was left outside of Title VII's regulatory scheme.

Plaintiff was deprived of the 3rd level of dispute resolution conducted by the Deputy Regional Administrator, John Ghiorzi. He is the same Deputy Regional Administrator who settled the civil action on retaliation, brought to this Honorable Court on September 13, 2001, through dispute resolution. The settlement agreement, dated June 17, 2002, bears his signature.[5] Consequently, Plaintiff suffered additional retaliatory acts by his supervisors.

---

[3] Plaintiff's Exhibit 31.
[4] 7 C.F.R. 2.25(a)(1)(ii).
[5] Plaintiff's Exhibit 31.

3

**ARGUMENT**

**OCR'S REFUSAL TO ENFORCE ITS FINAL AGENCY DECISION
AND ITS REFUSAL TO RESPOND TO PLAINTIFF'S COMPLAINT
OF CONTINUED NONCOMPLIANCE IS SUBJECT TO JUDICIAL
REVIEW UNDER THE APA**

The APA provides a presumption of judicial review for individuals adversely affected by federal agency action. *Abbott Labs. V. Gardner,* 387 U.S. 136, 141 (1967)("only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review")(quoting *Rusk v. Cort,* 369 U.S. 367,379-80(1962)).

In *McKenna v. Weinberger,* 729 F. 2d 783, 791 (D.C. Cir. 1984), the D.C. Circuit held that a plaintiff may bring both a discrimination claim and an APA claim that is based upon the agency's failure to comply with its own regulations because the two claims have independent bases. *Id.* In *McKenna,* Title VII provided the remedy for an employment discrimination claim where the plaintiff asserted that the agency fired her after she made an administrative complaint of sex discrimination. *Id.* The D.C. Circuit found that the APA provided a separate cause of action against the agency for its failure to conform to its own regulations in effecting the dismissal. *Id. Accord Lynch v. Bennett,* 665 F. Supp. 62,64-65 (D.D.C. 1987). Here, as in *McKenna,* Title VII creates a remedy for a retaliation claim against the USDA in its breach of the settlement agreement and *deliberate* recalcitrance to implement the dispute process in Item 7, while the APA provides the remedy for the refusal of the OCR

4

to respond to Plaintiff's complaint on June 10, 2004 of continued noncompliance and inform Plaintiff of additional avenues of enforcement. Plaintiff cannot be held responsible for the OCR's failure to respond to a complaint of continued noncompliance. The OCR is entrusted with responding to complaints of continued noncompliance as to its own decisions.

The refusal of the OCR to respond to the complaint on June 10, 2004 is reviewable under the APA as a final agency action. An agency may not simply avoid review of its actions by failing to act. *See Sierra Club v. Thomas*, 828 F. 2d 1093, 1099 (D.C. Cir. 1970). The APA provides judicial review where a person has suffered a legal wrong due to an agency's failure to act and instructs the reviewing court in those instances to compel "agency action unlawfully or unreasonably delayed." 5 U.S.C.§ 706. If an agency could simply avoid review by not acting, it would defeat the purpose of relevant regulations. The Court agreed and has recognized at least three circumstances where judicial review under the APA may occur despite the lack of an official agency action, such as the failure of the OCR to respond to the Plaintiff's complaint of June 10, 2004. They are: (1) an effectively final action not acknowledged by the agency; (2) recalcitrance in the face of a clear statutory duty; and (3) unreasonable delay of final action. *Sierra Club*, 828 F. 2d at 793-95. All three are present here.

