UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JOHN G. PEDICINI,

      Plaintiff,

-vs-

    CIVIL ACTION NO. 04-12395-JLT

UNITED STATES OF AMERICA
ET AL.,

      Defendants.

---

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I AND III[1]

Plaintiff, John G. Pedicini, hereby opposes Defendants' request to dismiss Count I, retaliation under Title VII. This Court has already ruled that Plaintiff has presented evidence of a prima facie case of retaliation[2]. In addition, Defendants attempt to dismiss Count IV regarding breach of the settlement agreement, dated June 17, 2002, in paragraph seven. This paragraph automatically follows Count I and is properly before this Court. As with the attempt to

---

[1] Defendants have incorrectly identified Count IV Breach of Settlement Agreement as Count III which was Violation of Due Process under 5th Amendment and already dismissed in the Court's Memorandum on Summary Judgment dated, 3/29/2007

[2] Memorandum on Summary Judgment, dated 3/29/2007, p.26.

add new documents to this case, Defendants are trying to
revisit phases of this case that have expired.

## I.   STANDARD FOR DISMISSAL

For reasons set forth below, Plaintiff disputes
the applicability of the standard for dismissal offered by
the Defendants in their Motion To Dismiss As To Counts I
and III.

## II. ELEMENTS OF RETALIATION

In Burlington Northern & Santa Fe Railway Co. v.
White, 126 S. Ct. (2006), a new standard of retaliation was
established. The U.S. Supreme Court affirmed the Sixth
Circuit's judgment, but rejected the Sixth Circuit's
standard. The Court concluded that Title VII's retaliation
provision is broader in scope than Title VII's substantive
anti-discrimination provision, Section 703(a), is limited
in scope to actions that affect employment or alter the
conditions of the workplace. Section 703(a) limits the
scope of liability to certain enumerated categories:
"hire," "discharge," "compensation, terms, conditions, or
privileges of employment," "employment opportunities," and
"status as an employee." In contrast, Title VII's anti-

retaliation provision, Section 704(a), contains "…no such limiting words."[3]

In delivering the opinion of the Court, Justice Breyer stated, "…purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."[4]   Breyer continued that "…a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' "[5]

The Court also found that…" a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description".[6] The Court referred to the fact that a jury had found the track labor duties were "more arduous and dirtier"[7] and that the forklift operator duties required more qualifications "…which is an indication of prestige"[8]. Consequently, it could be found that the reassignment of

---

[3] Burlington Northern & Santa Fe Railway Co. v. White. 126 S. Ct. (2006), pp. 6-12.
[4] Id., pp. 6-12
[5] Id., pp. 12-15
[6] Id., pp. 15-18.
[7] Id., pp. 15-18.

duties would have been "materially adverse to a reasonable employee."

## II.   PLAINTIFF CAN ESTABLISH A MATERIALLY ADVERSE EMPLOYMENT ACTION

Defendants claim that Plaintiff cannot prove that he suffered a "materially adverse" employment action. Plaintiff disputes this claim and points to Defendants action of removing higher-level duties of certifying funds availability and replacing them with lower-level duties of typing and filing, similar to the actions of the Defendant in Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. (2006).

Defendants' argument against Plaintiff establishing a materially adverse employment action is based on a false premise. According to the Defendants, Plaintiff never had the right to certify funds availability because the Regional Administrator, Frances Zorn, never designated him as a certifying officer and did not delegate the authority to him to certify funds availability. Thus, Defendants argue, since Plaintiff never had the right, USDA didn't "take" any right from him.

---

[8] Id., pp. 15-18

Four Budget Analysts have testified in this case (i.e. Hines[9], Lash[10], Dorman[11], and Speshock[12]). All four have supported the Plaintiff's argument that he is the backup/alternate funds officer for NERO and that he has the right to certify funds availability. No Budget Analyst has supported the Defendants' argument. Thus, Plaintiff has indeed had a significant duty and responsibility taken away from him, in addition to other duties that were removed on October 22, 2004.

Defendants' argument is based on the role of the Regional Administrator, Frances Zorn, to delegate authority on certifying funds availability. It is disputed by the Agency's longest-serving funds control officer, Martin Hines. Defendants' argument relies upon a February 22, 1982 agency memo on designating certifying officers <u>for disbursement activities.</u> A plain reading of the memo fully supports this conclusion. The second paragraph reads, *"When FNS Regional Offices assume responsibility for* **disbursing activities**, *each Region will need to file with Treasury the specimen signature of the manager authorized to designate certifying officers."* **Funds control officers do not certify disbursements.** See FNS Handbook 101 ("Handbook 101"), p. 3-

---

[9] Deposition of Martin Hines, pp. 37-39.
[10] Deposition of Jonathan Lash, pp. 13-16..
[11] Deposition of Lisha Dorman, pp. 30-31,42, 75-77.