>   a. OCR's Refusal To Investigate Plaintiff's Complaint Of
>      Continued Noncompliance Represents
>      Effective Final Agency Action And Is Therefore
>      Reviewable Under The APA

The Court has held that agency inaction constitutes effective "final agency action that the agency has not frankly acknowledged." *Sierra Club,* 828 F.2d at 793. Where an agency's inaction has "the same impact on the rights of parties as a denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief." *Id.* (quoting *Envtl. Def. Fund v. Hardin,* 428 F. 2d 1093, 1099 (D.C. Cir. 1970)). For example, in *EDF v. Hardin,* the Secretary of the Department of Agriculture had the power to suspend a hazardous chemical's registration in order to protect the public from an imminent hazard. 428 F. 2d at 1099. The Secretary, however, failed to act on a request for interim suspension of the registration of the chemical, DDT. *Id.* In finding that the APA provided a cause of action for private individuals against the USDA, the D.C. Circuit held that the agency's inaction was the equivalent of an order denying suspension of the chemical because there was a potential for irreparable injury on a massive scale, and the failure to act denied petitioners the right to seek emergency relief. *Id.*

USDA has promulgated regulations prohibiting discrimination in all of its programs and activities and regulations, requiring the investigation of discrimination complaints. 7 C.F.R. §§15d.1 *et seq.*(effective Nov. 30,

6

1999)(setting forth the agency's "nondiscrimination policy" covering all of its programs and activities); 7 C.F.R. §§ 15.51 et seq.(promulgated August 7, 1978)(prohibiting discrimination with regard to any program or activity of the agency).

In this case, as in *EDF v. Hardin, supra*, the failure to investigate Plaintiff's continued noncompliance complaint, dated June 10, 2004, had the same impact as if the OCR had made a formal decision refusing not to investigate his continued noncompliance complaint. Since Plaintiff was denied the right of an investigation, the retaliatory practices of Plaintiff's supervisors at USDA-FNS went unchecked and wrongs committed against Plaintiff went unremedied. Appropriate corrective action was not identified and implemented by agency investigators. Such inaction is the *sine qua non* of an effective final action subject to judicial review under the APA. *Cf. Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55,62,65 (2004)(agency action under the APA includes the failure to conduct a discrete act as required, as opposed to a general failure to "consider" a particular issue)(citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

        b. **OCR's Refusal To Investigate Plaintiff's Continued Noncompliance Complaint Amounts To An Abdication Of Its Duty And Therefore Is Reviewable As A Final Agency Action Under The APA.**

OCR's failure to investigate Plaintiff's continued noncompliance complaint as provided in its regulations also

7

amounts to an abdication of its regulatory duty, which renders its inaction judicially reviewable as a final agency action under the APA. The Court has held that the APA provides judicial review for aggrieved individuals where agency inaction may amount to "agency recalcitrance...in the face of a clear statutory duty...of such magnitude that it amounts to an abdication of statutory responsibility." *Pub. Citizen Health Research Group v. FDA*, 740 F.2d 21,32(D.C. Cir. 1984)(citing *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973)). Moreover, courts have consistently held that a court has a duty to enforce an agency's regulations even where those regulations are not mandated by the Constitution or federal law. *See Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 247 (D.C. Cir. 2003).

Judicial review of agency inaction is especially necessary where regulations provide the only safeguard individuals have against unlimited agency discretion. *See Lopez*, 318 F.3d at 247. For example, the Court held that the Federal Aviation Administration's ("FAA") procedures provided the only protection a Designated Engineer Representative ("DER") had from termination for "any reason considered appropriate by the Administrator." *Id.* at 248 (citation omitted). For that reason, the Court found that the federal court had jurisdiction to review whether the FAA followed its own rules before termination of a DER designation. *Id.* at 247 (where an agency's rules are "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," it is appropriate to hold

8

the agency accountable to those rules)(citation omitted). Here, the OCR's failure to respond to Plaintiff's complaint of continued noncompliance, dated June 10, 2004, denied Plaintiff important procedural benefits of enforcing the Noncompliance Order dated May 19, 2004. He was not informed of additional avenues of enforcement. Furthermore, he was deprived of a 3rd level of dispute resolution and, subsequently, was subjected to additional acts of retaliation by his supervisors.

Accordingly, Plaintiff asks this Honorable Court to deny Defendants' Motion for Summary Judgment on Count II (B).