3, C(3).  Certifying disbursements is completely different from certifying funds availability. See Hines Dep., pp. 224-231. Likewise, Mr. Hines has reviewed the undated "Delegation of Authority" from the early 1980s and has testified that this letter also pertains to certifying officers for disbursements. See Hines Dep., pp. 224-231, 294-295.

Defendants do not provide any evidence that Ms. Zorn's delegation authority includes certifying funds availability. In fact, Ms. Zorn testified that she never issued such a letter until after Plaintiff filed his formal EEO complaint on 4/7/03. Defendants' argument on this point is so illogical that it would prevent anybody from certifying funds availability until June 16, 2003, including the funds control officer, Martin Hines. Ms. Zorn has testified she never delegated authority to Hines, until June 16, 2003. Furthermore, she testified that she never delegated authority to MacAllister to issue the self-serving letter dated May 28, 2002. She testified that her predecessor never delegated authority to MacAllister to issue the self-serving letter dated May 26, 1995. See Zorn 2005 Dep., pp. 199-201.

---

[12] Deposition of Angela (McElmurray) Speshock, pp. 10, 15-16, 29-30.

In 1998, Plaintiff was designated as the backup funds officer by his supervisor and Ms. Zorn was notified. See Deposition of Angela (McElmurray) Speshock ("Speshock Dep."), pp. 9-10,29-30. Plaintiff's designation was published by the agency's headquarters office in a nationwide Funds Officer List, dated January 26, 1999. The list was developed by Angela (McElmurray) Speshock. Id.,pp.8-9. Plaintiff's name was on the list under the regional office name, "NERO". All backup funds officers on the list have the right to certify funds availability. Id., pp. 15-16.

Nobody can dispute the fact that Plaintiff is the backup funds officer for NERO. See Hines Dep., pp. 37-39. See Deposition of Jonathan Lash ("Lash Dep."), pp. 13-16. Even Lisha Dorman has testified that "everyone in Washington, myself included, would refer to [Plaintiff] as the backup funds officer." See Deposition of Lisha Dorman ("Dorman Dep."), p. 31. This is the same Lisha Dorman who signed the affidavit that the Defendants have used to support their Motion For Summary Judgment. Ms. Dorman testified that Plaintiff, as an IAS Funds Approver, has the right to certify funds availability in the Integrated Acquisition System (IAS)—the very fact at issue in this action from the formal EEO complaint dated 4/7/03. See

Dorman Dep.,pp. 75-76. See Blim Dep., p 66. Defendants have admitted that Plaintiff is an IAS Funds Approver. See Defendants' Answer To Amended Complaint, ¶ 36. Ms. Dorman has testified that Plaintiff also has the right to certify funds availability in the Etravel system. See Dorman Dep., pp. 40-41. See Blim dep., p. 64.

On September 20, 2001, Plaintiff's supervisor, Joseph Stanco designated Plaintiff as Funds Control Officer backup ("FCO backup"), in writing on the USDA's official Form 1143 used to authorized employees with all the rights of the funds control officer and such rights are linked to the Plaintiff's duties in the workplace. Plaintiff became the backup funds officer for NERO and authorized in the agency's accounting system use to verify and **certify** funds availability, Foundation Financial Information System (FFIS). See Deposition of Juanita Makuta ("Makuta Dep."),pp. 41-43. See Handbook 101, p.3-2 (3). On November 8, 2001, Plaintiff was one of only two employees at NERO to be authorized in FFIS. The other person was the funds control officer, Martin Hines. No NERO supervisors were authorized.

On March 12, 2002 and February 24, 2004, Plaintiff's supervisors gave him the right to release/unrelease travel documents in the agency's TRVL

system. Such a right is given only to funds control

officers. See Handbook 101, p.8-2 (f), second sentence. See

Makuta Dep., p.36. See Dorman Dep.,p.67.

On July 14, 2003, Defendants distributed a

Financial Management Contact List to all states in the

Northeast Region. Plaintiff's name was listed with the

title, "Alternate Funds Officer".

Defendants also state in their prima facie argument

that, even if Plaintiff was a certifying officer with the

right to certify funds availability, "taking of this

function would not amount to an adverse employment action."

The right to certify is a higher level right. It is

indisputable that similarly-situated individuals at the

agency's headquarters office are two grade levels (i.e.

Grade 13)above Plaintiff's current grade level of 11. See

Dorman Dep.,pp. 86. See Hines Dep.,pp.29-30.

### III. PLAINTIFF CAN ESTABLISH THAT HE SUFFERED A MATERIAL ADVERSE ACTION CAUSED BY USDA'S RETALIATORY MOTIVES

Defendants argue that, assuming arguendo, that

Plaintiff had a material adverse action against him, once

the USDA presented a legitimate, non-retaliatory reason for

its conduct, he is unable to go forward unless he has

evidence that the reason was a pretext to cover up

retaliatory motives.