Dated 4/30/07

Respectfully Submitted,

John G. Pedicini, Pro Se
10 Milano Drive
Saugus, MA  01906

## CERTIFICATION OF SERVICE

Pursuant to L.R. 5.2(b) I hereby certify that a true copy of the above document, Plaintiff's Reply To Defendants' Further Memorandum On Count II (B), and Exhibit A, were served on the Defendants on April 30, 2007 by certified mail, return receipt requested to:

    Ms. Barbara Healy Smith, Assistant U.S. Attorney
    John Joseph Moakley United States Courthouse
            1 Courthouse Way, Suite 9200
                 Boston, MA  02210

Dated: 4/30/07      By: _____
                            John G. Pedicini, Pro se

# EXHIBIT A

Mr. Vernon B. Parker, Asst. Secretary for Civil Rights
U.S. Department of Agriculture
1400 Independence Avenue, SW
Room 240W
Mail Stop 0115
Washington, DC 20250

**UPS NEXT DAY AIR**

June 10, 2004

## Complaint of Continued Noncompliance

## EEO Complaint # 010147

Dear Mr. Parker:

Let this letter serve as a complaint against the Food and Nutrition Service(FNS), 3101 Park Center Drive, Alexandria, VA 22302, a subagency of the U.S. Department of Agriculture, for continued noncompliance with an Order issued by the USDA Civil Rights Office, Employment/Program Compliance and Technical Assistance Division, on May 19, 2004, a copy of which has been enclosed.

In that order, the USDA gave FNS 30 days to provide a report of compliance and implement a dispute process outlined in Item 7 of the Settlement Agreement, dated June 17, 2002. A copy of the Settlement Agreement is enclosed.

As of today's date, FNS has not initiated the dispute resolution process in Item 7 and continues to be evasive when answering inquiries about it.

**Your office ensures compliance with applicable laws, regulations, and policies for the USDA. I ask for your assistance in this matter.**

The EEO issues scheduled for the dispute resolution process are as follows:

**reprisal for EEO activity by reducing my duties (i.e. removal of certification rights as Alternate Funds Officer for the Northeast Regional Office in Boston) and issuance of a letter of instruction dated March 13, 2003, as stated in the EEO Complaint acceptance letter dated July 11, 2003.**

P-2188

A copy of the acceptance letter has been enclosed.

If you would like to contact me directly, my e-mail address is John.Pedicini@fns.usda.gov. My work telephone number is 617-565-6449 and my home telephone number is 781-233-5274.

Thank you for your help in this matter.

Sincerely,

John G. Pedicini
10 Milano Drive
Saugus, MA 01906

P-2189




Home | About UPS | Contact UPS | Welcome Center

**Tracking**

→ Track by Tracking Number
→ Track by Reference Number
→ Import Tracking Numbers
→ Track by E-mail
→ Get Quantum View Files
→ Request Quantum View Notify
→ Void a Shipment
→ Help

Log-In User ID:    Password:     | Forgot Password    Re

### Track by Tracking Number

**View Details**

| | |
|---|---|
| Status: | Delivered |
| Delivered on: | Jun 15, 2004 2:42 P.M. |
| Signed by: | COX |
| Location: | OFFICE |
| Delivered to: | US |
| Shipped or Billed on: | Jun 10, 2004 |
| Tracking Number: | 1Z 035 E63 01 4301 691 6 |
| Service Type: | NEXT DAY AIR |

Your Printer. Your Labels. Your Shipping Solution.