The Plaintiff can demonstrate pretext by

identifying "weaknesses, implausability, inconsistencies,

incoherencies, or contradictions in the employer's

proffered legitimate reasons "such that a factfinder could

'infer that the employer did not act for the asserted non-

discriminatory reasons.'" Stantiago-Ramos v. Centenniel

P.R. Wireless Corp., 217 F 3d 46,54 (1st Cir. 2000)(quoting

Hodgens v. General Dynamics Corp., 144 F3rd 151, 168 (1st

Cir.).

To argue against pretext, Defendants depend heavily

on Ms. Zorn's "alleged" delegation authority". Their

supporting documents have been declared irrelevant by the

Regional Funds Control Officer, Martin Hines. See Hines

Dep., pp. 224-231. Assuming, arguendo, that Ms. Zorn had

delegation authority, her use of the authority came in

reaction to the EEO complaints filed by Plaintiff.

Plaintiff's formal EEO complaint was dated on April 7,

2003.  On June 16, 2003, Ms. Zorn issues a memo on

delegation authority, for the first time. See Zorn 2005

Dep.,pp. 141-142. On June 2, 2004, Plaintiff filed an

informal EEO complaint on an attempt by Messrs. MacAllister

and Malone to take all rights to certify funds availability

away from Plaintiff.  Just one week later, Ms. Zorn issued
another memo on June 9, 2004. Plaintiff filed a formal EEO
complaint on July 16, 2004.

      There is strong evidence that Plaintiff's EEO
Representation bothered Ms. Zorn. She has testified that
Plaintiff's EEO representation **"lessened the productivity**
**of the office "** and **"caused anxiety among his supervisors"**.
See Zorn 2005 Dep.,pp.61,77. Furthermore, there is strong
temporal proximity between Plaintiff filing his EEO
complaints and Ms. Zorn issuing these memos. It is
indisputable that Ms. Zorn knew about Plaintiff's EEO
Representation, since she was deposed on February 11, 2003
by Plaintiff and forced to admit that she did not hire any
minorities for supervisory positions in the food programs
at NERO. See 2003 Deposition of Frances Zorn ("Zorn 2003
Dep."), pp.13-14.

      Defendants' argument on some backup funds officers
having the right to certify funds availability and others
not having that right is totally dependent on Paragraph 12
in the affidavit of Lisha Dorman. However, in her
deposition, Ms. Dorman recanted Paragraph 12 and, after
reviewing the evidence, testified that Plaintiff was the
backup funds officer for NERO and he did have the right to
certify funds availability. See Dorman Dep., 30-31,42,75-

77,86.   She testified that Paragraph 12 was incorrect on
this point. Indeed, in her testimony, Dorman remarks that
the Plaintiff has always been the backup funds officer and
"…how could anyone dispute that." See Dorman Dep., p 36.
In addition, Dorman defers judgment to Martin Hines and
testifies that Mr. Hines is the most knowledgeable person
on funds control issues at NERO. Id., p.13.

In the Memorandum on Summary Judgment, dated
3/29/2007, this Court has already ruled that "…Plaintiff
has supplied evidence to show that the Defendants'
proffered reason for barring Plaintiff from certifying
funds is pretextual."[13]

## V.   COUNT IV MUST NOT BE DISMISSED AS TO BREACH OF AGREEMENT NOT TO TAKE REPRISAL AGAINST PEDICINI

Defendants argue that Count IV is tied to Count I.
They reason that if Plaintiff can't prove retaliation in
Count I, then the breach of the settlement agreement should
also be dismissed. For reasons set forth above, Plaintiff
asserts that he has stated a viable Title VII retaliation
claim and the breach of the settlement agreement claim
should not be dismissed.

---

[13] Memorandum on Summary Judgment, dated 3/29/2007, p.28.

## VI. COUNT IV MUST BE DISMISSED AS TO PARAGRAPH SEVEN BECAUSE EXCLUSIVE JURISDICTION LIES IN THE COURT OF CLAIMS

Plaintiff disputes jurisdictional argument by Defendants. Plaintiff filed this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., which under 42 U.S.C. Section 2000e-16(c)and (d) allows for the bringing of this action in U.S. District Court after the expiration of one hundred eighty days after agency charges have been filed. See Plaintiff's Amended Complaint, filed 6/27/2005, ¶5. This complaint is properly before this Court.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Motion To Dismiss As To Counts I and III[14] should be denied.

Respectfully submitted,

8/6/07
Date

JOHN G. PEDICINI, PLAINTIFF PRO SE
10 Milano Drive
Saugus, MA 01906
781-248-1385

13

## CERTIFICATION OF SERVICE

Pursuant to L.R.5.2(b), I hereby certify that a true copy of the above memorandum in support of the above motion was served on the Defendants on August 6, 2007 by hand to: Gina Walcott-Torres, Assistant U.S. Attorney, Moakley Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

By: _____                    _8/6/07_
    John G. Pedicini, Pro Se                        Date

---

[14] As stated before, Defendants' motion incorrectly identifies Count III as the breach of settlement count when it should be Count IV.

14