UPS Internet Shipping

**Package Progress:**

| Date | Time | Location | Activity |
|---|---|---|---|
| Jun 15, 2004 | 2:42 P.M. | LANDOVER, DC, US | DELIVERY |
| | 2:42 P.M. | LANDOVER, DC, US | PKG DELAY-SECURITY CHK BE UPS CONT'L;UPS INTERNAL AC CODE |
| | 7:13 A.M. | LANDOVER, MD, US | OUT FOR DELIVERY |
| Jun 14, 2004 | 5:39 P.M. | LANDOVER, DC, US | BUSINESS CLOSED, 1ST DELI ATTEMPT |
| Jun 11, 2004 | 9:22 A.M. | LANDOVER, MD, US | RECEIVER ON HOLIDAY;PKG D NEXT BUSINESS DAY-NO SAT |
| | 7:20 A.M. | LANDOVER, MD, US | RECEIVER ON HOLIDAY;PKG D NEXT BUSINESS DAY-NO SAT |
| | 6:20 A.M. | LANDOVER, MD, US | ARRIVAL SCAN |
| | 3:41 A.M. | PHILADELPHIA, PA, US | DEPARTURE SCAN |
| Jun 10, 2004 | 11:57 P.M. | PHILADELPHIA, PA, US | ARRIVAL SCAN |
| | 10:40 P.M. | MANCHESTER, NH, US | DEPARTURE SCAN |
| | 9:13 P.M. | MANCHESTER, NH, US | ARRIVAL SCAN |
| | 8:22 P.M. | LYNNFIELD, MA, US | DEPARTURE SCAN |
| | 8:19 P.M. | LYNNFIELD, MA, US | ORIGIN SCAN |
| | 6:22 P.M. | LYNNFIELD, MA, US | PICKUP SCAN |
| | 6:19 P.M. | US | BILLING INFORMATION RECEI |

Tracking results provided by UPS: Jun 15, 2004 3:51 P.M. Eastern Time (USA)

**NOTICE:** UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited

← Back to Tracking Summary

↑ Back to Top

Copyright © 1994-2004 United Parcel Service of America, Inc. All rights reserved.

P-2190



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

**DEPARTMENT OF AGRICULTURE FINAL DETERMINATION
on an ALLEGATION of NON-COMPLIANCE**

MAY 1 9 2004

| | |
|---|---|
| **Complainant:** | John Pedicini |
| **Complaint No.** | 010147 |
| **Date of Allegation:** | March 20, 2003 |
| **Agency:** | Food and Nutrition Service |
| **Issue:** | Non-compliance with Settlement Agreement dated June 17, 2002 |

## INTRODUCTION

Pursuant to 29 C.F.R. § 1614.504(b), the Department of Agriculture (USDA) hereby renders the following determination on the complainant's allegation of non-compliance with a Settlement Agreement dated June 17, 2002.

## STATEMENT OF FACTS

On or about June 17, 2002, the complainant, Mr. John Pedicini, and the Food and Nutrition Service (the Agency) entered into a Settlement Agreement that resolved his formal complaint No. 010147. On March 20, 2003, the complainant notified the Office of Civil Rights (CR) that the Agency failed to comply with the following specific terms of the Settlement Agreement:

> Item 7: "The Complainant and his supervisor agree to communicate on a regular basis to minimize any misunderstandings concerning work assignments, performance, training, etc., with the aim of building trust and understanding. Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties. If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party. If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official. During the discussions at the various levels identified above, the Complainant has the right to utilize the EEO complaints process."

> Item 10: "The Food and Nutrition Service shall not take reprisal against the Complainant as a result of his having filed the complaint of discrimination which is the subject of this informal resolution agreement.

P-1282

However, any future complaint on a issue not addressed in this agreement which he may file against Food and Nutrition Service or the Department Agriculture will be considered and processed as a separate action and will in no way undermine or render this informal resolution agreement as null and void."

Item 13: "Both parties agree to cooperate in good faith to complete implementation of this Agreement and to abide by the terms of this Agreement."

The complainant stated that Item 7, required both parties to follow a prescribed format in resolving disputes relating to "work assignments, performance, training, etc." He continued by saying that on February 10, 2003, the Agency stated that Items 7 and 10 were ongoing provisions of the Settlement Agreement, but that the Agency had not complied with these provisions because the Agency Official named to be the final reviewing official had failed to abide by the format. As an example the complainant stated that on March 10, 2003, via electronic mail, he contacted the final reviewing official notifying him that he had not been able to resolve a dispute with his first and second line supervisors. He requested a meeting with the final reviewing official at that time. He also asserted that the final reviewing official had failed to respond to his request, and had abandoned the role of final reviewing official, which was also a breach of Item 7.

The complainant stated that he had been issued a disciplinary warning letter, which caused the Agency to be in non-compliance with the section of Item 13 that refers to "good faith cooperation."

The complainant stated that the Letter of Instruction he received on March 13, 2003, was reprisal and not a Letter of Instruction to clarify policy and discuss work assignments. As an example the complainant cited the provision of the letter that states, "Continued non-compliance or non-cooperation with requests from your supervisors for work-related face-to-face meetings will subject you to disciplinary action." The complainant asserted that the March 13, 2003, letter was a disciplinary letter that follows a pattern and practice by the Agency of retaliation against employees for prior EEO activity. He also asserted that it was a violation of Item 10, of the Settlement Agreement.

On February 10, 2003, CR received an initial compliance report from the Agency. In that report the Agency identified Items 7, 10, and 13, as "Ongoing" and not as "completed."

On August 28, 2003, the Agency provided an additional compliance report to demonstrate its compliance with the Settlement Agreement. In particular, the Agency stated that the complainant had raised some of the same issues in his Formal Equal Employment Opportunity (EEO) complaint No. 030362 as in his allegation of non-compliance.

Specifically: The Agency acceptance letter stated, "Whether the Agency subjected the complainant to discrimination based on reprisal (participation in the EEO process) when:

2

P-1283

(1) on March 3, 2003, the Director of the Financial Management Division did not reconsider him as the alternate Northeast Regional Office (NERO) Funds Officer, which removed his certification rights and (2) he was issued a letter of instruction dated March 13, 2003."

The Agency stated that after a review of the facts, they could not identify any evidence to substantiate the claims alleged by the complainant.

## ANALYSIS AND FINDINGS

The Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R. § 1614.504(a) provides that "any Settlement Agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." The EEOC has held that a Settlement Agreement constitutes a contract between the employee and the agency, to which ordinary rules of contract construction apply. See Herrington v. Department of Defense, EEOC Request No. 05960032 (December 9, 1996). The EEOC has further held that it is the intent of the parties as expressed in the contract, not some unexpressed intention, that controls the contract's construction. Eggleston v. Department of Veterans Affairs, EEOC Request No. 05900795 (August 23, 1990). In ascertaining the intent of the parties with regard to the terms of a Settlement Agreement, the EEOC has generally relied on the plain meaning rule. See Hyon v. United States Postal Service, EEOC Request No. 05910787 (December 2, 1991). This rule states that if the writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature. See Montgomery Elevator Co. v. Building Eng'g Servs. Co., 730 F.2d 377 (5th Cir. 1984).

We have reviewed all of the documentation submitted by the complainant and Agency and have concluded that the complainant has met his burden of demonstrating that the Agency failed to comply with the Settlement Agreement. Vega v. United States Postal Service, EEOC Appeal No. 01986613 (June 30, 2000) (complainant bears the burden of proof to show that the agreement was breached). The complainant is required to show that the Agency's actions to implement the terms of the Settlement Agreement were insufficient.

In particular, the Agency's compliance report did not address the process for resolving disputes in Item 7.

"Issues, concerns, or disagreements with his supervisor(s) will be addressed in private meetings, when a public exchange would reflect poorly on one or both parties. If he and his supervisor are unable to resolve differences, they both will meet with the 2nd level manager who will serve as an objective 3rd party. If the 2nd level manager is unable to resolve the dispute, the Deputy Regional Administrator (DRA) will serve as the final reviewing official."

P-1284

3

The complainant provided a copy of an e-mail dated March 10, 2003, that requested the final reviewing official to act in his role to resolve a dispute. The complainant's allegation that the agency did not implement the dispute resolution process outlined in Item 7 has not been disputed by the Agency. In particular the Agency has presented no documentation to show its compliance with the dispute process outlined in Item 7. Although specifically requested from the Agency, the Agency did not address this issue in any response it made to requests for a compliance report.

The allegations of non-compliance raised by the complainant in particular, Items 10, 13, and the portion of Item 7 that refers to the complainant's duties as funds officer, and the alleged letter of instruction, will not be addressed in this decision, as they were raised in a new complaint.

## CONCLUSION

It is the final determination of the USDA that the Agency has not complied with Item 7 of the Settlement Agreement. Therefore, the Agency shall implement the dispute process outlined in Item 7 in writing. This is the final determination of USDA on the complainant's notice of non-compliance.

The Agency **must** provide a report of compliance to this office within 30 days of receipt of this decision.

> **Department of Agriculture**
> **Office of Civil Rights**
> **Employment/Program Compliance and**
> **Technical Assistance Division**
> 1400 Independence Avenue, S.W. – Mail Stop 9403
> Washington, DC 20250-9403

## APPEAL RIGHTS TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

If the complainant is not satisfied with USDA's final determination on the allegation of non-compliance, then the complainant may appeal to the Equal Employment Opportunity Commission (EEOC) for a determination as to whether the Agency has complied with the terms of the Settlement Agreement. A Notice of Appeal may be filed with the EEOC at any time up to thirty (30) calendar days after receipt of this decision. EEOC Form 573, EEOC Notice of Appeal, should be used to indicate what is being appealed. A copy of the form is provided with this decision. Such notice should be addressed to:

> **Equal Employment Opportunity Commission**
> **Office of Federal Operations**
> **P.O. Box 19848**
> **Washington, DC 20036**

P-1285

If there is an attorney of record, the thirty (30) day time frame within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the time within which to appeal shall be calculated from the date of receipt of this decision by the complainant. An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

Any statement or brief in support of the appeal must be submitted to the EEOC within thirty (30) calendar days of filing the Notice of Appeal.

At the same time information is provided to the EEOC (to include a copy of the Notice of Appeal and of any submissions in support of the appeal), there must be a certification that a copy of the submission has been submitted to the Employment/Programs Compliance and Technical Assistance Division and the date and method of submission. The address is provided below:

> **Department of Agriculture**
> **Office of Civil Rights**
> **Employment/Programs Compliance and**
> **Technical Assistance Division**
> **1400 Independence Avenue, S.W. - Mail Stop 9403**
> **Washington, DC 20250-9403**

The thirty (30) day time limit within which to file a Notice of Appeal will not normally be extended by the EEOC. However, the EEOC may, at its discretion, extend the time limit and accept the appeal based upon a written statement that there was no notification of the time limit, or that a timely Notice of Appeal could not be filed due to uncontrollable circumstances.

_____        5/19/07
Clyde Thompson                          /Date
Acting Director

### DEPARTMENT OF AGRICULTURE
### OFFICE OF CIVIL RIGHTS
#### Allegation of Non-compliance with a Settlement Agreement

**Complainant:**            John Pedicini

**Date of Allegation:**     March 20, 2003

**Agency:**                 Food and Nutrition Service

#### Certificate of Service

I certify that the documents listed below were sent on this date by certified mail (unless otherwise specified) to:

Complainant:        John Pedicini
                    10 Milano Drive
                    Saugus, MA 01906

Attorney:           None

Agency Head:        Roberto Salazar (interoffice mail)
                    Administrator, FNS
                    POC, Room 906-AO

Agency Liaison:     Michael G. Watts, FNS (interoffice mail)
                    Director, Civil Rights
                    POC, Room 942

Enclosures:   Final Determination Dated  MAY 19 2004
              EEOC Form 573 *(to complainant only)*

Certified by: _Antonette L. Carter_           MAY 21 2004
              Name                            Date

P-1287

6